UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re

NORTHWEST TERRITORIAL MINT, LLC

                            Debtor.

Bankruptcy No. 16-11767-CMA

**DIANE ERDMANN'S REPLY TO TRUSTEE'S TRIAL BRIEF**

### A. The Trustee's Brief Raises a New Theory and is the First Opportunity Ms. Erdmann Has Had to Read the Trustee's Claims Against Her

Prior to June 15, Ms. Erdmann and her counsel had never been informed of the precise nature of the Trustee's allegations. The most specific writing that the Trustee had previously submitted was his *Reply to Diane Erdmann's Response to Motion for Authority to Withdraw as Attorney for Debtor*, Dkt. No. 182, in which he asserted that Ms. Erdmann removed "coins and precious metals from the company vault" (emphasis added) before the Retainer Funds were paid, and that the coins Mr. Erdmann liquidated to pay $99,460.00 of the Retainer Funds were given to Mr. Huffman in the same vault. The claim was supported by a declaration from Mr. Huffman about these same events. Dkt. No. 183. The Trustee did not, however, allege that Ms. Erdmann had stolen cash. Now, the Trustee's brief claims that when Ms. Erdmann stopped working for the Debtor, $187,695.42 in cash had gone missing. Trustee's Brief, 6:2-3. Ms. Erdmann had no indication that such a claim would be made, and has not had the opportunity to conduct discovery regarding it. Rather, all discovery has been focused on "coins and precious metals." Given that this new claim about cash was only just raised, it should

CREDITOR DIANE ERDMANN'S REPLY BRIEF - PAGE 1



A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
p: 206.489.3802  |  f: 206.973.8737

1    not be decided at an evidentiary hearing one week later. *See In re Cogliano*, 355 B.R. 792, 804-806

2    (9th Cir. B.A.P. 2006) (determination of estate's interest in property requires procedural protections

3    of adversary proceedings provided by Rule 7001 et seq.).

### B. The Burden of Proof Rests on the Trustee

The Trustee asserts that Ms. Erdmann bears the burden to prove that the Retainer Funds are

her personal property, citing *In re Altman*, 230 B.R. 6, 11 (Bankr. D. Conn. 1999), *vacated in part*,

254 B.R. 509 (D. Conn. 2000). There, the court stated that the burden of proof "as to what is property

of the estate generally rests with the creditor." The "creditor" referenced in that case, however, was

the party asserting that property was part of the estate. A better statement of the rule is, "The party

seeking to include property in the estate bears the burden of showing that the item is property of the

estate." *In re Neidorf*, 534 B.R. 369, 372 (B.A.P. 9th Cir. 2015). Here, that party is the Trustee.[1] As

he acknowledges, the Retainer Funds are only property of the state "to the extent [they] can be traced

to property stolen from NWTM pre-petition …." Trustee Brief, 9:13. The Trustee cannot meet his

burden to trace those funds to property stolen from the Debtor.[2]

### C. The Trustee Has Only Suspicions and Speculation, and asks the Court to Believe an Implausible Theory That Lacks Either Motive or Opportunity for Theft

None of the Trustee's circumstantial evidence proves the Retainer Funds are proceeds of

stolen property. The Trustee offers security tapes showing Ms. Erdmann, Mr. Hansen, and other

employees moving boxes; the tapes do <u>not</u> show (1) what was in the boxes, (2) who owned that

property, or (3) what became of it. Further, the taped events happened <u>before</u> Ms. Erdmann had any

need for the Retainer Funds. To show it is more likely than not that the coins liquidated to pay the

Retainer Funds were stolen from the Debtor, all the Trustee can offer is video footage of Debtor's

employees carrying on normal activities at Debtor's facilities before the Retainer Funds were even an

---

[1] *See also In re Heritage Org. L.L.C.*, 350 B.R. 733, 737-38 (Bankr. N. D. Tex 2006) (trustee has burden of proving that property is property of the estate); *In re Arter & Hadden, L.L.P.*, 335 B.R. 666, 671 (Bankr. N.D. Ohio 2005) (Trustee has "prima facie burden to show that the Debtor has an ownership interest in property").

[2] *See also, In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 708 (11th Cir. 2005) ("In an action seeking recovery, the plaintiff has the burden of tracing funds it claims to be property of the estate.").

