UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re

NORTHWEST TERRITORIAL MINT LLC,

Debtor.

No. 16-11767-CMA

**DECLARATION OF TOM TUCKER** IN SUPPORT OF RETT, LP'S MOTION FOR RELIEF FROM STAY AND ALLOWANCE AND PAYMENTS OF ITS ADMINISTRATIVE EXPENSES

TOM TUCKER declares:

1. I make this declaration based on my personal knowledge.

2. I am one of the partners of RETT, LP.

3. RETT is the owner of the premises located at 723 South Cherry Street, Tomball, Texas 77375 (the "Property").

4. RETT and Northwest Territorial Mint, LLC (the "Debtor") entered into a Commercial Lease Agreement (the "Lease"), the effective date of which was May 12, 2011. A true and correct copy of that Lease is attached hereto as Exhibit A.

5. The initial lease term was sixty (60) months, and monthly rent during that period was $13,000.00. At the end of the initial 60-month period the Lease converted into a month-to-

DECLARATION OF TOM TUCKER - 1

LASHER HOLZAPFEL SPERRY & EBBERSON
2600 Two Union Square
601 Union Street
Seattle, WA 98101-4000
(206) 624-1230
Fax (206) 340-2563

Case 16-11767-CMA    Doc 439-2    Filed 06/23/16    Ent. 06/23/16 11:52:41    Pg. 1 of 18

month lease. The initial 60-month term ended on May 12, 2015, at which point the Debtor became obligated to pay RETT adjusted monthly rent in the amount of 130% of the original monthly rent (i.e., $13,000.00 x 1.3 = $16,900.00).

6. The purpose of the increased rent was to account for changed market conditions and price inflation expected to occur five years after the commencement of the Lease, and to compensate RETT for the decreased predictability and stability that accompanies a month-to-month lease as compared to a much longer term lease.

7. Under the terms of the Lease, the Debtor's obligations include payment of rent; payment of property taxes; payment of late charges, when applicable; payment of waste removal expenses; liability for any damage to the Property caused by the Debtor; payment and maintenance of insurance coverage; and payment of attorney's fees. The Debtor is also only allowed to use the premises for "general office" and "light industrial manufacturing purposes." It is my opinion that the Trustee is currently breaching the "use" clause of the Lease by using the Property for unauthorized purposes, including permitting the Buyer to access and damage the Property.

8. The Debtor is required to pay rent in monthly installments on the 1st day of each month. See Exhibit A, ¶ 6.a. If the Debtor does not pay the monthly rent by the 10th day of the month, the Debtor is required to pay a late charge equal to ten percent (10%) of the unpaid portion. See Exhibit A, ¶ 6.b. The Debtor is required to pay all property taxes and assessments against the Property. See Exhibit A, ¶ 8.c. The Debtor is required to maintain and repair or replace any damage it causes to the Property, including damage caused by agents, employees, contractors or

DECLARATION OF TOM TUCKER - 2

LASHER HOLZAPFEL SPERRY & EBBERSON
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WA 98101-4000
(206) 624-1230
FAX (206) 340-2563

Case 16-11767-CMA    Doc 439-2    Filed 06/23/16    Ent. 06/23/16 11:52:41    Pg. 2 of 18

invitees. See <u>Exhibit A</u>, ¶ 9.b. The Debtor is required to pay for and maintain adequate insurance coverage for the Property. See <u>Exhibit A</u>, ¶ 13. And the Debtor is required to pay RETT's attorney's fees and costs. See <u>Exhibit A</u>, ¶ 21.

9. Since the Debtor filed its bankruptcy petition on April 1, 2016, the Debtor has failed to timely pay rent, late fees, or property taxes as those payments have become due. The Debtor and the Trustee also failed to maintain adequate insurance as required under the terms of the Lease. On April 10, 2016, I contacted the Debtor to request proof of insurance. None was provided, and RETT has been forced to pay for the insurance coverage itself in order to protect and preserve the Property, despite clear language in the Lease obligating the Debtor (and now the Trustee) to cover this expense. See <u>Exhibit A</u>, ¶ 13. Because the Trustee failed to obtain insurance coverage, I renewed the insurance policy on June 1, 2016. The Trustee's prorated insurance obligation through July 2016 is $14,723.10. The Debtor/Trustee currently owes the following amounts:

| | |
|---|---|
| Real estate taxes | $10,203.67 |
| Difference between lease payments received and contractual obligation | $3,900.00 for May 2016 |
| Late fees for failure to make full lease payments | $1,300.00 for April 2016<br>$1,300.00 for May 2016 |
| Insurance through July 2016 | $14,723.10 |
| TOTAL | $31,426.77 |

10. Jeff Muller, RETT's general contractor, has reported to me that property damage is occurring, and that the Buyer's representatives are likely to leave the property in such a condition

DECLARATION OF TOM TUCKER - 3

LASHER HOLZAPFEL SPERRY & EBBERSON
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WA 98101-4000
(206) 624-1230
FAX (206) 340-2563

Case 16-11767-CMA    Doc 439-2    Filed 06/23/16    Ent. 06/23/16 11:52:41    Pg. 3 of 18

that substantial repairs and cleanup will be required before the premises can be re-let. I estimate that it may cost as much as $44,000.00 to repair damage caused by the Trustee and/or the Buyer during the post-petition period.

