Michael J. Gearin, WSBA # 20982
David C. Neu, WSBA # 33143
Brian T. Peterson, WSBA # 42088
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
(206) 623-7580

Honorable Christopher M. Alston
Chapter 11
Hearing Location: Seattle, Rm. 7206
**SUBJECT TO COURT APPROVAL:**
Hearing Date: Friday, January 26, 2018
Hearing Time: 9:30 a.m.
Response Date: January 25, 2018 at 5:00 PM (PST)

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| In re: <br><br> NORTHWEST TERRITORIAL MINT, LLC, <br><br> Debtor. | Case No. 16-11767-CMA <br><br> MOTION FOR ORDER AUTHORIZING THE AUCTION AND SALE OF THE DEBTOR'S EQUIPMENT, DIES, TOOLING, ARCHIVES, AND INVENTORY FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES |

### I.    INTRODUCTION

Mark Calvert (the "Trustee"), Chapter 11 Trustee for Northwest Territorial Mint, LLC ("NWTM" or the "Debtor"), submits this Motion requesting approval of the sale by auction of the Debtor's physical assets such as equipment, dies, tooling, archives, and inventory, free and clear of all liens, claims, and encumbrances. The Trustee has worked for more than 20 months to reorganize the business of NWTM and preserve its value as a going concern. Unfortunately, the business has not been profitable since the Spring of 2017 and the Trustee has run out of cash to continue to operate the business. The Trustee closed the business on December 29, 2017 after working for many months to sell the business as a going concern. The Trustee now needs to liquidate the physical assets of the bankruptcy estate, worth several million dollars, and eliminate overhead expenses including salaries and occupancy costs necessary to accomplish the liquidation. The Trustee believes the most effective and beneficial way to accomplish this goal is to conduct a public auction of the

MOTION FOR ORDER APPROVING SALE OF
DEBTOR'S ASSETS AT AUCTION - 1

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

500977885 v7

Case 16-11767-CMA    Doc 1350    Filed 01/19/18    Ent. 01/19/18 18:25:03    Pg. 1 of 13

assets using James G. Murphy Inc. ("Murphy") as auctioneer. Murphy has been previously appointed by the Court as auctioneer. This Motion requests authority for Murphy to conduct the auction and sale of the physical assets of the estate. The Motion is supported by the Declaration of Mark Calvert filed concurrently herewith. In support of this Motion, the Trustee respectfully represents as follows:

## II.    BACKGROUND

### A.  History of the Case and Need for Sale by Auction.

On April 1, 2016, the Debtor commenced this case by filing a voluntary petition under chapter 11 of the United States Bankruptcy Code. On April 11, 2016, the Court appointed Mark Calvert as chapter 11 Trustee. See Dkt. No. 51.

Upon his appointment, the Trustee took control over the business operations of the Debtor and initiated his investigation of the financial affairs of the bankruptcy estate. The Debtor's custom minting operations, which were based out of NWTM's Dayton, Nevada, facility, were the core operations of the Debtor. The Trustee's goal in this case had been to maximize the recovery of creditors, by improving sales and profitability of the Debtor's custom-minting business and ultimately proposing a plan of reorganization. In the course of his management of the Debtor's business, the Trustee faced significant challenges. The Trustee was forced to implement multiple employee layoffs, and streamline the Debtor's business operations. The Trustee faced constant pressures to manage cash resources in order to stabilize the Debtor's business operations. In January 2017 the Trustee retained a marketing and sales oriented CEO to grow revenue to achieve profitability. In the Spring of 2017, the business of the estate suffered unexpected downturn in revenue and thus incurred operating losses which handicapped the Trustee's ability to reorganize the business on terms which would allow emergence from bankruptcy as a going concern.

In 2017, the Debtor's business suffered marginal profits or net operating losses during each of the last eleven months of the year and suffered an operating loss of more than half a million dollars for calendar year 2017.

