Alan D. Smith, WSBA No. 24964
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

The Honorable Christopher M. Alston
Chapter 11
Hearing Friday, February 9, 2018, 9:30 a.m.
Seattle, Courtroom 7206
Response due Monday, February 5, 2018

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

In re:

NORTHWEST TERRITORIAL MINT, LLC,

Debtor.

Case No. 16-11767-CMA
(Jointly Administered)

HOFF SUPPLEMENTAL OPPOSITION TO TRUSTEE'S MOTION FOR AUCTION SALE

Robert and Connie Hoff (the "*Hoffs*"), landlords of the Dayton Premises, submit this Supplemental Opposition to the Trustee's *Motion for Order Authorizing the Auction and Sale of the Debtor's Equipment, etc.*, Dkt. No. 1350 (the "*Auction Motion*"). This opposition supplements but for the most part effectively supersedes the limited opposition the Hoffs filed herein on January 25, 2018, Dkt. No. 1375 (the "*Original Opposition*"). Filed concurrently herewith is the Declaration of Connie Hoff in Opposition to Trustee's Motion for Auction Sale ("*Hoff Declaration*").

The Court's ruling on the Hoffs' *Motion for Relief from Stay and for Related Relief*, Dkt. No. 1328 (the "*Stay Motion*") has clarified some aspects of the situation relating to the

HOFF SUPPLEMENTAL OPPOSITION TO AUCTION MOTION – 1

138354237.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Case 16-11767-CMA    Doc 1399    Filed 02/05/18    Ent. 02/05/18 13:09:44    Pg. 1 of 9

Dayton Premises, applicable to the Auction Motion as well. This Supplemental Opposition attempts to take into account that ruling.[1]

## I. Any Auction That Takes Place Must Be Subject to Certain Conditions

If the Trustee continues to be unsuccessful in putting together a going concern sale, his only other alternative is to conduct some sort of liquidation sale. The Hoffs therefore do not oppose the concept of an auction sale of estate assets as proposed in the Auction Motion, but they have a number of concerns respecting the sale and the conditions that must be imposed upon the sale.

First, in addition to the adequate protection lien and superpriority status the Court granted the Hoffs in the ruling on the Stay Motion, the Hoffs have a security interest in certain equipment and other assets they originally owned and sold to Ross Hansen back in 2009. See Section II of this Supplemental Opposition. Any proceeds from the auction sale, net only of the auctioneer's fee and other direct third party expenses of sale plus payments made to the Hoffs as landlords, must be held in a separate interest bearing account pending resolution of the Hoffs' and others' secured claims.

Second, there is a significant issue over who owns many of the personal property assets at the Premises. While there may be additional estate property acquired subsequently, most of the assets (the "*Medallic Assets*") were originally sold to Ross Hansen in 2009 and almost immediately assigned to Medallic Art Limited Partnership ("*MALP*"). As set forth in Section IV of this Supplemental Opposition, the Hoffs believe MALP is the owner of the

---

[1] However, when this Supplemental Opposition was prepared an order had not yet been entered on the Stay Motion. Thus, while it is quite possible the Hoffs have already obtained some of the protections requested in this Supplemental Opposition, they are attempting to clarify those protections here in order to ensure their ability to protect their interests during the auction related activities.

HOFF SUPPLEMENTAL OPPOSITION TO AUCTION MOTION– 2

138354237.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Medallic Assets. Under a long line of Ninth Circuit and B.A.P. authority, the Court cannot authorize the sale of the Medallic Assets absent a finding that those assets are indeed property of the estate. See Section III of this Supplemental Opposition. Accordingly, the auction sale should not include any of the Medallic Assets unless the Court holds an evidentiary hearing prior to the sale and finds the Medallic Assets are in fact property of the estate. Should the Court disagree and authorize a sale of the Medallic assets while they are still subject to an ownership dispute, all proceeds from the auction sale, net only of the auctioneer's fee and other direct third party expenses of sale plus payments made to the Hoffs as landlords, must be held in a separate interest bearing account pending resolution of the ownership issues.

