January 30, 2018

The Honorable Christopher M. Alston
Bankruptcy Court, Western District of Washington
700 Stewart Street
Seattle WA 98101

FILED
Western District of Washington
at Seattle
FEB -5 2018
MARK L. HATCHER, CLERK
OF THE BANKRUPTCY COURT

Ref: 16-11767-CMA, Northwest Territorial Mint

Your Honor,

The undersigned, Paula Pehl, and her husband, Richard H. Pehl are creditors of NWTM/Medallic and also members of the Unsecured Creditors Committee, on which we share one vote. We were appointed by Martin Smith, the US Trustee.

We would like to address the Court on matters of grave concern to the creditors but are restricted by the Confidentiality Agreement (Exhibit A). We therefore ask that the Court set aside the Confidentiality Agreement, which in this case has been used for no constructive purpose other than silence Committee members, while at the same time they, and therefore the creditors, are not being properly represented in Court.

In making this request, I have to not violate the terms of the Confidentiality Agreement, which is in essence a non-disclosure agreement of the Trustee's "work product". The basis of the request is the fiduciary duty owed by members of the UCC towards the creditor class as defined in 11 U.S.C. § 1103(c)(2). That role presupposes an independent obligation of due diligence and representation. It does not define the role of UCC members as handmaidens of the Trustee.

Therefore, I am asking that this document be set aside on the following grounds:

1. Mark Calvert, the Trustee, a signatory to the Confidentiality Agreement, did himself materially and repeatedly violate the agreement. Said agreement at #15, states specifically that the document may be signed in a "number of counterparts" "each of which when executed…may be deemed an original". Therefore, we have the right to interpret this document as having been signed by Mark Calvert and to be equally applicable to him as to any other signatory. No legal agreement can be construed to be preferentially and/or selectively binding on the signatories especially where violated by the prime mover of the agreement.

2. A logical and reasonable interpretation of the Bankruptcy Code, as well as of the Confidentiality Agreement, is that no divulging of information should occur that might hinder or harm the Trustee's efforts at restoring the company, securing the

Pehl page 1 of 3

assets of the estate, developing a business plan, and making restitution to the creditors. There is no rule that says that the agreement can be deployed to shield facts from the eyes of the Court. In the case of a divergence between the UCC and the Trustee, the primary obligation of the UCC is to the creditor class.

3. Since my name has come up in Court a couple of times and my part in events has been misrepresented, I ask for the right to speak in my own voice, and not be bound by silence because a member of the UCC. But in fact, it is not "my case" that I wish to make, but bring some matters before the Court that seem to be critical to the interests of the creditors as a whole.

On April 7, 2017 Mr. Calvert sent Connie Hoff an email copying her all the materials laid out for the UCC meeting of April 6, 2017 (Exhibit B). He simply forwarded to her the email sent to Mark Northrup, counsel to the Committee, marked "CONFIDENTIAL", inclusive of all attachments, deemed to be work product. The Court is well aware from the exhibits made available at the Hoff Trial that Calvert had in 2016 copied me and Mrs. Hoff a great many emails, some confidential from his attorney. The lease negotiations of course were a necessary and proper correspondence with Mrs. Hoff; but when Calvert stated in Court, under direct questioning, on July 25, that I was copied because I requested he do so, this was a false statement. [I obtained and listened to the audio of the proceedings]

I would not have known anything about the lease matters, which did not pass through the Committee and often were not even copied to Northrup, except that Calvert chose to copy me on his negotiations with Mrs. Hoff, and copied both of us on various ongoing issues. It was I who copied Northrup and had to ask that he be copied directly. My inclusion in this "inner circle" did not last past September 2016 because Calvert discovered that I was not an uncritical observer biased in his favor. However, I am aware that Calvert's disclosure of privileged material to Mrs. Hoff continued well into 2017.

