FILED
Western District of Washington
at Seattle

FEB -5 2018

MARK L. HATCHER, CLERK
OF THE BANKRUPTCY COURT

The Honorable Judge Alston
Western District of Washington State Bankruptcy Court
Case # 16-11767-CMA

Your Honor:

I am writing this letter as a general unsecured creditor of the Northwest Territorial Mint. At the start of the NWTM case I was appointed co-chair of the Unsecured Creditors' Committee by Martin Smith. I resigned from that position for reasons described below.

I wish to make the Court aware of certain events within the Committee that have a bearing on the relationship between the committee and the Trustee, Trustee's Council and the Committee's Council.

The Committee was generally displeased with Mr. Calvert's performance as Trustee. One of the main areas of discontent was what seemed to be the many useless legal motions that only generated invoices for the professionals and did not serve the interests of the creditors. This opinion is supported by many emails between committee members throughout the proceedings. Those emails are not included with this statement because I have not asked for permission from the various senders to include their correspondence. I do have the emails if the occasion arises to present them. Among the causes of frustration were inaccurate financial statements with errors never corrected and financial statements later being referred to as "drafts" when they were presented as concluded documents; suspected misrepresentation of facts to the committee; lack of an actual reorganization plan and attempting to sell to the committee a spread sheet presentation of an imagined future as a "reorganization plan" though only based on hypothetical numbers; refusal to answer direct questions; refusing to provide to the Creditors Committee information that would allow it to perform its function and telling the committee that its opinion / position was irrelevant and that the Trustee could do whatever he wanted. Nonetheless, it seems that committee votes were required, even though those votes and the sentiments of the committee were blunted by the form and manner of their representation in Court. One such instance was the hiring of the CEO for Medallic in Dayton, Nevada. The committee was basically opposed to the hiring. The vote was forced on the committee and the committee's nuanced and reluctant support in face of the ultimatums presented to it was never expressed to the Court. An outside financial advisor was consulted and he advised against the hiring and within one hour of the vote completely changed his mind with a forwarded message to the committee that completely altered his position. The committee also voted to demand a forensic audit of Mr. Calvert's books. The person proposed was Lorraine Barrick, but council to the Committee presented this to the Court as the hiring of a "financial adviser" with the statement that she would review the reorganization plan which never materialized. Effectively the Committee was rendered voiceless but its vote conforming to the Trustee's position was always demanded, and reported as supporting even though that was not always the case.

I was supposedly removed from the committee by Mike Gearin for inadvertently disclosing to Ross Hansen that there was a deal with Richard Bressler. That disclosure was accidental as I was reading something to him about the mint making sales and his effort to force us into a Chapter 7 would be unsuccessful. The sentence about the Deal with Mr Bressler was in the same paragraph and I did not edit it out before I spoke the words to Ross Hansen. I knew immediately that I had exposed confidential information, even though this information should

have not been confidential. In the end, divulging that information prompted Ross Hansen to withdraw from the Medallic suit and transfer his interest in Medallic to the estate. I am not sure that transfer has remained in place.

Mr. Gearin insisted that I resign from the Committee and forward all my correspondence with Ross Hansen to him. His words were basically: "If I resigned, withdraw a letter that I had written to you asking for the removal of the Trustee, and caused no more trouble, that he saw no reason to pursue me in court." He later denied such a statement, but the intimidation was quite clear to me.

The real reason I was removed from the Committee is because I wanted Mr Calvert removed as Trustee. I had written a letter, addressed to You and the Court, routed through Mark Northrup, asking for and giving reasons for the removal of Mr. Calvert. That letter was sent via email, approximately one day prior to the conversation with Ross Hansen where I mentioned the deal with Mr. Bressler.

Throughout the entire bankruptcy proceeding there has never been a feeling that Mr. Northrup actually represented the creditors or actually heard anything that the creditors committee was saying. In many instances he presented to Mr. Calvert and Mr. Gearin confidential communications which should have remained within the confines of the Committee. One example is the letter I had sent to you. You might note that the letter never got to you, but did immediately get to Mr. Calvert and Mr. Gearin.

