# EXHIBIT B

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement ("Agreement") dated January 26, 2018, is entered into by Mark Calvert, as Chapter 11 Trustee of Northwest Territorial Mint LLC, ("Trustee" or "Seller") and Medalcraft Mint, Inc. ("Buyer"). Capitalized terms used herein are defined as set forth in Section 8.1.

## RECITALS

A.  On April 11, 2016, the Trustee was appointed as the chapter 11 Trustee, pursuant to 11 U.S.C. § 1104(d), for Northwest Territorial Mint, LLC (the "Debtor" or "NWTM") by order of the United States Bankruptcy Court for the Western District of Washington (the "Court"), Case No. 16-11767 (the "Bankruptcy Case").

B.  On May 3, 2017, the Trustee obtained a judgment under which the assets and liabilities of Medallic Art Company, LLC ("MACLLC") were substantively consolidated with the assets and liabilities of NWTM.

C.  The Trustee on behalf of the substantively consolidated bankruptcy estate of NWTM and MACLLC (the "Bankruptcy Estate") has made an investigation regarding the highest and best use of the assets of the Bankruptcy Estate. Following such inquiry, the Trustee believes that the transaction contemplated by this Agreement is in the best interests of the creditors and desires to consummate the transaction contemplated by this Agreement for the benefit of the Bankruptcy Estate.

D.  The Trustee desires to sell to the Buyer, and the Buyer desires to purchase from the Trustee, the Assets (as hereinafter defined) of the Bankruptcy Estate subject to the conditions set forth herein (the "Acquisition").

NOW THEREFORE, the parties agree as follows:

**Section 1. PURCHASE OF ASSETS**

1.1  Purchase of Assets. Upon the terms and subject to the conditions of this Agreement, at the Closing, the Trustee agrees to sell, assign, transfer, convey, set over and deliver to Buyer, and Buyer agrees to purchase, acquire and accept from the Trustee, the following assets of the Bankruptcy Estate (the "Assets"):

(a) Medallic Art name, website, website content and domain name.
(b) Medallic marketing materials and image library.
(c) Phone number of Northwest Territorial Mint and Medallic Art Company.
(d) Medallic archives, written files, electronic files (ACT database) and reproduction samples.
(e) Medallic customer list, sales history and vendor list.
(f) Medallic Company owned Dies, Trim Tools and Associated Racks associated with any customer for which there has been a sale within the past twenty years.
(g) Dies for customer Framing Success.
(h  Tools associated with the making of Chains of Office and Maces.
(i) Woodworking equipment necessary to the production of maces.
(j) Special packaging for medallions, chains of office and maces
(k) Press 13, a 600 ton Cincinnati (S/N 17715) and associated collars
(l) Press 7, an HME 360 ton press (S/N 15413) and associated collars
(m) Columbia Rimming Machine (S/N 4550-03)

1.2     Excluded Assets. Notwithstanding anything to the contrary in Section 1.1 or elsewhere in this Agreement, the assets of the Bankruptcy Estate other than the Assets specifically identified in Section 1.1 (collectively, the "Excluded Assets") are not part of the sale and purchase contemplated hereunder, are excluded from the Assets, and will remain the property of the Bankruptcy Estate after the Closing.

1.3     Liabilities. Buyer shall not assume or be liable for any of the debts, obligations or liabilities of the Seller of any nature whatsoever, regardless of whether or not such debts, obligations or liabilities have been disclosed pursuant to this Agreement.

1.4     Taxes.

(a)     All transfer, transfer gains, documentary, sales, use, stamp and registration taxes incurred in connection with the consummation of the transactions contemplated by this Agreement shall be borne by Buyer.

(b)     The personal property taxes owed in connection with the Purchased Assets for the year of 2017 shall be prorated. Such personal property taxes include, but are not limited to personal property taxes owed to the State of Nevada. Buyer shall be responsible only for such personal property taxes, if any, owed in connection with Buyer's ownership of the Purchased Assets for periods after the Closing Date.

