Michael J. Gearin, WSBA # 20982
David C. Neu, WSBA # 33143
Brian T. Peterson, WSBA # 42088
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
(206) 623-7580

Honorable Christopher M. Alston
Chapter 11
Hearing Location: Rm. 7206
Hearing Date: Friday, March 9, 2018
Hearing Time: 9:30 a.m.
Response Date: March 2, 2018

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re:

NORTHWEST TERRITORIAL MINT, LLC,

Debtor.

Case No. 16-11767-CMA

MOTION FOR ORDER APPROVING THE SALE OF CERTAIN OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES TO MEDALCRAFT MINT, INC.

## I. INTRODUCTION

Mark Calvert (the "Trustee"), Chapter 11 Trustee for Northwest Territorial Mint, LLC ("NWTM" or the "Debtor"), submits this Motion, which requests entry of an order approving the sale of the Medallic tradename, website, customer lists, archives, tools, specific machinery, certain company owned Medallic dies and other property to Medalcraft Mint, Inc. ("Medalcraft") free and clear of all liens, claims, interests, and encumbrances. The Trustee seeks authority to approve the sale to Medalcraft as stalking horse bidder, or to an entity or individual who submits a higher and better offer at auction according to the bid procedures described in the Trustee's separately filed Motion for Order Granting Authority to Incur Credit, Approving Bid Procedures for Sale of Estate Assets, and Approving Break Up Fee (the "Bid Procedures Motion") (Dkt. No. 1432). Approval of the sale to Medalcraft is in the best interests of the estate and should be approved by the Court.

MOTION FOR ORDER APPROVING SALE OF CERTAIN OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES TO MEDALCRAFT MINT, INC.- 1
501036731 v5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1457    Filed 02/16/18    Ent. 02/16/18 15:53:40    Pg. 1 of 14

## II. BACKGROUND

On April 1, 2016, the Debtor commenced this case by filing a voluntary petition under chapter 11 of the United States Bankruptcy Code. On April 11, 2016, the Court appointed Mark Calvert as chapter 11 Trustee. *See* Dkt. No. 51.

The Trustee's goal in this case has been to maximize the recovery of creditors. Since May 2017, the Trustee has engaged in marketing efforts related to a potential sale of the business. The Trustee entertained expressions of interest from multiple parties including offers to purchase the assets of the estate on a going concern basis and for substantially all of the assets of the estate, but no concrete offer materialized for such a sale on terms which provided any meaningful return to the estate. Because no concrete offer materialized, and because of the inadequate cash resources available to the Trustee, the Trustee closed the custom minting business on December 29, 2017 and prepared to liquidate the assets of the estate via auction.

While the Trustee prepared to sell the Debtor's assets at auction, he engaged in negotiations with multiple buyers for various aspects of the Debtor's assets. Ultimately, the Trustee separately reached agreements with Industrial Assets Corp. ("Industrial Assets") and Medalcraft for the purchase and sale of certain assets of the Debtor.[1] The Trustee has determined that the sale of these assets using these purchasers as stalking horse bidders is in the best interests of the estate.

The Trustee has entered into an Asset Purchase Agreement dated January 26, 2018 with Medalcraft (the "Medalcraft APA"). The Medalcraft APA was the result of arms-length negotiations between the Trustee and Medalcraft. A copy of the Medalcraft APA is attached as Exhibit A to the Declaration of Mark Calvert filed in support of this Motion. The Medalcraft APA provides that Medalcraft will purchase, among other things, the Medallic Art name and website; marketing materials; Medallic archives; customer list; sales history; vendor list; certain company owned dies associated with any customer for which there has been a sale in the last 20 years; tools; and woodworking equipment (the "Medalcraft Assets"). The Medalcraft APA also provides that

---

[1] The Trustee is filing a separate motion for approval of the sale to Industrial Assets.

