Michael J. Gearin, WSBA # 20982
David C. Neu, WSBA # 33143
Brian T. Peterson, WSBA # 42088
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
(206) 623-7580

Honorable Christopher M. Alston
Chapter 11
Hearing Location: Rm 7206
Hearing Date: March 6, 2018
Hearing Time: 9:00 a.m.
Response Date: March 1, 2018 5:00 p.m.

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re:

NORTHWEST TERRITORIAL MINT, LLC,

Debtor.

Case No. 16-11767-CMA

SUPPLEMENTAL BRIEF REGARDING INTELLECTUAL PROPERTY ISSUES IN SUPPORT OF TRUSTEE'S MOTIONS TO APPROVE SALES OF ASSETS

At a hearing held on February 9, 2018[1], the Court requested supplemental briefing addressing two separate legal issues related to the Trustee's ability to sell certain coining dies created by the Debtor and used to manufacture medallions on behalf of customers (the "Coining Dies" or "Dies"). The first question is whether customer's have an intrinsic interest in Dies based on their intellectual property rights such that the sale of the Dies owned by the estate[2] would necessarily

---

[1] On January 19, 2018, Mark Calvert, Chapter 11 Trustee of Northwest Territorial Mint, LLC (the "Trustee") filed his Motion For Order Authorizing the Auction and Sale of the Debtor's Equipment, Dies, Tooling, Archives, and Inventory Free and Clear of All Liens, Claims, Interests, and Encumbrances (the "Auction Motion"). A handful of parties filed objections to the Auction Motion, asserting an interest in specific dies. Hereafter, the parties asserting an interest in Dies shall be referenced as the "Objecting Parties." The Trustee has continued the hearing on the Auction Motion because he has brought forward motions to sell certain assets of the estate including certain dies. In particular, the Trustee has filed a motion to approve the sale of certain dies including some of the estate's dies to Medalcraft Mint, Inc. (the "Medalcraft Sale Motion"). The Trustee anticipates filing additional motions to sell other assets including dies to other purchasers. The property rights relating to the dies are relevant to the Medalcraft Sale Motion and to future motions intending to sell dies.

[2] The Court acknowledged the objections of certain customers which assert that they own dies. The issues regarding whether the estate or the customer are the owner of the dies are separately

SUPPLEMENTAL BRIEF
ON IP ISSUES - 1

501037914 v4

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1467    Filed 02/20/18    Ent. 02/20/18 16:47:21    Pg. 1 of 8

infringe on the property interests of third-party customers.  Second, to the extent third parties have intellectual property interests in the Dies themselves, whether the Dies can be sold free and clear of such interests.  As explained herein, customers of the Debtor hold no intellectual property rights in the Dies themselves.

## I.  AUTHORITY

A.  <u>Customers do not Have an Intrinsic Intellectual Property Interest in the Dies</u>.

1. <u>Any Objecting Party must make a threshold showing that it holds an intellectual property right in the original artwork</u>.

Certain of the Objecting Parties have claimed that they own intellectual property rights in the original artwork from which the Dies were fashioned.  Even if they did, as explained herein, *it does not follow that they own rights to the Dies themselves* because an intellectual property right in the artwork is separate and distinct from the Dies.  That aside, it is not clear that the Objecting Parties even own intellectual property rights in the *artwork* used to make the Dies.  In the majority of the circumstances the artwork and design of the die was done by artists at Northwest Territorial Mint, LLC ("NWTM").  Under the applicable provision of the United States Code governing copyrights (the "Copyright Act"), the copyright in an work of authorship[3] vests initially in the author or authors of a work - i.e., the person or persons who created the work.  17 U.S.C. § 201; *Community for Creative non-Violence v. Reid*, 490 U.S. 730, 737, 109 S. Ct. 2166 (1989) (the author is the party who actually creates the work).  Thus, the Objecting Parties must show that *they* were the author of the artwork used to create the Dies.  There is an exception to this rule, however, for "works made for hire."  Under 17 U.S.C. § 201(b), "[i]n the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of [the Copyright

---

addressed.  This briefing addresses only the legal issues regarding whether the customer has an intrinsic property interest in the dies based on intellectual property rights of the customer.

[3] The statutory definition of "works of authorship" includes, among other types of works, pictorial, graphic and sculptural works.  17 U.S.C. §102.

SUPPLEMENTAL BRIEF
ON IP ISSUES - 2

501037914 v4

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1467    Filed 02/20/18    Ent. 02/20/18 16:47:21    Pg. 2 of 8

Act], and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright."

