The Honorable Christopher M. Alston
Chapter 11
Hearing Location: Rm 7206
Hearing Date: Friday, March 9, 2018
Hearing Time: 9:30 am
Response Date: March 8, 2018 (5 pm)

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re<br><br>NORTHWEST TERRITORIAL MINT, LLC,<br><br>Debtor. | No. 16-11767-CMA<br><br>Memorandum of Law in Support of Limited Objections to the Sale of Dies and Associated work by the Debtor, either as Medallic Owned or NWTM Owned |

Comes now, the American Numismatic Association ("ANA"), Dick Johnson ("Johnson") and Friedrike Merck ("Merck"), by and through their attorney, Michelle Carmody Kaplan, of Kaplan Law PLLC, and hereby submit this Limited Objection to Trustee's Motion For Order Approving the Sale of Certain of the Debtor's Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances to Medalcraft Mint, Inc. (Dkt. No. 1457).

## I. GENERAL OBJECTION – Medallic Art Company v. Northwest Territorial Mint

The Trustee has amended the proposed APA with Medalcraft in an attempt to clarify that the sale only involves "Medallic archives, written files and reproduction files dated on or after January 1, 1998 and a copy of all electronic files" and "Medallic company owned dies and trim tools which were created on or after January 1, 1998 and associated Racks." [ECF No. 1491-1]. However, the difference between Medallic and Northwest Territorial Mint remains unclear. There is no bright line dilineation between Northwest Territorial Mint

**KAPLAN LAW PLLC**
2155 - 112th Ave. NE
Bellevue, WA 98004
Phone: 425-818-4818
Fax: 425-484-4444

("NWTM") and the Medallic Art Company ("MACO") after 2009. This Court previously ordered a consolidation of the assets of MACO and NWTM [ECF No. 86]. The MACO website, at the bottom of any page, states that "Medallic Art Company is a division of Northwest Territorial Mint.". [Marks Declaration, ECF No. 1412-11, p.2]. The advertisement from NWTM pronouncing "We've got your Dies" boasts 309,405 dies, which must necessarily include both NWTM dies and MACO dies. [ECF No. 1412-10].

The line between NWTM and MACO assets is blurry at best. For example, some customers would get emails regarding NWTM, but signed by an employee of "Medallic Art & Mint". [ECF No. 1412-9] (Email from NWTM but signed by "Debi Davis, Custom Sales Assistant, Medallic Art & Mint"). In some cases, the Invoice for a custom die is on a heading that says "Northwest Territorial Mint LLC dba Medallic Art Company." This was the case in an earlier motion for return of dies by Ray Pollard. [ECF No. 295, Ex. 5, p. 8]. So is a sale by Northwest Territorial Mint, dba Medallic Art Company, a MACO asset or a NWTM asset? Unfortunately, it is impossible for Interested Parties to know. In the Trustee's Motion to return Mr. Pollard's dies, the Trustee admits that the "Debtor's records of ownership of dies are inadequate." [ECF No. 457 p.3]. If those records are inadequate, how is the Trustee determining which dies are MACO dies and which dies are NWTM dies?

As a result of these unknowns, original Interested Parties Gary Marks, Heidi Wastweet and New York Numismatic Club continue there objections to the extent the proposed sale includes any Dies and Associated Works (meaning all associated artwork, sample strikes, specimens, galvanos, sculpts or electronically stored information) that may be included in the sale of MACO assets.

Additionally, a number of additional customers will be submitting objections and requesting the return of their Dies and Associated Works which either pre-date 1998 or were made by Northwest Territorital Mint, including but not limited to: the heirs of Marcel Jovine; The National Sculpture Society; Grove Minting Company; and Bob Palmisano. To the extent

Interested Parties Objection to Sale - 2

**KAPLAN LAW PLLC**
2155 - 112th Ave. NE
Bellevue, WA 98004
Phone: 425-818-4818
Fax: 425-484-4444

Case 16-11767-CMA    Doc 1520    Filed 03/08/18    Ent. 03/08/18 16:51:40    Pg. 2 of 8

the current APA with Medalcraft includes any dies or associated Works with these Interested Parties, they hereby object.

