| | |
|---|---|
| Jack J. Cullen, WSBA #7330<br>FOSTER PEPPER PLLC<br>1111 Third Avenue, Suite 3000<br>Seattle, Washington 98101<br>Phone (206) 447-4400<br><br>Richard Levy, Jr., NYS Atty. #1696756<br>(adm. *pro hac vice*)<br>PRYOR CASHMAN LLP<br>7 Times Square<br>New York, New York 10036<br>Phone (212) 421-4100 | Honorable Christopher M. Alston<br>Chapter 11<br>Hearing Location: Seattle Rm. 7206<br>Hearing Date: April 20, 2018<br>Hearing time: 9:30 a.m. (PT)<br>Response Date: April 13, 2018, 5:00 p.m. (PT) |

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re:<br><br>**NORTHWEST TERRITORIAL MINT, LLC,,**<br><br>Debtor. | Case No. 16-11767-CMA<br><br>**OBJECTION OF UNITED STATES GOLF ASSOCIATION TO TRUSTEE'S MOTION FOR ORDER TO AUTHORIZE (1) DEADLINE TO ASSERT CLAIMS OF OWNERSHIP OF COINING DIES, AND (2) SETTLEMENT PROTOCOL TO RESOLVE CLAIMS OF SUCH OWNERSHIP** |

United States Golf Association ("USGA"), by its undersigned attorneys, objects to the motion by Chapter 11 Trustee Mark Calvert ("Trustee") to: (1) set a deadline by which parties who claim ownership interests in coining dies currently in the possession of debtor Northwestern Territorial; Mint, LLC ("NWT" or "Debtor") must assert such claims, and (2) to impose a "protocol" for the settlement of such claims, in default of which resolution the dies will be deemed property of the NWT for all purposes (ECF No. 1560) (the "Die Disputes Motion").

**FACTUAL BACKGROUND**

The relevant facts are summarized below and stated in greater detail in the attached declaration (with exhibits) of Joseph Negri, USGA's Manager of Championship Administration, dated April 11, 2018 ("Negri Decl.").

OBJECTION OF UNITED STATES GOLF ASSOCIATION TO TRUSTEE'S MOTION TO AUTHORIZE DEADLINE AND PROTOCOL TO ASSERT OWNERSHIP INTERESTS IN COINING DIES - 1

52975194.1

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
PHONE (206) 447-4400  FAX (206) 447-9700

Case 16-11767-CMA    Doc 1580    Filed 04/11/18    Ent. 04/11/18 15:42:28    Pg. 1 of 13

**A. The USGA Dies**

Claiming outright ownership rights in sixteen dies produced by NWT in 2015 (the "USGA Dies"), USGA incorporates the facts stated in its objection, supporting declaration and exhibits filed in response to the Trustee's earlier effort to sell the so-called Medallic Art assets [*see* ECF Nos. 1512, 1513 and 1513-1, attached as Negri Decl. Exhs. A-B].[1]  USGA submits that the record shows that it owns the USGA Dies.  Those dies display USGA-owned intellectual property in the images on their surfaces, which USGA has not licensed to NWT for any purpose other than striking medals ordered by USGA.

**B. NWT's Provision of Medals for the 2015, 2016 and 2017 USGA Championship Seasons**

*1. Overview*

As USGA previously informed the Court (*see generally* Negri Decl. Exhs. A-B), USGA entered into a series of transactions with NWT starting in 2015 (before the bankruptcy case commenced) and continuing in 2016 and 2017. USGA contracted with NWT for the striking and delivery of the hundreds of championship qualifying medals ("Medals") awarded each year by USGA to the Section and Local Qualifiers for USGA's annual national amateur and professional championships.  *See* Negri Decl. ¶¶ 4-5.

In 2017 – while the NWT business controlled by the Trustee was seriously declining, unknown to USGA – NWT pitched USGA on its supposed business strength and abilities, assured USGA that an order for Medals for the 2018 championship season could be timely fulfilled by January 2018, and accepted USGA's order to strike and deliver for the 2018 Medals. (*See* Negri Decl. Exhs. E-G.)  NWT even urged USGA to act quickly to authorize its procurement of the necessary sterling silver for the Medals to assure delivery when required by

---

[1] At the sale hearing held on March 9, 2018, the Trustee's counsel confirmed on the record that the USGA Dies held at NWT were not part of the Medallic Art assets, and therefore were not involved in that sale.  The Court, responding to USGA's comments, then confirmed that no matters at issue in the Medallic Art sale could bind USGA.

