UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>NORTHWEST TERRITORIAL MINT, LLC<br><br>Debtor | Case No. 16-11767-CMA<br>Chapter 11<br><br>**REPLY IN SUPPORT OF MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM** |

COMES NOW Bill Atalla, former CEO of the debtor, and submits the following reply in support of his motion for allowance and payment of his administrative expense claim. Accompanying this reply is the Supplemental Declaration of Bill Atalla.

**1. Timing of Payment**

The trustee argues that Atalla, in seeking immediate payment of a portion of his claim, is trying to obtain a "super-priority", and that there is no authority for this in the Bankruptcy Code. The trustee has things reversed: Atalla, as an employee of the debtor corporation, was entitled to be paid in the ordinary course as he rendered services. This is so both under his employment agreement and under Nevada law. Rather, it is the trustee who lacks any authority for withholding payment from Atalla. The trustee is seeking to benefit from his own misconduct (failure to pay wages and salaries when due), by trying to require Atalla to accept partial compensation on a pro rata basis.

Atalla was an employee of the debtor corporation, not a professional employed by the estate. Unlike the other professionals in this case, working for Northwest Territorial Mint was Atalla's full-time job. Other professionals, such as the trustee and his attorneys, work on multiple cases at the same time and are therefore not as

REPLY - 1

**DONALD A BAILEY**
720 Olive Way, #1000
Seattle WA 98101
206 682 4802
donald.bailey@shaferbailey.com

vulnerable to the cash flow risks of any single business.  That is why it would be fundamentally unfair to lump Atalla in with the other professionals and require him to take a pro rata share of the funds available for administrative expenses.

**Collier** makes clear that ordinary course expenses of a Chapter 11 estate, such as post-petition wages and trade debt, are to be paid when due, and are not subject to subsequent disgorgement.  4 **Collier on Bankruptcy** ¶ 503.03[4], [5] (16th 2018).  Had the trustee fulfilled his legal duty as an employer under the employment contract and Nevada law, Atalla would have been paid *at least* the following sums by December 31, 2017:  Deferred salary, $12,500; Final paycheck, $25,000; Severance pay, $75,000[1]; and Un-reimbursed expenses, $2,909 (a total of $115,409).  (As discussed in the motion, since Atalla's last paycheck was delayed over 30 days, Nevada law imposes a late payment penalty of one month's pay; thus, although the final paycheck was eventually paid, the penalty remains due and owing.)

**2. Late Payment Penalty**

Contrary to the trustee's assertion (ECF #1650 at page 2, lines 13-14), Atalla never agreed to defer or dely his final paycheck or his severance pay.  In fact, he had had so much trouble getting paid, with multiple delayed payments and bounced checks, that he specifically demanded immediate payment.  See Supplemental Declaration of Bill Atalla. In any event, under the Nevada statute,  Nev. Rev. Stat. 608.040, Atalla was entitled to be paid his severance pay – which the trustee concedes to be $75,000 and Atalla contends is $100,000 – on termination, and that clearly was not done.

**3. Vacation Pay**

As described in the supplemental declaration of Bill Atalla, the debtor corporation

---

[1] Atalla believes his severance pay is actually $100,000, as discussed herein.

REPLY - 2

**DONALD A BAILEY**
720 Olive Way, #1000
Seattle WA 98101
206 682 4802
donald.bailey@shaferbailey.com

was in crisis mode throughout his tenure as CEO, and he simply could not take vacation. Had he asked his supervisor (the trustee) for time off, his request would undoubtedly have been refused. Where management makes it impossible for an employee to take vacation, it is fundamentally unfair for management to rely on a "no cash-out" policy to refuse vacation pay. Courts considering the allowance of vacation pay as an administrative expense have generally allowed it if it was accrued post-petition. See, eg., *In re Roth American, Inc.*, 975 F.2d 949, 957 (3d Cir. 1992).

It should be noted that the December 2017 Monthly Operating Report, ECF # 1417 at page 42, lists the post-petition payable to Atalla at $391.33, which is apparently a miscalculation of his accrued vacation pay. Yet surely the trustee knew that as of December 31, 2017, Atalla was owed at least $115,409. And if, as the trustee asserts, there is no cash-out of vacation pay, why was this post-petition payable listed in the first place?

**4. Severance**

The trustee concedes that Atalla is owed $75,000 of severance pay, $25,000 for each quarter of completed service. Atalla submits that he is owed $100,000 of severance pay; first because he actually completed the fourth quarter of service (he was discharged at the close of business on the last business day of the quarter); second because, under Nevada law, if the trustee wanted to obtain the benefit of discharging Atalla two days short of the end of the quarter, he had to pay him in full at the time of termination; and third because, in fact, the trustee sought and obtained Atalla's ongoing services after December 29, 2017.

