1  Michael J. Gearin, WSBA # 20982
   David C. Neu, WSBA # 33143
2  Brian T. Peterson, WSBA # 42088
   K&L GATES LLP
3  925 Fourth Avenue, Suite 2900
   Seattle, WA  98104-1158
4  (206) 623-7580

Honorable Christopher M. Alston
Chapter 11
Hearing Location: Seattle, Rm. 7206
Hearing Date: Friday, December 7, 2018
Hearing Time:  9:30 a.m.
Response Date: November 30, 2018

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

In re:

NORTHWEST TERRITORIAL MINT, LLC,
        Debtor.

Case No.  16-11767-CMA

TRUSTEE'S FIRST APPLICATION FOR
COMPENSATION

### **INTRODUCTION**

Mark Calvert, ("Calvert") the duly appointed Chapter 11 Trustee for Northwest Territorial

Mint, LLC (the "Trustee"), hereby submits this Trustee's First Application for Compensation and

Reimbursement of Expenses (the "Trustee Application" or "Application").[1] This Application is

supported by the Declaration of Mark Calvert, filed contemporaneously herewith.

This chapter 11 case has been extraordinarily complex and difficult.  The Debtor's business

involved the sale of precious metals, principally gold, silver and palladium and the custom minting

of medallions, coins and awards.  The Debtor claimed to be the largest private mint in the United

States.  The Trustee took control over the estate under extreme circumstances.  At the time of the

Trustee's appointment, the Debtor had more than $25 million in unfulfilled bullion orders, had little

---

[1] The Trustee previously submitted an application for fees and expenses in compliance with the Court's direction that the Trustee, Trustee's Counsel, and Cascade Capital Group LLC ("Cascade") file fee applications and set them for hearing on October 6, 2017 (the "2017 Applications").  In the 2017 Applications the Trustee and other professionals requested that the Court defer ruling on allowance or payment of fees.  This Application supersedes and replaces the 2017 Trustee application and expands the timeframe for services to the period April 2016 through September 2018.

TRUSTEE'S APPLICATION FOR COMPENSATION - 1

501949302 v6

cash resources and had inadequate financial reporting and cash management systems. The Debtor had not prepared financial statements or filed tax returns for more than five years. The Debtor had more than 240 employees and was operating from seven locations in six states. There were more than 3000 creditors, and hundreds of inquiries from those creditors regarding the status of the company and their claims.

The Debtor sold, leased and stored precious metal inventory for its customers. The Debtor's procedures and safeguarding and accounting for stored and leased inventory were inadequate and it soon became apparent that a significant amount of leased and stored inventory was not in the possession of the Debtor at the time the Trustee took control. The Trustee immediately took steps to secure and inventory all precious metal inventory on hand and initiated a process for returning customer owned inventory.

On his appointment, the Trustee focused his efforts on preserving and realizing on the enterprise value of the business of the bankruptcy estate for the benefit of creditors. Since the very inception of the bankruptcy case the Trustee and the creditors' committee were aware that there would be no return to unsecured creditors in this case, absent preservation of the enterprise value of the business. The Trustee exerted every possible effort to preserve the value of the custom minting business, but ultimately was unable to do so due to lack of sales revenue growth.

The Trustee exerted every possible effort to sell the custom minting business as a going concern, but was unable to obtain an offer that would achieve that result. After exhausting all possibilities to preserve and reorganize the business or liquidate it as a going concern, the Trustee closed the business and turned his efforts to a wholesale liquidation of the remaining assets of the estate through ordinary course sales and court approved sales of various blocks of assets. The large majority of the assets of the estate have been liquidated.

The case is administratively insolvent by a large margin. There are relatively few remaining assets to administer. The large majority of the administrative claims, other than those of

TRUSTEE'S APPLICATION FOR COMPENSATION - 2
501949302 v6

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1926    Filed 11/16/18    Ent. 11/16/18 19:11:39    Pg. 2 of 23

professionals, have been paid in the ordinary course of the Debtor's business or have been resolved and paid through court approved settlements. The Court established an administrative claims bar date. There are only eight filed administrative claims that remain unpaid. The Trustee has proposed resolutions for each of the remaining administrative claims which would allow them to receive a final distribution in the case. The Trustee will continue to administer the remaining assets of the estate with the goal of concluding the case before year end 2019.

<b><u>CASE OVERVIEW</u></b>

**A. Appointment of the Trustee**

Northwest Territorial Mint, LLC (the "Debtor" or "NWTM"), is a Washington limited liability company that was formed in 2002 by Ross Hansen, who is the Debtor's sole 100% member. Hansen at all times prior to the appointment of the Trustee exercised complete and total operational control over the Debtor. The Debtor sold medals and gold coins, manufactured commemorative medals and ribbons, purchased and sold precious metals, including gold and silver bullion, and stored precious metals in vaults maintained in Federal Way, Washington, and Dayton, Nevada. Prior to the commencement of this Bankruptcy Case, the Debtor had 241 employees and a monthly payroll of approximately $630,000.

