UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re:<br><br>NORTHWEST TERRITORIAL MINT, LLC,<br><br>Debtor. | No. 16-11767-CMA<br><br>SUPPLEMENTAL DECLARATION OF MARK D. NORTHRUP IN SUPPORT OF FINAL APPLICATION FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES OF COUNSEL FOR THE OFFICIAL UNSECURED CREDTIORS' COMMITTEE (MILLER NASH GRAHAM & DUNN LLP)[1] |

Miller Nash Graham & Dunn LLP and Mark D. Northrup, attorneys for the Official Unsecured Creditors' Committee (the "Committee"), hereby make their Final Application as follows for payment of fees and reimbursement of expenses in this case:

1. **The Administrative Bar Date Order**. Committee counsel submits its Final Application pursuant to the Court's August 30, 2018 Order Establishing Deadline for Filing Claim for Payment of Administrative Expenses Against the Estate (Dkt. #1866; the "Administrative Bar

---

[1] The undersigned submits this Supplemental Declaration in order to provide to the Court the materials attached hereto in text-searchable format. This Supplemental Declaration is otherwise identical in content to the Declaration previously filed by the undersigned on October 12, 2018 as Dkt. #1895.

SUPPLEMENTAL DECLARATION OF MARK D. NORTHRUP IN SUPPORT OF FINAL APPLICATION FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES OF COUNSEL FOR THE OFFICIAL UNSECURED CREDITORS' COMMITTEE (MILLER NASH GRAHAM & DUNN LLP) -- 1
Case No. 16-11767-CMA
4818-7773-1712.1

MILLER NASH GRAHAM & DUNN LLP
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1931    Filed 11/19/18    Ent. 11/19/18 11:03:35    Pg. 1 of 13

Date Order"). The Administrative Bar Date Order sets October 15, 2018 as the bar date for the filing of administrative claims "arising on or before July 31, 2018." Committee counsel, counsel for the Trustee, and the Trustee have previously discussed the submission of final fee applications of estate professionals and agreed to designate December 7, 2018 as the hearing date for such final applications. Consistent with these discussions, the Administrative Bar Date Order (¶ 4) states that "[p]rofessionals retained in this case whose employment has been approved pursuant to 11 U.S.C. §327 shall file and serve their applications for compensation and note such applications for hearing no later than December 7, 2018." Although the Bar Date Order may have been intended to exempt all estate professionals from the October 15 bar date, the employment of Committee counsel, as a technical matter, was not "approved pursuant to 11 U.S.C. §327." Rather, Committee counsel's employment was approved pursuant to 11 U.S.C. §1103. Out of an abundance of caution, Committee counsel therefore submits its Final Application in compliance with the October 15 deadline established by the Administrative Bar Date Order. Committee counsel will note its Final Application for hearing on December 7, 2018 and will provide timely advance notice of such hearing, as required by Local Bankruptcy Rules.

2. **Date of Appointment.** The undersigned, Mark D. Northrup ("Declarant"), is a partner in the Seattle office of Miller Nash Graham & Dunn LLP ("MNGD"), which, by Ex Parte and Final Orders of this Court entered on April 28, 2016 (Dkt. #151) and June 21, 2016 (Dkt. # 424), was appointed attorneys for the Committee. Pursuant to the Court's Orders, the effective date of MNGD's engagement was April 22, 2016.

3. **Previous Application/Compensation.** Responsive to a prior informational request of the Court, MNGD filed a First Interim Application for Payment of Fees and Reimbursement of Expenses (Dkt. #1195), with supporting Declaration (Dkt. #1196), on September 15, 2017. The Trustee and Trustee's counsel similarly filed their own interim applications at that time. The Court addressed the professionals' interim applications at a hearing conducted on October 6, 2017 but

SUPPLEMENTAL DECLARATION OF MARK D. NORTHRUP IN SUPPORT OF FINAL APPLICATION FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES OF COUNSEL FOR THE OFFICIAL UNSECURED CREDITORS' COMMITTEE (MILLER NASH GRAHAM & DUNN LLP) -- 2
Case No. 16-11767-CMA 4818-7773-1712.1

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1931    Filed 11/19/18    Ent. 11/19/18 11:03:35    Pg. 2 of 13

issued no ruling on them. MNGD's instant Final Application is intended to supersede its First Interim Application.

