William Hanson
Creditor/NWTM
PO Box 64655
Univ. Pl. WA
98464

NOVEMBER 20, 2018

UNITED STATES BANKRUPTCY COURT
CASE # 16-11767-CMA
NORTHWEST TERRITORIAL MINT BANKRUPTCY

WESTERN DISTRICT OF WASHINGTON
700 Stewart St
Seattle, WA 98101

FILED
Western District of Washington
at Seattle

NOV 29 2018

MARK L. HATCHER, CLERK
OF THE BANKRUPTCY COURT

THE HONORABLE CHRISTOPHER M. ALSTON:

I was appointed by the US Trustee as co-chair of the creditors committee until Mike Gearin coerced my resignation with threat of litigation.

I am of the opinion that the compensation to the professionals for administrative fees should reflect the outcome of this bankruptcy. The estate was worth more at the beginning of this process than it is worth at the completion of the work of the professionals. Their work was a disservice to the creditors.

Reasons for denying compensation for a job done poorly, include:

re: Trustee, Mark Calvert: The creditors never received any reports. Storage creditors were specifically concerned about their metal in the vaults. The creditors have no idea what existed in the vaults at the time of initiation of the BK. The committee repeatedly asked for a forensic accounting from the time prior to initiation of the BK. None was provided.

No reorganization plan was ever presented to the creditors which would re-establish the business. A reorganization and restart of the business was the only evident option for recovery to the creditors. By all appearances the work of the professionals was to create billable hours. The committee was advised to not talk to other creditors, and to have those creditors call the professionals. Another attempt to develop more billable hours. Mr. Calvert did provide to the creditor committee his version of a reorganization plan, but his plan looked like a copy of 40 pages of definitions from Black's Law Dictionary. I was accused of meeting with Ross Hansen which is true. The manual for Creditor's Committee members states that the creditor committee is to meet with the debtor in an effort to create a re-org plan. Mr Calvert was not going to do that. Mr Bucknell, attorney to Ross Hansen, did provide the basis of a viable re-org plan which was submitted through Mark Northrup to the committee members. It is from that plan that I was trying to create a plan that would serve the creditors to then submit to the committee.

The committee repeatedly asked for forensic accounting of the metal path under Ross Hansen specifically the three months prior to the initiation of bankruptcy. Mark Calvert never did provide needed information. Mr. Calvert did provide to the two co-chairs, a summary of the

check book register from the mint prior to the initiation of the BK. Several entries were noted of large payments made to precious metal wholesalers. The other co-chair contacted A-Mark, a major supplier, inquiring about obtaining information regarding what was ordered, when it was shipped and where it went. A-Mark was very cooperative but they needed more information than the check number, they needed a purchase order number to investigate purchases and delivery of metal prior to the BK Mr. Calvert was asked to provide any numbers relative to the transactions on several occasions, both in phone calls and emails. HE PROVIDED NOTHING. No investigation was ever performed.

If developing some level of recovery is the goal of the trustee, Mr. Calvert has failed miserably. No evident effort on his part was directed to restart the company. The hiring of Mr. Atalla, as CEO, was to create a scapegoat for the failure, not to really get the company off the ground.

Mr. Calvert's company , Cascade Capital Group, an accounting company and the accountant for Mr Calvert as BK Trustee, has never provided an accounting to the creditors. None of their records have been examined by creditors or an outside inspection. Their fee is almost one million dollars to this point for NO VISIBLE WORK PRODUCT.

Mark Northrup, counsel to the Creditor's Committee, seeks compensation, but in reality he did not work for the creditor's committee but did report to Mark Calvert and Mike Gearin. A prime example of that relationship is the letter I wrote to Mark Northrup, asking him to inform the court that several members of the Creditor's Committee wanted Mark Calvert removed as Trustee. That letter and information never got to the court but did immediately get to Mike Gearin and Mark Calvert. That letter is the real reason I was kicked off the committee.

Another example of Mark Northrup not working for the committee is when the Creditor's Committee voted to hire Elaine Barrick as a forensic accountant to examine Mark Calvert's accounting and books. Mr Northrup, changed her title to financial advisor, and she never performed any function for us. It all stopped with him.

The service of these professionals was not to the creditors. If the remaining funds are short of the total fee claims they only have Mark Calvert and themselves to blame. The committee was committed to rescuing the company.

Before any distribution of fee payment, Elaine Barrick, or an accountant chosen by the court, should be allowed to perform an audit which had been the original intent of the committee. No audit would be necessary if regular reports, to reflect both accounting and administration, had been made. Now too many questions and doubts exist because the creditors have had no voice in the process. But questions did arise, and because of the performance of the professionals. Thusly an accounting, to verify the books and records, paid for with the remains of the estate, should be performed before the case is closed and the professionals compensated.

It is my deep regret that the committee was not able to represent the creditors interests in court and for that I blame Mark Northrup.

*William [signature]*

William Hanson, Creditor NWTM