Mark D. Northrup
Miller Nash Graham & Dunn LLP
2801 Alaskan Way, Suite 300
Seattle, WA 98121-1128
Telephone: (206) 624-8300
Facsimile: (206) 340-9599
Email: mark.northrup@millernash.com
*Attorneys for The Official Unsecured Creditors' Committee*

Honorable Christopher M. Alston
Chapter 11
Hearing Date: December 7, 2018
Hearing Time: 9:30 a.m.
Response Date: November 30, 2018

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re:<br><br>NORTHWEST TERRITORIAL MINT, LLC,<br><br>Debtor. | No. 16-11767-CMA<br><br>RESPONSE OF COUNSEL FOR THE OFFICIAL UNSECURED CREDITORS' COMMITTEE TO FEE APPLICATIONS OF TRUSTEE AND TRUSTEE'S PROFESSIONALS |

Miller Nash Graham & Dunn, LLP, and Mark D. Northrup, counsel for the Official Unsecured Creditors' Committee (the "Committee") in this case, hereby respond as follows to the following fee applications and related supporting documents filed by Mark Calvert, as Chapter 11 Trustee (the "Trustee"), Cascade Capital Group LLC (the "Trustee's Accountants"), and K&L Gates LLP (the "Trustee's Counsel") (the Trustee's Accountants and Trustee's Counsel are collectively referred to herein as the "Trustee's Professionals"): the Trustee's First Application for Compensation (Dkt. #1926; the "Trustee's Application"); the Declaration of Mark Calvert in Support of Trustee's First Application for Compensation (Dkt. #1927; the "Trustee's Declaration"); the First Application for Compensation of Cascade Capital Group LLC as Accountants for the Chapter 11 Trustee (Dkt. #1924; the "Cascade Application"); the Declaration of Mark Calvert in Support of the First Application for Compensation of Cascade Capital Group LLC as Accountants

RESPONSE OF COUNSEL FOR THE OFFICIAL UNSECURED CREDITORS' COMMITTEE TO FEE APPLICATIONS OF TRUSTEE AND TRUSTEE'S PROFESSIONALS-- 1
No. 16-11767-CMA 4820-4173-9905.1

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1943    Filed 11/30/18    Ent. 11/30/18 16:55:00    Pg. 1 of 15

for the Chapter 11 Trustee (Dkt. #1925; the "Cascade Declaration"); K&L Gates LLP Application for Compensation (Dkt. #1928; the "K&L Gates Application"); and the Declaration of Michael Gearin in Support of the K&L Gates LLP Application for Compensation (Dkt. #1929; the "Gearin Declaration"):

## I. Introduction

Both the Trustee and the Trustee's Counsel acknowledge that "this case is administratively insolvent by a large margin." Gearin Declaration at p. 4 (Dkt. #1929). The Trustee testifies that the estate currently contains: $2,389,183 in cash; accounts receivable in the amount of $79,185; and store inventory with a book value of $354,624. Trustee's Application at p. 14. As filed, the Trustee's Application ($909,799.30) and the Applications of Trustee's Counsel ($3,253,536.74) and Cascade ($953,889.20) alone total $5,117,225.24. In addition, Committee counsel has separately submitted its own fee application in the amount of $384,137.00 (Dkt. #1931) and there remain eight other allowed, unpaid administrative creditor claims totaling approximately $250,000. Trustee's Application at p. 14. Based on these numbers, the estate is thus administratively insolvent in the amount of $2,928,370.

These facts bear witness to the grim realities of this case. First and foremost, they confirm that general unsecured creditors of this Debtor will receive no recovery on their claims. This is a devastating blow to the hopes of the 3,000+ creditors who have submitted proofs of claim in this case.

