Michael J. Gearin, WSBA # 20982
David C. Neu, WSBA # 33143
Brian T. Peterson, WSBA # 42088
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
(206) 623-7580

Honorable Christopher M. Alston
Chapter 11
Hearing Location: Seattle, Rm. 7206
Hearing Date: Friday, December 7, 2018
Hearing Time: 9:30 a.m.
Response Date: November 30, 2018

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| In re: | Case No. 16-11767-CMA |
| NORTHWEST TERRITORIAL MINT, LLC,<br>Debtor. | CONSOLIDATED REPLY IN SUPPORT OF FEE APPLICATIONS OF TRUSTEE AND TRUSTEE'S PROFESSIONALS |

## I. REPLY

The Chapter 11 Trustee for Northwest Territorial Mint, LLC (the "Trustee"); Cascade Capital Group, LLC ("Cascade") accountants for the Trustee; and K&L Gates LLP ("K&L Gates"), counsel for the Trustee, hereby submit this combined Reply in support of their respective applications for compensation (the "Trustee Professionals' Applications"). In support thereof, the Trustee, Cascade, and K&L Gates (collectively, the "Trustee Professionals") respectfully state as follows:

The only substantive response filed to the Trustee Professionals' Applications was the Response of Counsel for the Official Unsecured Creditors' Committee to Fee Applications of Trustee and Trustee's Professionals ("Committee Counsel Response") (Dkt. No. 1943).[1] Notably,

---

[1] Two creditors, William Hanson and John W. Peterson filed unsworn letters with the Court, neither of which provides a substantive response to the Trustee Professionals' Applications. Certain allegations in the letters are addressed in the Reply Declaration of Mark Calvert filed in support of this Reply. A third unsworn letter was filed by Joshua Gibbons. Mr. Gibbons is not a creditor or party in interest of the estate, and lacks standing as he has no pecuniary interest in the dispute. *In re*

CONSOLIDATED REPLY IN SUPPORT OF FEE
APPLICATIONS OF TRUSTEE AND TRUSTEE'S
PROFESSIONALS - 1
501979859 v5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

the Committee Counsel Response is not filed on behalf of the Official Unsecured Creditors' Committee (the "Committee"); rather, it is filed on behalf of counsel for the Committee ("Committee Counsel").

Committee Counsel acknowledges that this has been a difficult proceeding, and that from the commencement, a Chapter 11 reorganization process provided the only avenue for recovery by unsecured creditors. As set forth in the Declaration of Mark Calvert in support of this Reply, this case was administratively insolvent from the beginning, yet he and his professionals nonetheless took on the task of attempting to resuscitate and reorganize the company, at significant financial risk to themselves. The Trustee and his Counsel have worked tirelessly throughout this case, in an effort to drive a return to unsecured creditors.

For a good portion of this case, the Trustee, in his professional judgment thought that he would be able to successfully reorganize the business. Even after it became clear that reorganization would not be possible, the Trustee and his professionals did what they could to liquidate assets and satisfy their statutory duties to the Court and its creditors. They did so knowing that they would not be able to recover their fees in full. The fact that the Trustee and his counsel were not, at times, successful in their efforts is not a basis, in and of itself, to deny allowance of an administrative expense for such efforts. The time expended by the Trustee and his professionals is compensable because is reasonable and necessary to the administration of the case and because the Trustee believed that at the time such services were incurred they would benefit the estate.

_Fondiller_, 707 F.2d 441, 442 (9th Cir. 1983)(" Only those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court have been held to have standing to appeal that order"). Furthermore, Mr. Gibbons, a blogger, does not offer admissible evidence relevant to the Court's inquiry. His letter is full of factual inaccuracies, hearsay, innuendo, and irresponsible speculation. The Gibbons letter should be stricken under BR 7012(g) and Western District of Washington LCR 7(g).