CREDITOR DIANE ERDMANN'S REPLY BRIEF - PAGE 2

**DBS** | **LAW**

A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
p: 206.489.3802  |  f: 206.973.8737

issue. This is uncompelling, and asks the Court to believe this implausible story:

1. The Trustee suggests that on March 26 and 27, Ms. Erdmann, with the help of Mr. Hansen and other Debtor employees, stole boxes of property from the Debtor's Federal Way vault. The Court is asked to disregard that the contents of the boxes are unknown, and no evidence connects that property to the Retainer Funds. The Trustee ignores the lack of any motive for theft at that time, when the Debtor instead had a clearly identified motive for moving property between facilities to avoid execution on the Cohen Judgment before the Debtor could file bankruptcy. The Cohen Judgment became executable on March 25, and the Debtor believed that Cohen was not aware of its Auburn location. Indeed, the Trustee himself, while acting in a different capacity, advised Mr. Hansen to take precautions against imminent execution attempts. Further, the Trustee's story disregards that (a) Ms. Erdmann and Mr. Hansen were well aware of security cameras capturing their every move, (b) that the videos show Ms. Erdmann behaving normally in a manner that is not designed to conceal her actions, and (c) that if Ms. Erdmann or Mr. Hansen had needed money, they could have simply taken a cash owner draw as they did every other time in the past. There was simply no motive for theft.

2. On March 28, the Debtor gave a check to TTLG for $150,000 to cover the advance fee deposit. The Court is asked to disregard that when Mr. Hansen gave this check, according to the Trustee, he and Ms. Erdmann had already stolen from the Debtor to pay the deposit.

3. After Debtor delivered the check to TTLG, Mr. Tracy told Mr. Hansen that he would need to receive the advance fee deposit from someone other than Mr. Hansen or the Debtor. The Court is asked to disregard that this is the first time Ms. Erdmann would have any reason to believe that she needed to pay the advance fee deposit herself, and that there is no evidence at all that Ms. Erdmann took anything from the Debtor after this date.

4. On March 31, Ms. Erdmann brought a black bag to work with her in the morning and later gave it to David Huffman to liquidate the coins inside for the purpose of paying the Retainer Funds. The Court is asked to disregard: (a) that security footage from this day clearly shows that Ms.

**DBS | LAW**

A Professional Limited Liability Company
155 NE 100th Street, Suite 205    Seattle, WA 98125
p: 206.489.3802  |  f: 206.973.8737

Erdmann did <u>not</u> put anything from the vault into the bag before giving it to Mr. Huffman, (b) that there is no evidence connecting the property in the black bag to the property in the boxes moved on March 26 and 27, (c) that according to the Trustee's theory, if Ms. Erdmann had wanted to take property from the vault to pay the Retainer Funds, she would have simply done so in plain view of the cameras rather than bringing in property from home, and (d) that Mr. Huffman is a former police officer and the Debtor's head of security, who would be a poor choice of accomplice for someone intending to commit a crime.

Beyond this, the Trustee offers irrelevant accusations to color the Court's perception of Ms. Erdmann, but which have no bearing on whether the Retainer Funds were derived from stolen property. First, the Trustee alleges that Ms. Erdmann did not keep good records while managing the vault. While Ms. Erdmann can testify to the reasons she kept records in the way that she did, it is not relevant to the source of the Retainer Funds. Ms. Erdmann worked for the Debtor for 16 years, and her method of keeping records kept the company operational until it was hit with a judgment of unprecedented size less than two months before it filed bankruptcy. There are no allegations that Ms. Erdmann stole from the company before March (in fact Paul Wagner, formerly the Debtor's CIO and now its President, has testified that he has does not believe she has ever stolen from the Debtor), and her practices did not materially change during that time.

The Trustee suggests that after the Cohen Judgment was entered, Ms. Erdmann "ceased maintaining the Vault Cash Log." Trustee's Brief at 5:13. This is a misrepresentation of the change that actually occurred. The Vault Cash Log that was kept as an Excel spreadsheet by Ms. Erdmann was based on a hand-written log near the till, which was accessible and regularly updated by multiple employees. That did not stop in February. Hand-written records were still kept while Ms. Erdmann dealt with the stresses that accompanied the Cohen Judgment. There was no material change in the information tracked during this time.

Ms. Erdmann also maintained a stock sheet, which at any given time provided a snapshot of the vault inventory. The Trustee insinuates that Ms. Erdmann stopped keeping this stock sheet in

DBS | LAW

A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
p: 206.489.3802  |  f: 206.973.8737

March by stating that there was no "shared record" after that time. Ms. Erdmann has provided the Trustee with the information needed to access the stock sheet, which was updated throughout her time working for the Debtor and was stored on her computer in the Federal Way facility. It is true that the record was not "shared," but the Trustee offers no reason it should have been. Once again, the Trustee uses a vague allegation about recordkeeping to tarnish Mr. Erdmann's character, but the truth is that her long-standing practices do not amount to evidence of theft.

The Trustee also points to an increase in Ms. Erdmann's comings and goings as having been "noticed by other employees." Trustee's Brief, 6:18. There is no indication of what this is supposed to be evidence of, but it will be explained by the Debtor's bookkeeper, Annette Trunkett, as daily trips to the bank that started occurring after the Cohen Judgment was entered.