11. RETT is specifically concerned that the Debtor, the Trustee, or the Buyer (Ira Green, Inc.) may spill hazardous waste which was generated by the Debtor during its pre- and post-petition business operations and which is currently stored at the Property.

12. Additionally, there has been substantial recent flooding in the area where the Property is located, and it is necessary for RETT to access the Property for ongoing maintenance and to assess and control any flood damage, as well as to make arrangements for important and necessary repairs. Despite the recent floods and the fact that the Buyer or its representatives are causing property damage, the Trustee and the Buyer refused to allow RETT or its representatives to access the property for a period of approximately one (1) weeks. On Monday, June 20, 2016, a representative of RETT was finally permitted access to the Property, but the situation remains tenuous and a cause for serious concern.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

DATED AND SIGNED this 21st day of June, 2016 at Noble, OK.

_____
Tom Tucker

DECLARATION OF TOM TUCKER - 4

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

2600 TWO UNION SQUARE
801 UNION STREET
SEATTLE, WA 98101-4000
(206) 624-1230
FAX (206) 340-2563

*EXHIBIT A*

## COMMERCIAL LEASE AGREEMENT

This Commercial Lease Agreement (the "Lease"), dated as of May 12, 2011 (the "Effective Date"), is by and between the below-named Landlord and Tenant.

1.  DEFINITIONS. The following terms shall have the following meanings:

    a.  Landlord: RETT, L.P., a Texas limited partnership

    b.  Landlord's Address: 8765 Spring Cypress, L#174
        Spring, Texas 77379
        Attention: Tommy G. Tucker
        Telephone: (713) 907-8133
        Telefax: (281) 225-8681
        Email: ttucker@gracoind.com

        Tenant: NORTHWEST TERRITORIAL MINT, LLC, a Washington limited liability company

    c.  Tenant's Address: P.O. Box 2148
        Auburn, WA 98071-2148
        Attention: Ross B. Hansen
        Telephone: (253) 833-7780
        Telefax: (253) 735-2210

    d.  Property: building and land located at 723 S. Cherry St., Tomball, Texas 77375, and all improvements thereon, including the building, and appurtances thereto

    e.  Premises: the building containing approximately 27,850 square feet of agreed rentable area, together with the land, improvements and appurtenances thereto located at 723 S. Cherry St., Tomball, Texas 77375, and all improvements thereon, including the building, and appurtances thereto as outlined in Exhibit "A",

    f.  Term: sixty (60) full calendar months, plus the partial month at the beginning if the Commencement Date is not the first day of a month, beginning on the Commencement Date

    g.  Commencement Date: May 12, 2010

    h.  Monthly Rent: $13,000.00.00 per month

    i.  Security Deposit: $36,000.00 which shall be paid upon Commencement

2.  TERM. The Term of this Lease shall begin on the Commencement Date and end on the last day of the sixtieth calendar month thereafter, unless sooner terminated as herein provided. This Lease shall automatically renew on a month to month basis at the end of the Term unless either party provides one hundred and twenty (120) days advance written notice of their intent to terminate the Lease; said notice will be deemed effective on the date of delivery. If neither party complies with the terms of this Section and Tenant retains possession of the Premises past the Term, Tenant will pay an adjusted Monthly Rent in the amount of one-hundred and thirty percent (130%) of the original Monthly Rent for each subsequent month.

3. PURCHASE OPTION. Tenant shall have the option to purchase the Property at any time during the Term under the following terms and conditions: (i) Tenant must give Landlord at least one-hundred twenty days (120) days advance written notice of Tenant's intent to exercise the Purchase Option, (ii) the parties agree that the purchase price shall be the greater of $1,650,000.00 or the appraised market value of the Property as determined by an MAI appraiser, whose fee shall be borne by Landlord, whichever is higher, and (iii) closing shall take place ninety (90) days after Landlord's receipt of Tenant's notice of intent to exercise unless another date is selected by mutual agreement of Landlord and Tenant. If Tenant fails to timely exercise the Purchase Option, then the Option shall be null and void.