MOTION FOR ORDER APPROVING SALE OF
DEBTOR'S ASSETS AT AUCTION - 2

500977885 v7

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Beginning in May 2017, the Trustee engaged in marketing efforts to sell the business. The trustee contacted in excess of 60 potential buyers, 10 of which toured the plant and two of which made offers that were not acceptable and approximated liquidation value, and one made an offer that was acceptable but ultimately did not fund. In November, 2017 buyer executed an APA and a escrow agreement to purchase the business, but the funds required to close the transaction did not materialize. Due to inadequate cash resources, the Trustee was forced to close the business on December 29, 2017, after working for many months to sell the business as a going concern.

The majority of the Debtor's assets constitute minting equipment, dies, inventory and an archive of historical and reference materials. The Debtor's assets are primarily housed in the Debtor's Dayton, Nevada facility. Certain valuable equipment of the Debtor is located in Green Bay, Wisconsin, but will be moved from Green Bay to Dayton if the Court approves the auction. It is imperative that the Trustee be able to conduct a sale of the Debtor's assets expeditiously in order to reduce administrative expenses, and in order to be able to move out of its facility in Dayton. It would not be practical to move all the assets at the Dayton facility to a separate facility pending the auction. Some of the equipment is very large, heavy machinery, which would be costly to house in a separate facility.

On March 1, 2017, the Court entered an *Ex Parte* Order Authorizing Employment of James G. Murphy Inc. as Auctioneer for Trustee. *See* Dkt. No. 926. The order, which was sought in connection with the Trustee's efforts to sell certain surplus equipment, provides that the Trustee is authorized to employ Murphy as auctioneer to appraise the Debtor's equipment and to conduct an auction on such terms and conditions as the Court may direct in a further order. In March 2017, Murphy appraised the Debtor's surplus equipment and non-surplus equipment in the Debtor's Dayton facility.

In June, 2017, the Trustee obtained the Court's approval of the sale of surplus and scrap equipment. *See* Dkt. Nos. 1028, 1082. Subsequently, the Trustee did liquidate a few items of surplus and scrap equipment through an online auction, but most of the surplus and scrap equipment remains

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

in the possession of the Trustee. The Trustee now wishes to sell substantially all of the Debtor's remaining equipment and other assets at auction. The Trustee has reached an agreement with Murphy to sell the Debtor's assets at auction under terms which compensate Murphy with a 10% buyer's premium and reimbursement for expenses incurred in connection with the sale. A copy of the terms of Murphy's engagement agreement is attached to the Declaration of Mark Calvert as Exhibit A. Murphy has informed the Trustee that he will need to market the auction for a period of two months prior to the conduct of the auction and that a buyer will need at least twenty days following the auction to remove the assets from the company's business premises.

The Trustee continues to entertain offers from prospective purchasers for certain of the estate's assets. Under the terms of the engagement agreement, the Trustee may pull property from the auction before February 1, 2018 and sell it independently. The Trustee may pull property from the auction after February 1, 2018 only in connection with a sale of substantially all of the Debtor's property. In that scenario, the James G. Murphy will be entitled to a 5% commission on the property pulled from the auction by the Trustee after February 1, 2018.

**B. Alleged Interests in the Property to Be Sold**

All of the assets that the Trustee intends to include in the auction are property of the bankruptcy estate. Two creditors have asserted liens against certain of the assets of the estate, the validity of which liens are disputed by the Trustee.[1] In addition, among the assets the Trustee wishes to include in the auction is surplus equipment that is subject to an unperformed purchase agreement with American Relief Mint ("ARM") which is the subject of a pending adversary proceeding. In April of 2017, the Trustee obtained approval of the sale of certain surplus equipment to ARM for a total purchase price of $190,003.00. Dkt. No. 981. ARM paid the Trustee a $14,500

---

[1] In June, 2017, the Court approved the Trustee's agreement with Prestige Capital Corporation under which the Trustee factored receivables with Prestige. Prestige holds a security interest in accounts receivable and inventory of the debtor under the factoring agreement. Prestige is in the process of collecting factored receivables and applying the proceeds of those collections to the amounts due under the factoring agreement. Prestige has a considerable equity cushion in the accounts receivable and will be paid in full from the proceeds of accounts receivable before the auction takes place.