Third, if an auction is conducted on the Premises, the Hoffs must be informed of any auction activity and they or their representatives must be allowed to observe and comment on all such activity, including breakdown and removal of the equipment for transport, and including rigging and removal of the equipment. There are millions of dollars of electrical infrastructure in the building, owned by the Hoffs, and the chemicals used in the business include such things as cyanide. The Trustee has had problems with an owner of another property leased by the estate, in Tomball, Texas. The Hoffs want to avoid any such problems here.

Finally, the Hoffs are concerned over insurance coverage regarding harms that could occur during the auction and preparation and removal. Even with an adequate protection lien and superpriority, the Hoffs are concerned over the estate's ability to respond to the damages that could be incurred in the auction process. Therefore, the Hoffs request full disclosure by the Trustee of any such insurance and an opportunity to be heard on shortened notice by this Court if they believe the insurance is not adequate.

HOFF SUPPLEMENTAL OPPOSITION TO AUCTION MOTION– 3

138354237.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Case 16-11767-CMA    Doc 1399    Filed 02/05/18    Ent. 02/05/18 13:09:44    Pg. 3 of 9

## II. **The Hoffs Have a Security Interest in the Equipment and Other Assets They Sold to Hansen**

As was argued but never decided[2] in connection with the dispute between the Hoffs and the Trustee over the Trustee's cure obligations, the Hoffs contend they have a perfected security interest in the assets sold to Hansen. That is in addition to, and separate and apart from, their contention (rejected in the Cure Order, defined below) that the Security Agreement, entered into at the same time as the Dayton Lease, was assumed as part of the lease assumption.

MALP signed the Security Agreement, Hoff Declaration, ¶ 7 and Exhibit C. In April 2016, the Hoffs filed a UCC-1 financing statement against MALP. *Id.*, ¶ 8 and Exhibit D. MALP is not and never has been in bankruptcy. If MALP owns the Medallic Assets, the Hoffs' security interest in the assets is without question valid, perfected, and enforceable.

In May 2016 (erroneously referenced twice as May 2017 in the Trustee's Auction Motion) the Hoffs filed an amendment to the financing statement adding Hansen and MACLLC as debtors. *Id.* Even if MACLLC is the owner of the assets, the Hoffs have a perfected interest in the Medallic Assets. MACLLC was subsequently substantively consolidated into the Debtor Northwest Territorial Mint LLC ("**NWTM**"), *nunc pro tunc* to the NWTM filing date. The Trustee argues that the financing statement was filed "postpetition" – even though it was filed a year before MACLLC was in bankruptcy and long before the Trustee challenged MACLLC's status as a separate entity. Such a *nunc pro tunc* ruling cannot possibly retrospectively terminate a secured creditor's rights, and the

---

[2] *Memorandum Decision on Trustee's Motion to Assume Dayton, Nevada Lease*, Dkt. No. 1185 *("**Cure Order**")*, pp. 21-23. The Court ruled the security agreement was not required to be assumed as part of the lease assumption; the Court understandably did not reach the separate question of whether the Hoffs had a perfected security interest all along.

HOFF SUPPLEMENTAL OPPOSITION TO AUCTION MOTION– 4

138354237.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Trustee provides no authority whatsoever supporting any such extraordinary and unfair result.

*Collier's on Bankruptcy* puts it this way:

> Substantive consolidation does not affect a validly perfected lien. If consolidation would affect a lien, such as where a creditor has a lien on the stock of a solvent subsidiary that would be consolidated into the parent corporation, consolidation should not be ordered or some alternative protection should be implemented.

2 *Collier's*, ¶ 105.09[3] at 105-11. *In re Gulfco Invest. Corp.*, 593 F.2d 921 (10th Cir. 1979) (denying consolidation where subsidiary stock was pledged) ; *In re F.A. Potts & Co.*, 23 B.R. 569 (Bankr., E.D. Pa. 1982) (ordering substantive consolidation only after finding secured creditors' position was perfected).