If I am allowed to address the Court, I will focus on matters of accounting and accountability with respect to the immediate interests of the creditors. To do so, I will mostly use materials that are already part of the public record. However, there are some inventory and accounting sheets that I have not been able to identify as having been presented to the Court and may therefore not be part of the public record. It is to be free to present those that I aim. If the Court does not agree with the argument for setting aside the Confidentiality Agreement, I ask to be allowed to present these materials under seal and ask instruction on how to do so. In this, I beg the indulgence of the Court.

I apologize for not presenting this request through a lawyer. We serve without compensation and with no hope of reimbursement. As is well known, the biggest losers are asked to serve on the UCC. We have already lost much; yet, I do not find the position that it is of no use to make any presentation to the Court on behalf of the creditors because "*it is like rearranging the deck chairs on the Titanic*" a reasonable stance.

We are currently out of state. It is doubtful we will be able to make it in person to the hearing in Seattle on Feb 9 due to prior commitments. So I ask the Court to advise me how to proceed and what the deadlines will be.


Respectfully submitted,

*Paula Pehl*

Paula Pehl
paulapehl @ yahoo.com
ph: 865-414-5434 (cell)

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY-CLIENT PRIVILEGE**
**ATTORNEY WORK PRODUCT**
**JOINT DEFENSE COMMUNICATION**

## JOINT LITIGATION AND CONFIDENTIALITY AGREEMENT

This Joint Litigation and Confidentiality Agreement (the "Agreement") is entered into by and among the undersigned Parties (the "Parties") and their respective undersigned Counsel ("Counsel") effective April 29, 2016. The Parties and Counsel are collectively referred to as the "Group."

**WHEREAS**, Mark Calvert has been appointed Trustee (the "Trustee") and K&L Gates, LLP ("K&L Gates") has been appointed Trustee's counsel in the bankruptcy case *In re Northwest Territorial Mint LLC*, Bankruptcy Petition #: 16-11767-CMA, and any other related cases in which Mark Calvert is appointed Trustee (collectively, the "Northwest Mint Bankruptcy"); and

**WHEREAS**, the Court in the Northwest Mint case has appointed an Official Unsecured Creditors' Committee (the "Committee") and Miller Nash Graham & Dunn, LLP ("Miller Nash") has been retained as counsel for the Committee; and

**WHEREAS**, the Trustee, the Committee, and Counsel currently share certain common interests, and in the future may share other common interests, in exchanging and discovering information regarding the Northwest Mint Bankruptcy and its administration; and

**WHEREAS**, to advance their mutual interests, the Group members desire, among other things, to have the ability to exchange in confidence certain communications, information and documents among themselves, including information and documents protected by the attorney-client privilege, work product privilege, or other privileges or protections from disclosure, without the prospect or possibility of allowing disclosure of such information to third parties, and without waiver of their respective and joint privileges.

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Group agrees as follows:

1. Each of the Group members may, but is not obligated to, share with the other Group members certain of its confidential information and information which may also be protected by the attorney-client privilege, work product doctrine, or other privileged information (collectively, hereinafter "Joint Privileged Material"), including without limitation:

   (a) thoughts, analyses or opinions regarding claims or defenses asserted in any the Northwest Mint Bankruptcy, and related adversary proceedings or other litigation;

   (b) work product prepared jointly or separately in connection with or in anticipation of prosecution or defense of any claims or potential claims related to the Northwest Mint Bankruptcy and related adversary proceedings or other litigation;

(c) any communications among the Group members relating to the Northwest Mint Bankruptcy and related adversary proceedings or other litigation;

(d) any other information or work product related to the Northwest Mint Bankruptcy and related adversary proceedings or other litigation, which is jointly developed, communicated, discussed, or prepared by any member of the Group;

(e) attorney-client or work product material created or generated prior to the Northwest Mint Bankruptcy; and

(f) any other documents or information that may be protected by the attorney-client privilege or the work product doctrine.