As a creditor and former Committee member, I wish to express the opinion that the Trustee and the two attorneys mentioned have not actually worked for the benefit of the creditors and I protest their receiving compensation from the estate which they viewed only as a source of income to themselves. The creditors would have been further ahead if the estate had been liquidated at the beginning or if a different trustee, more qualified for this type of bankruptcy, had been appointed. Ironically Mr. Calvert was Ross Hansen's choice for Trustee and Ross Hansen called some of his major clients (including me) and asked them to support Mr Calvert's candidacy. Ross Hansen had discussed with Mr. Calvert before the bankruptcy filing, his becoming CRO so that he, Mr. Hansen, could retain control.

With the wisdom of hindsight, many of us wonder how Mr. Calvert was allowed to bring in his own private firm, Cascade, as the auditor. This situation offered the creditors no protection. Many creditors and some committee members stated early in the process that Mr. Calvert would work until the professional billings equalled the remaining assets, then he would file for Chapter 7 and leave the scene with what asset value remained. It appears that is where we are now, except that there might be fewer assets remaining than they had hoped because of Mr. Calvert's mismanagement.

The committee has been worn down by the professionals to the point that most members feel there is nothing left to fight for. I have not been privy to the committee information since my resignation and the above description of the situation is based on my experience prior to my departure.

William Hanson
Unsecured Creditor, former Co-Char of the Unsecured Creditors' Committee

To: Northrup, Mark D.
Cc: paulapehl@yahoo.com; Larry Chiappellone; dickpehl@yahoo.com; David Petteys
Subject: Up coming letter to the you and the court.

Mark.

I am sending to you, under a separate mailing, a letter expressing the committee's dissatisfaction with Mr. Calvert. We cannot let this go ignored any longer. Almost all the committee members agree with me and it would have come up for a vote at the last committee call but you told us that Mr Calvert would never be replaced. We still need to show our dissatisfaction with him. He works independently of the committee and cares not what we think. You have reminded us several times that he does not need any opinion or approval from the committee for his actions. We have seen no indication that he is interested in any recovery for the creditors, and recovery is the obligation of the Unsecured Creditors Committee.

I expect you to deliver this letter, and perhaps this cover letter to the court tomorrow. If that does not happen, a similar letter will be written about you. I would like a confirmation of this delivery to be made to me and the committee.

Thank you in advance. Bill Hanson

On Feb 23, 2017 3:18 PM, "Bill Hanson"
<bill.beach101@gmail.com> wrote:


MR MARK. NORTHRUP
MILLER NASH GRAHAM AND DUNN. LLP
2801. ALASKA. WAY. #300
PIER 70
SEATTLE, WA. 98121

RE: Replacement of Mark Calvert as Truwtee for Northwest Territorial Mint

Dear Mr. Northrup:

We are members of the Unsecured Creditors Committee ("Committee") which has been represented since its creation by your firm and you. During this representation, we have stood by while Mr Calvert failed to meet any of the important economic and legal targets he identified as important in his discussions with

us; we watched while your firm and K&L Gates and Mr Calvert have allowed the estate to become administratively insolvent, and run up debts that can never be paid to its professionals that approach $3,000,000. To our knowledge, Committee's counsel has not informed the court of the financial situation of the estate. The company continues to operate at a loss and its value has dramatically decreased since the Chapter 11 filing.

We have reached the conclusion that Mr Calvert must be replaced as Trustee for the Mint. Please treat this letter as a specific direction and authorization to you to immediately seek the replacement of Mr Calvert as Trustee. If you refuse to proceed as directed and to formally seek the removal of Mr Calvert, please file this letter with the court and indicate by email to each committee member that you have done so no later than February 28, 2017.

We are very sorry that this situation assists, but we believe we owe a fiduciary duty to all creditors to alert them to the manner in which this estate has been administered and the dire economic

straits atht have resulted from the conduct of Mr Calvert and other professionals, realizing that it is our obligation to do our best to save the company and achieve some recovery for the creditors.   Alternatives ~~deist~~ exist which will serve the Unsecured Creditors better than they are being served presently.


William L. Hanson
Co-Chair, Unsecured Creditors Committee.
Northwest Territorial Mint

Sent from my iPad