1.6     Method of Acquisition. The sale, conveyance, transfer, assignment and delivery to Buyer of the Assets, as herein provided, shall take place in the State of Nevada and shall be effected by such bills of sale, endorsements, assignments and other instruments of transfer and conveyance as may be necessary to vest in Buyer the respective rights, title and interests of Seller in and to the Assets, free and clear of all Liens, claims, charges and encumbrances, except as otherwise provided in this Agreement. Such documents shall include, without limitation, an assignment and bill of sale in a form as agreed to among the parties. Seller and Buyer shall, at the Closing or at any time or from time to time after the Closing, upon request, perform or cause to be performed such acts, and execute, acknowledge and deliver or cause to be executed, acknowledged and delivered such documents, as may be reasonably required or requested to effectuate the sale, conveyance, transfer, assignment and delivery to Buyer of any of the Assets or for the performance by such person or entity of any of its obligations hereunder.

1.7     Bulk Sales Laws. The parties hereby waive compliance with the provisions of any bulk sales, bulk transfer or similar laws of any jurisdiction that may otherwise be applicable with respect to the sale of any or all of the Assets to Buyer.

**Section 2.     PURCHASE PRICE/CLOSING**

2.1     Purchase Price. The purchase price (the "Purchase Price") for the Assets shall be Seven Hundred Thousand and no/100 dollars ($700,000.00) and shall be payable to Seller according to the following terms:

(a)     Buyer must make an initial nonrefundable earnest money deposit of One Hundred Thousand Dollars ($100,000) to the IOLTA account of the Trustee's counsel, K&L Gates LLP (Attn: Michael J. Gearin, Esq.). The earnest money deposit will be immediately available to service the expenses of the Bankruptcy Estate and shall be applied to the Purchase Price at Closing (defined below). In the event that the Bankruptcy Court does not approve the sale to the Buyer, due to an overbid or other reasons not the fault of the Buyer, the Buyer shall be entitled to a refund of the earnest money. In the event that the sale fails to close due to the failure of performance of the Buyer, the earnest money will be forfeited. Payment of the balance of the Purchase Price will be made on the Closing Date (defined below).

2.2     Closing.  The Acquisition shall be consummated by the parties on the day on which the satisfaction or waiver of the conditions set forth in Section 6 has occurred, anticipated to be on or about five business days after Court approval of this Agreement (the "Closing Date").  The consummation of such purchase and sale is referred to in this Agreement as the "Closing."

2.3     Obligations of Seller at the Closing.  At the Closing, Seller shall deliver to Buyer the following validly executed documents and instruments:

(a)     bill of sale for the Assets being purchased by Buyer, satisfactory in form and substance to Buyer;

(b)     such other instruments or documents necessary or desirable to complete the transaction contemplated herein, all satisfactory in form and substance to Buyer.

2.4     Buyer's Obligations at the Closing.  At the Closing, Buyer shall deliver to Seller the following validly executed instruments and documents:

(a)     the Purchase Price owed to Seller at Closing pursuant to Section 2.1;

(b)     resale certificates for raw materials and supplies in form satisfactory to the Seller;

(c) such other instruments or documents necessary or desirable to complete the Acquisition, all satisfactory in form and substance acceptable to Seller; and

(d) A fully transferrable perpetual license in favor of the Seller allowing the use of the Medallic Art name and associated marks for the purpose of production and sales to a collectible audience for dies or archives created more than twenty years prior to the date of this Agreement.

2.5     Allocation of Purchase Price.  The sum of the Purchase Price shall be allocated among the Assets as of the Closing Date based upon the mutual agreement of the parties.

**Section 3.     REPRESENTATIONS AND WARRANTIES OF SELLER**

Trustee hereby represents and warrants to Buyer that:

3.1     Authority.  Subject only to the approval of the Bankruptcy Court, the Trustee has full power, legal capacity and authority to enter into, perform and comply with this Agreement and the other agreements to be entered into by it pursuant hereto.  All proceedings required to be taken by Trustee to authorize the execution, delivery and performance of and compliance with this Agreement and such other agreements have been properly taken. This Agreement and each of such other agreements constitutes the valid and binding obligation of Trustee, enforceable in accordance with its terms, except as the same may be limited by bankruptcy, insolvency, reorganization, moratorium and other similar laws relating to or affecting creditors' rights generally and by general equitable principles.