MOTION FOR ORDER APPROVING SALE OF CERTAIN
OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL
LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES
TO MEDALCRAFT MINT, INC.- 2
501036731 v5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1457    Filed 02/16/18    Ent. 02/16/18 15:53:40    Pg. 2 of 14

Medalcraft will purchase three pieces of specifically identified equipment. The Medalcraft APA provides for a purchase price of $700,000. Medalcraft has provided a nonrefundable earnest money deposit in the amount of $100,000 in connection with the sale.

The Trustee has separately filed his Bid Procedures Motion, requesting that the Court approve bid procedures to govern the submission of competing offers for the Medalcraft Assets (the "Bid Procedures"). It is possible that one or more interested parties may come forward who wish to make an overbid for the Medalcraft Assets. If one or more qualified competing bids are received in advance of the hearing on this Motion according to the Bid Procedures, the Trustee intends to hold an auction for the Medalcraft Assets on the terms described in the Bid Procedures Motion as approved by the Court.

The Trustee believes that the Medalcraft Assets offer is on reasonable terms. If the Trustee does not sell the Medalcraft Assets to Medalcraft, he will be forced to sell such assets at auction. There is risk that a sale at auction generates less in net proceeds for the estate, considering the commission that would be paid to an auctioneer. The proposed sale to Medalcraft guarantees a certain return for the estate, and avoids the cost of an auctioneer. Since the Medalcraft sale will close immediately upon Court approval, the assets will be expeditiously moved from the Dayton facility, which aids the Trustee's efforts to conclude the use of that facility.

The Trustee has communicated with multiple interested purchasers regarding the sale of the assets of the Debtor over the course of more than six months. Based on his experience in marketing the assets which are the subject of the Medalcraft sale, the Trustee believes that the price offered for the assets is reasonable. The Trustee believes that it is in the best interests of the estate to consummate the sale to Medalcraft.

The Trustee seeks to sell the Medalcraft Assets free and clear of liens and encumbrances. Two creditors have asserted liens against certain of the assets of the estate, the validity of which liens are disputed by the Trustee. The Court has expressed reservation of any determination as to whether Medallic Art Company LP ("MALP"), a predecessor in interest to Medallic Art Company,

MOTION FOR ORDER APPROVING SALE OF CERTAIN
OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL
LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES
TO MEDALCRAFT MINT, INC.- 3
501036731 v5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1457    Filed 02/16/18    Ent. 02/16/18 15:53:40    Pg. 3 of 14

LLC ("MACLLC") may hold an interest in certain of the assets under the Trustee's control. But MALP, as described in more detail in the Auction Motion, does not hold any interest in the assets held by the Trustee because MALP transferred all of its assets to substantively consolidated debtor Medallic Art Company LLC in late 2009 and thereafter concluded its business affairs. The Trustee has submitted evidence supporting these facts and incorporates by reference the arguments made in the Auction Motion and the testimony in the Declaration of David Neu in Support of the Auction Motion (Dkt. No. 1427). On February 13, 2018, the Court ordered that if Connie Hoff, Robert Hoff, Medallic Art Company, Ltd., Ross Hansen, Medallic Art Limited Partnership, or any of their affiliates (each an "Interested Party") intend to object to a proposed sale of estate property on the basis that assets sought to be sold by the Trustee are not property of the estate, they must commence an adversary proceeding by filing a verified complaint no later than 5:00 p.m. on February 22, 2018. "Any Interested Party who does not timely commence suit waives any and all rights to assert in this case that the Medallic Assets are not property of the estate." Dkt. No. 1449. As of the date of this Motion, no such verified complaint has been filed. The Trustee submits that there is no legitimate basis for an assertion that the assets which are the subject of the Medalcraft sale are the property of MALP or are otherwise not property of the bankruptcy estate.

The Hoffs allege that they hold a security interest in certain personal property relating to the Dayton Lease. A copy of the Hoff Security Agreement is attached to the Declaration of Connie Hoff at Dkt. No. 1330, Ex. D. The Trustee disputes that the Hoffs hold a perfected security interest in the assets identified in the Security Agreement. MALP executed the Security Agreement on July 10, 2009 and it was perfected on the same day. The initial financing statement expired after five years, *i.e.*, July 10, 2014. The Hoffs did not file a continuation statement prior to the expiration of the initial UCC-1, causing their security interest to lapse.