A "work made for hire" is defined in the Copyright Act in two parts. It is either a "work prepared by an employee within the scope of his or her employment" or a work specially ordered or commissioned for use for one of nine statutorily defined purposes.[4] 17 U.S.C. § 101(C)(2). Moreover, a work only qualifies as a "work made for hire" if the "parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." *Id.* In assessing whether a work is a "work made for hire" a court must first ascertain whether a work was prepared by (a) an employee or (b) an independent contractor. *Reid*, 490 U.S. 730 at 738. If an employee created the work in the scope of employment, the employer is the author. *Id.* If an independent contractor created the work, and the work was "specially ordered or commissioned" then in order to be a "work for hire" it must fall into one of the nine categories enumerated in footnote 3, <u>and</u> there must be a written agreement between the commissioner and independent contractor providing that the work is a "work for hire." *Id.* at 741.

The objection filed by the New York Numismatic Club ("NYNC") [Dkt. No. 1408] is illustrative of the fact that parties asserting an intellectual property interest may not, in fact, possess such an interest. The objection contains the representation that NYNC's practice was to commission an artist to "create a portrait of [the club's] president, sculpt a clay version of the portrait, and send a plaster made by the artist" to Medallic Art Company to use in the creation of a Die. Dkt. No. 1408 at 2:10-12. If this representation is true, then NYNC likely does <u>not</u> hold a copyright in the portrait

---

[4] The nine statutory categories are as follow:
 1) as a contribution to a collective work;
 2) as a part of a motion picture or other audiovisual work;
 3) as a translation;
 4) as a supplementary work;
 5) as a compilation;
 6) as an instructional text;
 7) as a test;
 8) as answer material for a test; or
 9) as an atlas.

SUPPLEMENTAL BRIEF
ON IP ISSUES - 3

501037914 v4

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

or clay sculpture from which the Die was created in that the commissioned artist would have almost certainly been an independent contractor rather than an employee of NYNC, and neither a portrait or sculpture would fall within the statutory categories of "works for hire" (even assuming that there was a written agreement between the parties").

It also bears noting that in an instance where a customer came to NWTM or Medallic Art Company, LLC or its predecessors (collectively "MACLLC") with a design concept, and one of the artists employed by NWTM or MACLLC created the artwork, it is NWTM or MACLLC that holds the copyright in the artwork and design of the die, <u>not</u> the customer. 17 U.S.C. §201(a).

> 2. <u>Even if an Objecting Party holds an intellectual property interest in the artwork upon which a Die is based, it holds no intellectual property interest in the Die itself</u>.

Assuming, *arguendo*, that an Objecting Party holds a copyright on the original artwork from which a Die was created, it does not hold a property right, including an intellectual property right in the Die itself. The Copyright Act, for obvious reasons, anticipates the problems that would be created if an object that embodies intellectual property could not be sold. It states, in relevant part:

> [o]wnership of a copyright, or of any of the exclusive rights under a copyright, ***is distinct from ownership of any material object in which the work is embodied***. ***Transfer of ownership of any material object***, including the copy or phonorecord in which the work is first fixed, ***does not of itself convey any rights in the copyrighted work embodied in the object;*** nor, in the absence of an agreement, does transfer of ownership of a copyright or of any exclusive rights under a copyright convey property rights in any material object.

17 U.S.C. § 202 (emphasis added). In other words, the Trustee has the right to transfer ownership of a Die, even if the Die embodies copyrighted work, although the purchaser will not obtain any rights in the copyrighted work itself. This black letter law is dispositive of the issue before the Court.

The inability to sell material objects in which a copyrighted work (or other intellectual property) is embodied would severely limit commerce. Entities from companies to individuals, including bankruptcy trustees, would be unable to resell anything which incorporates copyrighted intellectual property, from artwork to books to audio recordings, nor could they sell a material object

SUPPLEMENTAL BRIEF
ON IP ISSUES - 4

501037914 v4

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

which incorporates a trademark, which covers huge swathes of consumer goods from electronics to cars. This exact issue was addressed by the court in *In re Clark Entertainment Group, Inc.*, 183 B.R. 73 (Bankr. D.N.J. 1995). In *Clark Entertainment*, the debtor, Clark Entertainment, had purchased master recordings of rehearsal performances of a variety of well known artists that had been under contract with Sony Music Entertainment, Inc. Operating as a debtor in possession, Clark Entertainment reached out to Sony to inquire as to whether Sony would be interested in purchasing the tapes - an act which prompted Sony to initiate an adversary proceeding seeking a permanent injunction prohibiting Clark Entertainment from commercially exploiting the tapes. While the court did find that Clark Entertainment could not exploit the tapes for commercial purposes, it also determined that **Clark Entertainment owned and could sell the tapes**. The court stated "it is well settled that intellectual property rights are separate and distinct from the material objects in which the work is embodied, so that an author has the power to convey ownership in the material object (e.g. a book) while reserving the common law copyright (e.g. the right to publish, reproduce or exploit the prose)." *Clark Entertainment*, 183 B.R. at 79 (citing 18 Am. Jur. 2d Copyright and Literary Property § 69 (1985)). It continued, "[o]wnership of the tapes, however, shall remain with the debtor. . . . [t]hese tapes are property of the estate, 11 U.S.C. § 541, and may be sold if such a sale is in the best interest of the estate. *Id.* at 81.