Although Interested Parties object to the sale based on inadequate information as to what is included, in the event a sale proceeds, Interested Parties would request the following language be included in any Order of the Court and as part of the APA:

> "This sale includes only dies, archives, sample strikes, finished coins, specimens, galvanos, sculpts, written files and reproduction files related solely to Medallic Art created or dated after January 1, 1998. All such dies and associated works shall be limited to those assets that are specifically identified by an exclusive MACO identifier or code, and are not associated in any way with the Northwest Territorial Mint. In the event any assets are discovered that do not fall within this category shall be returned immediately and shall not be retained by buyer."

## II. INCORPORATION OF PREVIOUSLY SUBMITTED OBJECTIONS

Section 363 of the Bankruptcy Code does not provide authority for the Debtor to sell property it does not own. *See Folger Adam Sec., Inc. v. DeMatties/MacGregor, JV*, 209 F.3d 252, 263 (3d Cir. 2000) (property not part of the bankruptcy estate is not subject to a section 363 sale). Prior Interested Parties have briefed the issue regarding their ownership of the dies and associated intellectual property that has been stored by debtor. Interested Parties herein adopt their objections and Supporting Declarations previously submitted to the Court: (Dkt. No. 1406 – Marks and Wastweet Ojbection); (Dkt. Nos. 1407 and 1412 – Declarations of Wastweet and Marks); (Dkt. No. 1408 – Objection of NYNC); (Dkt. Nos. 1409, 1410, 1411 – Declarations of Marinescu, Miller and Anderson); and the Limited Objection of the New York Numismatic Club, Gary Marks and Heidi Wastweet to the Medalcraft Sale Motion (ECF No. 1488).

/ / /

/ / /

Interested Parties Objection to Sale - 3

**KAPLAN LAW PLLC**
2155 - 112th Ave. NE
Bellevue, WA 98004
Phone: 425-818-4818
Fax: 425-484-4444

Case 16-11767-CMA    Doc 1520    Filed 03/08/18    Ent. 03/08/18 16:51:40    Pg. 3 of 8

## III. OBJECTION TO NOTICE

Interested parties object to the inadequacy of the Notice itself. In the letter to customers sent out by the Trustee, the Trustee writes "I believe that NWTM or Medallic Art Company is the owner of the dies which I seek authority to sell." [ECF No. 1477-2]. Thus, the notice doesn't identify any distinction between Medallic dies and NWTM dies. In the Notice itself, the Trustee "submits that, with very limited exceptions, NWTM and Medallic own the physical dies which have been manufactured in order to produce medals and coins on behalf of NWTM and Medallic customers. **The Trustee intends to convey title to the company owned dies to Medalcraft in connection with the proposed sale**." [ECF No. 1477-1] (emphasis added). The final sentence refers to conveying title to "**company owned dies**", not Medallic dies. In this context, "company" must refer to both NWTM and MACO.

Interested Parties also object to the timing of the notice and submit that potentially thousands of customers will not have the opportunity to present objections to the potential sale of their property. Realistically, the first business day most received the Trustee's notice would have been Monday, March 5th and they had 4-days to figure out if their dies were included in vague and ambigious APA, dig through historical records, which may have been stored off-site, find counsel and file a timely objection. The Interested Parties herein do not believe that 4-days' notice meets the Trustee's burder to provide notice. Due process requires that a party seeking relief must give "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The bankruptcy code "requires the trustee or debtor in possession to provide parties in interest with adequate notice and an opportunity to be hear before their interests may be adversely affected. *Western Auto Supply Co. v. Savage Arms, Inc.* (*In re Savage Indus., Inc.*), 43 F.3d 714, 720 (1st Cir. 1994).