OBJECTION OF UNITED STATES GOLF ASSOCIATION TO TRUSTEE'S MOTION TO AUTHORIZE DEADLINE AND PROTOCOL TO ASSERT OWNERSHIP INTERESTS IN COINING DIES - 2

52975194.1

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101
PHONE (206) 447-4400  FAX (206) 447-9700

Case 16-11767-CMA    Doc 1580    Filed 04/11/18    Ent. 04/11/18 15:42:28    Pg. 2 of 13

USGA (*see* Negri Decl. Exhs. E-F), and accepted USGA's wire transfer payment of $22,815 for the silver (*see* Negri Decl. Exh. H). NWT also quoted USGA a price of $900 to produce two new dies for USGA's U.S. Senior Women's Open Championship to be staged for the first time in 2018. (*See* Negri Decl. Exh. I.) NWT received and cashed USGA's check for the 2 dies two weeks after the Trustee shut its business. (*See* Negri Decl. Exh. J.)

Indeed, after having lured USGA into placing orders for the 2018 Medals, paying for the purchase of silver and the new dies, and having promised a delivery date of the first week of January 2018, NWT shut its doors on December 29, 2017 (*see* Trustee's statements in ECF Nos. 1546-1547), without performing its obligations to USGA and without any advance warning by them to USGA as NWT's customer. NWT and the Trustee kept for the Trustee's own purposes *all* of the funds USGA was induced to pay toward the 2018 Medals and the two new dies without ever having given USGA any indication regarding NWT's real state of affairs and inability to perform. The Trustee failed and/or refused to respond to USGA's requests for compensation sent in February 2018 after learning of NWT's non-fulfillment of the order (*see* Negri Decl. Exh. K), and its further demand sent in March 2018 (*see* Negri Decl. Exh. L).

### *2. USGA's Orders for Medals for the 2015, 2016 and 2017 Championship Seasons*

In 2015, USGA contracted with NWT to purchase sixteen coining dies for medals awarded at more than 600 Local and Sectional Qualifying events for USGA's then-eleven national championship, and for NWT to strike the approximately 1,300 medals for the 2015 USGA championship season. (*See* Negri Decl. ¶ 4; Exhibits 2-3 included in Negri Decl. Exh. B.) NWT charged USGA $300 for each of the sixteen custom coining dies (the "USGA Dies"), along with a fee of $48.36 for "shipping and handling" of the dies – language clearly indicative of a sale of the dies to USGA. (*See* Exhibit 3 included in Negri Decl. Exh. B.) Neither USGA's purchase order nor NWT's invoice for the USGA Dies contained any language stating that title to the USGA Dies remained with NWT. The dies physically remained at NWT, however, given the possibility that USGA might – as it ultimately did – contract with NWT to strike the

OBJECTION OF UNITED STATES GOLF ASSOCIATION TO TRUSTEE'S MOTION TO AUTHORIZE DEADLINE AND PROTOCOL TO ASSERT OWNERSHIP INTERESTS IN COINING DIES - 3

52975194.1

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
PHONE (206) 447-4400  FAX (206) 447-9700

Case 16-11767-CMA    Doc 1580    Filed 04/11/18    Ent. 04/11/18 15:42:28    Pg. 3 of 13

subsequent year's medals.

In each of 2016 and 2017, USGA again engaged NWT to strike the Medals using the USGA Dies. USGA again paid for the requisite silver and for the cost of striking and delivery of the medals. (*See* Negri Decl. 4*;* Declaration included in Negri Decl. Exh. A, at ¶¶ 6-8.)