Moreover, the trustee's present position is inconsistent with the representation made to the Court in the motion seeking approval of Mr. Atalla's employment. The motion, ECF #857, at pages 3-4, says "In the event that the Trustee terminates Mr. Atalla's employment prior to December 31, 2019, the company will pay Mr. Atalla

REPLY - 3

**DONALD A BAILEY**
720 Olive Way, #1000
Seattle WA 98101
206 682 4802
donald.bailey@shaferbailey.com

severance in the total amount of $100,000." Atalla bargained for severance pay knowing the risks of this type of employment, and he is entitled to immediate payment of such severance, in full.

**5. Post-December 29, 2017 Services**

Contrary to the trustee's assertion, Atalla did not render an additional services after his purported termination solely as a volunteer and solely for his own benefit. He worked to find a buyer for the debtor corporation at the trustee's specific request. He did so to save the jobs of the 113 employees who had been laid off, and to salvage some value for creditors. He did not have an agreement for future employment with the prospective purchaser.

The trustee argues that Atalla's efforts did not result in a sale, and therefore, he conferred no benefit on the estate, and should not be compensated. The same can be said of the trustee's efforts to find a buyer. Simply put, ultimate success is not the criterion for awarding professional compensation in a Chapter 11 case; it is whether the services were reasonably intended to benefit the estate. *In re Xebec*, 147 B.R. 518 (BAP 9th Cir. 1992). Atalla's services clearly were reasonably intended to benefit the estate.

Moreover, the trustee's argument is a tacit admission that, had Atalla's efforts been successful, he would be entitled to compensation.

Atalla's hourly rate for these services is the same as the trustee's hourly rate. His experience and expertise in the relevant industry being greater than the trustee's, this is a bargain for the estate.

Although Atalla was initially not formally employed pursuant to Bankruptcy Code §327, his initial employment was approved by the Court and he was an officer of the estate. Having actively sought Atalla's services after his termination as CEO, it was incumbent on the trustee to seek approval of such employment under Bankruptcy Code

REPLY - 4

**DONALD A BAILEY**
720 Olive Way, #1000
Seattle WA 98101
206 682 4802
donald.bailey@shaferbailey.com

1 §327.  It was not up to Atalla to seek such approval.  The trustee should not benefit from
2 having failed to do so.

In order to obtain *nunc pro tunc* approval of employment, the applicant must show 1) a reasonable excuse for not obtaining prior approval; and 2) a material benefit to the estate.  *In re THC Financial Corp.*, 837 F2nd 389, 392 (9th Cir. 1988).  One reasonable excuse for not obtaining prior approval is that it was someone else's responsibility to do so.  *In re Garden Ridge Corp.*, 326 BR 278 (Bankr. D. Del. 2005).  And, as discussed above, Atalla's efforts to find a buyer, while unsuccessful, were reasonably intended to benefit the estate.  To the extent necessary to allow his post-December 29, 2017 claim, Atalla's employment should be approved *nunc pro tunc*.

**6. Attorney Fee**

Atalla's employment agreement provides for an award of attorney fees to the prevailing party in any action to enforce the agreement, ECF #897-1, page 9, section 20.  The Declaration of Donald A Bailey details the attorney fees Atalla has incurred to obtain the payments due to him, in the amount of $4303.41.

**CONCLUSION**

For the foregoing reasons, the Court should enter an order directing the trustee to forthwith pay Atalla the following sums:

| | |
|---|---:|
| Deferred compensation | $12,500.00 |
| Expense reimbursement | $2909.00 |
| Vacation pay | $25,000.00 |
| Severance pay | $100,000.00 |
| Late payment penalty | $25,000.00 |
| TOTAL | $165,409.00 |

The Court should further award Atalla an administrative expense claim of

**DONALD A BAILEY**
720 Olive Way, #1000
Seattle WA 98101
206 682 4802
donald.bailey@shaferbailey.com

REPLY - 5

$54,800.00 for his post-December 29, 2017 services, plus attorney fees of $4303.41, a total of $59,103.41, to be paid on the same basis as other administrative expenses herein.

Dated: May 15, 2018

DONALD A BAILEY
Attorney at Law

/s/ Donald A Bailey
WSB#12289
Attorney for Atalla

REPLY - 6

**DONALD A BAILEY**
720 Olive Way, #1000
Seattle WA 98101
206 682 4802
donald.bailey@shaferbailey.com