On April 1, 2016, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Trustee was appointed over the bankruptcy estate of NWTM on April 11, 2016. The Trustee quickly discovered that the Debtor's business was in a state of duress and was losing money daily. The Debtor had a severe cash shortfall and was at risk of not being able to pay operating expenses. As of the petition date there was approximately $1,000 of cash in the Debtor's bank accounts.

The Trustee learned that the bullion operations had accumulated approximately $25 million in unfulfilled customer orders and that the company was without the inventory or cash resources to fulfill those orders. The bullion operations had Ponzi attributes for the past 7 years in which new

TRUSTEE'S APPLICATION FOR COMPENSATION - 3
501949302 v6

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

customer deposits were used to fill older customer orders. The Trustee's initial investigation of the Debtor's financial affairs revealed that the many of the Debtor's financial records were missing or never kept and there was a severe lack of internal controls for a gold and silver bullion operation.

Upon his appointment, the Trustee immediately secured all the precious metal assets in all locations of the estate. The Trustee changed building locks, changed vault combination codes, and limited access rights to the storage vaults for the precious metals. In addition, the Trustee took detailed inventories and preserved photographic evidence of the metal inventory that was on hand at the time of his appointment. The Trustee also captured a video record of all people that entered the Dayton vault through the completion of the Trustee's physical inventory. That video was subsequently provided to the FBI.

After considerable investigation and efforts to determine whether there was additional inventory in the hands of third parties, the Trustee determined that there was approximately $12.9 million in missing precious metal inventory as of the date of the Trustee's appointment. The missing inventory included approximately $5 million of missing precious metal storage inventory, approximately $5.4 million of missing leased metal inventory, approximately $1.1 million of missing inventory which was the property of a custom minting customer, approximately $540,000 of precious metal inventory provided by customers to complete custom orders, and approximately $860,000 in missing gold sent to the Debtor's Federal Way facility to be sold on a consignment basis.

The Trustee took extensive and careful efforts to identify all precious metal that belonged to individual creditors. The Trustee located only approximately $.9 million in gold, silver, and precious metals that he was able to obtain sufficient support to confirm the ownership of and return, after verifying whether certain creditors had been paid and/or owed sums to the estate. This was not a simple task, as in certain instances, the Trustee found inventory with a customer name on the precious metals when, in fact, the customer had been paid in full for the precious metals. The Trustee

TRUSTEE'S APPLICATION FOR COMPENSATION - 4

501949302 v6

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

filed motions to return the precious metals segregated and identified as belonging to customers. The Trustee submitted multiple supplemental declarations in support of the motions establishing that the inventory sought to be returned was, in fact, owned by the individuals to whom the Trustee sought to return such inventory. As a result, all of the inventory that the Court authorized the Trustee to return has now been returned to creditors. The Trustee is not aware of any additional inventory which was owned by customer which has not been returned to that customer. Substantially all remaining precious metal inventory held by the Debtor has been liquidated.

### B. The Trustee Stabilized the Value of the Debtor

The Trustee was faced with significant operational pressures. He was compelled to close the bullion trading operations and the Graco operations and layoff other staff in order to manage the cash resources of NWTM and to stabilize the Debtor's business operations. Given the dire condition of the Debtor's business, the Trustee was immediately faced with the decision of whether to (a) cease the Debtor's operations and force an immediate liquidation of the company, or (b) attempt to stabilize the business over the coming months in order to either reorganize or sell the Debtor's business in an orderly fashion. The Trustee concluded that if the Debtor's assets were to be immediately liquidated, creditors would receive little or no recovery. In fact, the only creditors who would have received any distribution might have been priority claimants—principally employees, landlords and other administrative creditors. The Trustee, in consultation with the creditors' committee, decided to stabilize the business in order to give the creditors of the estate an opportunity to obtain a meaningful recovery. The Trustee evaluated the enterprise value of the company and estimated that, if the going concern value of the company could be preserved there could be in the range of $15 million to $17 million to return to creditors in this case which would achieve a material return to the estate's three thousand creditors.

The Trustee took efforts to reduce expenses by consolidating the Debtor's business operations and worked to increase sales. The Trustee sold the Debtor's Graco business in order to

**K&L GATES LLP**
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

generate cash to preserve other aspects of the Debtor's business. The Trustee communicated with multiple interested purchasers regarding the sale of the Graco business. On May 6, 2016, the Trustee filed a motion for approval of the sale of its assets related to the Graco business (the "Sale Motion") (Dkt. No. 200). The Sale Motion requested that the Court approve the sale of the Graco-related assets to Tom Tucker and Larry Cook, representing a to-be-formed entity ("Tucker/Cook"). Before the hearing on the Sale Motion, Ira Green, Inc. ("Ira Green") came forward with what the Trustee concluded was a higher and better offer for the assets. On May 27, 2016, the Trustee conducted an auction of the Graco assets and selected Ira Green as the prevailing bidder. On June 2, 2016, the Court approved the sale of the assets to Ira Green for $1,000,000.00, over the objection of Mr. Hansen, who claimed that some of the assets sold were assets owned by Medallic Art Company, LLC.