MNGD has previously received $56,990.18 in payment of fees and expenses, pursuant to the procedures approved by the Court's Order Establishing Procedures for Interim Payment of Fees and Costs to Professionals (Dkt. #394). By its Final Application, MNGD seeks final approval of the allowance and payment of said $56,990.18, as well as final approval and allowance of the additional fees and costs described herein.

4. **Application Period/Source of Compensation**. The period of time addressed in this Application is April 22, 2016 through October 12, 2018 (the "Application Period"). Committee counsel is aware that the Debtor's estate lacks sufficient cash assets to pay in full the fees and costs requested in Committee counsel's Final Application, in the Trustee's final application, and in the final application of Trustee's counsel. Accordingly, MNGD seeks allowance of the fees and costs that it is requesting in its Final Application, with the understanding that payment of allowed fees and costs will presumably be on a pro-rata basis and subject to the final determination of the Court.

5. **Services Provided/Benefits to the Estate**.

**A. Background**. The Debtor filed its voluntary petition for Chapter 11 protection on April 1, 2016. By Ex Parte Order Approving Appointment of Chapter 11 Trustee (Dkt. #51), entered on April 11, 2016, the Court appointed Mark Thomas Calvert as Chapter 11 Trustee (the "Trustee"). Since April 11, 2016, the Trustee has managed the affairs of the Debtor's bankruptcy estate.

As the Court is aware, this Chapter 11 case has been both substantial and complex. At the time of its bankruptcy filing, the Debtor, Northwest Territorial Mint (the "Mint"), claimed to be the largest private mint in the United States. The Mint's business was comprised of: a) the sale of precious metals (gold, silver, platinum, palladium); and b) the custom minting of medallions, coins and other awards.

SUPPLEMENTAL DECLARATION OF MARK D. NORTHRUP IN SUPPORT OF FINAL APPLICATION FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES OF COUNSEL FOR THE OFFICIAL UNSECURED CREDITORS' COMMITTEE (MILLER NASH GRAHAM & DUNN LLP) -- 3
Case No. 16-11767-CMA 4818-7773-1712.1

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1931    Filed 11/19/18    Ent. 11/19/18 11:03:35    Pg. 3 of 13

The claims bar date in this case was September 1, 2016. As of October 3, 2016, the total dollar amount of the 3,056 creditor claims filed was $71,568,783, the bulk of which were unsecured.

The Mint and its division, Medallic Art Company, LLC, were controlled by the Mint's principal, Mr. Ross Hansen, along with Hansen's long time live-in girlfriend, Diane Erdmann. On April 12, 2018, both Mr. Hansen and Ms. Erdmann were criminally indicted on charges of committing mail fraud and wire fraud in their operation of the Mint. *See, U.S. v. Hansen and Erdmann*, Case No. CR18-092RAJ, U.S. District Court for the Western District of Washington. Trial of the criminal case is currently set for February 25, 2019.

Unsecured creditors in this case fell into three basic categories:

"Unfulfilled purchase order customers" consisted of Mint customers who ordered metal or other products from the Mint, duly paid for their purchases, but never received their metal or merchandise. These claims appear to total approximately $25 million.

"Storage customers" consisted of Mint customers who purchased metal from the Mint or entrusted their metal to the Mint for on-site storage—and were charged a storage fee for that service. At the time the Chapter 11 case was filed, however, this stored metal had, for the most part, disappeared.[2] These claims appear to total approximately $6.5 million.

"Lease customers" consisted of Mint customers who entered into agreements with the Mint under which the Mint was authorized to use the customer's metal for business purposes: to sell, use in production, or use in metals market investments or trading. In return, the Mint agreed to replace any customer metals used, increased by some additional percentage, say, 3.5%. For

---

[2] Following his appointment, the Chapter 11 Trustee determined that some metal not only remained on site but was identifiable as belonging to a fortunate few customers. The bankruptcy court has approved the return of this metal to those customers.