Second, this reality suggests a potential threshold issue of standing. Bankruptcy Code §1109(b) provides that unsecured creditors' committees have the right to appear and be heard on "any issue in a case under this chapter." Some cases, however, have read into §1109 a "standing" requirement that demands that the party in interest seeking to appear have "a sufficient stake in the

RESPONSE OF COUNSEL FOR THE OFFICIAL
UNSECURED CREDITORS' COMMITTEE TO FEE
APPLICATIONS OF TRUSTEE AND TRUSTEE'S
PROFESSIONALS-- 2
No. 16-11767-CMA 4820-4173-9905.1

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1943    Filed 11/30/18    Ent. 11/30/18 16:55:00    Pg. 2 of 15

proceeding so as to require representation." *In re Global Industrial Technologies, Inc.*, 645 F.3d 201, 210 (3rd Cir. 2011). Here, the Committee's members and its constituent body of all general unsecured creditors arguably have no "stake in the [fee application] proceeding," since there will be no distribution on their claims. Regardless, the law firm of Committee counsel certainly has a "stake" in the fee application process, since estate funds are ostensibly available for the fractional payment of administrative claims.

## II. Response

As the Local Bankruptcy Rules require, the Trustee Declaration and the Cascade Declaration, both submitted by Mark Calvert in his two separate capacities as Trustee, on the one hand, and principal of Cascade, on the other, identify professional services performed in a number of task categories. The Gearin Declaration presents its time entries similarly sorted into specific work categories. Committee counsel has examined in detail the Trustee Applications and supporting Declarations and registers, without limitation, the following concerns with the Court:

**A. The Trustee's Application**

**1.) The Statutory Predicate**

Bankruptcy Code §330 provides:

§330. Compensation of Officers

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103 –

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and

RESPONSE OF COUNSEL FOR THE OFFICIAL UNSECURED CREDITORS' COMMITTEE TO FEE APPLICATIONS OF TRUSTEE AND TRUSTEE'S PROFESSIONALS-- 3
No. 16-11767-CMA 4820-4173-9905.1

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1943    Filed 11/30/18    Ent. 11/30/18 16:55:00    Pg. 3 of 15

(B) reimbursement for actual, necessary expenses.

(2) The court may, on its own motion or on the motion of the United State Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

(3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for –

(i) unnecessary duplication of services; or

(ii) services that were not –

(I) reasonably likely to benefit the debtor's estate; or
(II) necessary to the administration of the case.

RESPONSE OF COUNSEL FOR THE OFFICIAL UNSECURED CREDITORS' COMMITTEE TO FEE APPLICATIONS OF TRUSTEE AND TRUSTEE'S PROFESSIONALS-- 4
No. 16-11767-CMA 4820-4173-9905.1

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1943    Filed 11/30/18    Ent. 11/30/18 16:55:00    Pg. 4 of 15

> ...
> (7) In determining the amount of reasonable compensation
> to be awarded to a trustee, the court shall treat such compensation
> as a commission, based on section 326.

Under this structure, once a court has determined "reasonable compensation" according to the §330(a) criteria, a trustee's fees will be reduced, if necessary, to the statutory maximum calculated under §326(a). *See, e.g., In re Financial Corp. of America*, 114 B.R. 221, 224 (9th Cir. BAP 1990) ("Trustee fees should be set according to Section 330 criteria, not merely according to the amount of moneys disbursed…The limits in [Section 326(a)]…are to be applied as outer limits, and not as grants or entitlements to the maximum fees specified."). In his Application, the Trustee seeks payment of $906,310 in fees pursuant to the formula set forth in Bankruptcy Code §326(a), based on his distribution of $29,435,335 in estate funds during the period from April 11, 2016 through October 31, 2018.[1]

The basic guidelines for courts' application of §330(a) to the determination of "reasonable compensation" are well known:

● In order to arrive at a determination of a reasonable fee allowance, bankruptcy courts must "examine the circumstances and manner in which the professional services were performed and the results achieved." *In re Garcia*, 335 B.R. 717, 724 (9th Cir. BAP 2005).