CONSOLIDATED REPLY IN SUPPORT OF FEE
APPLICATIONS OF TRUSTEE AND TRUSTEE'S
PROFESSIONALS - 2
501979859 v5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

**A.** <u>**Legal Standard Applicable to the Court's Consideration of Fee Applications.**</u>

Committee Counsel, in large part, questions whether the Trustee and his professionals should be compensated for efforts that were ultimately not successful and did not provide a tangible benefit to the estate. Focusing on the results achieved from the services rendered is "not the proper method to determine reasonableness of compensation under § 330." *In re Acme Cake Co., Inc.*, 495 B.R. 212, 220 (Bankr. E.D.N.Y. 2010) (awarding fees and expenses, less a 20% voluntary reduction where they were "generally reasonable at the time they were performed").[2]

The Bankruptcy Code, in Section 330, provides that the Court may award a trustee and his Court-approved counsel "(A) reasonable compensation for actual, necessary services . . ."; and (B) reimbursement for actual, necessary expenses." Services are necessary if they were "reasonably likely to benefit the estate." *In re Kohl*, 421 B.R. 115, 125 (Bankr. S.D.N.Y. 2009). "An objective test is used, and examines whether a reasonable attorney would have performed those services under the same circumstances." *In re Acme Cake Co. Inc.*, 495 B.R. at 218. Focusing on the results achieved from the services rendered "is not the proper method to determine reasonableness of compensation under § 330." *Id*. at 220. The services are to be judged objectively at the time they were rendered—not with the benefit of 20-20 hindsight. *Id*. ("Reasonableness of services is not determined through hindsight."). *See also In re Value City Holdings, Inc.*, , 2010 WL 3705285, at *3 (Bankr. S.D.N.Y. Sept. 22, 2010) ("in evaluating the award of professional fees, courts

---

[2] Committee Counsel relies on *In re Stoecker*, 118 B.R. 596 (Bankr. N.D. Ill. 1990) for the proposition that in an unsuccessful Chapter 11 case, the Court should reduce a trustee's compensation for not achieving the "maximum results." In doing do, Committee Counsel offers an isolated quote without explaining the context of the case. In *Stoecker*, the trustee did not seek an award of compensation based on his standard hourly rate, rather he sought an award of the full statutory maximum under 11 U.S.C. § 326(a) (in an effect an enhancement to his normal hourly rate). In contrast to *Stoecker*, where the trustee sought more than fees and costs actually incurred at his regular hourly rate, the Trustee in this case incurred far more in fees and costs than the cap, and rather than seeking an enhancement, is seeking only the capped amounts as allowed under Section 326(a) of the Bankruptcy Code.

CONSOLIDATED REPLY IN SUPPORT OF FEE
APPLICATIONS OF TRUSTEE AND TRUSTEE'S
PROFESSIONALS - 3
501979859 v5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1947    Filed 12/04/18    Ent. 12/04/18 21:39:44    Pg. 3 of 13

objectively consider whether the services rendered were reasonably likely to benefit the estate from the perspective of the time when such services were rendered"); *In re Schupbach Investments, LLC*, 521 B.R. 449, 2014 WL 6680122, at *8 (10th Cir. BAP Nov. 25, 2014) (unpublished opinion) ("The appropriate time for measuring benefit to the estate is as of the time the services are provided, and not at the time the court ultimately reviews the fee application."); *In re Kitts Dev. LLC*, 474 B.R. 712, 720 (Bankr. D.N.M. 2012) ("benefit to the estate should be measured as of the time the services are provided, not at the time the Court ultimately reviews the fee application"). The Ninth Circuit has expressly rejected the proposition that only services that actually result in a benefit to the estate are compensable. *In re Smith*, 317 F.3d 918, 926-27 (9th Cir. 2002) (abrogated on other grounds by *Lamie v. United States Trustee*, 540 U.S. 526, 531–39 (2004)) ("services that are reasonably likely to provide an identifiable, tangible and material benefit to the debtor's estate can be compensated, even if they do not actually provide such a benefit"). *See also In re Woerner*, 783 F.3d 266, 276 (5th Cir. 2015) ("§ 330 embraces the 'reasonable at the time' standard for attorney compensation").

Simply put, it is not the case that this Court in determining whether it should approve compensation for time rendered by the Trustee and his professionals, should disallow time spent on endeavors that were ultimately unsuccessful or that did not derive a specific identifiable monetary benefit to the estate. To the extent that Committee Counsel suggests otherwise, its position is contrary to controlling law, and the position that the Committee Counsel itself has taken in its fee application.[3]

---

[3] Committee Counsel in its fee application states that courts analyzing the requirements for fee applications "have made it clear that 'benefit to the estate' means that the services were 'reasonably likely' to benefit the estate at the time the services were rendered." Supplemental Declaration of Mark D. Northrup [Dkt. No. 1931], at p. 11 (citing *In re Mednet*, 251 B.R. 103, 108 (9th Cir. BAP 2000) (internal quotations omitted). Moreover, Committee Counsel acknowledges that "benefit to the estate" is "not restricted solely to monetary benefit." *Id.* (quoting *In re Kohl*, 95 F.3d 713, 715 (8th Cir. 1996). Committee Counsel argues that its services were rendered in accordance with the powers delegated to committees under the Bankruptcy Code and therefore are compensable because they "promoted the bankruptcy process or administration of the estate . . . ." *Id.* at 12 (quoting *In re Crown Oil, Inc.*, 257 B.R. 531, 541 (Bankr. D. Mont. 2000)).