Ultimately the Trustee is unable to point to either a motive or an opportunity for Ms. Erdmann to have stolen the Retainer Funds from the Debtor. Mr. Hansen had always taken cash owner draws any time he and Ms. Erdmann needed money, and as of March 28, the Debtor believed it would be able to pay its own legal bills by writing a check directly to TTLG. Thus, Ms. Erdmann had no reason to steal the Retainer Funds on March 26 and 27. Further, security footage on March 31 shows that Ms. Erdmann brought coins into work with her and added no property from the vault before handing the bag to Mr. Huffman to be sold. There was no opportunity on that day for Ms. Erdmann to have stolen the coins that were used to pay the Retainer Funds. With a case based totally on circumstantial evidence and speculation, the Trustee cannot meet his burden of proof without showing any motive or opportunity for the alleged theft.

### D. Ms. Erdmann's Bar Complaint Against Todd Tracy, Though It Has Been Withdrawn, Was Not a Stay Violation

Due to the Court's concerns, Ms. Erdmann withdrew her complaint with the Washington bar against Mr. Tracy on Thursday, June 16, 2016. Making the complaint, however, was not a violation of the bankruptcy stay. The Trustee's argument for finding a stay violation is based almost entirely on the actions allegedly taken by Ross Hansen; the only action that was taken by Ms. Erdmann was

**DBS | LAW**

A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
p: 206.489.3802  |  f: 206.973.8737

to file a complaint with regulatory agencies.

Furthermore, the bar complaint process is a governmental function to enforce the Bar's regulatory power;[3] its purpose is to "protect the public, the profession and the administration of justice, rather than to serve any pecuniary interests. Continuation of the proceeding, therefore, falls within the scope of the 'police or regulatory power' exception of section 362(b)(4)." *In re Wade*, 115 B.R. 222, 228 (9th Cir. B.A.P. 1990), *aff'd*, 948 F.2d 1122 (9th Cir. 1991) (internal citations omitted). "There can be no function more clearly within the police and regulatory exception to the stay than the actions of the judicial branch of a sovereign in regulating the conduct of and in disciplining the officers of the court.… The actions taken and proposed do not have the primary purpose of reimbursing third parties for damages … but deter improper conduct by members of the bar …." *In re Arsi*, 354 B.R. 770, 773 (Bankr. D.S.C. 2006). This is true even if the Court finds the Retainer Funds are property of the estate. "A private party's reporting of wrongful conduct to governmental regulatory authorities is neither the commencement of a proceeding under subsection 362(a)(1), nor necessarily an 'act to collect' under subsection 362(a)(6)…. [T]he same sound public policy reasons which undergird the subsection 362(b)(4) exception counsel against any rule which might dissuade private parties from providing governmental regulators with information which might require enforcement measures to protect the public from imminent harm." *In re McMullen*, 386 F.3d 320, 328 (1st Cir. 2004).

When she paid the Retainer Funds, Ms. Erdmann understood that they remained her property unless and until earned.[4] Not surprisingly, she was upset to discover that Mr. Tracy had not explained to Ms. Erdmann the potential consequences of making the payment; her complaint was her form of grievance. However, the Court should not inquire into Ms. Erdmann's motivations for making the complaint, for creating any kind of "bad faith" exception to 362(b)(4) "would immerse the bankruptcy courts in 'mini-trials of purely state regulatory issues,' which are far better left to the state …." *Id*.

---

[3] The same applies the AG complaint. *In re First All. Mortgage Co.*, 263 B.R. 99, 107 (B.A.P. 9th Cir. 2001)

[4] Even the beneficial interest the Trustee argues for would not bring the Retainer Funds into the estate. The bankruptcy code does not enhance the debtor's rights after the time of filing. *In re Braker*, 125 B.R. 798, 801 (9th Cir. B.A.P. 1991). At most, the estate has a beneficial interest to apply the Retainer to fees incurred by TTLG.

DBS | LAW

A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
p: 206.489.3802  |  f: 206.973.8737

DATED this 20th day of June, 2016.

DBS | Law

By:  _/s/ Dominique R. Scalia_____
Daniel J. Bugbee, WSBA #42412
Dominique Scalia, WSBA#47313
*Attorneys for Diane Erdmann*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

CREDITOR DIANE ERDMANN'S REPLY BRIEF - PAGE 7



DBS | LAW
A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
p: 206.489.3802  |  f: 206.973.8737

**CERTIFICATE OF SERVICE**

I hereby certify on June 20, 2016, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system which, pursuant to Local Rule 5005-1(c)(1), causes parties who are registered ECF participants to be served by electronic means.

Dated this 20th day of June, 2016, at Seattle, Washington.

DBS | Law

By:     /s/ *Dominique R. Scalia*
         Dominique R. Scalia

CREDITOR DIANE ERDMANN'S REPLY BRIEF - PAGE 8

DBS | LAW

A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
p: 206.489.3802 | f: 206.973.8737