4. RENEWAL OPTION. Tenant shall have the option to renew the Term of the Lease for an additional thirty-six (36) month period at the then-prevailing market rate for the Premises based upon the rentable area per month (the "Option"). Tenant must give Landlord advance written notice at least one-hundred and twenty (120) days, prior to the end of the Term that Tenant intends to exercise the Option. Tenant must not be in default of the Lease at the time the written notice is issued or at any time during the remainder of the Term. Tenant must lease the Premises under the same terms, conditions, covenants and provisions as set forth in the Lease, except for that the rental will be as specified in the first sentence of this Section and there shall be no build-out allowance, lease concessions, Purchase Option of Section 3, and Renewal Option of Section 4. Tenant agrees to execute a Renewal and Modification Agreement, and any other documents that Landlord reasonably requests, in a form acceptable to Landlord within thirty (30) days of Landlord's receipt of Tenant's notice. If Tenant fails to timely exercise the Option, then the Option shall be null and void and Landlord may lease the Premises, if any, as it sees fit.

5. USE. The Premises shall be used and occupied by Tenant solely for its general office and light industrial manufacturing purposes (including ancillary light industrial uses) similar, but not limited to, the use and occupation enjoyed by Graco Awards prior to the Commencement Date, provided that such uses shall be in strict compliance and all legal requirements. Tenant shall not use or permit the use of the Premises for any purpose which: (i) Landlord, in its reasonable discretion, deems to be immoral, dangerous or a public or private nuisance; (ii) disturbs the quiet enjoyment of any other lessee of the Property; (iii) introduces offensive odors or conditions into other portions of the Property; (iv) makes undue noise or vibrations in or about the Property; or (v) causes a cancellation of or increase the premiums paid by Landlord for any insurance covering the Property. As long as Tenant is not in default of the Lease, Tenant shall have the right to peacefully enjoy and occupy the Premises.

6. RENT.

   a. Rent/Concession. Tenant agrees to pay Landlord the Rent in monthly installments of Monthly Rent on the 1st day of each month. Rent shall be payable in advance, without demand, deduction or offset at the office of Landlord as noted herein. Rent for any partial month at the beginning or end of the Term shall be prorated.

   b. Late Charge. In the event Rent is not received by Landlord by the 10th day of the month, Tenant shall pay a late charge in the amount of ten percent (10%) of any unpaid portion.

   c. Security Deposit. Tenant shall pay to Landlord the Security Deposit as security for performance of Tenant's financial obligations hereunder. Landlord may apply any or all of the Security Deposit toward the payment of any sum or the performance of any obligation which Tenant failed to pay or perform upon Default. The Security Deposit

shall not be considered an advance payment of Rent or a measure of Landlord's damages upon Default.

7. <u>LANDLORD'S SERVICES.</u> Landlord shall provide access to water and sewer, gas and electricity upon Tenant taking possession of the Property. At that time, Tenant shall have all such utilities placed in Tenant's name. Landlord shall not be liable for any damage arising in connection with any failure or interruption of any such services, nor shall same be construed as an eviction of Tenant, entitle Tenant to any reduction in Rent, or relieve Tenant from any covenant hereof. Also, Landlord shall not provide security guards or other security devices/methods/measures, Tenant assumes the risk of any criminal activity and agrees to be responsible for selecting and providing its own security measures, and Tenant hereby waives any and all claims or causes of action against Landlord, its successors and assigns, arising from the criminal acts of third parties.

8. <u>TENANT OPERATING EXPENSES</u>. Tenant shall be responsible for and pay all expenses to operate the Premises including, without limitation, the following:

    a. Cost of all utilities including, but not limited to, the costs of water and power, heating, lighting, air conditioning and ventilation, waste removal and telecommunications,

    b. Cost of all janitorial service, yard maintenance, alarm service, security service, window cleaning, and routine maintenance, and

    c. All property taxes and assessments and other governmental charges whether federal, state, county or municipal and whether they be by taxing districts or authorities presently taxing the Property or by others subsequently created or otherwise. Lessee shall have all rights under the Texas Property Tax Code, now or hereafter in effect, including all rights under Section 41.413 thereof, granting to tenants of real property or lessees of tangible personal property the right to protest the appraised value, or receive notice of reappraisal, of all or any part of the Complex, irrespective of whether Lessor has elected to protest such appraised value.

9. <u>REPAIRS AND MAINTENANCE.</u>

    a.    <u>By Landlord.</u> Landlord shall maintain the Property and Premises in reasonably good and operable condition, except as otherwise provided herein. Such maintenance shall include the roof, air conditioning and heating, external structure, parking areas, asphalt and paving, sidewalks and exterior lighting (except for building mounted fixtures) of the Premises.

    b.    <u>By Tenant.</u> Tenant shall maintain and repair or replace any damage to the Property caused by Tenant, Tenant's agents, employees, contractors or invitees. Tenant shall maintain the Premises in a good, clean, safe and operable condition, in good repair. Upon the expiration of this Lease, Tenant shall deliver the Premises to Landlord in the same condition in which it existed at the Commencement Date, excepting ordinary wear and tear.