MOTION FOR ORDER APPROVING SALE OF
DEBTOR'S ASSETS AT AUCTION - 4

500977885 v7

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

deposit, but failed to pay the balance of the purchase price. The Trustee filed an adversary proceeding, Case No. 17-01127-CMA, to recover the balance of the purchase price from ARM which remains pending before this Court. The Trustee intends to sell the surplus equipment that is the subject of the dispute with ARM in order to mitigate his damages, reserving all rights against ARM in the adversary proceeding.

The Court has expressed reservation of any determination as to whether Medallic Art Company LP ("MALP"), a predecessor in interest to Medallic Art Company, LLC ("MACLLC") may hold an interest in certain of the assets under the Trustee's control. But MALP does not hold any interest in the assets held by the Trustee because MALP transferred all of its assets to substantively consolidated debtor Medallic Art Company LLC in late 2009 and thereafter concluded its business affairs.

Both owners of MACLLC and MALP have testified in this case that the assets of MALP were transferred to and held by MACLLC.[2] For instance, Mr. Ross Hansen testified that it was his "intention and understanding that MACLLC inherited, succeeded to or obtained all right, title and interest in the purchased assets as well as the Leasehold from MALP." Adv. Pro. Dkt. No. 24, ¶ 13. Richard Bressler, co-owner of MACLLC and MALP, testified to the same. *See* Adv. Pro. Dkt. No. 28, ¶ 5-9. The attorney for NWTM Frederick Mendoza, who participated in the sale and formation of MALP and MACLLC, also testified that MACLLC succeeded to all right, title, and interest in the assets purchased from Medallic LTD. Adv. Pro. Dkt. No. 29, ¶ 12. Bressler and Hansen as the owners of both MALP and MACLLC are the parties who would know whether the assets of MALP had been transferred to MACLLC.  MACLLC alleged in its complaint in the adversary proceeding that "MACLLC is the successor in interest to MALP and now owns the assets originally purchased from Medallic Art Company Ltd. . . ."  Adv. Pro. Dkt. No. 1, ¶ 10.[3] As all of

---

[2] The owners of MALP and Medallic Art Company LLC are the same:  Richard Bressler and Ross Hansen.

[3] The Court would also recall that MACLLC argued that it was entitled to royalty and lease payments from NWTM based on MACLLC's lease of these same personal property assets to NWTM.

MOTION FOR ORDER APPROVING SALE OF
DEBTOR'S ASSETS AT AUCTION - 5

500977885 v7

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

the assets acquired from Medallic Ltd. (the entity controlled by the Hoffs) by MALP were transferred to MACLLC, those assets are all now part of the substantively consolidated bankruptcy estate.

The Hoffs allege that they hold a security interest in certain personal property relating to the Dayton Lease. A copy of the Hoff Security Agreement is attached to the Declaration of Connie Hoff Dkt. 1330, Ex. D. The Trustee disputes that the Hoffs hold a perfected security interest in the assets identified in the Security Agreement. Medallic Art Limited Partnership ("MALP") executed the Security Agreement on July 10, 2009 and it was perfected on the same day. The initial financing statement expired after five years, *i.e.*, July 10, 2014. The Hoffs did not file a continuation statement prior to the expiration of the initial UCC-1, causing their security interest to lapse.

Following the filing of this bankruptcy case, the Hoffs realized their security interest had become unperfected and attempted to perfect it with a new financing statement. The Hoffs attempted to file a new UCC-1 financing statement on April 21, 2016. The Hoffs further filed an amendment to their April 21, 2016 financing statement on May 17, 2017, which purported to add Medallic Art Company, LLC ("MACLLC") as a debtor. MACLLC is the successor in interest to the defunct MALP, and it was substantively consolidated with the Debtor *nunc pro tunc* as of April 1, 2016. Thus, the Hoffs' May 17, 2017 financing statement amendment was filed post-petition as to MACLLC.

The Trustee assumed the Dayton Lease pursuant to the Order Granting Trustee's Motion to Assume Lease for Dayton Facility (Dkt. No. 1018) (the "Assumption Order"). The Court conducted an evidentiary hearing on whether there are defaults that must be cured by the Trustee in connection with the assumption of the Dayton Lease. The Court issued a written ruling addressing cure obligations of the Trustee, but did not rule on whether the Security Agreement is enforceable by the Hoffs against the bankruptcy estate or whether the Security Agreement operates as a perfected lien on the assets of the estate. The Hoff's alleged security interest in the estate's assets is subject to a

MOTION FOR ORDER APPROVING SALE OF
DEBTOR'S ASSETS AT AUCTION - 6

500977885 v7

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

bona fide dispute. Even assuming that the security interest was valid, its perfection after lapse was barred by the automatic stay rendering the security interest avoidable.