The result is the same in analogous situations. *See, e.g.*, *In re Lanning Equipment Corp.*, 346 F. Supp. 1068 (N.D. Ohio 1972) (purported *nunc pro tunc* effect of divorce decree could not trump tax lien perfected in the interim); *In re Kitchin Equipment Company of Virginia, Inc.*, 960 F,2d 1242 (4th Cir. 1992) (reformation could not be used to trump intervening status of trustee as lien creditor).

The substantive consolidation issue was tried in Adversary Proceeding 16-01196-CMA. The only parties to that adversary proceeding were MACLLC and the Trustee. While the Hoffs were aware of the dispute between MACLLC and the Trustee,[3] they were never parties to the adversary proceeding and were not invited to litigate substantive consolidation or other issues in that proceeding. Even if substantive consolidation could in some circumstances result in such lien destruction (which it should not), non-parties to the proceeding cannot be bound by the result, particularly such a surprising and unfair result.

---

[3] Ms. Hoff gave a declaration that was filed in the adversary proceeding, Adv. Dkt. No. 17, and undersigned counsel for the Hoffs appeared at one hearing in which assumption of the lease was at issue in the main case as well as in the adversary proceeding. Adv. Dkt. Nos. 81, 85.

HOFF SUPPLEMENTAL OPPOSITION TO AUCTION MOTION– 5

138354237.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Case 16-11767-CMA    Doc 1399    Filed 02/05/18    Ent. 02/05/18 13:09:44    Pg. 5 of 9

Accordingly, the Hoffs have a perfected security interest in the Medallic Assets. Nevertheless, the Hoffs acknowledge there is a bona fide dispute over their lien Accordingly, if the Medallic Assets are property of the estate (see Section III below), the Hoffs do not contest the Trustee's ability to sell the Medallic Assets free and clear of the Hoff's lien, with all net proceeds held for distribution only after resolution of the Hoffs' and others' lien status.

## III. The Trustee May Not Sell the Medallic Assets Absent Proof of Estate Ownership

Section 363 allows for sale of estate property free and clear of disputed interests of others, but Section 363 does not allow for sale of estate property when it is the <u>estate's</u> interest that is in dispute. *See, e.g.*, *In re Rodeo Canon Development Corp.*, 362 F.3d 603, 608 (9th Cir. 2004), *opinion withdrawn pursuant to stipulation*, 2005 WL 663421 (9th Cir. 2005) ("A bankruptcy court may not allow the sale of property as 'property of the estate' without first determining whether the debtor in fact owned the property.") ; *In re Silver Beach, LLC*, 2009 WL 7809002 (9th Cir. B.A.P. 2009) ("Implicit within the statutory grant of authority to sell property free and clear under section 363(b), is the requirement that the estate actually have an interest in the property to be sold. For that reason, a bankruptcy court may not allow the sale of property as 'property of the estate' without first determining whether the debtor in fact owns the property."); *In re Clark*, 266 B.R. 163, 172 (9th Cir. B.A.P. 2001) ("The threshold question, is [the property] still property of the estate, must first be decided" before it can be sold free and clear under § 363(f)).

The Court therefore should not authorize a sale of the Medallic Assets without first determining whether they are property of the estate. For the reasons set forth in the next section, the Hoffs contend the Medallic Assets are property of MALP, not of this estate.

HOFF SUPPLEMENTAL OPPOSITION TO AUCTION MOTION– 6

138354237.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## IV. MALP is the Owner of the Medallic Assets

In the Auction Motion, the Trustee argues that a transfer of the Medallic Assets from MALP to MACLLC or to NWTM must somehow have occurred, though he is unable to point to any documentation supporting that claim. In the Asset Purchase and Sale Agreement ("*APA*") whereby the Hoffs originally sold the Medallic Assets, Ross Hansen was the nominal purchaser, but the parties were concurrently negotiating an amendment to the Dayton Lease and related documents whereby MALP stepped into Hansen's shoes. Hoff Declaration, ¶ 4 and Exhibit A. Thus, MALP, not Hansen, signed the Security Agreement and the Bill of Sale. *Id*., ¶¶ 4, 6, 7 and Exhibits B and C. That portion of the paperwork is clear. But there do not appear to be any documents evidencing a transfer of title of the assets from MALP to MACLLC or to NWTM.