2. A Group member shall have the right to preclude, limit or condition the disclosure of Joint Privileged Material to persons otherwise authorized to receive and review Joint Privileged Material if such disclosure would: (i) impair the competitive interests of a business or asset controlled by or under the administration of the Trustee; or (ii) undermine the commonality of interests essential to the Group members' joint privilege. In particular, but without limiting the scope of this provision, the Committee may be restricted from disclosing Joint Privileged Material to particular investors or creditors represented by the Committee if such disclosure would or may detrimentally affect a business or asset under the administration of the Trustee. If any member of the Group realizes that there is an issue on which Group members may not share a common interest, that member must inform the other members of this fact as soon as reasonably practicable.

3. Except as expressly stated in writing to the contrary, any and all Joint Privileged Material obtained by any member of the Group from any other Group member (i) shall be used by the receiving Group member solely to advance the mutual legal interests and/or common and/or joint claims or joint defenses of the Group in the Northwest Mint case and related adversary proceedings or other litigation, (ii) shall remain confidential, (iii) shall not be disclosed to any third party not a member of the Group, (iv) shall only be disclosed to the Group member's attorneys, staff, employees, officers, and representatives who have a bona fide need to know such information to advance the common interests and/or common and/or joint claims or joint defenses of the Group, (v) shall be deemed to have been disclosed subject to the Group's joint defense privilege, and (vi) shall remain subject to any attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protections from disclosure possessed by the disclosing Group member. All Joint Privileged Material shall be used solely in connection with the Northwest Mint Bankruptcy, and related adversary proceedings or other litigation. Each Group member shall take reasonable precautions to preserve the confidentiality of Joint Privileged Material disclosed pursuant to this Agreement. Such measures shall not be less than the highest degree of care such Group member would utilize to protect its own confidential information. Confidential information provided by any member of the Group must be designated "Confidential" in order to be treated as confidential by the receiving Group member. A failure to designate material as "Confidential" does not affect attorney-client, attorney work product, or any other privileges or doctrines that would otherwise protect the material from discovery or use by third-parties.

4. The term "Joint Privileged Material" shall not include information that: (i) is non-privileged material pre-dating the filing of the Northwest Mint case that would ordinarily be exchanged as part of formal or informal discovery; (ii) is or becomes generally available to the public (other than as a result of a breach of this Agreement); (iii) becomes available to a Group member on a non-confidential basis from a source other than another Group member or through discovery in the Northwest Mint Bankruptcy, and related adversary proceedings or other litigation, provided that the source of the material is not known by the person or entity receiving the information to be bound by an obligation of confidentiality to any Group member or third-party; or (iv) has been independently obtained or created by a Group member without violating any of its obligations under this Agreement.

5. Nothing in this Agreement: (i) obligates any member of the Group to share or communicate any Joint Privileged Material or independently obtained or created materials with any other member of the Group; (ii) creates an agency relationship among members of the Group; or (iii) creates an attorney-client relationship between particular Counsel and any Group member other than the Group member retaining such Counsel.

6. Unless otherwise expressly stated, the following will be presumed to be Joint Privileged Material: (i) substantive communications between or involving K&L Gates and Miller Nash; (ii) communications between any Group members that relate or pertain to litigation analysis or litigation strategy; (iii) work product or privileged material shared by any Group member; (iv) attorney client privilege or work product material prepared prior to the filing of the Northwest Mint case but exchanged or disclosed to another Group member. The mere exchange of information between Group members does not render otherwise unprivileged material in any way privileged or undiscoverable.

7. Any Group member is free to withdraw from this Agreement at any time upon giving express written notification to all counsel. In the event a Group member determines that it lacks a mutual legal interest or common interest with the other members of the Group prosecuting or defending in the Northwest Mint Bankruptcy and related adversary proceedings or other litigation, such member shall immediately withdraw from this Agreement by providing written notice to the Group of such withdrawal and this Agreement will thereupon be terminated as to that member and its Counsel. Following the withdrawal of a Group member to this Agreement, this Agreement shall no longer be operative as to subsequent communications between the Group member who has withdrawn and the remaining Group members, but shall continue to protect all Joint Privileged Material covered by this Agreement disclosed to and by the withdrawing Group member prior to his or its notification of withdrawal. A withdrawing Group member shall immediately return, or certify in writing the destruction of, all Joint Privileged Material and copies thereof that obtained pursuant to this Agreement prior to withdrawal.