**3.2     NO REPRESENTATIONS OR WARRANTIES OF THE TRUSTEE OR NWTM.**  EXCEPT AS SET FORTH IN SECTION 3.1, NO REPRESENTATIONS OR WARRANTIES ARE MADE BY THE TRUSTEE WITH RESPECT TO THE ASSETS OR THE TRANSACTIONS.  BUYER ACKNOWLEDGES THAT THE TRUSTEE IS NOT GIVING, MAKING OR PERFORMING ANY ACT THAT CONSTITUTES, EXPRESSLY OR IMPLIEDLY, A WARRANTY OF THE TITLE PERTAINING TO THE ASSETS. WITHOUT

LIMITING THE FOREGOING, THE TRUSTEE DISCLAIMS ANY WARRANTIES OR REPRESENTATIONS, EITHER EXPRESS OR IMPLIED, WITH RESPECT TO THE TITLE AND OWNERSHIP, MAINTENANCE, REPAIR, CONDITION, DESIGN OR MARKETABILITY OF ANY REAL PROPERTY INTERESTS, EQUIPMENT, MACHINERY, INVENTORY, FIXTURES OR OTHER ASSETS OF NWTM AND ALL IMPLIED WARRANTIES PERTAINING TO THE ASSETS, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY WITH RESPECT TO THE CONDITION OF ANY OF THE ASSETS, INCLUDING ANY BUILDINGS, STRUCTURES, FIXTURES, EQUIPMENT OR ROLLING STOCK OR THE SUITABILITY OF THE REAL PROPERTY FOR HABITATION OR OF ANY OF THE ASSETS FOR THE BUYER'S INTENDED USE OR FOR ANY USE WHATSOEVER; THE AVAILABILITY OR EXISTENCE OF ANY WATER, SEWER OR UTILITIES; OR THE ABSENCE OF ASBESTOS OR ANY HAZARDOUS SUBSTANCE. THE ASSETS ARE TO BE TRANSFERRED TO THE BUYER IN THEIR PRESENT CONDITION AND STATE OF REPAIR, "AS IS" AND "WHERE IS," WITH ALL FAULTS. BUYER AFFIRMS THAT BUYER HAS INDEPENDENTLY, AND IN BUYER'S SOLE JUDGMENT, ELECTED TO ENTER INTO THIS AGREEMENT, AND HAS NOT RELIED UPON ANY STATEMENT OR REPRESENTATION OF THE TRUSTEE. EXCEPT AS OTHERWISE MAY BE EXPRESSLY PROVIDED FOR BY THIS AGREEMENT, BUYER ASSUMES UPON CONSUMMATION OF THIS AGREEMENT THE RESPONSIBILITY AND RISKS OF ALL DEFECTS AND CONDITIONS OF THE REAL PROPERTY LEASEHOLDS AND OTHER ASSETS, INCLUDING SUCH DEFECTS AND CONDITIONS, IF ANY, THAT CANNOT BE OBSERVED BY CASUAL INSPECTION.

**Section 4.**    **BUYER'S REPRESENTATIONS AND WARRANTIES**

Buyer hereby represents and warrants to Seller that:

4.1    Organization, Good Standing and Qualification. Buyer is a corporation duly organized, validly existing and in good standing under the laws of the State of Wisconsin, has all necessary power and authority to own its Property and to carry on its business as now owned and operated by it.

4.2    Authority. Buyer has full power, legal capacity and authority to enter into, perform and comply with this Agreement and the other agreements to be entered into by it pursuant hereto. All proceedings required to be taken by Buyer to authorize the execution, delivery and performance of and compliance with this Agreement and such other agreements have been properly taken. This Agreement and each of such other agreements constitutes the valid and binding obligation of Buyer, enforceable in accordance with its terms, except as the same may be limited by bankruptcy, insolvency, reorganization, moratorium and other similar laws relating to or affecting creditors' rights generally and by general equitable principles.