Following the filing of this bankruptcy case, the Hoffs realized their security interest had become unperfected and attempted to perfect it with a new financing statement. The Hoffs attempted to file a new UCC-1 financing statement on April 21, 2016. The Hoffs further filed an

MOTION FOR ORDER APPROVING SALE OF CERTAIN OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES TO MEDALCRAFT MINT, INC.- 4
501036731 v5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1457    Filed 02/16/18    Ent. 02/16/18 15:53:40    Pg. 4 of 14

amendment to their April 21, 2016 financing statement on May 17, 2017, which purported to add MACLLC as a debtor. MACLLC is the successor in interest to the defunct MALP, and it was substantively consolidated with the Debtor *nunc pro tunc* as of April 1, 2016. Thus, the Hoffs' May 17, 2017 financing statement amendment was filed post-petition as to MACLLC.

The Hoffs' alleged security interest in the estate's assets is subject to a bona fide dispute. Even assuming that the security interest was valid, its perfection after lapse was barred by the automatic stay rendering the security interest avoidable.

Pan American Silver Corporation ("Pan American") has asserted a secured claim against certain property of the Debtor. Pan American delivered silver to the Debtor so that the Debtor could make silver products. On April 4, 2005, Pan American entered into a "Consignment/Security Agreement," a copy of which is attached to Pan American's Proof of Claim No. 2829. The consignment agreement specifically provides that the Debtor (the "Consignee") shall hold "[a]ll right, title, and interest in and to the designs struck on both sides of the Coins, the designs of the Bars (the 'Designs') and all dies and tooling used to make the Coins and Bars, and all copyrights, trademarks, and other intellectual property rights embodied or incorporated in the Designs, in the Products and/or in the dies and tooling used to make the Coins and Bars." The Medalcraft sale does not include any of the dies that Pan American alleges it holds an interest in. The Medalcraft sale includes only Medallic division dies and the Pan American dies are from the NWTM side of the Debtor's business.

Pan American asserts that it holds a security interest in one item of equipment that the Trustee intends to sell to Medalcraft.[2] The Trustee has identified only a few items of equipment at the Dayton Facility that are described in Pan American's proof of claim as being subject to its

---

[2] The original Pan American security agreement dated back to April, 4, 2005 and described ten items of equipment. Only seven of those items of equipment remained in the possession of the Debtor at the time the bankruptcy case was filed. Those items are: Columbia coining press 360 ton #6080-242, Clean Aire melt furnace, #M1225T-03, HME-K360 coining press #15413, Augenstein reduction machine type 505, #5034, Janvier reduction machine #2, Janvier reduction machine #4, and HME-K600 coining press #16371. Only the HME-K360 coining press #15413 is included in the assets in the Medalcraft sale.

MOTION FOR ORDER APPROVING SALE OF CERTAIN
OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL
LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES
TO MEDALCRAFT MINT, INC.- 5
501036731 v5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1457    Filed 02/16/18    Ent. 02/16/18 15:53:40    Pg. 5 of 14

alleged security interest. The Trustee disputes that Pan American holds a valid perfected security interest in the equipment. The Security Agreement contains no collateral description that reasonably identifies what is described. Instead, it states that Pan American's collateral is identified in "Appendix A," which is not attached to the agreement. Moreover, to the extent Pan American's claim is secured, it is not perfected. Pan American's 2005 financing statement has lapsed, and its 2015 financing statement fails to sufficiently describe the collateral.