To the extent the intellectual property embodied in a Die is a trademark, rather than a copyrighted image, the sale of such Die does not constitute an infringement under the Lanham Act, the statue which protects the holders of trademarks. The Lanham Act seeks to "prevent the deceptive use of trademarks to confuse consumers, thereby protecting consumer goodwill toward the trademark owner's business and the ability of consumers to make informed choices among competing products." *McDonald's Corp. v. Shop At Home, Inc.*, 82 F.Supp.2d 801, 807 (M.D. Tenn. 2000). Under the Lanham Act, a party infringes a trademark if it either "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with

SUPPLEMENTAL BRIEF
ON IP ISSUES - 5

501037914 v4

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1467    Filed 02/20/18    Ent. 02/20/18 16:47:21    Pg. 5 of 8

which such use is likely to cause confusion, or to cause mistake, or to deceive; or reproduce[s], counterfeit[s], cop[ies], or colorably imitate[s] a registered mark and appl[ies] such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 11 U.S.C. § 1114.

Pan American Silver, for example, asserts that the sale of a Die embodying its trademark infringes on its intellectual property right. Pan American, however, is not in the business of making coining dies, and there are no consumers likely to be confused or deceived by the sale of a Die with the Pan American trademark to another mint or a collector. While a purchaser of the die may not be able to use it to manufacture and sell goods with the Pan American trademark without Pan American's consent, the Die can be used for any other purpose not likely to cause confusion, including as a collectible or for purposes of generating future customer relations if the buyer were to so desire.

B. <u>11 U.S.C. §363(f) is Not Implicated by the Proposed Sale</u>

11 U.S.C. §363(f) by its terms allows a trustee to sell property of the estate "free and clear of any interest in such property of an entity other than the estate." As is set forth in Section A above, the law is clear that third parties that commissioned Dies, even to the extent the Dies are based on trademarks or copyrighted works, do not hold an intellectual property interest in the Dies themselves. Because there is no interest held in the dies held by a party other than the estate, the Trustee's sale of such Dies does not implicate § 363(f) of the Bankruptcy Code.

## II. CONCLUSION

It is black letter law that a material object, such as the Dies, are not protected intellectual property even if they embody a work that is subject to protection. The implications, if the law was to the contrary, would be enormous. Take the example of a modern cellphone, a device which

SUPPLEMENTAL BRIEF
ON IP ISSUES - 6

501037914 v4

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1467    Filed 02/20/18    Ent. 02/20/18 16:47:21    Pg. 6 of 8

exhibits trademarks, displays copyrighted works such as images and sounds, and incorporates multitudes of patented technologies. Notwithstanding the fact that thousands of copyrighted, trademarked, or patented works and technologies are contained in that single device, an owner is free to sell his or her cell phone to a third party for the simple reason that the phone itself is separate and distinct from any embodied intellectual property. The same is true with the Dies.

The Trustee is cognizant of concerns that parties may have that a buyer would infringe on intellectual property rights they may have in the original artwork embodied in the Dies, but such concerns are unwarranted. Just like the purchaser of a music recording or book, the buyer of the Dies would not be free to infringe on existing intellectual property rights by exploiting the Dies for commercial purposes without obtaining the necessary consent.[5] The value of the Dies, frankly, is not in the ability of a purchaser to infringe on intellectual property, rather the value is the ability to create a customer relationship by seeking the consent of the customer to use the Dies for their benefit.

DATED this 20th day of February, 2018.

K&L GATES LLP

By /s/ *Michael J. Gearin*
   Michael J. Gearin, WSBA #20982
   David C. Neu, WSBA #33143
   Brian T. Peterson, WSBA #42088
Attorneys for Mark Calvert, Chapter 11 Trustee

---

[5] It bears noting that Medalcraft has acknowledged its obligations to respect the intellectual property interests of customers in its use of the acquired dies. *See* Declaration of Jerry Moran, filed in support of the Motion to Approve the Medalcraft Sale Motion. Dkt. 1460.

SUPPLEMENTAL BRIEF
ON IP ISSUES - 7

501037914 v4

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1467    Filed 02/20/18    Ent. 02/20/18 16:47:21    Pg. 7 of 8

## CERTIFICATE OF SERVICE

The undersigned declares as follows:

That she is a Paralegal in the law firm of K&L Gates LLP, and on February 20, 2018, she caused the foregoing document to be filed electronically through the CM/ECF system which caused Registered Participants to be served by electronic means, as fully reflected on the Notice of Electronic Filing.

I declare under penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct.

Executed on the 20th day of February, 2018 at Seattle, Washington.

*/s/ Denise A. Lentz*
Denise A. Lentz

SUPPLEMENTAL BRIEF
ON IP ISSUES - 8

501037914 v4

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1467    Filed 02/20/18    Ent. 02/20/18 16:47:21    Pg. 8 of 8