Interested Parties Objection to Sale - 4

**KAPLAN LAW PLLC**
2155 - 112th Ave. NE
Bellevue, WA 98004
Phone: 425-818-4818
Fax: 425-484-4444

Case 16-11767-CMA    Doc 1520    Filed 03/08/18    Ent. 03/08/18 16:51:40    Pg. 4 of 8

## IV. RELEVANT FACTS

Although the Trustee admits that the Debtor's records regarding ownership of the Dies[1] is "inadequate", he seeks to sell all of the MACO Dies without offering convincing information or evidence that the remaining dies are even owned by MACO.

In response to Interested Parties Marks, Wastweet and NYNC's Objection, the Trustee submitted the Declaration of Paul Wagner [ECF No. 1428]. Mr. Wagner submitted an image of the NWTM website that includes language indicating that NWTM owns the dies. However, Mr. Wagner did not provide evidence as to when similar language was added to the MACO website. Further, that language specifically talks about the Die Library being a "repository", meaning a place where things are stored. It then talks about copyrights for all "artwork it creates" and only then talks about ownership of the dies. In other words, NWTM owns the dies when it provides the artwork, which is not necessarily a contested issue by Interested Parties.

Mr. Wagner has also submitted copies of sales quotations that have language indicating that, in that case, NWTM owns the dies. [ECF No. 1459, Exhibit A]. However, in that case, it is clear that NWTM was actually creating the artwork for the project. Page 3 of Exhibit A shows the graphic artist as Angel Dey. The policy of die ownership as it relates to projects where either NWTM or MACO provided artistic involvement is not before the Court. Mr. Wagner also argued that when NWTM or MACO created the artwork, it might retain an interest in the Copyright. [ECF No. 1459, Exhibit B]. Again, that issue is not being challenged. Finally, Mr. Wagner points to a MACO sales order with limitation language, but does not address whether MACO artists were involved in its creation. On the other hand, in Marty Colwell's earlier Declaration in support

---

[1] Hereinafter Dies shall include not only the dies, but also any sample strike or specimen made by the die, all galvanos, sculpts or other copies of the artwork in any medium, including digitally stored

Interested Parties Objection to Sale - 5

**KAPLAN LAW PLLC**
2155 - 112th Ave. NE
Bellevue, WA 98004
Phone: 425-818-4818
Fax: 425-484-4444

of Trustee's Second Motion for Order Granting Authority to Return Stored Inventory to Customers, he admits that the customer in question, in that case Henri Klingler, "purchased the dies". [ECF No. 1147, ¶ 3].

The fact is that since 1907 and at least until this bankruptcy was filed, the position of MACO was that the customer owned the dies when the customer provided all of the artwork.

**A. Dick Johnson, MACO Director of Research and Company Historian**

Dick Johnson, who writes numismatic books and articles under the name D. Wayne Johnson ("Johnson"), was hired by MACO in 1967 as its Director of Research. Declaration of Dick Johnson ¶ 1. His work included researching medallic sales, creating a catalogue of past medallic issues, writing speeches for the Company president and editing MACO's newsletter. *Id*. Johnson started by cataloguing MACO medals from the start of the company, 1907. In doing that, he created an archive of over 6,121 medallic items, ending in 1997 when he left the company. *Id*. His early work was kept on a 3x5 card that included a photograph of the medal, size, artist and customer. *Id*., *Exhibit A*. After a sabbatical where he invested in his own business ventures, Johnson was named MACO Historian and Senior Consultant in 2010. In that position he advised management on medallic issues and MACO history, wrote a weekly report and generally responded to historical questions from collectors and the public. *Id*. at ¶ 3. At that time, he was compiling information in order to write a book on the history of the Medallic Art Company.