### *3. NWT's Inducement of, and Failure to Perform, USGA's Order for the 2018 Medals*

In the summer and fall of 2017 – times when the Trustee already had recognized the severe administrative insolvency of the estate and the precarious, unprofitable business condition of NWT (as parties in interest now know from the Trustee's recent revelations in his motion to convert the case (*e.g.*, ECF Nos. 1546-1547)) – the company, under the Trustee's control, held itself out to USGA as fully capable of timely fulfilling USGA's requirements for the Medals to be awarded in the 2018 championship season, and induced USGA to place its order. *See* Negri Decl. ¶6. First, NWT pitched a "renewal" of its business as Medallic Art, a division of NWT, led by the same sales representative with whom NWT had dealt in the placement and fulfillment of its prior years' medal orders. (*See id.;* Negri Decl. Exh. C.) Second, NWT confirmed in order documents and communications to USGA that it would strike and timely deliver the medals for Sectional and Local Qualifiers for all twelve of the 2018 championships (the twelve continuing championships and the new U.S. Senior Women's Open Championship (for which 2 new coining dies would be required)). (*See* Negri Decl. ¶ 6*.;* Negri Decl. Exh. G.) Relying on NWT's statements made and conduct undertaken while under the control of the Trustee – and even as the company's business continued to deteriorate without any prior warning by NWT or the Trustee to USGA as customer:

1. USGA accepted and acted on NWT's recommendation in November 2017 to lock in a spot price for the necessary quantity and quality of sterling silver for the 2018 Medals, so as to assure timely delivery starting in early January 2018. (*See* Negri Decl. ¶ 7; Negri Decl. Exhs. E-F.) USGA paid NWT a total of $22,815 by wire transfer for the total cost of the silver. (*See* Negri Decl. ¶ 9; Negri Decl. Exh. H.) NWT's sales documents

OBJECTION OF UNITED STATES GOLF ASSOCIATION TO TRUSTEE'S MOTION TO AUTHORIZE DEADLINE AND PROTOCOL TO ASSERT OWNERSHIP INTERESTS IN COINING DIES - 4

52975194.1

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
PHONE (206) 447-4400  FAX (206) 447-9700

Case 16-11767-CMA    Doc 1580    Filed 04/11/18    Ent. 04/11/18 15:42:28    Pg. 4 of 13

specifically confirmed that delivery of medals would begin as required by USGA during the first week of January 2018.  (See Negri Decl. ¶ 8; Negri Decl. Exhs. E-G.)

2. USGA placed its order with NWT on November 16, 2017 to strike of all of the 2018 championship Medals at a total cost of $21,775.  (*See* Negri Decl. ¶ 8; Negri Decl. Exh. F)  NWT, by its invoice of the same date, acknowledged USGA's prior payment for the silver and confirmed that the first shipments of Medals were to be delivered to USGA by January 5, 2018.  (*See* Negri Decl. ¶ 8; Negri Decl. Exh. G.)

3. USGA ordered the 2 new coining dies for the new U.S. Women's Open Championship, at a cost of $450 each, to be used by NWT along with the existing sixteen USGA Dies to strike the 2018 medals.  (*See* Negri Decl. ¶ 10; Negri Decl. Exh. I.)

4. USGA issued a $900 check to NWT for the 2 new coining dies in early January 2018 – at a time after which, unknown to USGA – the Trustee had shut down NWT's operations on December 29, 2017.  NWT then cashed that check and retained the funds, even after the Trustee had shut NWT's business two weeks earlier.  (*See* Negri Decl. ¶¶ 10-11; Negri Decl. Exh. J.)

Neither NWT nor the Trustee ever candidly informed USGA regarding the risk of NWT's inability to fulfill the order for the 2018 Medals, even after NWT accepted USGA's orders and its payment for the silver.  (*See* Negri Decl. ¶¶ 6, 11.)  Despite having taken USGA's final payment after he shut down NWT's business, the Trustee still has not refunded any amounts paid to NWT and has not responded to NWT's demands (*see* Negri Decl. ¶¶ 12-13; Negri Decl. Exhs. K-L), notwithstanding that he has not legal or factual entitlement to retain those sums by reason of NWT's non-performance.