The Trustee significantly reduced the leased property expenses of the Debtor, by closing a number of locations and consolidating operations into two locations. The Trustee rejected the Debtor's lease for real property in Tomball, Texas, as well as its lease for real property in Federal Way, Washington. The Trustee entered into a new lease in Kent, Washington, to house the corporate offices of the company. The lease in Federal Way was expensive (approximately $26k per month) and was for more space than the Debtor needed. Much of the space in Federal Way was unused by the Debtor on account of the Trustee's elimination of the Debtor's bullion trading operations. The rejection of the Federal Way lease and execution of the new lease in Kent resulted in significant cost savings (approximately $20k per month) to the estate but not until September of 2016. Thus, the estate was burdened with bullion trading operational expenses when the estate had no bullion trading revenues. The Trustee also negotiated a new lease for a reduced amount of space at the Debtor's Green Bay premises, saving approximately $2k per month. The Trustee closed the operations in Auburn, Washington and moved those operations to Dayton, Nevada and rejected the Auburn lease, saving approximately $16k per month. On December 30, 2016, the Trustee filed a motion for

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

authority to retain Mr. Bill M. Atalla as Chief Executive Officer for the Debtor. The Trustee hired Mr. Atalla to grow the sales of the Debtor's custom mint business and maximize the enterprise value of the company. Unfortunately the sales growth never materialized and the Trustee was forced to close the business as a result.

### C. Trustee's Resolution of Prepetition Litigation

At the time of the Trustee's appointment, the Debtor was engaged in multiple lawsuits and disputes, including disputes with governmental entities which were not stayed by the bankruptcy automatic stay. The Trustee sought to avoid litigation expense by achieving settlements which were approved by the Court with the Nevada Department of Environmental Protection ("NDEP") and the Equal Employment Opportunity Commission ("EEOC"). The EEOC had sued the Debtor prepetition in the United States District Court for the Western District of Washington, alleging that the Debtor, through its principal Ross Hansen, had violated Title VII of the Civil Rights Act of 1964, by subjecting female employees to an abusive and hostile work environment. The Trustee and the EEOC agreed to a form of consent decree resolving the suit and granting the EEOC an allowed unsecured claim.

The Nevada Department of Environmental Protection ("NDEP") filed suit against in Nevada on January 29, 2016 alleging the violation of certain environmental laws for a combined 1,071 days and asserting that it was owed civil penalties in an amount not to exceed $25,000 per day. NDEP asserted that the Debtor continued to incur fines on a daily basis. The Trustee entered into negotiations with NDEP and eventually achieved a settlement with NDEP whereby NDEP would be allowed an unsecured prepetition claim.

### D. Litigation against Medallic LLC

NWTM operated a manufacturing facility in Dayton, Nevada that included a satellite corporate office, a 118,000-square foot minting facility, and storage vaults. It was occupied by the Debtor since 2009 until the Trustee vacated the premises in September, 2018. The real property

**K&L GATES LLP**
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

where the Debtor's Dayton facility was located was originally owned by Medallic Art Company Ltd. ("Medallic Ltd"), an entity owned by Robert and Connie Hoff. In early 2009, the Debtor negotiated the acquisition of substantially all of Medallic Ltd's personal property assets, including its equipment, archived materials, and goodwill and negotiated a purchase option and lease for the Dayton facility. However, according to the purchase documents, the eventual buyer was a newly formed entity, owned by Ross Hansen and Dick Bressler. Mr. Hansen and Mr. Bressler, in these proceedings, took the position that such assets had been transferred to an entity known as Medallic Art Company, LLC ("Medallic LLC"), which was formed by Mr. Hansen in 2010.

After the acquisition of the Medallic assets, Ross Hansen moved NWTM employees and equipment of the Debtor located in Auburn, Washington, to the Dayton facility at a substantial cost to the Debtor. The Debtor announced in press releases and internal memoranda that the Debtor had acquired Medallic Art Company and that the Debtor was combining the operations of the two entities. After 2009, only NWTM manufactured product, had employees, and conducted business operations in Dayton. All payroll for employees working in Dayton and other facilities of the Debtor was paid by NWTM. Since July 2009, NWTM, and only NWTM, actively used the "Medallic" name in commerce.

Hansen took the position in the bankruptcy case that the Dayton facility lease and the operating assets acquired from the Hoffs in 2009 were the property of Medallic LLC and that the bankruptcy estate owed significant rents and royalty payments to Medallic LLC. On August 12, 2016, Medallic Art Company commenced an adversary proceeding (the "Medallic Litigation") against the Trustee by filing its Complaint for Declaratory, Injunctive, and Other Relief. Medallic LLC asserted that the Debtor has no ownership right to any assets or property purchased from the Hoffs in 2009 and that the license, royalty, and lease agreements between Medallic LLC and NWTM are valid and enforceable. Medallic LLC also sought judgment for conversion and damages on

TRUSTEE'S APPLICATION FOR COMPENSATION - 8
501949302 v6

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1926    Filed 11/16/18    Ent. 11/16/18 19:11:39    Pg. 8 of 23

account of the Trustee exercising control over property interests that Medallic LLC asserted were its own.