SUPPLEMENTAL DECLARATION OF MARK D. NORTHRUP IN SUPPORT OF FINAL APPLICATION FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES OF COUNSEL FOR THE OFFICIAL UNSECURED CREDITORS' COMMITTEE (MILLER NASH GRAHAM & DUNN LLP) -- 4
Case No. 16-11767-CMA 4818-7773-1712.1

MILLER NASH GRAHAM & DUNN LLP
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1931    Filed 11/19/18    Ent. 11/19/18 11:03:35    Pg. 4 of 13

example, if the Mint used 100 ounces of a customer's "leased" silver, the Mint agreed to replace the silver used with 103.5 ounces of new silver. As in the case of the "stored" metal, however, the "leased" metal had largely vanished by the time of the Chapter 11 filing and the Trustee's follow-on assumption of control over the debtor's business.

Although the Trustee initially considered a potential liquidation of estate assets, the Committee and the Trustee subsequently recognized that any meaningful recovery for creditors in this case would have to come from a reorganized and ongoing business operation; and the Trustee and Committee further recognized that achieving this result would first require the resolution of two primary issues: a.) the ownership of the Medallic Art Company LLC assets; and b.) the ownership and assumption of the debtor's Dayton, Nevada, lease. Both of these issues were resolved in favor of the Trustee and the bankruptcy estate.

Unfortunately, as the Court is aware, the Trustee was never able to maintain and stabilize the Mint's operation and revenues at a level sufficient to support the formulation and confirmation of a plan of reorganization. As a result, after a series of negative economic performances through the middle and second-half months of 2017, the Trustee made the decision to terminate operations and close the business as of December 31, 2017. Through the close of the business in December 2017 and into the first months of 2018, the Trustee did seek out and identify a number of parties who had expressed an interest in purchasing the Mint business. One by one, however, these potential purchasers either elected not to pursue an acquisition or proved to be economically unable to consummate any such purchase transaction.

The Trustee has spent the bulk of 2018 resolving priority claims and negotiating piecemeal sales of estate assets. Early in this process it became evident that the total value of estate assets would be substantially less than the amount of administrative priority claims and that general unsecured creditors would therefore receive nothing on their claims.

SUPPLEMENTAL DECLARATION OF MARK D. NORTHRUP IN SUPPORT OF FINAL APPLICATION FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES OF COUNSEL FOR THE OFFICIAL UNSECURED CREDITORS' COMMITTEE (MILLER NASH GRAHAM & DUNN LLP) -- 5
Case No. 16-11767-CMA 4818-7773-1712.1

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1931    Filed 11/19/18    Ent. 11/19/18 11:03:35    Pg. 5 of 13

**B. Specific Services Provided**. Bankruptcy Code §1103(c) authorizes and empowers an unsecured creditors committee to do the following:

1.) Consult with the trustee or debtor in possession concerning the administration of the case;

2.) Investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

3.) Participate in the formulation of a plan, advise those represented by such committee of such committee's determinations as to any plan formulated, and collect and file with the court acceptances or rejections of a plan;

4.) Request the appointment of a trustee or examiner under section 1104 of this title; and

5.) Perform such other services as are in the interest of those represented.

With respect to this Final Application and consistent with the foregoing powers and duties articulated in §1103(c), Committee counsel seeks allowance of compensation for the following services:

**Case Administration/General Administrative Matters**. Matters of general administration in this case principally included the following: a) initial gathering of general information and "getting up to speed" on all aspects of the case; b) drafting the Committee engagement and by-laws; c) establishing protocols for communications with the Committee and for information sharing with the Trustee and his counsel; d) attending the First Meeting of Creditors; e) analysis of pending or looming contested matters, including the Tracy Law Firm fee issues, the proposed substantive consolidation of the Mint assets and the Medallic Arts Company LLC assets, and the assumption of the Mint's Dayton lease; f) active participation in the Trustee's proposed postpetition hiring