● A bankruptcy court has "considerable discretion in determining whether to disallow all, part, or none of the fees and expenses of a properly employed professional." *In re Triple Star Welding, Inc.*, 324 B.R. 778, 789 (9th Cir. BAP 2005). In addition, if a court finds that services performed were "necessary" but not "reasonable," it may unilaterally reduce an applicant's "excessive" hourly rate and the number of hours for which the applicant seeks

---

[1] Exhibit A to the Trustee Declaration contains the Trustee's time entries and fees allocated to each. Exhibit A thus constitutes, in essence, a standard "lodestar" fee application that produces a total fee claim of $1,020,365.00. Since this amount exceeds the §326(a) cap amount of $906,310, the cap amount serves, as a threshold matter, to limit any lodestar award.

RESPONSE OF COUNSEL FOR THE OFFICIAL
UNSECURED CREDITORS' COMMITTEE TO FEE
APPLICATIONS OF TRUSTEE AND TRUSTEE'S
PROFESSIONALS-- 5
No. 16-11767-CMA 4820-4173-9905.1

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1943    Filed 11/30/18    Ent. 11/30/18 16:55:00    Pg. 5 of 15

compensation. *Unsecured Creditors Committee v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 961 (9th Cir. 1991).

- In cases in which the §326(a) fee cap applies, courts have also acknowledged the effect of "extraordinary circumstances" as a basis for reducing trustee fees beneath the calculated cap amount. Such cases may, however, apply only to Chapter 7 trustees, not to Chapter 11 trustees. *See, e.g., In re Salgado-Nava*, 473 B.R. 911 (9th Cir. BAP 2012); *In re Scoggins*, 517 B.R. 206 (Bankr. E.D. Cal. 2014).

**2.) <u>Creditor Reaction</u>**

"Taking into account all relevant factors," is the Trustee's fee request of $906,310 "reasonable" for purposes of determination under Bankruptcy Code §330?

As the Court is aware, this has been a very difficult case. The Chapter 11 reorganization of the Mint's business operations—which was the only path through which unsecured creditors would recover anything—failed; the estate is administratively insolvent by millions of dollars; and the Court has publicly expressed its displeasure with more than a few actions (or events) that have taken place during the Trustee's administration of the case. Under these circumstances, it is not surprising that members of the Committee have expressed strong personal views of the Trustee's conduct.

On November 1, 2018, Committee members Paula and Richard Pehl filed with the court their "Request for Redress of Grievances for Defalcations against the Estate" (Dkt. #1901; the "Pehl Submission"). Extending for 70 pages, the Pehl Submission sharply criticizes the Trustee on multiple grounds. For example: "By failing to disclose all estate assets, the Trustee created the environment that facilitated defalcations against the estate." Submission, p. 7. The Trustee's administration of the China dies and business was characterized by a "lack of accounting precision" and an "almost perverse insistence on being vague." Submission, p. 8. With respect to the Mint's Pentagon operation, "the Trustee did not act to protect NWTM's IP property, including its phone numbers; he did not act to protect NWTM's trademarks; he did not act to

RESPONSE OF COUNSEL FOR THE OFFICIAL UNSECURED CREDITORS' COMMITTEE TO FEE APPLICATIONS OF TRUSTEE AND TRUSTEE'S PROFESSIONALS-- 6
No. 16-11767-CMA 4820-4173-9905.1

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1943    Filed 11/30/18    Ent. 11/30/18 16:55:00    Pg. 6 of 15

protect NWTM's licenses; he did not preserve NWTM's domains. This is gross negligence." Submission, p. 26. "Not positioning a competent production manager to restore the productivity of Medallic as a mint was a fateful and irreversible decision that left the company in the hands of people who were either not competent or who had a vested interest in crashing it." Submission, p. 39.