CONSOLIDATED REPLY IN SUPPORT OF FEE
APPLICATIONS OF TRUSTEE AND TRUSTEE'S
PROFESSIONALS - 4
501979859 v5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1947    Filed 12/04/18    Ent. 12/04/18 21:39:44    Pg. 4 of 13

**B. Committee Counsel Concerns with Trustee Application.**

Committee Counsel does not object to specific time entries. Nor does Committee Counsel argue that a specific dollar amount of the fee applications should be disallowed. Rather, Committee Counsel raises various "concerns" with respect to certain categories of the time entries of the Trustee and the Trustee's professionals. Committee Counsel, in large part, questions whether the Trustee and his professionals should be compensated for efforts that were ultimately not successful and did not provide a tangible benefit to the estate.

1. Investigation-Fraud

Without expressly asking the Court to deny fees, Committee Counsel states that services performed by the Trustee in investigating potential fraud and cooperation with the United States Government are unlikely to have provided any benefit to the estate. The Trustee was appointed pursuant to 11 U.S.C. § 1104, which provides for the appointment of a Chapter 11 Trustee for cause, including "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management," or if appointment of a Trustee is in the best interest of creditors. 11 U.S.C. § 1104. Following appointment, a Chapter 11 Trustee has certain statutory duties, including, but not limited to the following:

- Furnishing such information concerning the estate and the estate's administration as is requested by a party in interest (11 U.S.C. § 704(a)(7), made applicable to chapter 11 trustees by 11 U.S.C. § 1106(a)(1));

- investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan (11 U.S.C. § 1106(a)(3)); and

- file a statement of any investigation conducted, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor (11 U.S.C. § 1106(a)(4)(A)).

Not only did the Trustee have a statutory duty to investigate the financial affairs of the estate including any fraudulent conduct by the debtor, but creditors, including many that stored precious

CONSOLIDATED REPLY IN SUPPORT OF FEE
APPLICATIONS OF TRUSTEE AND TRUSTEE'S
PROFESSIONALS - 5
501979859 v5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

metal with the Debtor, were understandably anxious to understand what had occurred at NWTM and were requesting information regarding the Trustee's investigation of these matters.

Over the course of the proceeding, the United States Government issued approximately ten detailed subpoenas to the Trustee compelling the production of records. This Court, and Committee Counsel, are certainly aware of the penalties for failure to comply with a lawfully issued subpoena. The Trustee was compelled to spend a significant amount of time complying with his legal obligation to respond to the subpoenas and answer follow-up questions of the government. The Trustee did not create independent analyses or reports for the sole purpose of facilitating the government's investigation. But the Trustee did fulfill his obligation to respond to the multiple informational requests and subpoenas directed to him by the government. In sum, the fees which Committee Counsel cites, whether or not they materially benefitted the estate, were incurred by the Trustee in performance of his statutorily-mandated or other legal duties, and the Trustee is entitled to be compensated for those services. *See In re Crown Oil, Inc.*, 257 B.R. at 540 (benefit to estate is not restricted to monetary benefit and an important consideration is "whether the services rendered 'promoted the bankruptcy process or administration of the estate'").