10. <u>LANDLORD'S ACCESS.</u> Landlord and its representatives shall have the right to enter the Premises during Tenant's normal business hours and upon reasonable advance notice to inspect, repair or alter the Property, to show the Property to prospective purchasers or lessees or for any other purpose reasonably required to perform Landlord's duties under this Lease, and Tenant shall not be entitled to any reduction of Rent by reason of Landlord's right of access. Except in an emergency situation, Landlord agrees to (i) give Tenant advance notice prior to entering the

3

Premises under this section, (ii) take steps to not disturb the business activities of Tenant, and (iii) observe Tenant's established security requirements and protocol for entering the Premises.

11. **FORCE MAJEURE.** Landlord shall not be liable for failure to furnish or perform any service or obligation when prevented from doing so by force majeure or any cause beyond Landlord's control.

12. **M & M LIENS.** Tenant shall not allow any mechanic's or materialman's lien to be filed against any of the Property.

13. **INSURANCE.** Tenant shall maintain comprehensive general and contractual liability insurance in a form and with insurance company(ies) acceptable to Landlord, in a minimum amount of $2,000,000.00 combined single limit, naming Landlord as additional insured and being non-cancelable except after 30 days written notice. Tenant shall cause a current certificate of such policy(ies) to be deposited with Landlord. Tenant is advised to purchase special form property insurance in the event Tenant makes any approved improvements to the Premises which are above building standard improvements. Landlord reserves the right to require Tenant to purchase special form property insurance in the event Tenant makes any approved improvements to the Premises which are above building standard improvements. Tenant acknowledges that Landlord and Landlord's insurer are responsible for providing such insurance, and Tenant shall not be entitled to any recovery or insurance proceeds for damage to above building standard improvements, approved or not, to the Premises. Landlord shall carry the appropriate general liability insurance for the Property.

14. **EQUIPMENT AND ALTERATIONS.** Tenant shall not install in the Premises any permanent fixtures, equipment, or improvements without the written consent of Landlord. Tenant shall not make or allow any alterations, additions, or improvements to the Premises without obtaining the prior written consent of Landlord, which may be conditioned upon Tenant's providing plans and all other information required by Landlord and complying with any construction requirements imposed by Landlord. Unless agreed to otherwise in writing, any alterations, additions or improvements to the Premises shall become the property of Landlord and shall be surrendered with the Premises at the expiration or termination of this Lease. Tenant shall be entitled to install equipment, machines, trade fixtures, computer hardware, security system, telecommunications equipment and other removable personal property for "Uses" permitted in Section 5. Should Tenant desire to install any equipment or machinery that will be attached to the Property or will otherwise be considered large or heavy equipment or machinery, Tenant must give Landlord twenty (20) days advance written notice before the installation and include a description of the equipment or machinery along with a brief description of the installation method for the same. Landlord will have ten (10) days to object to the installation and may only object if in Landlord's reasonable judgment the installation of the equipment or machinery will cause unreasonable harm to the Property.

15. **TENANT'S PROPERTY.** Tenant shall not remove any property from the Premises, except Tenant may, at its expense, remove movable trade fixtures and personal property from the Premises provided: (i) same is done prior to the expiration or termination of this Lease, (ii) Tenant is not in Default, and (iii) Tenant repairs all damage caused by such removal. If Tenant does not remove its movable trade fixtures or personal property prior to the expiration or termination of this Lease, then Landlord may (in addition to all other rights) remove and store such items at Tenant's expense and/or keep or discard such items without liability to Tenant.

4

16. ASSIGNMENT/SUBLETTING. Tenant shall not assign this Lease or sublease all or any of the Premises, or allow same to occur by operation of law or otherwise. If Tenant is an entity, then the transfer of 50% or more of the ownership interest in Tenant shall be deemed an assignment. If this Lease is assigned to any person or entity pursuant to the provisions of the Bankruptcy Code, 11 U.S.C. Section 101 et. seq., any and all monies or other consideration payable or to be delivered in connection with such assignment shall be paid or delivered to Landlord, shall be the exclusive property of Landlord, and shall not constitute property of Tenant or of the estate of Tenant within the meaning of said Code. Any such monies or other consideration not paid or delivered to Landlord shall be held in trust for the benefit of Landlord and shall be promptly paid or delivered to Landlord. Any person or entity to whom this Lease is so assigned shall be deemed, without further act or deed, to have assumed all of the obligations arising under this Lease as of the date of such assignment. Any such assignee shall, upon demand therefore, execute and deliver to Landlord an instrument confirming such assumption.