Pan American Silver Corporation ("Pan American") has asserted a secured claim against certain property of the Debtor that the Trustee intends to sell. Pan American delivered silver to the Debtor so that the Debtor could make silver products. On April 4, 2005, Pan American entered into a "Consignment/Security Agreement," a copy of which is attached to Pan American's Proof of Claim No. 2829. The consignment agreement specifically provides that the Debtor (the "Consignee") shall hold "[a]ll right, title, and interest in and to the designs struck on both sides of the Coins, the designs of the Bars (the 'Designs') and all dies and tooling used to make the Coins and Bars, and all copyrights, trademarks, and other intellectual property rights embodied or incorporated in the Designs, in the Products and/or in the dies and tooling used to make the Coins and Bars."

Pan American asserts that it holds a security interest in certain equipment that the Trustee intends to sell. The Trustee has identified only a few items of equipment at the Dayton Facility that are described in Pan American's proof of claim as being subject to its alleged security interest. The Trustee disputes that Pan American holds a valid perfected security interest in the equipment. The Security Agreement contains no collateral description that reasonably identifies what is described. Instead, it states that Pan American's collateral is identified in "Appendix A," which is not attached to the agreement. Moreover, to the extent Pan American's claim is secured, it is not perfected. Pan American's 2005 financing statement has lapsed, and its 2015 financing statement fails to sufficiently describe the collateral.

All of the assets that the Trustee intends to include in the auction are property of the bankruptcy estate. While two parties have asserted lien interests in the property that the Trustee proposes to auction, those liens are the subject of bona fide dispute and for the reasons more fully expressed below, do not provide an impediment to the Trustee's ability to conduct the auction and liquidate the assets of the estate.

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## III. EVIDENCE RELIED UPON

This Motion relies on the arguments set forth herein, the Declaration of Trustee Mark Calvert filed in support of the Motion, the pleadings and records on file in this case, and the arguments of counsel, if any.

## IV. ARGUMENT

The Court should authorize the Trustee to sell, at an auction conducted by Murphy, the Debtor's equipment, inventory, and other tangible personal property, free and clear of liens, claims, interests, and encumbrances. The Court should further authorize that Murphy conduct such auction according to the terms described in its engagement agreement. Section 363(b) of the Bankruptcy Code provides that the Trustee is authorized to sell assets outside the ordinary course of its business. While the text of the Bankruptcy Code does not provide the standard for determining when it is a appropriate for a court to authorize the sale of property of the estate, courts often approve a proposed sale if such sale is based upon the sound business judgment of the debtor. *See, e.g.*, *Meyers v. Martin (In re Martin)*, 9 F.3d 389, 395 (3d Cir. 1996); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983). Here, the Trustee's desire to sell the Debtor's assets at auction is based on his sound business judgment and is in the best interests of the estate.

### A. The Proposed Sale Meets the Requirements for a Sale Under 363(b)

Here, a sound business reason exists for the proposed sale. Namely, the objective of the Trustee's proposed sale is to maximize the proceeds of such sale for the benefit of the bankruptcy estate. *See, e.g., Four B. Corp. v. Food Barn Stores, Inc.(In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (stating that in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Res, Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("'It is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the [Debtor's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.'") (alteration in original) (quoting *In re Atlanta Packaging Products, Inc.*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

MOTION FOR ORDER APPROVING SALE OF
DEBTOR'S ASSETS AT AUCTION - 8

500977885 v7

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

An immediate sale by auction of the Debtor's equipment and inventory is critical. Further delay will result in additional administrative expense for the estate due to additional rents which the Trustee will pay the Dayton landlord and employees who will need to stay on staff to preserve the property of the estate until the assets can be liquidated.