No one disputes that at the time of the sale by the Hoffs the Medallic Assets were worth several million dollars. The purchase price under the APA was $5,000,000, though that number included other assets such as work in process. But the parties allocated $2,000,000 of the purchase price to the Medallic Assets, and agreed the security interest granted the Hoffs would be <u>capped</u> at $2,000,000. *Id*., ¶ 6 and Exhibits B, D. These were valuable assets – they were not likely to be handed over to another entity without any attempt whatsoever to document the transfer.

Nevada law applies to these transactions. APA, § 20.5.[4] Under Nevada law, such assets ordinarily cannot be transferred absent an agreement in writing. Nevada Revised Statutes (N.R.S.) 104.2201(1): "Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or

---

[4] It does not appear there are any differences between Washington and Nevada law on any of the relevant points.

HOFF SUPPLEMENTAL OPPOSITION TO AUCTION MOTION– 7

138354237.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent or broker." There does not appear to be any such writing, and there certainly is no such writing signed by the Hoffs.

The Trustee will no doubt attempt to argue that the transfer was completed and thus outside the statute of frauds, N.R.S. 104.2201(3)(c). But MALP was not permitted to transfer the Medallic Assets without the consent of the Hoffs. Security Agreement, ¶ 4(a), Hoff Declaration, ¶¶ 7, 8 and Exhibit C. The Hoffs never consented to any such transfer. Hoff Declaration, ¶ 8.

Finally, as the Court has noted in this and other contexts, the Trustee's evidence of a transfer is at best questionable. The declarations use the legally incomprehensible term "inherited." Messrs. Hansen and Bressler describe their "intention and understanding" that an LLC would succeed to the interests of MALP, but nowhere in the hundreds of pages of documentation submitted in the adversary proceeding is there any indication that any such transfer to MACLLC or any other transfer actually took place. And some of what does appear is inconsistent with MACLLC's ownership of the assets; as Mr. Hansen notes in his declaration, Adv. Dkt. No. 24, ¶ 13 and Exhibit L, MACLLC's business, as certified to the Nevada taxing authorities, was "Long term leasing of building, equipment, and licensing to related company – 100%." While that language may be ambiguous, the same form attests to monthly revenues of $37,500, which was the amount of the rent (presumably from NWTM or some other affiliate operating the Dayton facility); there is no additional income associated with use of the multimillion dollar Medallic Assets as one would expect if MACLLC actually owned those assets.

HOFF SUPPLEMENTAL OPPOSITION TO AUCTION MOTION– 8

138354237.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Case 16-11767-CMA    Doc 1399    Filed 02/05/18    Ent. 02/05/18 13:09:44    Pg. 8 of 9

In short, there is no credible evidence of a transfer of the Medallic Assets to MACLLC. They are still owned by MALP.

### V. Conclusion

The Hoffs have no objection to the Auction Motion so long as the auction sale does not include the Medallic Assets and the Hoffs are allowed to protect their interests through observation rights and insurance. If the auction sale includes the Medallic Assets, the net proceeds of sale, after payment only of costs of sale and the Hoffs' superpriority claim, must be retained in a segregated, interest bearing account for the benefit of the Hoffs and others who claim a security interest or ownership interest in any of the assets being sold.

DATED: February 5, 2018　　　　　　　　**PERKINS COIE LLP**

By:/s/ Alan D. Smith
　　Alan D. Smith, WSBA No. 24964
　　ADSmith@perkinscoie.com
　　1201 Third Avenue, Suite 4900
　　Seattle, WA 98101-3099
　　Telephone: 206.359.8000
　　Facsimile: 206.359.9000

Attorneys for Landlord Robert and Connie Hoff

HOFF SUPPLEMENTAL OPPOSITION TO AUCTION MOTION– 9

138354237.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000