8. Each member of the Group agrees that irreparable damage will result from any breach of this Agreement and that the non-breaching members of the Group will have no adequate remedy at law to redress such a breach. Therefore, the Group agrees that, in addition to any other relief that might be available in the event of a breach, the non-breaching members of the Group

PRIVILEGED & CONFIDENTIAL
ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

shall be entitled to specific performance and injunctive relief, without the need for security or bond.

9. Nothing in this Agreement precludes, or supplants or affects the rights of, any Group member from requesting (either informally or through formal discovery), information from another Group member, or a third party. The exchange of information pursuant to this Agreement does not operate as a waiver of any already existing privilege.

10. The members of the Group shall cooperate reasonably with one another to seek secure judicial validation of the joint litigation privilege established by this Agreement in any adversary proceeding or other litigation where the privilege is or may be challenged by a third-party. In any adversary proceeding or other litigation where the privilege is challenged, the Party being challenged shall notify the other members of the Group as soon as reasonably practicable.

11. This Agreement and its contents may be disclosed: (i) to Group members; (ii) to other persons as may be necessary to facilitate the efficient exchange of Joint Privileged Material; (iii) to preserve and/or assert the joint privilege; or (iv) as otherwise required by law or court order.

12. Any disclosure, inadvertent or otherwise, by a Group member of information exchanged or communications made pursuant to this Agreement will not constitute a waiver by any other Group member of any privileges associated with such information or communications. Any settlement or other resolution of any claims, causes of action or other matters in the Northwest Mint Bankruptcy, and related adversary proceedings or other litigation, as to any one Group member shall not relieve that Group member from its obligations under this Agreement.

13. Each of the Parties agrees that the exchange of information, including Joint Privileged Material, under this Agreement is not and shall not be asserted as grounds for the disqualification of Counsel for any of the other Parties. No provision of this Agreement shall be construed to defeat the attorney-client privilege between any of the Parties and their or its respective Counsel, and no provision of this Agreement shall be construed to create an attorney-client relationship between any of the Parties and the Counsel for any of the other Parties.

14. This Agreement shall terminate upon the occurrence of any of the following events: (i) the written agreement of all Parties and Counsel who have not terminated their participation in the Agreement; or (ii) the conclusion of all of the Northwest Mint case and related adversary proceedings or other litigation, including any and all appeals.

15. This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall be deemed to be an original, and all of such counterparts taken together shall constitute one and the same agreement.

16. This Agreement may not be amended or modified nor any of its provisions waived without the written consent of all Group members. This Agreement shall not be subject to abrogation by any heir, assign or other successor in interest to any Party and/or their counsel. Nor

PRIVILEGED & CONFIDENTIAL
ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

shall such heir, assign or successor in interest waive any privilege or doctrine with regard to information shared by or among the Parties and/or their counsel.

| | |
|---|---|
| Counsel for Mark Calvert<br>Northwest Territorial Mint, LLC Trustee | K&L Gates, LLP<br><br>By: _____<br>Michael J. Gearin<br>COUNSEL FOR MARK CALVERT |
| Counsel for Official Unsecured Creditors' Committee<br>Northwest Territorial Mint, LLC | Miller Nash Graham & Dunn, LLP<br><br>By: _____<br>Mark D. Northrup<br>Geoff Groshong<br>COUNSEL FOR OFFICIAL UNSECURED CREDITORS' COMMITTEE |
| Mark Calvert<br>Northwest Territorial Mint, LLC Trustee | _____<br>Mark Calvert<br>Northwest Mint Trustee |
| Official Unsecured Creditors' Committee, Northwest Territorial Mint, LLC | By: *(signature)*<br>William L. Hanson<br>Committee Co-Chairperson<br>FOR OFFICIAL UNSECURED CREDITORS' COMMITTEE<br><br>By: _____<br>David L. James<br>Committee Co-Chairperson<br>FOR OFFICIAL UNSECURED CREDITORS' COMMITTEE |