4.3    No Conflict. The execution and delivery of this Agreement and the other agreements to be entered into pursuant hereto do not, and the performance of and compliance with this Agreement and such other agreements will not result in a breach of or constitute (with or without the giving of notice or the passage of time or both) a default under any obligation of Buyer pursuant to the terms of (a) any statute, law, ordinance, rule or regulation or (b) the terms, conditions or provisions of the charter documents or by-laws of Buyer, or any employee plan, Contract, permit, concession, grant, franchise, license, judgment, order, decree or other instrument or arrangement to which Buyer is a party or by which it or any of its Property is bound.

4.4     Approvals, Etc. No consent, permit or approval of, filing with or notice to any Governmental Agency or any other Person (whether or not governmental in character) is required to be obtained, made or given by Buyer in connection with the execution and delivery of this Agreement or the performance of and compliance with this Agreement.

**Section 5.     BANKRUPTCY COURT MATTERS**

5.1     The Sale Order. The Trustee shall use its best efforts to cause the Court to enter a Sale Order which contains, among other provisions requested by Buyer, the following provisions (it being understood that certain of such provisions may be contained in either the findings of fact or conclusions of law to be made by the Court as part of the Sale Order):

(a)     the sale of the Assets by the Trustee to Buyer (1) is legal, valid and effectively transfers of the Assets; (2) will vest Buyer with all right, title and interest of the Bankruptcy Estate to the Assets free and clear of all Liens, claims, interests and encumbrances (other than Liens created by Buyer); and (3) constitute transfers for reasonably equivalent value and fair consideration under the United States Bankruptcy Code;

(b)     all Persons are enjoined from taking any actions against Buyer (as they existed immediately prior to the Closing) to recover any claim which such Person has against the Bankruptcy Estate;

(c)     provide that Buyer will not have any successor or transferee liability for liabilities (including with respect to taxes) of NWTM (whether under federal or state law or otherwise) as a result of or attributable to the sale of the Assets;

(d)     Buyer has acted in good faith within the meaning of 11 U.S.C. § 363(m), the transactions contemplated by this Agreement are undertaken by Buyer and the Trustee at arm's length, without collusion and in good faith, and such parties are entitled to the protections of the Bankruptcy Code;

(e)     directing turnover of the Purchased Assets to the Buyer;

(f)     providing the Buyer the authority to terminate liens claims and encumbrances with respect to the Purchased Assets and Assumed Contracts by filing the Sale Order with the appropriate state or local government office; and

(g)     the United States Bankruptcy Court for the Western District of Washington retains exclusive jurisdiction to interpret and enforce the provisions of this Agreement and the Sale Order in all respects; provided, however, that in the event the Court abstains from exercising or declines to exercise jurisdiction with respect to any matter provided for in this clause or is without jurisdiction, such abstention, refusal or lack of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

5.2     Bankruptcy Court Approval.

(a)     As promptly as practicable after the date of this Agreement, the Trustee shall file, in form and substance satisfactory to Buyer in its sole and absolute discretion, the Sale Motion and proposed Sale Order. To the extent required by law, the Trustee shall timely notify all interested parties, including tax authorities.

(b) The Trustee shall cooperate with Buyer and its representatives in connection with the Sale Order and the Bankruptcy Case proceedings in connection therewith. Such cooperation shall include, but not be limited to, consulting with Buyer at Buyer's reasonable request concerning the status of such proceedings and providing Buyer with copies of requested pleadings, notices, proposed orders and other documents relating to such proceedings as soon as reasonably practicable prior to any submission thereof to the Court.

**Section 6.** **CONDITIONS TO CLOSING**

6.1 Sale Order.

(a) The Trustee shall have received a copy of the Court-approved Sale Order in form and substance reasonably acceptable to Trustee.

(b) The Buyer shall have received a copy of the Court-approved Sale Order in form and substance reasonably acceptable to Buyer.

6.2 Schedules. The final form of schedules shall be mutually agreed upon by the parties.

**Section 7.** **MISCELLANEOUS**

7.1 Transactional Expenses. Seller and Buyer shall pay their own fees and expenses incident to the negotiation, preparation, execution, delivery and performance hereof, including, without limitation, the fees and expenses of its counsel, accountants and other experts.