The Debtor owns and possesses thousands of dies used by the Debtor to produce custom-made products (the "Coining Dies"). Various customers of the Debtor have objected to the sale of certain of the Debtor's Coining Dies, asserting an ownership interest in the dies. The Medalcraft APA intends to sell Medallic company owned Coining Dies, trim tools, and racks associated with any customer for which there has been a sale within the past twenty years. A limited number of objecting parties assert an interest in the Coining Dies being sold to Medalcraft under the Medalcraft APA. The Trustee has concluded that, with some limited exceptions, it was the Debtor's written policy that it owned the Medallic Coining Dies. While the Debtor charged customers a fee to create the dies, the Debtor retained ownership in the Coining Dies. The Debtor's written policy is maintained on its website, and was communicated in other documents. Employees of the Debtor, including the Debtor's former Director of Sales on the Medallic side, have confirmed this policy. The Debtor stored, preserved, and maintained most of its Coining Dies in its facilities at its own cost, and did not charge customers for die storage and maintenance. Medalcraft has acknowledged that there may be exceptions to the general rule of company ownership of the dies and has agreed to address such issues with individual customers post closing. Medalcraft has also confirmed that it will honor its longstanding policy that the dies which contain customer owned copyright or tradenames will not be used absent express permission from the customer. *See* Declaration of Jerry Moran filed in support of this Motion.

All of the Medalcraft Assets that the Trustee intends to sell to Medalcraft are property of the bankruptcy estate. While two parties have asserted lien interests in the property that the Trustee

MOTION FOR ORDER APPROVING SALE OF CERTAIN OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES TO MEDALCRAFT MINT, INC.- 6
501036731 v5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1457    Filed 02/16/18    Ent. 02/16/18 15:53:40    Pg. 6 of 14

proposes to auction, those liens are the subject of bona fide dispute and for the reasons more fully expressed below, do not provide an impediment to the Trustee's ability to conduct the auction and liquidate the assets of the estate.

### III. EVIDENCE RELIED UPON

This Motion relies on the arguments set forth herein; the Declarations of Trustee Mark Calvert filed in support of this Motion, the Bid Procedures Motion (Dkt. No. 1433), and Auction Motion (Dkt. No. 1351); the Declarations of Jerry Moran, Susan Skaggs, and Paul Wagner filed in support of this Motion; the pleadings and records on file in this case; and the arguments of counsel, if any.

### IV. ARGUMENT

The Court should approve the Trustee's proposed sale of the Medalcraft Assets, free and clear of liens, claims, interests, and encumbrances, pursuant to the terms of the Medalcraft APA. Section 363(b) of the Bankruptcy Code provides that the Trustee is authorized to sell assets outside the ordinary course of its business. While the text of the Bankruptcy Code does not provide the standard for determining when it is a appropriate for a court to authorize the sale of property of the estate, courts often approve a proposed sale if such sale is based upon the sound business judgment of the debtor. *See, e.g.*, *Meyers v. Martin (In re Martin)*, 9 F.3d 389, 395 (3d Cir. 1996); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983).

**A. The Proposed Sale Meets the Requirements for a Sale Under 363(b).**

Here, a sound business reason exists for the proposed sale to Medalcraft. Namely, the objective of the Trustee's proposed sale is to maximize the proceeds of such sale for the benefit of the bankruptcy estate. *See, e.g., Four B. Corp. v. Food Barn Stores, Inc.(In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (stating that in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Res, Inc*., 147 B.R. 650, 659 (S.D.N.Y. 1992) ("'It is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the [Debtor's] duty with respect to such sales is to obtain the highest price or

MOTION FOR ORDER APPROVING SALE OF CERTAIN
OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL
LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES
TO MEDALCRAFT MINT, INC.- 7
501036731 v5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1457    Filed 02/16/18    Ent. 02/16/18 15:53:40    Pg. 7 of 14

greatest overall benefit possible for the estate.'") (alteration in original) (quoting *In re Atlanta Packaging Products, Inc.*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)). The Trustee has closed the Debtor's operations and proposes the sale to Medalcraft with an aim to maximize the recovery for the benefit of the estate.