Mr. Johnson's extensive expertise both in the numismatic field, and with MACO specifically, cannot be challenged. His list of accomplishments, publications and awards is set forth in detail in his Declaration, including the fact that he is the author of an encyclopedia on coin and medal technology. According to Mr. Johnson, "**nobody alive has more knowledge about the MACO die library and archives than myself**." *Id*. at ¶ 3. Based on Mr. Johnson's

Interested Parties Objection to Sale - 6

KAPLAN LAW PLLC
2155 - 112th Ave. NE
Bellevue, WA 98004
Phone: 425-818-4818
Fax: 425-484-4444

Case 16-11767-CMA    Doc 1520    Filed 03/08/18    Ent. 03/08/18 16:51:40    Pg. 6 of 8

personal knowledge of MACO, he is adamant that the policy of MACO, at least between 1907 and 1977, was that the customer owned any custom die they ordered and paid for. *Id*. at ¶ 4.

He also admits that there was a strong preference for customers to store their dies at MACO. Notwithstanding the economic benefit, the concern from a numismatic perspective was the importance of storing dies in a safe, stable and low moisture environment. Mr. Johnson remembers numerous times when customers requested their dies and MACO provided them to the customer. *Id.* Mr. Johnson describes his understanding, a non-legal opinion, that the relationship was that of bailment. *Id.*

### B. More Recent Evidence of Ownership

The Court has already been presented with evidence from the MACO website referring to the dies as being owned by the Customer. [ECF No. 1406]. As well as evidence that in the past, whenever a customer asked for their die to be returned, it was. [ECF nos. 1406 and 1408].

Angela Day was an employed at MACO as a graphic artist from 2008 until June 2015. *See* Declaration of Angela Day, ¶ 1. In fact, Ms. Day was the Graphic Artist identified in the quotation submitted by Mr. Wagner in his earlier declaration. For most of her time there, Ms. Day was the only graphic artist employed by MACO. Ms. Day was told by her MACO supervisors and salespeople that the policy of MACO was that when a customer paid for a die to be made, the customer owned the die. *Id*. at ¶ 2. It was common understanding at MACO that the customer owned all of the artwork the customer provided and further that MACO's only right was to create medals under the direction of the customer. *Id*. Similar to Johnson, Ms. Dey's understanding was that the Company policy was to strongly urge the customer to store their die at MACO. *Id.* ¶ 7.

Ms. Dey also had knowledge of the "Die Log" that was kept by MACO. The log identified

Interested Parties Objection to Sale - 7

**KAPLAN LAW PLLC**
2155 - 112th Ave. NE
Bellevue, WA 98004
Phone: 425-818-4818
Fax: 425-484-4444

each die by year, customer and included a short description. Id. at ¶ 8. She knows that MACO struck one additional coin to keep in its archive drawers in a separate locked room. *Id*. She viewed many historical medals while she worked at MACO. *Id*.

## V. Conclusion

Before any sale is authorized by this Court, the Trustee should provide additional evidence that the Dies belong to MACO and not the Customer. The Trustee has access to a list that includes dies that indicate they belong to MACO, meaning the identifier lists them, for example, as "maco 2010-003". However, and specific to the current motion, the Court should not allow the Trustee to sell property that is owned by the Interested Parties and not the Debtor. Finally, the Interested Parties do not understand how the Court can rule on the Medalcraft Sale Motion until it resolves the underlying ownership issue.

DATED this 8th day of March 2018.

**KAPLAN LAW PLLC**

By */s/ Michelle Carmody Kaplan*
Michelle Carmody Kaplan
WSBA No. 27286
Attorney for Interested Parties Club

Interested Parties Objection to Sale - 8

**KAPLAN LAW PLLC**
2155 - 112th Ave. NE
Bellevue, WA 98004
Phone: 425-818-4818
Fax: 425-484-4444

Case 16-11767-CMA    Doc 1520    Filed 03/08/18    Ent. 03/08/18 16:51:40    Pg. 8 of 8