Without waiving any other rights or remedies available to it, USGA has demanded that the Trustee return to it the USGA Dies (including the 2 new dies, if they were produced, or the sum paid for those dies if not produced, plus interest), the price paid by USGA for the silver (or, alternatively, the silver) plus interest, and any medals that actually were struck (in which case

OBJECTION OF UNITED STATES GOLF ASSOCIATION TO TRUSTEE'S MOTION TO AUTHORIZE DEADLINE AND PROTOCOL TO ASSERT OWNERSHIP INTERESTS IN COINING DIES - 5

52975194.1

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101
PHONE (206) 447-4400  FAX (206) 447-9700

Case 16-11767-CMA    Doc 1580    Filed 04/11/18    Ent. 04/11/18 15:42:28    Pg. 5 of 13

USGA would pay for those items at the agreed price). (*See* Negri Decl. Exh. K.)[2] The Trustee never formally responded to that demand.

## **OBJECTIONS**

The Die Disputes Motion is, at best, a thinly veiled, less-than-fully-baked attempt by the Trustee – noticed to be heard just one week before the Court will consider the Trustee's motion to convert NWT's case from Chapter 11 to Chapter 7 - to establish a process by which (i) parties such as USGA claiming ownership in dies currently held by NWT would have 60 days to assert their claims of ownership, (ii) the parties to the dispute would then be subject to a "protocol" under which those claims must be "resolved" in not more than 60 days, in default of which title to the dies would revert entirely to NWT (with the claimant being deemed to have waived any claims of ownership); and (iii) imposing the option for a claimant to a flat $300 fee *per die* to the Trustee in exchange for his ceding any claim of ownership by the NWT estate in such die, on the ground that such a payment compensates the estate for a of holding the die over some period of time.

Notwithstanding that, upon conversion of the case, the current Trustee may have no continuing role in the administration of the Debtor's estate– and should not have such a role, given his poor administration of the NWT estate, and his knowing acquiescence in or negligent oversight of NWT's conduct in accepting USGA's order for the 2018 Medals, and receiving and retaining the USGA payments made on account of the Medals – the motion should be denied for a variety of reasons.

**1. Filed on the eve of conversion of NWT's case from Chapter 11 to Chapter 7, the motion is premature. The disposition of NWT's stock of coining dies should be administered by the chapter 7 trustee.**

---

[2] Exhibit K is a demand letter from USGA's counsel to the Trustee's counsel, dated March 30, 2018. The exhibits to that letter are duplicative of various materials submitted as exhibits to this objection. So as not to burden the Court, USGA does not submit those duplicative exhibits at this time but is willing to do so if requested.

OBJECTION OF UNITED STATES GOLF ASSOCIATION TO TRUSTEE'S MOTION TO AUTHORIZE DEADLINE AND PROTOCOL TO ASSERT OWNERSHIP INTERESTS IN COINING DIES - 6

52975194.1

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
PHONE (206) 447-4400  FAX (206) 447-9700

Case 16-11767-CMA    Doc 1580    Filed 04/11/18    Ent. 04/11/18 15:42:28    Pg. 6 of 13

- With the NWT's business as operated by the Trustee having proved not to be viable, the case is clearly moving from a chapter 11 liquidation to a straight liquidation. Instead of being saddled with the proposed program and structure for resolution of disputes involving thousands of coining dies, the chapter 7 trustee should have the opportunity to make his/her own determination on how best to move forward, and what level of expense, if any, to incur in that effort, to administer this insolvent estate.

- The chapter 7 trustee may adopt a similar or different procedure, or might even elect to abandon some or all of the dies. With the Trustee having run the estate into serious financial distress, any decision on whether to impose an administrative or legal procedure that will result in additional legal cost after conversion should await the chapter 7 trustee's appointment, and should not be left in the hands of the current Trustee.

**2. The "protocol" is fatally defective in that it purports to determine, conclusively, ownership of the dies without any judicial determination of unresolved or unresolvable disputes in derogation of the requirement of an adversary proceeding for such relief, and without affording any procedural safeguards to the claimants.**

- The "protocol" summarily deems any claimant to have waived any ownership interest in a die if the disputes are not resolved within 60 days after the submission of the ownership claim, regardless of whether the inability to reach a resolution results from a delay in the resolution process, a mutual inability of the parties to settle their differences, or some other reason. This creates an incentive for the estate to drag its feet and not press the process ahead, in order to retain and, presumably, attempt to sell the dies – even where a proper adjudication might result in a decision favoring the claimant.