The Trustee answered the Complaint and asserted counterclaims for substantive consolidation, alter ego, fraudulent transfer and other bases of recovery against Medallic LLC. Medallic LLC and its attorneys (whom the Trustee eventually learned incurred in excess of $400,000 in fees in connection with their representation of Medallic LLC), forced the Trustee to incur substantial fees in the Medallic Litigation by, among other things, commencing the action, moving to withdraw the reference of all aspects of the adversary proceeding to the United States District Court, vigorously opposing the Trustee's request to bifurcate the litigation, and by issuing numerous discovery requests that required the Trustee and his counsel to preserve, collect, review and produce thousands of documents. The Trustee engaged in motion practice, including by moving for determination, on summary judgment, of the estate's rights in the Dayton lease, conducting depositions of Ross Hansen and various third party witnesses, and propounding discovery. On the eve of trial, Medallic LLC capitulated, and entered into a stipulated form of judgment, which granted all relief requested by the Trustee and denied the relief requested by Medallic LLC. In particular, the judgment substantively consolidated the assets and liabilities of Medallic LLC with the assets and liabilities of the Debtor.

While the fees and costs associated with the Medallic Litigation were substantial, the Trustee was compelled to defend the claims asserted by Medallic LLC in the Medallic Litigation and prosecute his counterclaims. The Medallic Litigation was critical to the Trustee's ability to preserve the enterprise value of the company. The assets of the Debtor that were located in Dayton, Nevada were essential for the Debtor's operations. If the Hansen and Medallic LLC had prevailed on its claims against the Debtor, Medallic LLC would have been awarded title to assets in Dayton, and granted a considerable money judgment against the Debtor for the Debtor's use of such assets. Under those circumstances, the Trustee would have had no chance of reorganizing the Debtor's

TRUSTEE'S APPLICATION FOR COMPENSATION - 9

501949302 v6

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1926    Filed 11/16/18    Ent. 11/16/18 19:11:39    Pg. 9 of 23

business the Trustee would have been forced to immediately liquidate the Debtor's assets, and Medallic would have held substantial administrative claims against the estate. As Medallic LLC asserted ownership over many of the most valuable of the estate's assets, the residual estate of NWTM would have been of considerably less value than the substantively consolidated estate.

### E. Trustee's Plan of Reorganization and Sale Efforts

Until April of 2017, the Trustee was confident that he would be able to file a chapter 11 plan of reorganization that contemplated operating the company for a period of five years before selling it at the end of the term. The Trustee believed that the business could generate payments to creditors in the amount of $5 million during these five years, plus even greater amounts upon a sale at the end of the five-year term. The Trustee believed that the business' cash flow was sufficient to support the proposal of such a plan. For instance, at the end of March 2017, the Trustee projected a cash balance of nearly $1.5 million at the end of 2017—even after payment of $400,000 in professional fees. Leading up to April 2017, the Trustee spent hours researching, and formulating a chapter 11 plan, including consulting with his counsel on the tax implications of such a plan. However, in April 2017, the sales for the business imploded and the Trustee was forced to defer the chapter 11 plan as contemplated. Since April 2017, the Trustee has made efforts to market the business for a potential § 363 sale to an interested buyer.

### F. Trustee's Efforts to Market and Sell the Company

In the Spring of 2017, the business of the estate suffered unexpected losses which precluded any ability to reorganize the business on terms which would allow emergence from bankruptcy as a going concern. As a consequence, the Trustee explored the option of selling the entire business as a going concern. He commenced marketing efforts as early as May of 2017 that included setting up a data room for potential buyers. He contacted in excess of 60 potential buyers, 10 of which toured the plant and two of which made offers that were not acceptable and approximated liquidation value of the assets. In October, 2017, Bill Atalla, the CEO of the Debtor brought a prospective buyer, Eureka

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

House of Metals ("Eureka House"), to the attention of the Trustee. Eureka House signed a non-disclosure agreement, conducted due diligence, and in November, 2017 the Trustee and Eureka House entered into a purchase and sale agreement under which Eureka House agreed to pay $10,000,000 for the Debtor's assets on a going concern basis. Despite ongoing assurances that it would do so, Eureka House did not fund the earnest money deposit of $500,000. During December, 2017, the Trustee met with other parties that expressed interest in purchasing the company, and provided them with due diligence materials, however no other offer materialized.

### G. Trustee's Close of Business Operations and Liquidation of Assets

Due to inadequate cash resources, the Trustee was forced to close the business on December 29, 2017, after working for many months to sell the business as a going concern. Although the Trustee continued to meet with potential purchasers who might have an interest in reopening the business, no going concern offer was made after the company suspended operations and laid off most of its employees.