SUPPLEMENTAL DECLARATION OF MARK D. NORTHRUP IN SUPPORT OF FINAL APPLICATION FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES OF COUNSEL FOR THE OFFICIAL UNSECURED CREDITORS' COMMITTEE (MILLER NASH GRAHAM & DUNN LLP) -- 6
Case No. 16-11767-CMA 4818-7773-1712.1

MILLER NASH GRAHAM & DUNN LLP
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1931    Filed 11/19/18    Ent. 11/19/18 11:03:35    Pg. 6 of 13

and retention of Mint management, including Mike White as Production Manager and William Atalla as Mint CEO; g) separate discussions and meetings with Ross Hansen and his counsel and the Trustee and his counsel regarding possible plans of reorganization; h) attending a mediation on the Medallic substantive consolidation issues conducted in Seattle by Judge Corbit; i) analysis of the Trustee's proposed motion for the approval of DIP financing; j) review and analysis of the Trustee's monthly U.S. Trustee operating reports; k) extensive monitoring of the Mint's performance and communications with the Trustee and Trustee's counsel regarding the status of a potential reorganization through December 2017; l) extensive communications with the Trustee and Trustee's counsel in 2018 regarding potential sales of estate assets and resolution of pending priority claim disputes; m) analysis and response to the Trustee's motion to convert the case; and n) conference with the Office of the U.S. Trustee regarding issues of case administration.

During the Application Period, Committee counsel expended a total of 303.0 hours ($145,692.00) on these Case Administration functions, as specifically set forth in attached Exhibit A (Matter 1).

**Communications and Meetings with Committee**. Correspondence and communications in this case between and among the Committee, its members, the Trustee, and their counsel have been extensive. The case demanded such extensive multi-party communications because of the multi-faceted and complex business operations and activities of the Mint's owner, on the one hand, and, on the other hand, the Trustee's efforts to investigate all aspects of these operations and their impact on achieving a return for creditors.

Through the course of this case, Committee counsel arranged and conducted a multiple of Committee meetings: April 25, 2016; May 3, 2016; May 9, 2016; May 13, 2016; May 20, 2016; June 6, 2016; June 30, 2016; July 29, 2016; August 30, 2016; September 21, 2016; October 6, 2016;

SUPPLEMENTAL DECLARATION OF MARK D. NORTHRUP IN SUPPORT OF FINAL APPLICATION FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES OF COUNSEL FOR THE OFFICIAL UNSECURED CREDITORS' COMMITTEE (MILLER NASH GRAHAM & DUNN LLP) -- 7
Case No. 16-11767-CMA 4818-7773-1712.1

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1931    Filed 11/19/18    Ent. 11/19/18 11:03:35    Pg. 7 of 13

November 29, 2016; January 19, 2017; February 28, 2017; April 6, 2017; May 10, 2017; June 15, 2017; August 1, 2017; November 16, 2017. Many of these Committee meetings included lengthy presentations in which the Trustee and his counsel provided information to the Committee on all aspects of case status and strategy. As part of these meetings, the Committee was able to question directly, and react to, the Trustee's administration of the case. Between these formal Committee meetings, Committee counsel participated in multiple telephonic and email communications with individual Committee members. The function of these individual communications was to address specific questions about case status and issues of Committee concern, including questions on: the scope and authority of Committee participation in case oversight; the nature and confidentiality of Committee communications; the composition of the Committee and the inter-personal relationships of Committee members; the legal aspects of the relationship between the Committee's views on case administration and the Trustee's ultimate authority to conduct the case based on the Trustee's personal business judgment; the extent to which the Committee should support or oppose the Trustee's proposed actions (e.g., the sale of the Mint's Tomball, Texas assets; the sale of Dayton, NV equipment; strategy for litigation with Ross Hansen and Diane Erdmann; the retention of new Mint management; litigation of the Medallic lawsuit; the need for, and consequences of, DIP financing; evaluation of potential asset purchase transactions; effects on creditors of conversion of the case to a Chapter 7); and the overall, overriding issue of formulating a case strategy that would produce the best recovery possible for the unsecured creditor body. Consistent with Bankruptcy Code §1103(c), these frequent Committee communications and interactions with the Trustee afforded the Committee the ability to "consult with the trustee concerning the administration of the case" and to assess the "acts, conduct, assets, liabilities, and financial condition of the estate, the operation of the estate's business and the desirability of the continuance of such business."
SUPPLEMENTAL DECLARATION OF MARK D. NORTHRUP IN SUPPORT OF FINAL APPLICATION FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES OF COUNSEL FOR THE OFFICIAL UNSECURED CREDITORS' COMMITTEE (MILLER NASH GRAHAM & DUNN LLP) -- 8
Case No. 16-11767-CMA 4818-7773-1712.1