On November 21, 2018, David James, a Co-Chair of the Committee, also requested that Committee counsel submit to the Court his (following) email (originally sent to Committee counsel):

> I do feel compelled to respond to the court about payment to Calvert and his company. As I stated before, I have no problem with your fees but want to contest Calvert and his Capital group receiving any payment whatsoever, since he, in all our unsecured creditors' views, failed to do anything he stated he could and would do. Incompetent and unprofessional in every aspect of his operation, attitude, procedures. His forensic accounting skills were non-existent. Based upon his presentation and statements about his expertise, he demonstrated that he did not possess any of the attributes of forensic accounting, data mining, cluster analysis or applied mathematics. Skills needed to follow the money and that he stated he had. No matter how much I tried to help him do his job he rebuked my offer and skills in exactly what he proclaimed he possessed when he was named Trustee by Mr. Martin Smith. With my over 35 years' experience in doing exactly what he said he could do and his job description, which demanded that he could do, he was not interested in listening to me or anyone else concerning accomplishing his anointed and accepted task as Trustee. His ego, misguided sense of professionalism, plus his unending attempt to appear as F. Lee Bailey or Johnny Cochran resulted in his squandering the entire assets of what was left in the estate while never accomplishing the most basic of his required tasks: that of finding the money or where it went. His accountant skills were flawed at best resulting in continued errors in monthly, quarterly, and interim reports. He demonstrated time and time again that he had no idea of superior accounting skills, or forensic accounting.

It is fundamental that a Chapter 11 trustee is empowered to administer a bankruptcy case in accordance with his business judgment. *See, e.g., In re Consolidated Auto Recyclers, Inc.*, 123 B.R.

RESPONSE OF COUNSEL FOR THE OFFICIAL UNSECURED CREDITORS' COMMITTEE TO FEE APPLICATIONS OF TRUSTEE AND TRUSTEE'S PROFESSIONALS-- 7
No. 16-11767-CMA 4820-4173-9905.1

MILLER NASH GRAHAM & DUNN LLP
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1943    Filed 11/30/18    Ent. 11/30/18 16:55:00    Pg. 7 of 15

130, 140 (Bankr. D. Me. 1991) ("So long as a trustee conducts the affairs of the estate by exercising his business judgment in good faith, upon a reasonable basis, and within the scope of his authority under the Code, he may proceed without interference."); also citing *Bennett v. Williams*, 892 F.2d 822, 824 (9th Cir. 1989) (deference to business management decisions of bankruptcy trustee). Committee counsel is confident that the Court will take whatever actions it deems necessary to afford the Trustee an opportunity to respond to the foregoing allegations and also to establish the extent to which the Trustee's exercise of his business judgment was appropriate, despite the Trustee's failure to reorganize the Debtor's business.

Committee counsel is also confident that the Court will properly assess such creditor comments in its examination, for Trustee fee award purposes, of the totality of "the circumstances and manner in which the professional services were performed and the results achieved." With respect to this "results achieved" factor, Committee counsel notes the following excerpt from *In re Stoecker*, 118 B.R. 596, 605-6 (Bankr. N.D. Ill. 1990), in which the court addressed a trustee's §326(a) fee application in a similarly failed Chapter 11:

> [T]his case remains a failed Chapter 11 reorganization. Dividends were not paid to unsecured creditors and the several businesses of the Debtor have not been successfully reorganized…[T]he underlying goals of Chapter 11 have not been achieved. Maximum results justify maximum compensation. Lesser results should produce lesser allowed compensation…The Court does not view it an injustice or unduly parsimonious to award the Trustee less than the maximum [§326(a)] amount because the Trustee did not obtain the maximum results.[2]

### 3. Additional Committee Counsel Concerns

---

[2] In *Stoecker*, the court concluded that the trustee "had done a commendable job" but reduced the trustee's fee award by approximately 17%.