2.    Plan of Reorganization/Disclosure Statement.

Again, Committee Counsel relies on the incorrect standard in suggesting that the Trustee is not entitled to compensation for fees incurred in the formulation of a plan and disclosure statement. So long as there is a "reasonable chance of success which outweighed the cost of pursuing the action," the fees related to a chapter 11 plan are compensable. *See In re Crown Oil, Inc.*, 257 B.R. at 541. *See also In re Kitts Dev., LLC*, 474 B.R. at 724 (allowing fees for services rendered in connection with formulating a chapter 11 plan that was never filed "because, at the time such services were rendered, there was a reasonable possibility of achieving success in the Chapter 11 case during the period of delay resulting from the bankruptcy filing"). As explained above and in the Declaration of Mark Calvert filed in support of this reply, the only possibility of a meaningful return

CONSOLIDATED REPLY IN SUPPORT OF FEE
APPLICATIONS OF TRUSTEE AND TRUSTEE'S
PROFESSIONALS - 6
501979859 v5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1947    Filed 12/04/18    Ent. 12/04/18 21:39:44    Pg. 6 of 13

to creditors was the reorganization of the Debtor, and up until the late Spring of 2017, it was the Trustee's and the Committee's shared goal to reorganize through a plan and emerge from bankruptcy.  In fact, the Committee demanded that the Trustee formulate and draft a plan and disclosure statement for its review in October and November, 2016 and the Trustee did present a draft plan to the Committee in its meeting of November 29, 2016.  At the time he formulated and drafted the plan, the Trustee believed that there was a reasonable chance of success in effectuating a plan of reorganization. The Trustee's efforts with respect to a plan were reasonably likely to benefit the estate from the perspective of the time when such services were rendered.  Certainly the Committee and the Committee Counsel believed so in 2016. As the court noted in *Kitts*, "if compensation were routinely disallowed when a debtor's reorganization efforts are unsuccessful, it 'would create a chilling effect on the willingness of counsel to undertake the representation of debtors in financial distress . . . .'" *Id*. at 725 (quoting *In re Coastal Nursing Center, Inc.*, 162 B.R. 918, 919 (Bankr. S.D. Ga. 1993)). The same holds true for court appointed chapter 11 trustees and their counsel.

C.      <u>**Committee Counsel Concerns with Cascade Application.**</u>

On June 7, 2016, the Court entered an order authorizing the Trustee to employ Cascade Capital Croup ("Cascade") as accountants for the Trustee.  In doing so, the Court found that Cascade's principals, and its members have special expertise in the areas of management systems, internal controls, operational cost accounting, corporate overhead reduction systems and automation, forensic work and insolvency, and that if Cascade were not appointed, the Trustee would be required to engage a national financial services firm whose rates would be significantly higher than those of Cascade.  Committee Counsel signed off on the order appointing Cascade as accountants effective *nunc pro tunc* as of mid-April, 2016.  The order authorizing the employment of Cascade specifically contemplated that it would perform forensic work.

CONSOLIDATED REPLY IN SUPPORT OF FEE
APPLICATIONS OF TRUSTEE AND TRUSTEE'S
PROFESSIONALS - 7
501979859 v5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Contrary to Committee Counsel's insinuation, the Trustee does not seek to be compensated twice for the same services, nor does he seek to circumvent the Section 326 cap. The nature of Cascade's services are described in detail in its fee application and relate to specific accounting and financial services functions. The Trustee's efforts in this case required an unusual amount of accounting and financial expertise that necessitated the Trustee's use of Cascade. As explained in the Trustee's declaration provided in support of this Reply, the financial records of NWTM were incomplete, inaccurate, or nonexistent. In addition, NWTM had no internal financial accounting staff that the Trustee could utilize.

The Court previously raised concerns regarding whether some of the time in the Cascade fee application should be included in the Trustee application such that it is subject to the statutory cap. As a result, the Trustee reviewed all billing entries for Cascade and materially modified the Trustee's application by moving numerous entries of his time that he believed are better categorized as falling under the Trustee umbrella.

Committee Counsel is simply incorrect in his assumption that Jessica Gilmore is not a trained accountant. Her resume attached to her concurrently-filed declaration in support of this reply confirms her qualifications. Moreover, Cascade Capital Group should utilize junior level support for its accounting and financial services, just as any accounting firm would under the circumstances. Contrary to the assertion of Committee Counsel, both Ms. Gilmore and Ms. Chappel provided financial and accounting services and are well qualified to do so.

D.      **Committee Counsel's Concerns with K&L Gates' Application.**

Committee Counsel acknowledges K&L Gates' willingness to work "full bore" for the last two and one-half years, and acknowledges K&L Gate's contributions to this proceeding, yet raises "concerns" with its fees and costs, again applying the incorrect standard as to whether fees and costs are compensable by looking at them with the benefit of hindsight.