17. CASUALTY. Tenant shall give prompt written notice to Landlord of any casualty to the Premises and may make emergency temporary repairs to protect Tenant's property and the Premises. Tenant may expend up to $25,000.00 for such emergency repairs. Landlord shall reimburse Tenant for such repairs within thirty (30) days of receipt from Tenant of all receipts, invoices and documentation supporting the repair expenditure. Landlord reserves the right to reasonably contest any repair expenditure or amounts in such request for reimbursement from Tenant. If the Premises is damaged and cannot, in Landlord's reasonable opinion, be repaired so as to restore the Premises to its condition prior to the casualty, or if the insurance proceeds for such damage are insufficient to restore the Premises to its condition prior to the casualty or are required to be paid to the holder of any deed of trust covering the Property, then Landlord may terminate this Lease by notifying Tenant within forty-five (45) days after the date of such casualty. If Landlord does not terminate this Lease, Landlord shall repair and restore the Property or Premises to a condition as reasonably similar to the condition of the Property or Premises prior to the casualty, and the Rent shall be reduced during the period of restoration in the proportion that the area that the tenantable portion of the building and Premises bears to the entire Premises. If Landlord does not diligently pursue completion of such repairs and the repairs are not completed within ninety (90) days of the date of such casualty, then Tenant may terminate the Lease by providing Landlord thirty (30) days advance written notice on or after the ninetieth (90th) day. Notwithstanding the foregoing, if any of the Property shall be damaged by casualty caused by Tenant or its agents, employees, contractors or invitees, such damage shall be repaired at the expense of Tenant, under the direction of Landlord, and the Premises or Property will be placed in its condition as of the Commencement Date and Rent shall continue without abatement.

18. CONDEMNATION. Landlord shall inform Tenant of any condemnation proceedings pending against the Property. If any part of the Property is taken by condemnation or is transferred in lieu thereof, and the remainder of the Premises cannot be restored to provide Tenant with suitable Premises to accommodate Tenant's business at the level of business conducted prior to the condemnation, then either the Landlord or the Tenant may terminate this Lease by giving to the other within forty-five (45) days after the date of such taking or transfer a notice of termination. If this Lease is not terminated, Landlord shall restore the remaining Property to a condition that conforms reasonably as possible to the condition of the Premises prior to the taking, and Rent shall be reduced in the proportion that the area of the Premises which is taken or transferred bears to the entire Premises. All sums awarded or paid by the condemning authority shall belong to Landlord; provided that, if Tenant is entitled to recover damages from the condemning authority for lost property or associated property rights, all such damages shall belong to Tenant and Tenant shall look solely to such condemning authority for redress of its claims. In such regard, Landlord shall owe no duty or liability to Tenant for Tenant's claims.

19. INDEMNITY/RELEASE. TENANT RELEASES AND SHALL INDEMNIFY AND HOLD HARMLESS LANDLORD AND ITS AGENTS, PARTNERS, EMPLOYEES, AND CONTRACTORS FROM ALL CLAIMS, ACTIONS, LOSSES, OBLIGATIONS, COSTS AND EXPENSES RESULTING FROM ANY PERSONAL INJURY OR PROPERTY DAMAGE OCCURRING IN OR ABOUT THE PROPERTY OR PREMISES AND CAUSED BY ANY ACT OR OMISSION OF TENANT OR ITS AGENTS, EMPLOYEES, CONTRACTORS OR INVITEES, REGARDLESS IF CAUSED BY THE SOLE, JOINT OR COMPARATIVE NEGLIGENCE OF LANDLORD OR ITS AGENTS OR EMPLOYEES. THE FOREGOING WAIVER AND INDEMNITY IS INTENDED AS A WAIVER OF CLAIMS AGAINST, AND INDEMNITY OF, LANDLORD AND ITS AGENTS AND EMPLOYEES EVEN IF CAUSED BY THE SOLE, JOINT OR COMPARATIVE NEGLIGENCE OF LANDLORD OR ITS AGENTS OR EMPLOYEES.

20. DEFAULT.

    a. Tenant shall be in Default of the Lease for the following: (i) Tenant's failure to pay when due any sum required to be paid hereunder; (ii) Tenant's failure to maintain any insurance required hereunder; (iii) Tenant's uncured breach of any provision of this Lease; (iv) the abandonment or vacating of the Premises by Tenant for ten (10) consecutive days (except as caused by a Casualty referenced above), or Tenant's removing substantially all personal property or trade fixtures from the Premises prior to the end of the Term except under circumstances provided in this Lease; or (v) any financial statement given by Tenant (or any assignee or guarantor) and relied upon by Landlord being materially false or misleading.

    b. Notice and Opportunity to Cure. Except for the payment of Rent, Landlord shall give Tenant notice of any Default, and Tenant shall have ten (10) days from receipt of such notice in which to cure the Default. If any Default is not cured within ten (10) days, Landlord may rely on any and all remedies for a Default pursuant to the Lease or state law.

    c. Remedies. In the event of any Default by Tenant, Landlord may pursue any one or more of the following remedies, in addition to all other legal or equitable rights and remedies: (i) terminate this Lease; (ii) terminate Tenant's right of possession of the Premises; and/or (iii) alter locks and other security devices at the Premises and permanently exclude Tenant therefrom as permitted by state law.