The sale of assets outside of the ordinary course of business may be conducted by public sale, or a private sale, under the appropriate circumstances. Here, the Trustee has compared the expressions of interest he has received for the equipment to the appraisal that James G. Murphy has conducted. He has determined, as is within his discretion, that it is preferable to hold a public auction for the property. *See In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) ("Unlike judicial sales under the former Bankruptcy Act, the sale of estate property under the Bankruptcy Code is conducted by a trustee, who has ample discretion . . . to conduct public or private sales of estate property.") (internal quotations and citation omitted). An auction for the property is also preferable because the estate as a whole is suffering from a cash shortfall and it is imperative that the assets be sold expeditiously. The Trustee believes that a sale by auction is in the best interests of the estate. To the extent the Trustee is presented with more beneficial offers to purchase the substantially all of the assets prior to the auction, the Trustee reserves the right to retract assets from the auction and present such purchase offers to the Court for approval.

**B. Good Cause Exists to Waive the Stay Under Fed. R. Bankr. P. 6004(h)**

Pursuant to Fed. R. Bankr. P. 6004(h), any order authorizing the use, sale, or lease of property other than cash collateral is stayed for 14 days, unless the court orders otherwise. As noted herein, given the liquidity concerns facing the Debtor's business, and the necessity that this auction be conducted as quickly as possible, cause exists to waive the stay and permit the Trustee to quickly conduct the auction as soon after entry of an order approving this Motion as the Trustee determines is prudent.

**C. The Proposed Sale Satisfies the Requirements of 11 U.S.C. § 363(f)**

The Trustee requests that the sale by auction be free and clear of liens, interests, and encumbrances. Pursuant to 11 U.S.C. § 363(f), a Trustee may sell property of the estate under

MOTION FOR ORDER APPROVING SALE OF
DEBTOR'S ASSETS AT AUCTION - 9

500977885 v7

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

11 U.S.C. § 363(b) free and clear of any interest in such property of any entity other than the estate only if (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which the property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; *or* (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f) (emphasis added). Here, there are multiple bases upon which the Court should authorize the Trustee to conduct the auction of the Debtor's assets "free and clear."

The Trustee has provided notice of this motion to the entire mailing matrix, so that if any entity claims a lien on the assets being sold, they will have an opportunity to object. If no such creditor objects, the sale free and clear will be permitted under 11 U.S.C. § 363(f)(2). Moreover, even if alleged secured creditors object to the sale, the sale free and clear is permissible under 11 U.S.C. § 363(f)(5) because there are legal and equitable proceedings in which a lienholder could be compelled to accept a money satisfaction of such lien, including the disposition of collateral under the default remedies provided in Washington's Uniform Commercial Code (Chapter 62A.9A RCW) or in a receivership proceeding pursuant to RCW 7.60.260.

In addition, the Motion satisfies the requirements of 11 U.S.C. § 363(f) because the alleged lien interests in the property (asserted by the Hoffs and Pan American) are subject to a bona fide dispute by the Trustee. With respect to Pan American, the collateral description contained in its purported security agreement is inadequate and fails to comply with Washington law governing the requirements of security agreements. Pursuant to RCW 62A.9A-203, Pan American's security agreement is only enforceable against the Debtor with respect to the collateral if the Debtor authenticated a security agreement "that provides a description of the collateral." According to RCW 62A.9A-108, a security agreement's description of collateral is sufficient only if "reasonably identifies" the secured party's collateral. The collateral description refers to a nonexistent "Appendix

MOTION FOR ORDER APPROVING SALE OF
DEBTOR'S ASSETS AT AUCTION - 10

500977885 v7

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

A." This certainly is not one of the examples of a reasonable identification set forth in RCW 62A.9A-108(b). If fact, it does not constitute a description of the collateral at all.

Even if the security agreement contained an adequate collateral description (which it does not), Pan American's security agreement is not properly perfected and therefore subject to avoidance by the Trustee as a hypothetical lien creditor pursuant to 11 U.S.C. § 544(b). While Pan American filed a UCC-1 financing statement in 2005, it lapsed and is no longer effective upon the expiration of five years. RCW 62A.9A-515(c). Pan American later filed a UCC-1 financing statement in 2015. However, that financing statement contains an inadequate description of the collateral because it neither contains (1) a description of the collateral that satisfies RCW 62A.9A-108, nor (2) "[a]n indication that the financing statement covers all assets or all personal property." RCW 62A.9A-504. Again, the 2015 financing statement referenced the same nonexistent Appendix A referenced in the security agreement. Thus, Pan American's asserted lien, even if valid, was not properly perfected and therefore is voidable.