JOINT LITIGATION & CONFIDENTIALITY AGREEMENT - 5

By: _____
    Larry Chiappellone
FOR OFFICIAL UNSECURED
CREDITORS' COMMITTEE


By: _____
    Thomas Seip
FOR OFFICIAL UNSECURED
CREDITORS' COMMITTEE


By: _____
    Donald M. Wright, DDS
FOR OFFICIAL UNSECURED
CREDITORS' COMMITTEE


By: _____
    Young deNormandie PC
Represented by John G. Young
FOR OFFICIAL UNSECURED
CREDITORS' COMMITTEE


By: *[signature]*
    Richard H. Pehl
FOR OFFICIAL UNSECURED
CREDITORS' COMMITTEE


By: *[signature]*
    Paula Pehl
FOR OFFICIAL UNSECURED
CREDITORS' COMMITTEE

Case 16-11767-CMA    Doc 1404    Filed 02/05/18    Ent. 02/05/18 15:56:33    Pg. 9 of 10

**From:** Mark Calvert <mark@cascadecapitalgroup.com>
**Subject: FW: NWTM Committee Update April 6, 2017..xlsx**
**Date:** April 7, 2017 at 10:59:45 AM MDT
**To:** Connie Hoff <mountainviews@sbcglobal.net>

CONFIDENTIAL

**From:** Mark Calvert
**Sent:** Wednesday, April 5, 2017 6:20 PM
**To:** Northrup, Mark D. <Mark.Northrup@millernash.com>; Gearin, Mike <Mike.Gearin@klgates.com>
**Cc:** Bill Atalla <Bill.Atalla@nwtmint.com>; Paul Wagner <Paul.Wagner@nwtmint.com>
**Subject:** NWTM Committee Update April 6, 2017..xlsx

Mark

Here is the agenda for the call tomorrow at 2:00 PM to 3:00 PM

The agenda will give the committee a good understanding of the overall status of the case and the status of operations of the company. I will have Bill and Paul join the call to share information on the operations and the committee member will be able to ask operating questions. In addition Mike will provide information on the status of the litigation with Ross / Medallic and I will provide some information on the status of the fraud analysis.

The goal is to share all information on the status of the operations and litigation and answer any questions the committee might have. My guess is this will call will be over an hour...

Looking forward to updating the committee

Mark


Participant Instructions:

Host Name: 

Participant Access Code:

Miller Nash Conferencing Phone Numbers
Portland Local: 503-205-2700
Seattle Local: 206-777-7557
Vancouver Local: 360-619-7054
Bend Local: 541-749-3344
Toll Free: 866-853-8383
Internal Extension: 2700
Participant Detailed Instructions:
**Participant:** Dial one of the Miller Nash Conferencing numbers.
**Operator:** Welcome to Shoretel Converged Conferencing.
Enter an access code, then press #. To cancel press *.
**Participant:** Enter Participant Access Code from above.
If the leader has already activated the conference:
**Operator:** One moment while your call is connected.
If the leader has not yet activated the conference:
**Operator:** The leader hasn't activated this call yet.
Please stay on the line. To turn off the music press 1.


Mark: Here is the final Bressler Settlement Agreement for your signature. Bressler has agreed to sign this. Can you get me a scanned signature at your earliest? We can file the motion for approval as soon as I get signatures from you and Bressler.

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only. If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Mike.Gearin@klgates.com.

5 Attachments   View all   Download all

- NWTM Committee Update April 6, 2017. .xlsx
- Mail Attachment .eml
- FEB MARCh SNAP SHOT .docx
- MARCH APRIL SNAP SHOT .docx
- 914817 .docx