7.2 Brokerage. Each party represents and warrants to the others that it has dealt with no broker or finder in connection with any of the transactions contemplated by this Agreement and, insofar as each party knows, no broker, finder or other Person is entitled to any brokerage commission or finder's fee in connection with any of such transactions. Buyer agrees to indemnify and hold harmless the Trustee from and against any Losses incurred by reason of any brokerage commission or finder's fee alleged to be payable because of any act, omission or statement of the indemnifying party.

7.3 Other Agreements Superseded; Waiver and Modification, Etc. This Agreement supersedes all prior agreements or understandings, written or oral, of Seller and Buyer relating to any form of acquisition of Seller or the business, and incorporates the entire understanding of the parties with respect thereto. This Agreement may be amended or supplemented only by a written instrument signed by the party against whom the amendment or supplement is sought to be enforced. The party benefited by any condition or obligation may waive the same, but such waiver shall not be enforceable by another party unless made by written instrument signed by the waiving party.

7.4 Survival. The covenants, representations and warranties made in this Agreement or made in writing pursuant hereto shall survive the Closing, and any investigation of the matters covered thereby by or on behalf of any party to whom they are made. Each party acknowledges that the other is entering into this Agreement and will consummate the transactions contemplated hereby, in reliance upon the express representations and warranties of the other party made in this Agreement or made in a writing delivered pursuant hereto.

7.5 Recovery of Litigation Costs. If any legal action or any arbitration or other proceeding is brought for the enforcement of this Agreement or because of an alleged dispute, breach, default or misrepresentation in connection with any provision of this Agreement, the successful or prevailing party shall be entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which it may be entitled.

Case 16-11767-CMA    Doc 1433-3    Filed 02/08/18    Ent. 02/08/18 17:31:08    Pg. 7 of 11

7.6     Notices.  Any notice under or relating to this Agreement shall be given in writing and shall be deemed sufficiently given and served for all purposes when personally delivered or given by telex, machine-confirmed facsimile or email, receipt confirmed, or three (3) Business Days after a writing is deposited in the United States mail, first class postage or other charges prepaid and registered, return receipt requested, addressed as follows:

(a)  If to Buyer:
Jerry Moran
Email:   jmoran@medalcraft.com

(b)  If to Seller:
Michael J. Gearin
K&L Gates LLP
925 Fourth Ave, Suite 2900
Seattle, WA 98104
Fax: (206) 370-6067
Email: Mike.Gearin@klgates.com

And to:

Mark Thomas Calvert, as Chapter 11 Trustee
Cascade Capital Group, LLC
1420 Fifth Avenue, Suite 3382
Seattle, WA 98101
Fax: (206) 370-6067
Email: mark@cascadecapitalgroup.com

7.7     Law Governing.  This Agreement shall be construed in accordance with and governed by the laws of the State of Washington applicable to Contracts made and to be performed in Washington, exclusive of its conflict of law rules. The parties agree that the Bankruptcy Court for the Western District of Washington, shall be the exclusive proper place of venue for any action, dispute, or controversy arising from or in connection with this Agreement.

7.8     Successors; Assignability.  This Agreement shall inure to the benefit of and be binding upon the heirs, executors, administrators, successors and assigns of the parties hereto. Neither the Seller nor the Buyer may assign any of their rights or obligations hereunder without the consent of the other party.  Notwithstanding the foregoing, Gary Anderson, Investment Trustee for RNO Financial/Eureka House of Metals (Trust) may assign all or a portion of its rights and obligations under this Agreement to any subsidiary of Gary Anderson, Investment Trustee for RNO Financial/Eureka House of Metals (Trust). Any assignment made or purported to be made contrary to the provisions of this Section 7.8 shall be void and of no force or effect.

7.9     Time of Essence.  Time is of the essence of this Agreement and all of the terms, conditions and provisions hereof.

7.10    Counterparts.  This Agreement may be executed in any number of counterparts and each such executed counterpart shall be deemed to be an original instrument, but all such executed counterparts together shall constitute one and the same instrument. One party may execute one or more counterparts other than that or those executed by another party, without thereby affecting the effectiveness of any such signatures.