The sale of assets outside of the ordinary course of business may be conducted by a public sale, or a private sale under appropriate circumstances. *See In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) ("Unlike judicial sales under the former Bankruptcy Act, the sale of estate property under the Bankruptcy Code is conducted by a trustee, who has ample discretion . . . to conduct public or private sales of estate property.") (internal quotations and citation omitted). Here, the Trustee proposes to sell the assets to Medalcraft as a stalking-horse bidder, or a bidder asserting a qualifying higher and better offer for the Medalcraft Assets in the event that the Trustee holds an auction. This will ensure that the Trustee will maximize the return for the assets.

The proposed sale to Medalcraft is the highest and best concrete offer that the Trustee has received to date and the Trustee does not believe he could obtain a higher and better offer within a reasonable period of time.

For purposes of 11 U.S.C. § 363(m), a "good faith purchaser" is one who buys "in good faith" and "for value." *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992). "The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings." *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1992) (quotations omitted). The "lack of good faith is shown by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *In re Ewell*, 958 F.2d at 281 (quoting *Community Thrift & Loan v. Suchy (In re Suchy)*, 786 F.2d 900, 902 (9th Cir. 1985)); *see also In re Abbotts Dairies*, 788 F.2d at 147.

Here, the Medalcraft APA is the result of arm's length negotiations between the Trustee and Medalcraft. It is not the result of any fraud or collusion between the Trustee and Medalcraft or

MOTION FOR ORDER APPROVING SALE OF CERTAIN
OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL
LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES
TO MEDALCRAFT MINT, INC.- 8
501036731 v5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1457    Filed 02/16/18    Ent. 02/16/18 15:53:40    Pg. 8 of 14

between the Debtor and Medalcraft. Medalcraft is therefore a good-faith buyer within the meaning of 11 U.S.C. § 363(m).

The proposed purchase price of $700,000, is fair and reasonable, and represents the highest and best concrete offer that the Trustee has received for the Medalcraft Assets.

### B. Good Cause Exists to Waive the Stay Under Fed. R. Bankr. P. 6004(h).

Pursuant to Fed. R. Bankr. P. 6004(h), any order authorizing the use, sale, or lease of property other than cash collateral is stayed for 14 days, unless the court orders otherwise. As noted herein, given the liquidity concerns facing the Debtor's estate, and the necessity that this sale close quickly, cause exists to waive the stay and permit the Trustee to quickly consummate the proposed sale to Medalcraft Assets.

### C. The Proposed Sale Satisfies the Requirements of 11 U.S.C. § 363(f).

Pursuant to 11 U.S.C. § 363(f), a Trustee may sell property of the estate under 11 U.S.C. § 363(b) free and clear of any interest in such property of any entity other than the estate only if (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which the property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; *or* (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f) (emphasis added). Here, there are multiple bases upon which the Court should authorize the Trustee sale of the Medalcraft Assets "free and clear."

The Trustee has provided notice of this Motion to the creditors and parties in interest as required by the Court, so that if any entity claims a lien on the assets being sold, they will have an opportunity to object. If no such creditor objects, the sale free and clear will be permitted under 11 U.S.C. § 363(f)(2). Moreover, even if alleged secured creditors object to the sale, the sale free and clear is permissible under 11 U.S.C. § 363(f)(5) because there are legal and equitable proceedings in which a lienholder could be compelled to accept a money satisfaction of such lien, including the disposition of collateral under the default remedies provided in Washington's Uniform

MOTION FOR ORDER APPROVING SALE OF CERTAIN
OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL
LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES
TO MEDALCRAFT MINT, INC.- 9
501036731 v5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1457    Filed 02/16/18    Ent. 02/16/18 15:53:40    Pg. 9 of 14

Commercial Code (Chapter 62A.9A RCW) or in a receivership proceeding pursuant to RCW 7.60.260.