- By wholly removing the determination of ownership wholly from the judicial process- without even a basic right of review by an aggrieved claimant – the protocol

OBJECTION OF UNITED STATES GOLF ASSOCIATION TO TRUSTEE'S MOTION TO AUTHORIZE DEADLINE AND PROTOCOL TO ASSERT OWNERSHIP INTERESTS IN COINING DIES - 7

52975194.1

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
PHONE (206) 447-4400  FAX (206) 447-9700

Case 16-11767-CMA    Doc 1580    Filed 04/11/18    Ent. 04/11/18 15:42:28    Pg. 7 of 13

deprives claimants of their rights of due process.

- The proposed protocol violates the clear requirement that disputes concerning the validity and extent of the estate's ownership of property must be adjudicated in an adversary proceeding, and not by some less formal or seemingly expedient process. See Fed. R. Bank. P. 7001; *SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*, 530 F.3d 230 (3d Cir. 2008); *In re Eastman Kodak Co.*, 2012 Bankr. LEXIS 2746 (Bankr. S.D.N.Y. June 15, 2012) (dispute concerning ownership of property proposed to be sold free and clear of interests under 11 U.S.C. § 363 required adjudication in an adversary proceeding, not through the debtors' contested sale motion). See also *In re Whitehall Jewelers Holdings, Inc.*, No. 08-11261(KG), mem. op. (Bankr. D. Del. July 28, 2008) (denying motion to sell property consigned to debtor pending resolution of adversary proceedings to determine extent and the validity of the consignors' interests in the property). As the Court orally recognized at the hearing on the Trustee's earlier attempt to sell the Medallic assets March 9, 2018, a determination of disputed rights in property requires an adversary process. Indeed, in the absence of an adversary proceeding, the Court lacks the power enter an order determining parties' rights "even if" it had approved the then-pending sale motion; a similar result must follow here.

- Except for the proposed time period and settlement fee, and the requirement that there be a resolution within 60 days, the motion and the proposed order include no details or procedures for the operation of the protocol, leaving the interstices to the whim of the Trustee without any oversight.

- Moreover, with the Trustee having shut the debtor's business, the proposed disposition of the dies clearly fall outside the ordinary course of the debtor's business. With the Trustee having asserted that the NWT estate has rights in thousands of custom coining dies, and to the extent that the protocol contemplates one or

OBJECTION OF UNITED STATES GOLF ASSOCIATION TO TRUSTEE'S MOTION TO AUTHORIZE DEADLINE AND PROTOCOL TO ASSERT OWNERSHIP INTERESTS IN COINING DIES - 8

52975194.1

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
PHONE (206) 447-4400  FAX (206) 447-9700

Case 16-11767-CMA    Doc 1580    Filed 04/11/18    Ent. 04/11/18 15:42:28    Pg. 8 of 13

agreements by the estate to surrender dies either by a claimant's payment of a stated fee per die or entering into some other agreement with the Trustee, the protocol operates as a disguised sale of estate property without the notice and hearing required by Section 363 of the Bankruptcy Code.

**3.** **The Trustee' fails to carry his burden of proof to justify the requested relief.**

- Although the motion purports to seek relief under the rubric of a proposed "settlement" – which, in fact, is nothing under a unilateral construct of the Trustee's own making – the Trustee fails to provide the requisite evidentiary foundation to justify approval and imposition of the "protocol" as a settlement under Fed. R. Bankr. P. 9019. This includes, in particular, the $300 charge to be levied on a claimant in return for the Trustee's agreement to surrender each particular die in which a claimant asserts ownership. "[T]here must be more than a mere good faith negotiation of a settlement by the trustee in order for the bankruptcy court to affirm a compromise agreement. The court must also find that the compromise is fair and equitable…." *In re A & C Props.*, 784 F.2d 1377. 1381 (9th Cir. 1986) (citation omitted). *Accord, e.g.*, *In re Doctor's Hosp. of Hyde Park, Inc.*, 474 F.3d 421, 426 (7th Cir. 2007) (trustee bears the burden to show that a settlement is reasonable, fair and equitable, and in the best interest of the estate.); *In re Roper & Twardowsky, LLC,* 559 B.R. 375, 394 (Bankr. D.N.J. 2016) ("It is the movant's burden to show that a proposed settlement is in the best interests of the estate and the debtor…. Moreover, the "proponent of the settlement has the burden of proving its reasonableness and courts must take into consideration 'the fairness of the settlement to the other persons, i.e., the parties who did not settle.'" (citations omitted)).