Concerned with ongoing expenses, the Trustee sought to liquidate the assets in an expeditious manner and eliminate overhead expenses including salaries and occupancy costs necessary to accomplish the liquidation. On January 19, 2018, the Trustee filed a motion seeking authority to sell the Debtor's assets at an auction to be conducted by the James G. Murphy Company. While seeking authority to liquidate assets via auction, the Trustee continued to meet with potential purchasers in an effort to sell assets through bulk sales. On January 26, 2018, the Trustee entered into an agreement with Medalcraft Mint, Inc. ("Medalcraft") pursuant to which Medalcraft agreed to purchase certain assets related to the Medallic Art Company line of business, including dies associated with customers who had done business with the company in the past 20 years. The Court denied the motion to sell to Medalcraft based on an asserted overbid by a party named Rodger May. Over the next two weeks, the Trustee attempted to negotiate a purchase of all of the estate's remaining assets by Rodger May, who subsequently declined to purchase any of the assets of the

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

estate. Accordingly, the Trustee renewed his motion for approval to sell the Medallic assets to Medalcraft for the price of $1,000,000. The Court approved the sale, which closed in April, 2018. At the same time he was negotiating with Medalcraft, the Trustee engaged in negotiations with Industrial Assets Corp. ("Industrial Assets") to sell the majority of the estate's equipment and machinery, vehicles, and tooling for the price of $1,950,000. The Court approved the sale to Industrial Assets, and the sale closed in April, 2018.

In May, 2018, the Trustee entered into a purchase agreement with the American Numismatic Society ("ANS") pursuant to which ANS agreed to purchase the older dies related to the Medallic line of business, not sold the Medalcraft, as well as certain historical files and assets of the estate for the price of $420,000. On June 15, 2018, the Court approved the asset sale to ANS, and the sale closed on June 19, 2018.

One of the most complex issues the Trustee had to deal with was determination of ownership of NWTM coining dies. Several former customers of NWTM claimed ownership of dies used to manufacture product on their behalf. Over the course of several weeks, the Trustee worked to establish procedures and address concerns expressed by the Court and former customers to resolve title to coining dies, so that the estate would have marketable title and be able to sell the dies which it owned. Ultimately the Court approved procedures under which parties could claim ownership of dies by a fixed deadline. The Trustee and Medalcraft entered into a purchase and sale agreement, approved by the Court, for Medalcraft to purchase unclaimed NWTM dies for $75,000. The sale of the unclaimed dies to Medalcraft closed in August, 2018.

In additional to the liquidation of assets, the Trustee spent significant time dealing with issues related to the preservation of company records. The Trustee sought authority to destroy company records, but because of ongoing criminal proceedings in the United States District Court, the Trustee was required to negotiate a plan for preserving records which may be necessary for the prosecution or defense of the criminal matter. Over the course of several weeks, the Trustee

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

negotiated a document preservation plan with the Office of the United State Attorney and Ross

Hansen's and Diane Erdmann's defense counsel which was approved by the United States District

Court.

**CASE STATUS**

**A. Date of Appointment of Trustee and Administrative Duties**

The Trustee was appointed as Chapter 11 Trustee on April 11, 2017. The Trustee has

faithfully performed all the administrative duties of the Trustee, including but not limited to

preparing bankruptcy schedules and statements of financial affairs for the case; preparing monthly

financial reports; responding to the informational requests of the Department of Justice and Federal

Bureau of Investigation; reviewing filed claims; and interfacing with the more than 3,100 creditors

of the Debtor who filed claims totally more than $84 million.

The Debtor's monthly operating reports contain up-to-date information regarding the amount

of cash on hand or on deposit in the Debtor's estate, and the Debtor's operating profits or losses, and

the amount of unencumbered funds in the Debtor's estate. To the best of the Trustee's knowledge,

the Trustee has filed all monthly operating reports through the date of this Application, and has paid

all quarterly United States Trustee's fees.

**B. Statements of Prior Compensation and Itemized Time Records**

True and correct copies of the Trustee's billing statements are attached to the Declaration of

Mark Calvert in Support of this Application, filed contemporaneously herewith. The billing

statements contain itemized time records which include the date the service was rendered, the

identity of the person providing the services, a detailed description of the services performed and the

total hours and amount of compensation requested. The Trustee has not sought approval of fees or

expenses by the Court in this case or been paid any fees in connection with the case. The Trustee's

ordinary course travel expenses for traveling to the various locations of the Debtor's businesses have

been paid in the ordinary course. To date, the Trustee has been reimbursed for $31,710.30 in

TRUSTEE'S APPLICATION FOR COMPENSATION - 13
501949302 v6

**K&L GATES LLP**
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

ordinary course business expenses including $20,324.70 in ordinary course travel expenses, his $10,000 bond premium, and some expenses incurred for photography, locksmith and disposition of refuse in connection with the move from the Kent facility. The Trustee's financial consultants Cascade Capital Group LLC received an interim payment of $110,338.70 in fees in December 2016, pursuant to authority in the Order Establishing Procedures for Interim Payment of Fees and Costs of Professionals [Dkt. No. 394]. However, in 2017, Cascade paid back $100,000 of that amount to assist in addressing cash flow pressures for the estate's business to help protect the potential enterprise value of the Debtor's business.

### C.  Source of Payment and Amount of Unencumbered Funds

The Debtor's monthly operating reports contain up-to-date information regarding the amount of cash on hand or on deposit in the Debtor's estate, and the Debtor's operating profits or losses, and the amount of unencumbered funds in the Debtor's estate.  Per the October, 2018 monthly operating report, the estate held as of October 31, 2017, cash of $2,389,183, accounts receivable with a book value of $79,185 and store inventory with a book value of $354,624. The Trustee has resolved and paid through settlements all secured claims against cash, inventory or receivables.  The Court established a bar date for administrative claims.  Other than the professional claims, there are only eight remaining filed and unpaid administrative claims totaling less than $250,000.  The Trustee has filed a motion proposing a final resolution of these filed administrative claims.