MILLER NASH GRAHAM & DUNN LLP
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1931    Filed 11/19/18    Ent. 11/19/18 11:03:35    Pg. 8 of 13

During the Application Period, Debtor's counsel expended a total of 249.2 hours ($119,550.00) on these Committee Communication issues, as specifically set forth in attached Exhibit A (Matter 2).

**Employment of Professionals and Fee Applications.** During the Application Period, Committee counsel prepared the Application and supporting court documents required for employment as Committee counsel under the Bankruptcy Code. The Court entered Ex Parte and Final Orders approving Committee counsel's Application on April 28, 2016 (Dkt. #151) and June 21, 2016 (Dkt. # 424).

Committee counsel, along with the Committee, also arranged for and conducted an interview process for the selection and appointment of a Committee financial advisor. The interview and selection process extended to multiple candidates and concluded with the Committee's selection of Lorraine Barrick as financial advisor. Committee counsel prepared the requisite Application for Ms. Barrick's appointment and the Court entered its Final Order of appointment on April 25, 2017 (Dkt. #992).

In addition to securing appointments for Committee professionals, Committee counsel expended a total of 36.4 hours: 1) preparing its First Interim Application for Payment of Fees and Reimbursement of Expenses (Dkt. #1195), with supporting Declaration (Dkt. #1196); 2) analyzing and responding to the interim fee applications of the Trustee and Trustee's counsel; 3) attending the hearing on the First Interim Application; and 4) preparing the instant Final Application.

During the Application Period, Debtor's counsel expended a total of 74.9 hours ($35,644.50) on these Employment of Professional and Fee Application issues, as specifically set forth in attached Exhibit A (Matter 3).

**Communications with Non-Committee Unsecured Creditors**. Bankruptcy Code §1102(b)(3) requires that a committee "provide access to information to creditors who hold claims of the kind represented by that committee and are not appointed to the

SUPPLEMENTAL DECLARATION OF MARK D. NORTHRUP IN SUPPORT OF FINAL APPLICATION FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES OF COUNSEL FOR THE OFFICIAL UNSECURED CREDITORS' COMMITTEE (MILLER NASH GRAHAM & DUNN LLP) -- 9
Case No. 16-11767-CMA 4818-7773-1712.1

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1931    Filed 11/19/18    Ent. 11/19/18 11:03:35    Pg. 9 of 13

committee." There are more than 3,000 creditors in this case, the vast bulk of whom are unsecured. Accordingly, at the First Meeting of Creditors Committee counsel made publicly available its direct contact information and advised all creditors that they could contact Committee counsel if they sought information regarding the status of the case, the procedure for filing proofs of claim, the prospects of a plan of reorganization or other avenue of recovery, and any other information. Not surprisingly, during the Application Period, Committee counsel received, and responded to, hundreds of telephone calls and emails from unsecured creditors seeking information about the case.

Committee counsel expended a total of 124.7 hours ($59,520.50) communicating with non-Committee creditors, as specifically set forth in attached Exhibit A (Matter 4).