RESPONSE OF COUNSEL FOR THE OFFICIAL
UNSECURED CREDITORS' COMMITTEE TO FEE
APPLICATIONS OF TRUSTEE AND TRUSTEE'S
PROFESSIONALS-- 8
No. 16-11767-CMA 4820-4173-9905.1

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1943    Filed 11/30/18    Ent. 11/30/18 16:55:00    Pg. 8 of 15

**a.) Investigation-Fraud**. The Trustee Declaration (Dkt. #1927-2, Ex. B-3) identifies $14,065.00 in services performed in the category of "Investigation-FBI/US Trustee Office." Committee counsel is concerned that such services may have provided a substantial benefit to the FBI, which investigated Mr. Hansen and Ms. Erdmann for many months, but has provided no economic benefit to the bankruptcy estate or its creditors. Should it come to pass, the criminal conviction of Mr. Hansen and/or Ms. Erdmann—now awaiting trial—is not likely to provide any tangible return or benefit to creditors.

**b.) Plan of Reorganization & Disclosure Statement**. The Calvert Declaration (Dkt. #1927-2, Ex. B-3) identifies $62,720.00 for services performed in the category of "Plan of Reorganization & Disclosure Statement." In the absence of a reorganization, this work provided no benefit to the estate.

**B. The Cascade Application**

Bankruptcy Code §328(b) provides:

> (b) If the court has authorized a trustee to serve as an attorney or accountant for the estate under section 327(d) of this title, the court may allow compensation for the trustee's services as such attorney or accountant only to the extent that the trustee performed services as an attorney or accountant for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney or accountant for the estate.

Here, the Court authorized the Trustee to employ his affiliated entity, Cascade Capital Group LLC, as accountants for the Trustee/estate. As filed, the Cascade Application seeks allowance of $926,742.20 in fees and $27,147.00 in expense reimbursements.

Section 328(b) is not intended to provide the trustee with a windfall by permitting compensation twice for the same services. Section 328(b) also is not an exception to the limitations

RESPONSE OF COUNSEL FOR THE OFFICIAL UNSECURED CREDITORS' COMMITTEE TO FEE APPLICATIONS OF TRUSTEE AND TRUSTEE'S PROFESSIONALS-- 9
No. 16-11767-CMA 4820-4173-9905.1

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1943    Filed 11/30/18    Ent. 11/30/18 16:55:00    Pg. 9 of 15

on trustees' compensation established in §326. Under §328(b), the court may allow compensation to a trustee who has been authorized to serve as an attorney or accountant for the estate "only to the extent that the trustee performed services as attorney or accountant" and "not for performance of any of the trustee's duties that are generally performed by a trustee." 3 *Collier on Bankruptcy* at ¶ 328.04(1), p. 328-34 (16th ed.). The trustee whose records fail to distinguish between activities as trustee and activities as attorney or accountant for a trustee risks forfeiture of trustee compensation as well as denial or disgorgement of such professional fees. *Id.* at p. 328-35. *See, e.g., In re McKenna*, 93 B.R. 238, 240 (Bankr. E.D. Cal. 1988) (Trustee has the burden of proof to "demonstrate that services for which a trustee wants [professional fees under §327(d)] were not duties that generally are performed by a trustee without assistance of [the §327(d) professional].")

**1.) Overview/Analysis**

The Cascade Declaration (Dkt. #1925-2 at p. 4) identifies multiple categories of work performed by Cascade personnel: "Investigation-FBI/US Trustee Office" ($52,484.00); "Investigation" ($36,271.00); "Investigation-American Express" ($31,962.50); "Investigation-Diane/Ross" ($27,254.20); "Investigation-Discovery" ($9,188.00); "Investigation-Storage Inventory/Vault" ($88,644.40; "Inventory" ($126,737.20); "Bank Database" ($103,010.00); "Accounting" ($90,505.40); "Insolvency" ($78,176.20); "Medallic" ($55,184.4); "Bankruptcy Administration" ($37,455.00); "Plan of Reorganization & Disclosure Statement" ($36,965.00); "Operations" ($36,014.60); "Claims" ($34,127.20); "MORs" ($27,469.40); "Cash Flow" ($25,146.5); "Committee" ($20,475.00); "BK Schedule" ($23,820.00); "Liquidation Analysis" ($14,635.00); "Court Hearing" ($13,575.00); "Close of Company" ($10,863.70); "Job Costing" ($9,470.00); "Sale of Assets" ($6,688.80); "DIP" ($4,166.00); "Travel" ($3,432.90); "Sale of Company" ($2,800.00).