CONSOLIDATED REPLY IN SUPPORT OF FEE
APPLICATIONS OF TRUSTEE AND TRUSTEE'S
PROFESSIONALS - 8
501979859 v5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1947    Filed 12/04/18    Ent. 12/04/18 21:39:44    Pg. 8 of 13

1.     <u>Litigation versus Ross Hansen and Diane Erdmann</u>

Committee Counsel appears to criticize K&L Gates for litigating with Ross Hansen and Diane Erdmann. With respect to Mr. Hansen, the Trustee remains convinced that litigation was necessary to the Trustee's efforts to preserve the value of the business of the estate. The Trustee's motion to hold Hansen in contempt for violation of the automatic stay was a necessary response to the actions of Hansen which were designed to destroy the estate's business. Hansen, after surrendering control over the business, attempted to destroy the Debtor's business by communicating with employees (discussing with one employee whether she would be willing to, among other things, sabotage valuably machinery and software), and seeking to persuade them to terminate their employment. The Trustee consulted with the Committee about his intentions to seek a Court order holding Mr. Hansen in contempt. Although the Court ruled that Hansen had not technically violated the automatic stay by his actions, the Court cautioned Hansen regarding his obstructive actions. After the Court hearing on the Trustee's stay motion, Mr. Hansen's communications with employees were curtailed and his overtly obstructive tactics diminished. The Trustee could simply not, through inaction, allow Mr. Hansen to sabotage the business of the estate.

The Committee Counsel expresses concern regarding fees in the "Trustee v. Erdmann" category. Contrary to the Committee Counsel's suggestion, the fees in this category were not limited to an evidentiary hearing on the source of the advance fee deposit paid to the Tracey Law Group. As the Court will recall, the issue of the source of gold coins liquidated to fund the advance fee deposit came up mere weeks into the proceeding. While Committee Counsel is right that the advance fee deposit was approximately $150,000, $50,000 of which was paid with cash and $100,000 from the proceeds of gold liquidation, Diane Erdmann testified at trial that the bag of gold that was taken to the Seattle Coin Shop for liquidation contained more than the $100,000 of gold that the Coin Shop purchased. Rather it contained approximately $200,000 in gold. Accordingly, the investigation encompassed not only the source of the gold sold to the Coin Shop, it also encompassed the source

CONSOLIDATED REPLY IN SUPPORT OF FEE
APPLICATIONS OF TRUSTEE AND TRUSTEE'S
PROFESSIONALS - 9
501979859 v5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1947    Filed 12/04/18    Ent. 12/04/18 21:39:44    Pg. 9 of 13

of disposition of significantly more. The Trustee was aware of that significant quantities of precious metal had not been accounted for by the Debtor. The Trustee eventually determined that there was more than $13 million of missing precious metal that could not be accounted for. The Trustee's litigation with Erdmann furthered his investigation of these important matters. Moreover, given the stage of the bankruptcy, the investigation was by necessity a broad inquiry into Diane Erdmann's role at the company and how the company managed and tracked bullion.

With respect to the American Express Fraudulent Transfer Action, Committee Counsel raises concern that Ms. Erdmann is effectively destitute and has no ability to satisfy a judgment. But the Trustee discovered that Ms. Erdmann sold hundreds of thousands of dollars in bullion over the course of the case. *See* Dkt. No. 1053. Given Ms. Erdmann's transfers of assets, there are potential sources of recovery other than Ms. Erdmann. Finally, the bullion that was seized by the King County Sheriff to which Ms. Erdmann claims ownership is an additional potential source of recovery for the estate based on its judgment against Ms. Erdmann.

Again, the compensability of fees does not turn on the question of whether the Trustee prevailed in his litigation, but on whether such services were reasonable at the time. Here, the Trustee did prevail in his litigation with Erdmann on the American Express charges. Regardless, under the circumstances of this case, K&L Gates submits that the litigation in this action was reasonable and necessary.

2. <u>Plan and Disclosure Statement</u>.

As described above, the Plan and Disclosure Statement were draft at the request of and in full consultation with the Committee. At the time the Plan and Disclosure Statement were drafted, in October and November of 2016, it was anticipated that the Trustee could stabilize the company and reorganize through a Chapter 11 Plan. The plan was presented to the Committee. Under the circumstances of this case, K&L Gates submits that the formulation and draft of the plan was reasonable and necessary as it was the only path under which creditors could receive a return.