    d. Possession. If Landlord terminates this Lease or Tenant's right of possession, then Tenant shall immediately vacate the Premises, failing which Landlord shall have the right to take possession of the Premises and remove Tenant and all occupants and contents therefrom in accordance with applicable law.

    e. Damages. If Landlord terminates this Lease or Tenant's right of possession, Tenant shall pay to Landlord, at Landlord's option: (i) all Rent accrued to the date of such termination, plus an amount equal to the then present value of the Rent reserved hereunder for the remaining portion of the Term (had the Lease not been terminated, if it has been), less the present value of the then fair rental value of the Premises for such period (such fair rental value in no event to exceed 50% of the then present value of the Rent reserved for such period), plus any other damages incurred by Landlord; a 6% discount factor shall be utilized for present value computations; or (ii) all Rent accrued to the termination date, plus all Rent required to be paid by Tenant during the remainder of the Term (had the Lease not been terminated, if it has been), diminished by any rent received by Landlord

6

from reletting the Premises net of any costs of such reletting (including concessions, moving/storage costs, refurbishing costs and commissions). Tenant shall not be entitled to any excess of rent obtained by reletting over the Rent herein reserved.

    f. **Additional Remedy.** Except for the failure to pay Rent, if Tenant Defaults hereunder, Landlord may remedy such Default and Tenant shall pay Landlord, upon demand, all expenses, plus 15% overhead, incurred by Landlord in connection therewith.

    g. **Abandonment.** If Tenant abandons the Premises and Landlord does not terminate this Lease, then Tenant shall pay to Landlord, as agreed liquidated damages, a sum equal to the Rent, calculated on a per diem basis, for each day of such abandonment.

    h. **Landlord's Default.** If Landlord materially defaults hereunder, Tenant's exclusive remedy shall be an action for damages, Tenant waiving the benefit of any laws granting it a lien upon Landlord's Property and/or upon Rent. Prior to any such action, Tenant shall give Landlord written notice specifying such default, and Landlord shall have thirty (30) days (plus such additional reasonable period as may be required in the exercise by Landlord of diligence) in which to cure any such default. Unless Landlord fails to cure any default after such notice, Tenant shall not have any remedy or cause of action. Upon Landlord's failure to cure the default within a reasonable time, Tenant may terminate this Lease by providing Landlord twenty (20) days advance written notice.

21. **ATTORNEY'S FEES.** The prevailing party in any lawsuit between the parties shall be entitled to recover reasonable attorneys' fees and court costs from the non-prevailing party.

22. **NON-WAIVER.** Neither acceptance of any payment nor failure to complain of any Default shall constitute a waiver of Landlord's rights. Time is of the essence. Waiver by Landlord of any right in connection with any Default shall not constitute a waiver of any right in connection with any subsequent or other default.

23. **LANDLORD'S ASSIGNMENT.** Landlord shall have the right to assign its interest hereunder, whereupon no further liability or obligation shall accrue to Landlord and without the consent of Tenant.

24. **LANDLORD'S LIABILITY.** Landlord shall be liable for obligations under this Lease only with respect to events occurring during its ownership of the Property. In addition, Tenant agrees to look solely to Landlord's interest in the Property for recovery of any judgment against Landlord; Landlord's limited partners, members, officers and directors shall have no personal liability.

25. **SUBORDINATION.** This Lease is subordinate to any mortgage or deed of trust lien which may now or hereafter encumber the Property; provided that, any such mortgagee shall be required to acknowledge this Lease and execute a non-disturbance or attornment agreement in favor of Tenant. Additionally, Tenant shall, upon Landlord's request, deliver to Landlord a certificate, in form acceptable to Landlord, to further evidence such subordination and/or to state such information concerning the Lease as Landlord may require.

26. **HOLDING OVER.** If Tenant retains possession of the Premises after either party terminates the Lease in accordance with Section 2 above, same shall be a wrongful detainer and Tenant will be deemed a holdover tenant with no right to retain possession of the Premises. At Landlord's election, Tenant shall pay Landlord, as rental for such holdover period, an amount equal to 130% of the Rent provided for herein, plus any damages resulting from such holdover, on a monthly

7

basis, or Landlord may seek to regain possession of the Premises from the Tenant by filing a forcible detainer action in the appropriate court.

27. SIGNS. Tenant shall be allowed to place or erect signage on the Property with Landlord's approval, which shall not be unreasonably withheld or delayed, after plans and specifications have been provided to and approved by Landlord.