The other alleged secured creditor is the Hoffs. Like the alleged security interest of Pan American, the Hoffs' alleged security interest is subject to a bona fide dispute because it is subject to avoidance. The Trustee disputes that the Hoffs hold a perfected security interest in the assets listed on Exhibit "B" to the Security Agreement. Medallic Art Limited Partnership ("MALP") executed the Security Agreement on July 10, 2009. On July 10, 2009, the Hoffs' attorney filed a UCC-1 financing statement with the State of Nevada. The initial financing statement expired after five years, *i.e.*, July 10, 2014. The Hoffs did not file a continuation statement prior to the expiration of the initial UCC-1, causing their security interest to lapse and become unperfected.

Following the filing of this bankruptcy case, the Hoffs realized their security interest had become unperfected and attempted to perfect it with a new financing statement. The Hoffs attempted to file a new UCC-1 financing statement on April 21, 2016. The Hoffs further filed an amendment to their April 21, 2016 financing statement on May 17, 2017, which purported to add Medallic Art Company, LLC ("MACLLC") as a debtor. MACLLC is the successor in interest to the

MOTION FOR ORDER APPROVING SALE OF
DEBTOR'S ASSETS AT AUCTION - 11

500977885 v7

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

defunct MALP, and it was substantively consolidated with the Debtor *nunc pro tunc* as of April 1, 2016. Thus, the Hoffs' May 17, 2017 financing statement amendment was filed post-petition as to MACLLC. The hypothetical lien creditor referenced in section 544 of the Bankruptcy Code is one holding a lien as of the date of the commencement of the case. Thus, any lien of the Hoffs is subject to avoidance under 11 U.S.C. § 544, and therefore is subject to a bona fide dispute.

Furthermore, section 363(f) of the Bankruptcy Code is satisfied because any lienholder also will be adequately protected by having its liens, if any, attach to the proceeds of the sale in the same order of priority, with the same validity, force, and effect that such creditor had prior to such sale, subject to any claims and defenses that the Trustee and the Debtor's bankruptcy estate may possess with respect thereto. For all of these reasons, the proposed sale free and clear of liens should be approved.

## V.    CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court enter an order in the form proposed by the Trustee authorizing his sale by auction of the Debtor's equipment, inventory, dies, tooling, and archives, free and clear of liens, claims, interests, and encumbrances. The Trustee further requests that the terms of James G. Murphy's engagement with respect to the auction be approved. In light of the decline in sales and severe cash shortages faced by the Trustee, approval of the sale by auction as quickly as possible is the only means by which this estate will generate any meaningful recovery.

DATED this 19th day of January, 2018.


K&L GATES LLP


By  /s/ *Michael J. Gearin*
    Michael J. Gearin, WSBA #20982
    David C. Neu, WSBA #33143
    Brian T. Peterson, WSBA #42088
    Attorneys for Mark Calvert, Chapter 11 Trustee

MOTION FOR ORDER APPROVING SALE OF
DEBTOR'S ASSETS AT AUCTION - 12

500977885 v7

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## **CERTIFICATE OF SERVICE**

The undersigned declares as follows:

That she is a Paralegal in the law firm of K&L Gates LLP, and on January 19, 2018, she caused the foregoing document to be filed electronically through the CM/ECF system which caused Registered Participants to be served by electronic means, as fully reflected on the Notice of Electronic Filing.

Also on January 19, 2018, she caused the foregoing document to be deposited in the U.S. mail to the Party at the address listed below:

Northwest Territorial Mint LLC
c/o Ross Hansen, Member
P.O. Box 2148
Auburn, WA  98071-2148

I declare under penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct.

Executed on the 19th day of January, 2018 at Seattle, Washington.

*/s/ Denise A. Lentz*
Denise A. Lentz

MOTION FOR ORDER APPROVING SALE OF
DEBTOR'S ASSETS AT AUCTION - 13

500977885 v7

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022