Case 16-11767-CMA    Doc 1433-3    Filed 02/08/18    Ent. 02/08/18 17:31:08    Pg. 8 of 11

7.11  Parties in Interest.  Nothing in this Agreement, express or implied, is intended to confer any rights or remedies under or by reason of this Agreement on any Person other than the parties to it and their respective permitted successors and assigns, nor is anything in this Agreement intended to relieve or discharge any obligation of any third Person to any party hereto or give any third Person any right of subrogation or action over against any party hereto.

7.12  Further Assurances.  The parties will reasonably cooperate with each other in good faith in connection with any steps required to be taken as part of their respective obligations under this Agreement, and will (a) furnish upon request to each other such further information, (b) execute and deliver to each other such other documents and (c) do such other acts and things, all as the other party may reasonably request for the purpose of carrying out the intent of this Agreement.

**Section 8.**  **INTERPRETATION OF THIS AGREEMENT**

8.1  Terms Defined.  As used in this Agreement, the following terms have the respective meanings set forth below or in the location indicated:

Accounts Receivable – means the right to payment from customers of the Bankruptcy Estate in respect to products sold or services rendered to customers of the Bankruptcy Estate.

Agreement--this Asset Purchase Agreement, including the Exhibits and Schedules thereto.

Bankruptcy Code—means Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended.

Business Day--any day which is not a Saturday, Sunday or a bank holiday in the State of Washington.

Contract--means any written agreement, contract, lease, license, promissory note, conditional sales contract, indenture, mortgage, deed of trust, commitment, undertaking, instrument or arrangement of any kind. Without limiting the generality of the foregoing, any agreement, commitment, undertaking or arrangement of any kind with a Governmental Agency shall constitute a "Contract" whether it was entered into voluntarily or pursuant to applicable law or in settlement of a claim or possible claim by such Governmental Agency, or otherwise.

Cure Payments—means all unpaid amounts or unsatisfied obligations that must be paid or satisfied to effectuate, pursuant to all applicable provisions of the Bankruptcy Code, the assumption by and assignment to Buyer of the Assumed Contracts.  The amount of the Cure Payments is set forth on Schedule 1.1(b).

Governmental Agency--any federal, state, local or foreign government or any political subdivision thereof or any department, commission, board, bureau, agency, court, panel or other instrumentality of any kind of any of the foregoing.

Lien--any mortgage, deed of trust, security interest, retention of title or lease for security purposes, pledge, charge, encumbrance, equity, claim, easement, right of way, covenant, condition or restriction, leasehold interest or any right of any kind of any other Person in or with respect to any Property.

Person--an individual, partnership, corporation, trust or unincorporated organization, or a Governmental Agency.

Property--any interest in any kind of property or asset, whether real, personal or mixed, tangible or intangible, and wherever located, including without limitation money.

Sale Motion – means the motion to be filed with the Court by Trustee seeking (a) approval of the terms and provisions of this Agreement and (b) authorization for the sale of the Assets by the Trustee, pursuant to 11 U.S.C. § 363.

Sale Order – means the order entered by the Court in form acceptable to the Trustee and Buyer.

8.2 References. All terms such as "herein," "hereby" or "hereunder" refer to this Agreement as a whole. The use of the terms "including", "include" and "includes" followed by one or more examples is intended to be illustrative and shall not be deemed or construed to limit the scope of the classification or category to the examples listed.

8.3 Headings. The headings used in this Agreement are provided for convenience only and this Agreement shall be interpreted as though they did not appear herein.

8.4 Fair Construction. This Agreement shall be given a fair and reasonable construction in accordance with the intention of the parties and without regard to the drafter thereof.

8.5 Announcements. Seller shall not make any announcements to the public concerning this Agreement or the transactions contemplated hereby without the prior approval of Buyer. Notwithstanding any failure by Buyer to approve, Seller may make an announcement of substantially the same information as theretofore announced to the public by Buyer, but Seller shall in either case notify Buyer of the contents thereof reasonably promptly in advance of its issuance.

[the remainder of this page left intentionally blank]

# SIGNATURE PAGE –
# ASSET PURCHASE AGREEMENT

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first set forth above.

Seller:

Mark T. Calvert, in his capacity as Chapter 11 Trustee of Northwest Territorial Mint, LLC

_____
By: Mark Calvert, Trustee

Buyer:

The Medalcraft Mint, Inc.

_____
By: Jerry Moran
Title: President