In addition, the Motion satisfies the requirements of 11 U.S.C. § 363(f) because the alleged lien interests in the property (asserted by the Hoffs and Pan American) are subject to a bona fide dispute by the Trustee. With respect to Pan American, the collateral description contained in its purported security agreement is inadequate and fails to comply with Washington law governing the requirements of security agreements. Pursuant to RCW 62A.9A-203, Pan American's security agreement is only enforceable against the Debtor with respect to the collateral if the Debtor authenticated a security agreement "that provides a description of the collateral." According to RCW 62A.9A-108, a security agreement's description of collateral is sufficient only if "reasonably identifies" the secured party's collateral. The collateral description refers to a nonexistent "Appendix A." This certainly is not one of the examples of a reasonable identification set forth in RCW 62A.9A-108(b). If fact, it does not constitute a description of the collateral at all.

Even if the security agreement contained an adequate collateral description (which it does not), Pan American's security agreement is not properly perfected and therefore subject to avoidance by the Trustee as a hypothetical lien creditor pursuant to 11 U.S.C. § 544(b). While Pan American filed a UCC-1 financing statement in 2005, it lapsed and is no longer effective upon the expiration of five years. RCW 62A.9A-515(c). Pan American later filed a UCC-1 financing statement in 2015. However, that financing statement contains an inadequate description of the collateral because it neither contains (1) a description of the collateral that satisfies RCW 62A.9A-108, nor (2) "[a]n indication that the financing statement covers all assets or all personal property." RCW 62A.9A-504. Again, the 2015 financing statement referenced the same nonexistent Appendix A referenced in the security agreement. Thus, Pan American's asserted lien, even if valid, was not properly perfected and therefore is voidable.

The other alleged secured creditor is the Hoffs. Like the alleged security interest of Pan American, the Hoffs' alleged security interest is subject to a bona fide dispute because it is subject to

MOTION FOR ORDER APPROVING SALE OF CERTAIN OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES TO MEDALCRAFT MINT, INC.- 10
501036731 v5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1457    Filed 02/16/18    Ent. 02/16/18 15:53:40    Pg. 10 of 14

avoidance. The Trustee disputes that the Hoffs hold a perfected security interest in the assets listed on Exhibit "B" to the Security Agreement. MALP executed the Security Agreement on July 10, 2009. On July 10, 2009, the Hoffs' attorney filed a UCC-1 financing statement with the State of Nevada. The initial financing statement expired after five years, *i.e.*, July 10, 2014. The Hoffs did not file a continuation statement prior to the expiration of the initial UCC-1, causing their security interest to lapse and become unperfected.

Following the filing of this bankruptcy case, the Hoffs realized their security interest had become unperfected and attempted to perfect it with a new financing statement. The Hoffs attempted to file a new UCC-1 financing statement on April 21, 2016. The Hoffs further filed an amendment to their April 21, 2016 financing statement on May 17, 2017, which purported to add MACLLC as a debtor. MACLLC is the successor in interest to the defunct MALP, and it was substantively consolidated with the Debtor *nunc pro tunc* as of April 1, 2016. Thus, the Hoffs' May 17, 2017 financing statement amendment was filed post-petition as to MACLLC. The hypothetical lien creditor referenced in section 544 of the Bankruptcy Code is one holding a lien as of the date of the commencement of the case. Thus, any lien of the Hoffs is subject to avoidance under 11 U.S.C. § 544, and therefore is subject to a bona fide dispute.

Various customers of the Debtor have objected to the sale of certain of the Debtor's Coining Dies, asserting an ownership interest in the dies. A limited number of objecting parties assert an interest in the Coining Dies being sold to Medalcraft under the Medalcraft APA. The Trustee has concluded that, with some possible limited exceptions, it was the Debtor's written policy that it owned the Medallic Coining Dies. While the Debtor charged customers a fee to create the dies, the Debtor retained ownership in the Coining Dies. The Debtor's written policy is maintained on its website, and was communicated in other documents. It also appeared in price quotes and other documentation submitted to customers. The employees of the Debtor, including the Debtor's former Director of Sales, Susan Skaggs, have confirmed this policy. The Debtor stored, preserved, and

MOTION FOR ORDER APPROVING SALE OF CERTAIN
OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL
LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES
TO MEDALCRAFT MINT, INC.- 11
501036731 v5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1457    Filed 02/16/18    Ent. 02/16/18 15:53:40    Pg. 11 of 14

maintained most of its Coining Dies in its facilities at its own cost, and did not charge customers for die storage and maintenance.