- Aside from the Trustee's conclusory statements submitted to support the motion, there is no support for the proposed unilateral protocol and no basis on which the Court may properly assess whether this so-called "settlement" is fair, equitable and in

OBJECTION OF UNITED STATES GOLF ASSOCIATION TO TRUSTEE'S MOTION TO AUTHORIZE DEADLINE AND PROTOCOL TO ASSERT OWNERSHIP INTERESTS IN COINING DIES - 9

52975194.1

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
PHONE (206) 447-4400  FAX (206) 447-9700

Case 16-11767-CMA    Doc 1580    Filed 04/11/18    Ent. 04/11/18 15:42:28    Pg. 9 of 13

the best interest of the NWT estate.

- Indeed, the $300 fee that the Trustee intends to impose per die, as the price of a resolution of ownership disputes, is couched solely in terms of an allocation of unsubstantiated overhead expenses of NWT. This arbitrary figure makes no distinction between dies that were recently manufactured and dies that may have been held at NWT for longer periods. The USGA Dies were only cast in 2015. The Trustee presents no reason why USGA or any similarly situated party should be placed in a position (if it was even willing to accept the proposed arrangement, which it is not) of having to pay the same fee per die as a claimant whose dies were produced by NWT at an earlier time.

- The Trustee also appears to assume that claimants did not already pay for storage, shipping or other costs of NWT's past creation of custom coining dies, and that the prices for the minting of medals with those dies did not already have overhead costs built into the NWT's charges. At a minimum the Trustee should be required to demonstrate the true state of facts, because if (as USGA surmises), those costs were built into the price of the dies, the Trustee now seeks unfairly to burden claimants such as USGA pay again to defray costs already imposed on and paid by them in the course of their prior business dealings with NWT.

**4. The Trustee's proposed "settlement" is not a settlement at all, but instead is a mechanism to extract additional consideration to compensate for the estate's dire administrative insolvency.**

- Although the Trustee seeks the requested relief as a so-called "settlement", the motion is nothing more than an attempt to impose a unilateral framework by which this severely insolvent estate (whose condition deteriorated entirely while under the Trustee's watch) can extract fees for coining dies as to which – as conceded by the Trustee – NWT may or may not even evidence of ownership either by NWT or by the

OBJECTION OF UNITED STATES GOLF ASSOCIATION TO TRUSTEE'S MOTION TO AUTHORIZE DEADLINE AND PROTOCOL TO ASSERT OWNERSHIP INTERESTS IN COINING DIES - 10

52975194.1

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
PHONE (206) 447-4400  FAX (206) 447-9700

Case 16-11767-CMA    Doc 1580    Filed 04/11/18    Ent. 04/11/18 15:42:28    Pg. 10 of 13

claimant.

- The dies themselves lack significant intrinsic value – they are pieces of cast metal bearing images that in some cases (such as the USGA Dies) reflect intellectual property not licensed by the owner for any purpose other than NWT's striking of the medals. Yet, the proposed protocol unfairly places the entire initial burden and cost of proving ownership on the claimants. The protocol is just a means to compel claimants to roll over and escape the cost of protecting their dies and their intellectual property.

- As contemplated by the Trustee, "[t]he Settlement Protocol would give customers a period of *60 days to claim and resolve ownership, after which they will be deemed to have waived any interest they have in a die.*" Dies Dispute Motion, at 4 (italics added). This gives the Trustee an unfair upper hand in retaining the dies by requiring a "resolution" within 60 days after the submission of a claim of ownership, in the absence of which (unless the claimant agrees to the $300 fee per die) title to the dies conclusively is deemed to rest with NWT and the claimants' claims of ownership are forever waived. There is no incentive for the representative of the estate to act quickly, let alone any indication that such person could act responsibly in dealing with what could be a large multiple of claimants on such a timetable.