### D.  Other Employed Professionals

The Trustee has engaged Cascade Capital Group ("Cascade Capital") as accountants to the Trustee. K&L Gates LLP has been employed as counsel for the Trustee. Miller Nash Graham & Dunn has been employed as counsel for the Official Unsecured Creditors' Committee (the "Committee").  Loraine Barrick and Lorraine Barrick LLC have been employed by the Committee as a financial advisor, but have not yet provided any services to the estate.  Based on communications with counsel for the Committee, the Trustee does not anticipate that Ms. Barrick

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

will file a fee application in the case. James G. Murphy has been employed by the Trustee as Auctioneer, but has not incurred any fees other than his initial appraisal fee of $2,500 which has been paid as provided in his employment order.

**E.  Trustee's Calculation of Compensation Under § 326(a)**

The Trustee has calculated the compensation allowable to him under § 326(a) of the Bankruptcy Code. As is reflected in the monthly operating reports filed with the Court, through October 31, 2018, the Trustee has distributed $29,435,335 to creditors and parties in interest in the case. Pursuant to § 326(a), the Trustee's allowable fee on these distributions would be $906,310. The Trustee's detailed cap calculation is contained on Exhibit E to his Declaration in support of this Application. The Trustee proposes to distribute $2 million to all professionals pro rata in partial satisfaction of compensation as may be approved by the Court.

## SUMMARY OF PROFESSIONAL SERVICES BY PROJECT CATEGORY

In support of this Application, the Trustee submits the following supporting documentation, which is attached to the Declaration of Mark Calvert filed in support of this Application and all of which is incorporated herein by reference:

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| Exhibit A | Itemized Billing Statements |
| Exhibit B | Summary Sheet of Monthly Fees by Project Category |
| Exhibit C | Summary Sheet of Monthly Hours by Project Category |
| Exhibit D | Summary Sheet of Monthly Expenses by Category |
| Exhibit E | Trustee's Calculation of Compensation Under § 326(a) |

The exhibits submitted in connection with this Application demonstrate the amount of fees the Trustee incurred in his capacity as Trustee from April 2016 through September 2018 (the "Application Period"). The Trustee's hourly rate was $400 during the Application Period, except that travel was billed at a rate of $200 per hour. The exhibits break down, by each month, the amount

TRUSTEE'S APPLICATION FOR COMPENSATION - 15
501949302 v6

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

of hours worked by the Trustee and the amount of fees the Trustee incurred. The exhibits further describe the number of fees and hours worked by the Trustee within particular project categories.

As the exhibits demonstrate, the Trustee incurred a total of $1,020,365.00 in fees during the Application Period. The Trustee's fees were for the following categories of tasks, each of which are described in more detail below: Accounting, Bank Database, Bankruptcy Admin, Bankruptcy Schedules, Cash Flow Management, Claims, Close of Company, Committee, Court Hearing, DIP, Inventory, Investigation, Investigation – American Express, Investigation – Diane/Ross, Investigation – Discovery, Investigation - FBI/US Trustee Office, Investigation - Storage Inventory/Vault, Job Costing, Liquidation Analysis, Litigation Support, Medallic, Monthly Operating Reports, Operations, Plan of Reorganization, Sale of Assets, Sale of Company, and Travel

Exhibit D is a chart showing the amount of costs the Trustee incurred in his capacity as Trustee during the Application Period. The chart breaks down the fees he has incurred on a monthly basis and further describes the expenses.  The Trustee incurred a total of $35,389.66 in expenses during the Application Period, of which $31,710.30 have been reimbursed by the Debtor as ordinary course expenses. The Trustee seeks approval of all expenses and authority to reimburse the net balance of $3,679.36 in unreimbursed expenses.

<b>NARRATIVE SUMMARY OF SERVICES<br>RENDERED ON A PROJECT SUMMARY BASIS</b>

All of the professional services rendered by the Trustee during the Application Period are set forth in detail on Exhibit A to the Trustee's Declaration and summarized in the exhibits to this Application. Brief descriptions of certain services deserving specific mention are highlighted below, by project category:

<u>Accounting</u> (Total Hours: 21.80). This category represents fees incurred in connection with financial statements, Accounts Receivable review, Deposits to be returned and analysis of data. The Trustee incurred a total of $8,720.00 in fees in this category during the Application Period.

TRUSTEE'S APPLICATION FOR COMPENSATION - 16

501949302 v6

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1926    Filed 11/16/18    Ent. 11/16/18 19:11:39    Pg. 16 of 23

Bank Database (Total Hours: 4.80). This category represents fees incurred in connection with data collection of all bank/cash data, categorizing all transactions, and analysis of data. The Trustee incurred a total of $1,920.00 in fees in this category during the Application Period. While the Trustee's hours in this category were limited, Cascade's time was much more significant. The database is a tool that allows the Trustee to explore, analyze, and identify financial trends, the flow of funds, and the availability of funds. The database has been used in all aspects of the case, including fraudulent transfer analysis, analysis of distributions to owners and investigation of missing inventory. It is the tool that allowed the estate to confirm storage and lease customer payments for inventory returned to them, and it allowed the Trustee to track the source of funds used by Ross Hansen in the acquisition of the assets owned by Medallic Art Company, Ltd. The database was also instrumental in the Trustee's determination of the Debtor's insolvency dating back to 2008, and his determination that the Debtor used subsequent customer deposits to buy inventory to fulfill older customer orders. Using the database, the Trustee has been able to distinguish the amount of missing cash and inventory from amounts lost in the operations of the Debtor's business. The database will also be used by the Trustee to complete tax returns for the Debtor for the past 6 years.