**Asset Analysis and Recovery**. In the first months of the Application Period, Committee counsel conducted preliminary investigations into the status of potential estate assets. This investigation included: a review of the Trustee's Bankruptcy Schedules and Statement of Financial Affairs; communications with parties expressing an interest in purchasing the Debtor's Tomball, Texas, assets; investigation of the status and location of certain Remington-type silver statues; a preliminary review of potential bankruptcy avoidance actions; and a site visit to the Debtor's Auburn and Federal Way offices.

Committee counsel expended a total of 11.4 hours on these asset analyses ($5,425.00), as specifically set forth in attached Exhibit A (Matter 5).

**Asset Disposition.** In the first months of the Application Period, Committee counsel actively participated in the proposed sale of the Debtor's Tomball, Texas assets. Committee counsel initially conveyed Committee support for the sale to the Court, then participated in the follow-on auction of the Tomball assets that was occasioned by the attempt (unsuccessful) of Ross Hansen to acquire the assets through a competing bid.

SUPPLEMENTAL DECLARATION OF MARK D. NORTHRUP IN SUPPORT OF FINAL APPLICATION FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES OF COUNSEL FOR THE OFFICIAL UNSECURED CREDITORS' COMMITTEE (MILLER NASH GRAHAM & DUNN LLP) -- 10
Case No. 16-11767-CMA 4818-7773-1712.1

MILLER NASH GRAHAM & DUNN LLP
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1931    Filed 11/19/18    Ent. 11/19/18 11:03:35    Pg. 10 of 13

During the Application period, Committee counsel expended a total of 33.1 hours ($16,035.00) addressing these asset sale issues, as specifically set forth in attached Exhibit A (Matter 6).

**Claims Administration and Objections.** During the Application Period, Committee counsel conducted a preliminary legal analysis of a significant claims allowance issue: the extent to which some unsecured creditors were, or might be, entitled to priority treatment of a portion of their claims pursuant to Bankruptcy Code §507(a)(7). A substantial number of creditors asserted §507(a)(7) priority in their proofs of claim on the theory that monies transmitted to the Debtor prepetition on purchase orders that were never filled qualified as payments tendered for "personal, family, or household use." Had there been a successful reorganization, resolution of this issue would have had a significant effect on creditor recoveries in this case.

During the Application period, Committee counsel expended a total of 7.7 hours ($2,270.00) addressing this claim administration issue, as specifically set forth in attached Exhibit A (Matter 7).

**Benefits to the Estate**. Bankruptcy Code §330(a) governs the allowance of the fee applications of bankruptcy professionals (including Committee counsel). In order to be approved, a fee application must seek "reasonable compensation for actual, necessary services rendered by the…professional person" and "reimbursement for actual, necessary expenses." Further, a court may not allow compensation for "unnecessary duplication of services" or for "services that were not reasonably likely to benefit the estate" or "necessary to the administration of the estate." Courts analyzing these statutory requirements have made it clear that "benefit to the estate" means that the "services were 'reasonably likely' to benefit the estate at the time the services were rendered." *In re Mednet*, 251 B.R. 103, 108 (9th Cir. BAP 2000). Moreover, "benefit to the estate" is not restricted solely to monetary benefit. *In re Kohl*, 95 F.3d 713, 715 (8th Cir. 1996); *see, also, In re Smith*, 317 F.3d 918, 926 (9th Cir. 2002) (Section 330(a)

SUPPLEMENTAL DECLARATION OF MARK D. NORTHRUP IN SUPPORT OF FINAL APPLICATION FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES OF COUNSEL FOR THE OFFICIAL UNSECURED CREDITORS' COMMITTEE (MILLER NASH GRAHAM & DUNN LLP) -- 11
Case No. 16-11767-CMA 4818-7773-1712.1

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1931    Filed 11/19/18    Ent. 11/19/18 11:03:35    Pg. 11 of 13

"does not require that the services actually provide an identifiable, tangible and material benefit to the [debtor's] estate."). Another important consideration is whether or not the services rendered "promoted the bankruptcy process or administration of the estate in accordance with the practice and procedures provided under the Bankruptcy Code and Rules for the orderly and prompt disposition of the bankruptcy cases and related adversary proceedings." *In re Spanjer Bros., Inc.*, 203 B.R. 85, 90 (Bankr. N.D. Ill. 1996).