RESPONSE OF COUNSEL FOR THE OFFICIAL
UNSECURED CREDITORS' COMMITTEE TO FEE
APPLICATIONS OF TRUSTEE AND TRUSTEE'S
PROFESSIONALS-- 10
No. 16-11767-CMA 4820-4173-9905.1

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1943    Filed 11/30/18    Ent. 11/30/18 16:55:00    Pg. 10 of 15

Other than the "Accounting" task code, which accounts for $90,505.40 of the $926,742.20 in total fees requested, and perhaps the "Bank Database" task code, which accounts for $103,010.00 in requested fees, it is difficult to determine whether any of the other work categories describe work that could not be "generally performed by a trustee without the assistance of an attorney or accountant for the estate." Why is it appropriate to pay Cascade personnel amounts in excess of the Trustee's §326(a) cap for performing work that appears to be typical of all Chapter 11 bankruptcy proceedings and that does not appear to require the special expertise of a licensed accountant? Which of Cascade's work categories does the Trustee contend qualify for payment above and beyond the Trustee's §326(a) cap? Other than providing the raw time entries, the Cascade Application does not address this issue.

The Cascade Application and the Cascade Declaration further identify (and seek allowance of) a total of $205,065.00 in services performed by the Trustee, not as Trustee but in his personal capacity as an accountant/principal of Cascade Capital Group, LLC. These fees are allocated to a number of work categories: "Inventory"; "Investigation"; "Investigation-Storage Inventory/Vault"; "Medallic"; "Bank Database"; "Bankruptcy Admin"; "Investigation-Diane/Ross"; "Investigation-FBI/US Trustee Office"; "Committee"; "Court Hearing"; "Investigation-American Express"; "Sale of Assets"; "Insolvency"; "Investigation-Discovery"; "Accounting"; "Plan of Reorganization & Disclosure Statement"; "Liquidation Analysis"; "Operations." Again, with the exception of the limited tasks performed by the Trustee on "Accounting" (2 hours/$700.00) and perhaps on the "Bank Database" (21.3 hours/$7,525.00), the vast bulk of these work categories do not appear to describe "accounting" tasks or to require an accountant's professional expertise.

Under these circumstances, it is appropriate for the Court to request an answer to the following question: What services personally performed by the Trustee and Cascade personnel are

RESPONSE OF COUNSEL FOR THE OFFICIAL
UNSECURED CREDITORS' COMMITTEE TO FEE
APPLICATIONS OF TRUSTEE AND TRUSTEE'S
PROFESSIONALS-- 11
No. 16-11767-CMA 4820-4173-9905.1

MILLER NASH GRAHAM & DUNN LLP
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1943    Filed 11/30/18    Ent. 11/30/18 16:55:00    Pg. 11 of 15

properly allocable to the Trustee Application as opposed to the Cascade Application; and what services, if any, performed by the Trustee and Cascade personnel should be deemed traditional "trustee duties" as opposed to professional accounting services and so be limited by the §326 cap? *See, e.g., In re Berglund Construction Co., Inc.*, 142 B.R. 947, 949 (Bankr. E.D. Wash. 1992) ("Neither professionals nor paraprofessionals may be separately compensated for performing trustee duties beyond the limits of §326."). From the outset, the Committee has harbored concerns about the need to scrutinize the services performed by Cascade Capital Group, LLC, the services performed by the Trustee, and the interplay between these services, Bankruptcy Code §§326, 328, and 330.