CONSOLIDATED REPLY IN SUPPORT OF FEE
APPLICATIONS OF TRUSTEE AND TRUSTEE'S
PROFESSIONALS - 10
501979859 v5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 1947    Filed 12/04/18    Ent. 12/04/18 21:39:44    Pg. 10 of 13

**E.**       **Creditor Reaction.**

As the Committee Counsel acknowledges, this proceeding has been extremely complex and difficult. It was no secret to the members of the Committee, including the Pehls and David James, that the only chance of a recovery by unsecured creditors was a successful reorganization, a prospect that was far from guaranteed.  The Trustee and his professionals took on the risk associated with working on such a case, extending large amounts of credit in the form of fees, advanced costs and substantial amounts of time, all in an effort to achieve a successful result.  The Trustee's actions were taken in consultation with the Committee, an entity which failed to take a position on many significant substantive matters.  When, despite the Trustee's efforts, reorganization of the business could not be achieved, some former members of the Committee have taken to criticizing the Trustee through unfounded and untruthful allegations.  Paula and Richard Pehl, for example, accuse the Trustee of failing to disclose assets—an accusation for which they offer no admissible evidence other than their own speculation.  They suggest that there are valuable assets of the estate that have not been administered by the Trustee relating to the products manufactured in China—an untruthful accusation for which they offer no admissible evidence other than their own speculation.

## CONCLUSION

In sum, Committee Counsel is incorrect in its expression of the legal standard upon which it relies in support of its concerns.  The work performed by the Trustee Professionals was reasonable and necessary at the time that it was performed, and much of the work was done in consultation with Committee Counsel and its client. It is always easy, in hindsight, to criticize decisions that were made in good faith and on reasonable beliefs at the time, which is why the Ninth Circuit expressly rejected the proposition that only services that actually result in a benefit to the estate are compensable. Committee Counsel expresses concerns that certain actions taken by the Trustee Professionals did not provide a benefit to the estate. In so doing, Committee argues that Court should apply a legal standard different from the standard that it argues should apply to its own fees. While

CONSOLIDATED REPLY IN SUPPORT OF FEE
APPLICATIONS OF TRUSTEE AND TRUSTEE'S
PROFESSIONALS - 11
501979859 v5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

he does not expressly request that the Court reduce or deny portions of the Trustee Professionals' fees, his implication that the Trustee Professionals are not entitled to full compensation should not inform the Court's decision. The Trustee and his professionals have provided significant services to the estate, all of which were reasonable, and all of which are compensable under the applicable legal standard.

The Trustee and his professionals have now administered the substantial majority of this very complicated and difficult case. Ownership of the assets of the estate has been confirmed. All stored inventory in the possession of the Trustee has been returned to storage customers. The vast majority of the assets have now been liquidated. All employee issues have been addressed. Difficult issues regarding landlords and leased property have been resolved. All secured claims have been satisfied. The Trustee has proposed resolution and payment of all of the remaining filed administrative claims in the case other than professional claims. The result of this case has been unfortunate for all involved, including the professionals. The Trustee and his professionals will suffer considerable economic loss because the case is administratively insolvent. The Trustee and his professionals should not be further penalized, through the disallowance of reasonable fees and costs, when their efforts were made in a good faith attempt to return a distribution to creditors under extremely difficult circumstances.

DATED this 4th day of December, 2018.

K&L GATES LLP

By  /s/Michael J. Gearin
Michael J. Gearin, WSBA #20982
David C. Neu, WSBA #33143
Brian T. Peterson, WSBA #42088
Attorneys for Mark Calvert, Chapter 11 Trustee

CONSOLIDATED REPLY IN SUPPORT OF FEE
APPLICATIONS OF TRUSTEE AND TRUSTEE'S
PROFESSIONALS - 12
501979859 v5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## CERTIFICATE OF SERVICE

The undersigned declares as follows:

That she is a paralegal in the law firm of K&L Gates LLP, and on December 4, 2018, she caused the foregoing document to be filed electronically through the CM/ECF system which caused Registered Participants to be served by electronic means, as fully reflected on the Notice of Electronic Filing.

I declare under penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct.

Executed on the 4th day of December, 2018 at Seattle, Washington.

*/s/ Denise A. Lentz*
Denise A. Lentz

CONSOLIDATED REPLY IN SUPPORT OF FEE
APPLICATIONS OF TRUSTEE AND TRUSTEE'S
PROFESSIONALS - 13
501979859 v5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022