28. LAWS. Landlord represents and warrants that the Property and Premises are, as of the Commencement Date, in full compliance with all laws and governmental regulations, including without limitations the laws and regulations described herein. Tenant shall comply with all laws and governmental regulations. Without limitation, Tenant shall comply with The Americans with Disabilities Act of 1990, as amended (Public Law 101-336, 42 U.S.C. §12101 *et.seq.*) ("ADA"), Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act (42 U.S.C. § 9601 *et. seq.*), the Resource Conservation and Recovery Act of 1976, (42 U.S.C. §6901 *et. seq.*), the Federal Water Pollution Control Act, 33 U.S.C. §1251 *et. seq.*), and the Clean Air Act, (42 U.S.C. §7401 *et. seq.*), The Texas Architectural Barriers Act (Art.9102, Tex. Rev. Civ. Stat.) ("TABA"), and The Life Safety Code of the City of Tomball Fire Code, as set forth in the Ordinances of the City of Tomball, as amended ("LSC"), including providing equal access to all persons covered by the ADA or TABA with respect to any obligations to retrofit the Premises as required by the ADA or TABA or with respect to any alteration or improvements made to the Premises. Tenant shall be wholly responsible for any accommodations or alterations that are enacted or lawfully imposed after the Commencement Date upon Tenant or the Premises or the Property to accommodate Tenant's employees and invitees. Tenant assumes all such obligations that are enacted or lawfully imposed after the Commencement Date. Landlord shall be obligated for any accommodations or alterations that were enacted or lawfully imposed, and should have been made, prior to the Commencement Date. Tenant further shall indemnify Landlord and its agents, employees, contractors, successors and assigns, from any and all claims, actions, losses, obligations, fines, penalties, costs and expenses associated with Tenant's failure to comply with any applicable laws or governmental regulations (including the ADA, TABA, LSC and Environmental Laws) as required by this Lease.

29. NOTICES. All notices and communications shall be in writing and delivered personally or forwarded by certified or registered mail, addressed to the Landlord's Address or Tenant's Address, as applicable. Notices by delivery shall be effective when delivered, and notices by certified or registered mail shall be effective when posted. Such addresses may be changed by either party giving ten (10) days notice thereof. Notices shall be addressed as follows:

| | |
|---|---|
| To the Lessor: | RETT, LP<br>C/O Tommy G. Tucker<br>8765 Spring Cypress, L#174<br>Spring, Texas 77379<br>Email: ttucker@gracoind.com<br>Fax: (281) 225-8681 |
| To the Lessee: | Northwest Territorial Mint, LLC<br>C/O Ross B. Hansen<br>P.O. Box 2148<br>Auburn, WA 98071-2148<br>Email: ross@nwtmint.com<br>Fax: (253) 735-2210 |

8

30. SUITABILITY WAIVER. EXCEPT FOR LANDLORD'S REPRESENTATION REGARDING THE ABSENCE OF ENVIRONMENTAL CONTAMINATION OR VIOLATION OF ENVIRONMENTAL LAWS CONTAINED HEREIN, LANDLORD HAS MADE NO REPRESENTATIONS OR WARRANTIES TO TENANT AS TO THE CONDITION OF THE PREMISES, EXPRESS OR IMPLIED; LANDLORD DISCLAIMS AND TENANT WAIVES ANY IMPLIED WARRANTY THAT THE PREMISES ARE SUITABLE FOR TENANT'S INTENDED COMMERCIAL PURPOSE. TENANT ACCEPTS THE PREMISES IN ITS "AS IS" CONDITION, "WITH ALL FAULTS". TENANT'S OBLIGATION TO PAY RENT IS NOT DEPENDENT UPON THE CONDITION OF THE PREMISES OR THE PERFORMANCE BY LANDLORD OF ITS OBLIGATIONS; TENANT SHALL CONTINUE TO PAY RENT, WITHOUT ABATEMENT SETOFF OR DEDUCTION, NOTWITHSTANDING ANY BREACH BY LANDLORD OF ITS OBLIGATIONS, EXPRESS OR IMPLIED.

31. WAIVER OF CONSUMER RIGHTS. PURSUANT TO SECTION 17.42(a) OF THE TEXAS BUSINESS AND COMMERCE CODE, LESSEE WAIVES LESSEE'S RIGHTS UNDER THE DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT, SECTION 17.41 ET SEQ., BUSINESS & COMMERCE CODE, A LAW THAT GIVES CONSUMERS SPECIAL RIGHTS AND PROTECTIONS. AFTER CONSULTATION WITH AN ATTORNEY OF LESSEE'S OWN SELECTION, LESSEE VOLUNTARILY CONSENTS TO THIS WAIVER.