In some instances, the dies manufactured by the Debtor contained artwork and designs prepared by the Debtor's artisans. In other instances, the customers provided artwork of their own for the Debtor to use to craft a particular Coining Die. At least one party has argued that to the extent that a Coining Die contains copyrighted information, it cannot be sold by the Trustee. That position is erroneous. The fact that a particular Coining Die contains copyrighted or trademark material of a particular customer does not mean that the Trustee cannot sell the Coining Die itself. 17 U.S.C. § 202 ("[o]wnership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied."); *In re Clark Entertainment Group, Inc.*, 183 B.R. 73, 79 (Bankr. D.N.J. 1995) ("it is well settled that intellectual property rights are separate and distinct from the material objects in which the work is embodied, so that an author has the power to convey ownership in the material object (e.g. a book) while reserving the common law copyright"). Numerous assets containing intellectual property, e.g., computers, books, artwork, are routinely sold by bankruptcy trustees. If the customer's argument were accepted by this Court, it would be difficult to imagine what types of property a trustee in bankruptcy *could* sell. The Trustee can sell Coining Dies to Medalcraft, with Medalcraft taking ownership subject to the copyright or trademark rights of customers of the Debtor. Medalcraft has acknowledged this fact.

Furthermore, Section 363(f) of the Bankruptcy Code is satisfied because any lienholder also will be adequately protected by having its liens, if any, attach to the proceeds of the sale in the same order of priority, with the same validity, force, and effect that such creditor had prior to such sale, subject to any claims and defenses that the Trustee and the Debtor's bankruptcy estate may possess with respect thereto. For all of these reasons, the proposed sale free and clear of liens should be approved.

MOTION FOR ORDER APPROVING SALE OF CERTAIN
OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL
LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES
TO MEDALCRAFT MINT, INC.- 12
501036731 v5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1457    Filed 02/16/18    Ent. 02/16/18 15:53:40    Pg. 12 of 14

## V. CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court enter an order in the form proposed by the Trustee, granting the Motion, authorizing his proposed sale to Medalcraft or a qualified bidder who submits a higher and better offer, and for such other relief as the Court deems appropriate under the circumstances.

DATED this 16th day of February, 2018.

K&L GATES LLP

By /s/ *Michael J. Gearin*_____
   Michael J. Gearin, WSBA #20982
   David C. Neu, WSBA #33143
   Brian T. Peterson, WSBA #42088
Attorneys for Mark Calvert, Chapter 11 Trustee

MOTION FOR ORDER APPROVING SALE OF CERTAIN OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES TO MEDALCRAFT MINT, INC.- 13
501036731 v5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1457    Filed 02/16/18    Ent. 02/16/18 15:53:40    Pg. 13 of 14

# CERTIFICATE OF SERVICE

The undersigned declares as follows:

That she is a Paralegal in the law firm of K&L Gates LLP, and on February 16, 2018, she caused the foregoing document to be filed electronically through the CM/ECF system which caused Registered Participants to be served by electronic means, as fully reflected on the Notice of Electronic Filing.

Also on February 16, 2018, she caused the foregoing document to be placed in the mail to the Parties at the addresses listed below:

Northwest Territorial Mint LLC
c/o Ross Hansen, Member
P.O. Box 2148
Auburn, WA 98071-2148

I declare under penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct.

Executed on the 16th day of February, 2018 at Seattle, Washington.

*/s/ Denise A. Lentz*
Denise A. Lentz

MOTION FOR ORDER APPROVING SALE OF CERTAIN
OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL
LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES
TO MEDALCRAFT MINT, INC.- 14
501036731 v5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1457    Filed 02/16/18    Ent. 02/16/18 15:53:40    Pg. 14 of 14