5. **The Trustee's proposed Settlement Notice fails to give adequate notice to potential claimants of their rights and the consequences of a failure to resolve their ownership claims within the protocol's stated time period.**

- Just as the Die Disputes Motion lacks any specific statement of the terms, scope and process for implementation and operation of the Trustee's protocol, so, too, does the Settlement Notice fail to adequately explain the operation of the protocol and the consequences of failing to resolve ownership claims within the 60-day period.

- After stating that the Court has approved the protocol, the notice explains the terms

OBJECTION OF UNITED STATES GOLF ASSOCIATION TO
TRUSTEE'S MOTION TO AUTHORIZE DEADLINE AND
PROTOCOL TO ASSERT OWNERSHIP INTERESTS IN
COINING DIES - 11

52975194.1

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
PHONE (206) 447-4400  FAX (206) 447-9700

Case 16-11767-CMA    Doc 1580    Filed 04/11/18    Ent. 04/11/18 15:42:28    Pg. 11 of 13

under which "the Trustee" (presumptuously assuming that he will succeed himself as chapter 7 trustee after conversion) will release claims to a dies in exchange for payment of $300 by the claimant, plus the cost of shipment. (Die Disputes Motion, at p. 6.) The notice makes *no* mention of the right of a claimant to claim ownership or the mechanism to do so.

- More significantly, the proposed notice omits any mention of the Trustee's plan that a claimant's failure to "resolve" his claim within 60 days will result in the automatic waiver of the claimant's rights in a die, leaving the estate with the ability to dispose of it however and whenever determined, for whatever price the estate may obtain. (*See* Die Disputes Motion, at p. 4.) In so doing, the Trustee's protocol takes advantage of claimants who may sleep on their rights because they were not properly or timely informed of the complete details of the process and the consequences of their failing to act.

- Finally, the Trustee fails even to give claimants any idea of the possible cost of shipping any dies back to them (over the $300 release fee per die), an expense that the Trustee also tries to foist onto the claimants, some of whom likely paid similar handling fees in the past. In USGA's case, the stated cost of shipping and handling that NWT charged to USGA for the sixteen dies purchased by USGA in 2015 was $48.36 – or *$3.02 per die*. The protocol should not be a license for the Trustee or the estate to realize a windfall on the backs of die claimants.

## **CONCLUSION**

NWT reserves the right to join in objections to the Die Disputes Motion that may be filed by other parties in interest.

For the foregoing reasons, the Court should deny the Trustee's Sale Motion to the extent that it purports to authorize the sale of the USGA Dies and/or any USGA trademarks and service marks.

OBJECTION OF UNITED STATES GOLF ASSOCIATION TO TRUSTEE'S MOTION TO AUTHORIZE DEADLINE AND PROTOCOL TO ASSERT OWNERSHIP INTERESTS IN COINING DIES - 12

52975194.1

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
PHONE (206) 447-4400 FAX (206) 447-9700

Case 16-11767-CMA    Doc 1580    Filed 04/11/18    Ent. 04/11/18 15:42:28    Pg. 12 of 13

DATED this 11th day of April 2018.

**PRYOR CASHMAN LLP**
Richard Levy, Jr., NYS Atty. #1696756
Adm. *Pro Hac Vice*

and

**FOSTER PEPPER PLLC**

*/s/ Jack Cullen*
Jack J. Cullen, WSBA #7330

Attorneys for *United States Golf Association*

OBJECTION OF UNITED STATES GOLF ASSOCIATION TO TRUSTEE'S MOTION TO AUTHORIZE DEADLINE AND PROTOCOL TO ASSERT OWNERSHIP INTERESTS IN COINING DIES - 13

52975194.1

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
PHONE (206) 447-4400  FAX (206) 447-9700

Case 16-11767-CMA    Doc 1580    Filed 04/11/18    Ent. 04/11/18 15:42:28    Pg. 13 of 13