Bankruptcy Admin (Total Hours: 113.70). Among other services provided in this category during the Application Period, the Trustee (i) performed duties related to initial takeover of company as trustee; (ii) conducted meetings with Ross Hansen; (iii) bonded the company; (iv) made sure that adequate insurance was in place; (v) met with lawyers; (vi) indexed files; (vii) compiled and reviewed documentation related to my understanding the bankruptcy case; (viii) restricted duties and access of employees to precious metals. The Trustee incurred a total of $45,210.00 in fees in this category during the Application Period.

Bankruptcy Schedules (Total Hours:3.20). This category includes work associated with the gathering of financial and operating data for the schedules filed with the Bankruptcy Court. The Trustee incurred a total of $1,280.00 in fees in this category during the Application Period. The

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Trustee's time in this category was limited as the schedules were completed by Cascade and K&L Gates, with the Trustee reviewing the completed schedules.

<u>Cash Flow Management</u> (Total Hours: 109.80). Among other services provided in this category, the Trustee created a rolling daily cash flow with daily cleared incoming and outgoing cash transactions. The Trustee's daily cash flow schedule includes projections through the end of 2017 to help manage cash. Cash flow shortfalls have been an ongoing and extensive issue NWTM has faced since the petition date. The Trustee also analyzed the need and timing of DIP financing on a strategic basis several times in order to help the Debtor remain a going concern. The Trustee incurred a total of $43,920.00 in fees in this category during the Application Period.

<u>Claims</u> (Total Hours: 237.40). Among other services provided in this category, the Trustee negotiated resolution of the claims asserted by the EEOC and NDEP, analyzed missing asset claims, conducted analysis of storage customer claims, verified ownership of stored inventory, conducted proof of claim reconciliations, and reviewed and responded to customer inquiries from many of the approximately 3,100 of the Debtor's creditors—many of whom the Trustee has been obligated to speak with on a number of occasions. The Trustee incurred a total of $94,960.00 in fees in this category.

<u>Close of Company</u> (Total Hours: 199.70). This category includes work associated with logistical and closing of services for the move of the Auburn plant to Dayton and, close down and move out of the Kent office. The Trustee established procedures and weekly updates on the closing and clean up items to be done to close the Dayton Plant, conducted a vacation liability analysis and a WARN act analysis. The Trustee incurred a total of $79,880.00 in fees in this category during the application period.

<u>Committee</u> (Total Hours: 185.00). Among other services provided in this category during the Application Period, the Trustee drafted reports for the Unsecured Creditors Committee (the "Committee"), communicated with the Committee, and participated with meetings with the

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Committee. The Trustee has worked closely with the Committee to ensure that they have adequate information and help them understand the realities of this case and the Trustee's efforts. The Trustee incurred a total of $73,500.00 in fees in this category during the Application Period.

Court Hearings (Total Hours: 236.50). This category consists of time related to court hearings, including meetings with the Trustee's counsel in preparation for the hearings. This category includes time reviewing declarations and attending court when appropriate. Throughout the case, the Court has had a number of questions concerning many of the motions filed by the Trustee. The Trustee sought to provide the Court with adequate information to address all of its concerns, which in certain instances called for the Trustee's attendance with counsel in Court. The Trustee incurred a total of $94,600.00 in fees in this category during the Application Period.

DIP (Total Hours: 18.4). This category consists of work the Trustee performed related to analyzing DIP financing on a strategic basis several times in order to help the Debtor remain a going concern. The Trustee incurred a total of $7,360.00 in fees in this category during the Application Period.

Inventory (Total Hours: 16.30). This category consists of work with stored inventory customer analysis. The Trustee incurred a total of $6,520.00 in fees in this category during the Application Period.

Investigation (Total Hours: 111.70). Among other services provided in this category during the Application Period, the Trustee searched for missing inventory, collected and analyzed data related to the Debtor's payment of the American Express card in Diane Erdmann's name, reviewed correspondence related to Ross Hansen and Diane Erdmann, responded to information requests from the FBI and Department of Justice, and participated in depositions of Ross Hansen and Diane Erdmann. The Trustee incurred time in this category based on what the Trustee determined was normal and appropriate in a bankruptcy case. The Debtor's lack of adequate records, internal controls, segregation of duties by staff, and customer storage records all resulted in a significant

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

amount of work and effort than what is typically required. The Trustee incurred a total of $43,285.00 in this category during the Application Period.