As described and identified in this Application, all of the services performed by Committee counsel were rendered in accordance with the powers and duties delegated to committees by Bankruptcy Code §1102(b)(3) and §1103(c); and all Committee counsel's services therefore "promoted the bankruptcy process or administration of the estate in accordance with the practice and procedures provided under the Bankruptcy Code and Rules for the orderly and prompt disposition of the bankruptcy cases and related adversary proceedings." Accordingly, the fact that no plan of reorganization was ultimately confirmed in this case provides no basis for denying allowance of Committee counsel's Application. *See, e.g., In re Crown Oil, Inc.*, 257 B.R. 531, 541 (Bankr. D. Mont. 2000) ("The fact that the Chapter 11 Plan was ultimately not confirmed does not, by itself, bar recovery of compensation for services performed in the Chapter 11 case.").

5. **Itemized Time Records and MNGD Professionals.** The services for which compensation is hereby applied are more particularly described in the itemized statement of services attached hereto as Exhibit A. This statement is a true reflection of the time and description of services MNGD has performed on behalf of the Committee. From April 22, 2016 through October 12, 2018, MNGD professionals expended a total of 804.0 hours in performance of its role as Committee counsel in this Chapter 11 case. MNGD is seeking final allowance of $384,137.00 in compensation for these services.

SUPPLEMENTAL DECLARATION OF MARK D. NORTHRUP IN SUPPORT OF FINAL APPLICATION FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES OF COUNSEL FOR THE OFFICIAL UNSECURED CREDITORS' COMMITTEE (MILLER NASH GRAHAM & DUNN LLP) -- 12
Case No. 16-11767-CMA 4818-7773-1712.1

MILLER NASH GRAHAM & DUNN LLP
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1931    Filed 11/19/18    Ent. 11/19/18 11:03:35    Pg. 12 of 13

The legal services described on Exhibit A were rendered principally by Mark D. Northrup, Geoffrey Groshong, and John Knapp. During the Application Period, Mr. Northrup's time for similar services was/is ordinarily charged at an hourly rate of $475.00-$500.00; Mr. Groshong's rate is $500.00; and Mr. Knapp's rate is $450.00.

6. **Statement of Expenses.** MNGD seeks no reimbursement for expenses incurred in this case.

7. **Status of the Case.** As set forth above, the Trustee and Committee recognized early on that achieving a recovery for creditors in this case would require the resolution of three threshold issues: a) the substantive consolidation of the Medallic Art Company LLC assets with the assets of the Debtor's estate; b) the assumption of the Debtor's Dayton, Nevada, lease; and c) the successful economic rehabilitation of the Debtor's manufacturing operation in Dayton. The first two of these issues were resolved in favor of the Trustee and the bankruptcy estate but the third—and most critical element—was not achieved.

**Summary.** Based on the foregoing statements and materials, MNGD requests that the Court enter an order:

a.) Allowing the payment of $384,137.00 in fees, with payment of this amount to be rendered only as provided by subsequent order of the Court;

b.) Allowing the payment of $0 in costs;

c.) Providing that payment of the foregoing total requested award of $384,137.00 (or such other amount as the Court may award) be reduced by the $56,990.18 previously received by Committee counsel pursuant to the procedures approved by the Court's Order Establishing Procedures for Interim Payment of Fees and Costs to Professionals (Dkt. #394).

Given at Seattle, Washington under penalty of perjury under the laws of the State of Washington this 16th day of November, 2018.

/s/ *Mark D. Northrup*

SUPPLEMENTAL DECLARATION OF MARK D. NORTHRUP IN SUPPORT OF FINAL APPLICATION FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES OF COUNSEL FOR THE OFFICIAL UNSECURED CREDITORS' COMMITTEE (MILLER NASH GRAHAM & DUNN LLP) -- 13
Case No. 16-11767-CMA 4818-7773-1712.1

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1931    Filed 11/19/18    Ent. 11/19/18 11:03:35    Pg. 13 of 13