### 2. Additional Committee Counsel Concerns

**Investigation-Fraud**. The Cascade Declaration (Dkt. #1925-2, Ex. B-3) identifies a total of $52,484.00 in services performed in the category of "Investigation-FBI/US Trustee Office." Committee counsel is concerned that such services may have provided a substantial benefit to the FBI, which investigated Mr. Hansen and Ms. Erdmann for many months, but have provided no economic benefit to the bankruptcy estate or its creditors. Again, the criminal conviction of Mr. Hansen and/or Ms. Erdmann is not likely to provide any tangible return or benefit to creditors.

**Staff Compensation**. The Cascade Declaration seeks compensation for two Cascade "staff" employees who are apparently not trained accountants: Marjorie Chappel and Jessica Gilmore. Dkt. #1925 at p. 3. Requested fees for these individuals total $190,890.75 ($12,045.00 and $178,845.75, respectively). Even if Ms. Chappel and Ms. Gilmore are designated as "paraprofessional persons" under §330(a)(1)(A), this compensation should fall under the Trustee's cap amount. In *In re Jenkins*, 130 F.3d 1335, 1342 (9th Cir. 1997), the court ruled that "a trustee may receive total

RESPONSE OF COUNSEL FOR THE OFFICIAL
UNSECURED CREDITORS' COMMITTEE TO FEE
APPLICATIONS OF TRUSTEE AND TRUSTEE'S
PROFESSIONALS-- 12
No. 16-11767-CMA 4820-4173-9905.1

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1943    Filed 11/30/18    Ent. 11/30/18 16:55:00    Pg. 12 of 15

compensation in excess of the §326(a) limit only where the paraprofessional has been employed under §327 *and the services performed by the paraprofessional require expertise beyond that expected of an ordinary trustee.*" [Emphasis added]). Here, there is no evidence that the services performed by Ms. Chappel and Ms. Gilmore required or provided "expertise beyond that expected of an ordinary trustee.*"

### C. The K&L Gates Application

#### 1.) Overview

K&L Gates has provided an enormous amount of legal services to this case and this estate. Without this support and without K&L Gates' willingness to work "full bore" for two and one-half years with little or no compensation, little positive would likely have been accomplished. Ironically, as a reward for all its work for the Trustee, K&L Gates now finds itself as one of the largest—and most exposed—creditors of this estate, facing the stark reality that much if its $3.25 million in work will go uncompensated.

#### 2.) Committee Counsel Concerns

**a.) Litigation Against Ross Hansen/Diane Erdmann**. The K&L Gates Application includes a number of task categories describing litigation with Hansen/Erdmann. These time expenditures have produced little or no benefit to the estate:

**Litigation (70100)**. The K&L Gates Application (Dkt. #1928 at p. 11) identifies $115,235.00 worth of legal services performed on general litigation matters, including action taken by the Trustee to address "efforts by Ross Hansen to interfere with the administration of the estate." The Trustee addressed these "efforts" through a Motion for Order Holding Ross Hansen in

RESPONSE OF COUNSEL FOR THE OFFICIAL
UNSECURED CREDITORS' COMMITTEE TO FEE
APPLICATIONS OF TRUSTEE AND TRUSTEE'S
PROFESSIONALS-- 13
No. 16-11767-CMA 4820-4173-9905.1

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1943    Filed 11/30/18    Ent. 11/30/18 16:55:00    Pg. 13 of 15

Contempt for Violation of the Automatic Stay (Dkt. #460). The Court denied the Trustee's Motion and the Trustee elected not to pursue the Motion further.