32. HAZARDOUS SUBSTANCES: Landlord and Tenant acknowledge that the Premises have been used with Landlord's consent prior to the Commencement Date for the custom minting and manufacturing of coins, medallions and medals by previous tenants and that such activities have involved the use, storage and disposal of regulated "hazardous substances." Landlord has no knowledge as to whether the Property and Premises have been exposed to environmental contamination and has no knowledge of the presence of any hazardous substance in, or under the Premises or Property. Tenant shall not cause or permit any Hazardous Substance (as hereinafter defined) to be used, stored, generated or disposed of on or in the Property except in strict compliance with all applicable Environmental Laws. If the Property becomes contaminated in any manner due to the actions or omissions of Tenant or its agents, employees, contractors or invitees, Tenant shall indemnify, defend (with counsel reasonably acceptable to Landlord) and hold the Landlord harmless from any and all claims, damages, fines, judgments, penalties, costs, liabilities and losses (including, without limitation, a decrease in value of the Property, damages caused by loss or restriction of rentable or usable space or any damages caused by adverse impact on marketing of the space and any and all sums paid for settlement of claims, attorneys' fees, consultant and expert fees) arising during or after the Term and as a result of Tenant's use, storage, generation, disposal or contamination. Notwithstanding the foregoing, Tenant shall not be responsible or liable for any environmental condition or damage to the Property that existed prior to the Commencement Date or was caused by Landlord or any other person or entity. Tenant's indemnification includes, without limitation, any and all costs incurred because of any investigation of the site or any cleanup, removal or restoration mandated by a federal, state or local agency or political subdivision. Without limitation of the foregoing, if Tenant causes or permits the presence of any Hazardous Substance on the Property that results in contamination, Tenant shall promptly, at its sole expense, utilizing a licensed, certified environmental contractor acceptable to Landlord and pursuant to a contract acceptable to Landlord, take any and all necessary actions to return the Property to the condition existing prior to the presence of any such Hazardous Substance on the Property; provided, however, Tenant must obtain Landlord's prior written approval for any such remedial action. The indemnity obligations of Tenant under this Section shall survive the expiration or earlier termination of this Lease Agreement. If Tenant

9

fails to initiate and cause to be completed the clean up, Landlord may cause such condition(s) to be cleaned up, remedied or rectified, and Tenant shall pay to Landlord, upon demand, the amount paid or to be paid by Landlord for such work, plus an additional fifteen percent (15%) for overhead.

As used herein, "Hazardous Substance" means any substance that is toxic, ignitable, reactive or corrosive or that is regulated by any local, state or federal law, and includes any and all material or substances that are defined as "hazardous waste", "extremely hazardous waste", "hazardous substance" or a "hazardous material" pursuant to any such laws and includes, but is not limited to, asbestos, polychlorobiphenyls and petroleum and any fractions thereof. Notwithstanding anything in this Section to the contrary, "Hazardous Substances" shall not include materials commonly used in the ordinary operations of a general office space or light duty industrial space, provided that (1) such materials are used and stored in the Premises in quantities ordinarily used and stored in comparable spaces, (2) such materials are not introduced into the Premises' plumbing systems or are not otherwise released or discharged in the Premises and (3) and such materials are in strict compliance with local, state or federal law.

33. BROKERS. Tenant represents and warrants to Landlord that no broker, agent, commission salesman or other person has represented Tenant in the negotiations for and procurement of this Lease and that no commission, fee or compensation of any kind is due and payable in connection herewith to any other person or entity. Tenant and Landlord hereby acknowledge and agree that the commission payable to the Broker in connection with the Lease is the sole responsibility of Landlord, and that said commission shall be paid by Landlord to the said Broker in accordance with the terms of a separate agreement. Tenant and Landlord also acknowledge that the Broker has acted as agent for Landlord in this transaction and is to be compensated for his services in connection therewith in accordance with a separate agreement with Landlord. Broker has not acted as agent for Tenant in this transaction.

34. MISCELLANEOUS. This Lease shall be construed under Texas law. If any provision of this Lease is illegal, invalid, or unenforceable, the remainder of this Lease shall not be affected thereby, and an enforceable provision as similar as possible to such illegal, invalid or unenforceable provision shall be added. Interest shall accrue on any sum owed by Tenant to Landlord at the rate of 18% per annum from the due date until paid. Except as restricted herein the provisions hereof, shall bind and inure to the benefit of the parties and their heirs, legal representatives, successors and assigns. If more than one party comprise Tenant, such parties shall be jointly and severally liable hereunder. This Lease is the entire agreement between Landlord and Tenant. No prior or contemporaneous promises or representations shall be binding. This Lease shall not be amended or extended except by written instrument signed by Landlord and Tenant.

Executed as of the Effective Date:

**LANDLORD**:

RETT, L.P.

By: TABAD, L.L.C.
its General Partner

By: _____
Title: Member

**TENANT:**

NORTHWEST TERRITORIAL MINT, LLC

By: _____
Name: Ross B. Hansen
Title: CEO

10

**EXHIBIT "A"**

PREMISES

Case 16-11767-CMA    Doc 439-2    Filed 06/23/16    Ent. 06/23/16 11:52:41    Pg. 16 of 18