Job Costing (Total Hours: 3.20). This category consists of work the Trustee performed related to the gathering of production data, die cost analysis, and various categories of custom orders cost to determine business profitability. The Trustee incurred a total of $1,280.00 in this category during the Application Period, as some of the job costing time was allocated by the Trustee to the Operations category described below.

Liquidation Analysis (Total Hours: 20.40). This category consists of work the Trustee performed related to the liquidation analysis and recovery. The Trustee incurred a total of $8,160.00 in this category during the Application Period.

Litigation Support (Total Hours: 18.80). This category represents fees incurred in connection with services related to mediation support, settlement offer review, ARM collection and prepping for trial. The Trustee incurred a total of $7,520.00 in this category during the Application Period.

Medallic (Total Hours: 39.40). Among other services provided in this category, the Trustee performed services related to the verification and identification of assets allegedly owned by Medallic, analysis of transfer of assets to Graco, review and analysis of Medallic LLC financial statements, and preparation of analysis to be presented at trial. The Medallic Litigation required a significant amount of time to confirm the flow of funds, the Debtor's insolvency, and fraudulent transfers. The bulk of the work in this category appears in Cascade's application. The Medallic Litigation was critical to this bankruptcy estate. As explained above, the Trustee's ownership of the Medallic-related assets is absolutely essential to running the Debtor's business and preserving its enterprise value. The Trustee incurred a total of $14,990.00 in this category during the Application Period.

Monthly Operating Reports (Total Hours: 30.40). This category consists of efforts the Trustee took to collect data from accounting staff for the required operating reports. The Trustee

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

analyzed financial statement data for accuracy and drafted write-ups of significant monthly events. The Trustee incurred a total of $12,160.00 in fees in this category during the Application Period.

<u>Operations</u> (Total Hours: 518.30). This category consists of work performed by the Trustee in dealing with daily operational issues that arise in connection with the Debtor's business. The Trustee evaluated issues, formulating solutions, providing directions to managers with respect to such issues. This is the largest category of time for the Trustee. The operations of the Debtor were in disarray upon the Trustee's appointment and lacked any structure. The Trustee focused on cutting costs to achieve profitability. This category included the Trustee's time related to operating issues for staffing, compensation, healthcare, safety compliance, environmental compliance, product pricing, and production scheduling. The Trustee incurred a total of $207,245.00 in fees in this category during the Application Period.

<u>Plan of Reorganization</u> (Total Hours: 156.80). Among other services provided in this category, the Trustee conducted personnel review, performed company-wide lease reviews and negotiations, evaluated the Debtor's operations, formulated a financial model for a reorganization plan, conducted budget plan, worked on sales order process optimization, and evaluated the possible sale of the company. The Trustee incurred a total of $62,720.00 in fees in this category during the Application Period.

<u>Sale of Assets</u> (Total Hours: 282.20). This category consists of the Trustee's creation of an unsolicited buyers list and price model for the Trustee's sale of the Graco business in Tomball, Texas, and the sale of excess equipment and fixtures in Nevada. This category also included the Trustee's time to retain an auction firm to value the Debtor's equipment, determine ownership of equipment, determine whether equipment could be sold, sell some equipment, and list other equipment. The Trustee incurred a total of $112,880.00 in fees in this category during the Application Period.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    <u>Sale of Company</u> (Total Hours: 166.60). This category consists of work performed by the

2    Trustee to evaluate the possible sale of the entire company, including creating a buyers list,

3    formulating price models, extensive correspondence with potential buyers, meeting with potential

4    buyers, creating and sending potential buyers requested information. The Trustee incurred a total of

5    $66,615.00 in fees in this category during the Application Period.

6    <u>Travel</u> (Total Hours: 128.20). This category consists of time spent by the Trustee traveling to

7    local and out-of-state locations. The Trustee has billed his travel time at half his $400 per hour rate

8    for this case. The Trustee incurred a total of $25,640.00 in fees in this category during the

9    Application Period.

10                                   **<u>CONCLUSION</u>**

11         The Trustee submits the foregoing Application and requests approval of the fees and costs

12   described herein pursuant to 11 U.S.C. § 330 and LBR 2016-1 and authority to disburse funds in

13   partial satisfaction of the allowed fees and costs.

14         DATED this 16th day of November, 2018.

15

16

17

                                   */s/ Mark Calvert*
18                                 Mark Calvert, Chapter 11 Trustee

19

20

21

22

23

24

25

26

TRUSTEE'S APPLICATION FOR COMPENSATION - 22

501949302 v6

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## CERTIFICATE OF SERVICE

The undersigned declares as follows:

That she is a paralegal in the law firm of K&L Gates LLP, and on November 16, 2018, she caused the foregoing document to be filed electronically through the CM/ECF system which caused Registered Participants to be served by electronic means, as fully reflected on the Notice of Electronic Filing.

Also on November 16, 2018, she caused the foregoing document to be mailed to the Parties at the addresses listed below:

Northwest Territorial Mint LLC
325 E Washington St #226
Sequim, WA 98382

I declare under penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct.

Executed on the 16th day of November, 2018 at Seattle, Washington.

/s/ Denise A. Lentz
Denise A. Lentz

TRUSTEE'S APPLICATION FOR COMPENSATION - 23

501949302 v6