**Trustee v. Diane Erdmann (70102)**. The K&L Gates Application (Dkt. #1928 at pp. 14-15) identifies $197,724.00 worth of legal services performed in litigation against Diane Erdmann. The litigation described in this task category focused chiefly on Erdmann's entitlement (or not) to funds paid as an advance fee deposit to the Tracy Law Group and related issues. The Trustee's efforts to recover the balance of the Tracy advance fee deposit were unsuccessful, as was the Trustee's appeal of this Court's ruling on Erdmann's entitlement to the funds.

**American Express Fraudulent Transfer Action (70107)**. The K&L Gates Application (Dkt. #1928 at pp. 16-17) identifies $254,748.00 worth of legal services performed in litigation against Diane Erdmann (Adv. Pro. 16-01217). The litigation described sought to recover in excess of $1,000,000 from Ms. Erdmann on the theory that Ms. Erdmann used the Debtor's assets to pay credit card charges that benefitted Erdmann personally, not the Debtor. K&L Gates ultimately obtained a judgment against Erdmann in the amount of $430,000. Throughout this case, however, it has never been evident that Ms. Erdmann has any assets or any ability to satisfy this judgment.

As a general principle, the Committee's concerns about these litigation matters are based on a common sense cost-benefit analysis; and various members of the Committee have been frankly opposed to the Trustee's election to pursue such litigation based on that analysis. The amount of fees potentially recoverable in the Tracy advance fee deposit dispute are/were less than the amount of legal fees and costs it took to pursue (unsuccessfully) their recovery; and the Committee has been concerned from the outset that Diane Erdmann is "judgment proof" and that the Trustee's litigation against her has similarly consumed far more estate assets than the Trustee will ever recover. These

RESPONSE OF COUNSEL FOR THE OFFICIAL
UNSECURED CREDITORS' COMMITTEE TO FEE
APPLICATIONS OF TRUSTEE AND TRUSTEE'S
PROFESSIONALS-- 14
No. 16-11767-CMA 4820-4173-9905.1

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1943    Filed 11/30/18    Ent. 11/30/18 16:55:00    Pg. 14 of 15

cost-benefit analyses may also be applicable to elements of the "**Electronic Discovery Fees and Costs (77100)**" task code that appears at p. 19 of the K&L Application, which indicates that a portion of the $269,937 in identified fees and costs are attributable to "significant electronic discovery services provided in connection with the Erdmann American Express litigation."

**b.) Plan of Reorganization & Disclosure Statement**. The K&L Application (Dkt. #1928 at p. 17) identifies $41,571 for services performed in the category of "Plan and Disclosure Statement." Again, in the absence of a reorganization, this work provided no benefit to the estate.

### D. Conclusion

Committee counsel acknowledges the Court's task in addressing the fee applications now before it:

> Deciding fee applications under the current state of the law is an inherently subjective process made more difficult and time consuming by the wide discretion invested in the court. There is no scientific method or uniform approach to these sensitive matters which are important to the professionals seeking compensation. Fee applications involve a disproportionately undue amount of the resources and time of the courts.

*Report of the Federal Courts Study Committee*, Part II §5F, ¶ 1 at 104 (April 2, 1990).

This has been a difficult case and Committee counsel looks forward to at least the beginning of a resolution of these issues, as the case approaches its conclusion.

DATED this 30th day of November, 2018.

    MILLER NASH GRAHAM & DUNN LLP

    */s/ Mark D. Northrup*
    Mark D. Northrup, WSBA No. 16947
    mark.northrup@millernash.com
    (206) 624-8300
    Attorneys for the Unsecured Creditors' Committee

RESPONSE OF COUNSEL FOR THE OFFICIAL UNSECURED CREDITORS' COMMITTEE TO FEE APPLICATIONS OF TRUSTEE AND TRUSTEE'S PROFESSIONALS-- 15
No. 16-11767-CMA 4820-4173-9905.1

MILLER NASH GRAHAM & DUNN LLP
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Case 16-11767-CMA    Doc 1943    Filed 11/30/18    Ent. 11/30/18 16:55:00    Pg. 15 of 15