JANUARY 8, 2019

John W. Peterson
Creditor 838/NWTM
16315 128TH Ave. S.E.
Renton, WA. 98058

UNITED STATES BANKRUPTCY COURT CASE # 16-11767 CMA
CASE # 16-11767 CMA

NORTHWEST TERRITORIAL MINT BANKRUPTCY
WESTERN DISTRICT OF WASHINGTON
700 STEWART STREET
SEATTLE, WA. 98101

THE HONORABLE CRISTOPHER M. ALSTON:

    I am creditor 838 in the above entitled action. My wife and I have a bailment contract with the Northwest Territorial Mint for exactly 87 one ounce gold coins (33 Krugerrand coins, 29 one ounce gold bars, and 25 one ounce Canadian gold maple leaf coins). As of today, 62 have been returned to us, but 25 (the Maple Leaf coins) have not been returned to us. These 25 coins have been erroneously confiscated by the Northwest Territorial Mint while under the administration of either the debtor Ross Hansen, or under the administration of the Trustee Mark Calvert. Since there were no complete inventories provided by either the debtor or the trustee, it is impossible to determine who is responsible for the disappearance of our coins.

    The standard bailment contracts signed by the Northwest Territorial Mint and my wife Sheila and I provided for an insurance provision to protect customers like us against loss of the coins and bars while in the possession of the Mint. These contracts also offered a personal guarantee in the event that the insurance coverage payout could not make one whole again. (See attached copies of 2009, 2011, 2013 Northwest Territorial Mint, LLC General Storage Agreements). When I asked Mr. Gearin for information on whether or not the NWTM General Storage Agreement insurance policy would cover creditor loss, he said "…No it would not." I asked why. As I recall, he said "…because the insurance premium had not been paid." It was not clear whether Ross Hansen or Mark Calvert was responsible for this oversight. The way I understood it was that if the insurance policy was still in place, many of the unsecured creditors could have received substantial returns. No discussion of this issue has been provided to the unsecured creditor group by either the debtor or the Trustee. Such issue may well be worth your Court's review. I certainly hope we the creditors did not suffer the loss of millions over an oversight cost of an insurance premium.

    As a group of creditors we have collectively lost about $56,000,000.00. I've had $33,000.00 stolen from me by either the Debtor administration or the Trustee Administration. It does not seem right to me that NWTM would not be responsible for bailment thefts or promising insurance protection from such thefts after promising same in writing, and then failing to pay such insurance premiums. A complete inventory of assets would have easily resolved this type of problem. Please do not close this bankruptcy case until such inventory/audit is completed. Please do not close this bankruptcy until it is clear why the premium was not paid. Thank you for your steadfast concern for all of us in this sad case.

JOHN W. PETERSON
Jan. 8, 2019

Northwest Territorial Mint, L.L.C.
P.O. Box 2148
Auburn, WA. 98071-2148

4/20/2016 

J. Todd Tracy, Counsel
The Tracy Law Group, PLLC
720 Olive Way, Ste 1000
Seattle, WA. 98101; todd@thetracylawgroup.com

Mark Thomas Calvert
1420 5th Avenue #3382
Seattle, WA. 98101; mark.calvert@nwtm.com

> Re: Contractual Demand for the Return of 87 one ounce Gold Coins owned by John & Sheila Peterson that are presently held by Northwest Territorial Mint per a written Storage Contract Agreement (Bailment) between John & Sheila Peterson and Northwest Territorial Mint

Dear Sirs:

The undersigned storage customers demand the return of their property held by the Northwest Territorial Mint (hereinafter NWTM), per the terms of our storage contract with NWMT. We have held and paid for this Storage Contract since October, 2008. You are presently holding 33 Krugerrands, 25 Maple Leafs, and 29 gold bars (all one ounce each) that belong to John and Sheila Peterson. Your records can confirm this as well as the existence of our Storage Contract. Your records can also verify that John and Sheila Peterson have seen and handled all of their gold and watched it being placed into the NWTM vault in Auburn. We are now exercising our right to retrieve our property via this demand letter. Please provide the undersigned within the next 7 days a reasonable date, place, and time that we can retrieve our gold property. Thank you.

The undersigned are aware that NWTM is in the process of reorganization via bankruptcy. We sympathize. However, our property is not part of the available assets for priority creditors, therefore, we wish to have them released to our custody as soon as possible so as to avoid confusion with the bankruptcy action. In addition, NWTM has told us that they are no longer going to be in the bullion business, so NWTM has no further service they can offer us. Failure on the part of NWTM to provide us with our bailed property will be considered as criminal conversion and grand theft and subject to further legal process.

We expect to hear from you soon. Thank you.

Sincerely yours,

John W. Peterson & Sheila R. Peterson
16315 128th Avenue S.E.
Renton, WA. 98058
425-226-1272 (home); 425-638-2237 (cell); johnandsheilartn@aol.com



## NORTHWEST TERRITORIAL MINT LLC
2505 S. 320th Street
Ste. 110
Federal Way, WA 98003
Phone: 800-344-6468
Fax: 253-735-2210

### Invoice

**Bill To:** John Peterson
16315 128th Ave SE
Renton, WA 98058
United States

**Ship To:** John Peterson
Storage
Renton, WA 98058
United States

| | |
|---|---|
| Order Number: 435964 | PO Number: |
| Date Entered: 04/24/13 | Ship Via: |
| Customer: 08PETERSONJ1 | Salesman: Josh Earl |
| Phone: (425) 226-1272 | Terms: Bullion Held On Account |
| FAX: | Contact: John/Sheila Peterson |
| FOB: Auburn, WA | |

Storage Order
4:30PM 8-10 WEEKS

| Item | Qty | Part / Description | Unit Price | Amount |
|---|---|---|---|---|
| 1 | 33 | B10020 / GOLD 1 OZ. KRUGERRANDS | $1,501.00 / EA | $49,533.00 |

**Order Total:** **$49,533.00**

Bullion shipping times vary by product. All lead times are calculated from the date of good funds. Please refer to the above noted lead times for your specific order.

Rcvd ck # 42835543
4/29/13 LC

Page 1 of 1

# Northwest Territorial Mint, LLC General Storage Agreement

This General Storage Agreement ("Agreement") is entered into on the year and date set forth at the bottom of this Agreement between Northwest Territorial Mint, LLC (NWTM) located at 1307 West Valley Highway North, Suite 101, Auburn, WA 98001, and **John and Sheila Peterson, 16315 128th Ave SE, Renton, WA 98058**. The contents of the Agreement supercede any previous Agreements. The parties hereto agree as follows, intending to be bound thereby.

1. *Storage.* NWTM shall provide secure storage for order **100991** for 29 one-ounce gold bars and 25 one-ounce .9999 gold Canadian Maple leaf coins belonging to **John and Sheila Peterson** in a TL-rated safe at a rate of $3 (three dollars) per ounce of gold **($162.00 total)**. The storage fee is due with the signed contract. Storage pricing is guaranteed for one year. NWTM reserves the right to change the storage fee upon 60 days written notice to **John and Sheila Peterson** after the first year.

    1a. *Storage Security.* NWTM agrees to maintain quality security practices that specifically include the following: (ON SITE ARMED GUARD) an armed security person or personnel shall be on premises at night. Typical NWTM employees shall provide security during normal business hours. (SECURITY CAMERAS) Cameras must be in use at all times and set to record events on a tape rotation basis unless some other similar technology is in place. Tapes or copies of tapes must be made available to **John and Sheila Peterson** immediately in the event of a security breach. Tapes and storage device(s) must be kept in a securely locked location.

2. *Audits.* **John and Sheila Peterson** may designate people to inspect his metal by providing NWTM with the name of the person prior to the inspection. The person conducting the inspection must provide NWTM photo identification to properly identify themselves.

3. *Insurance.* NWTM agrees to cover **John and Sheila Peterson** ounce for ounce while in storage under any existing policy controlled by NWTM. NWTM is required to maintain enough coverage at all times to cover all silver stored on behalf of **John and Sheila Peterson**, NWTM agrees that said insurance is to cover full replacement value of all silver bullion at any prevailing market rate of silver. Prevailing rate is defined to be the spot rate of silver at the time of replacement and not at the original market price the silver was originally obtained. NWTM agrees to cover **John and Sheila Peterson** for loss by theft, both inside and external theft, loss or damage by negligence, loss or damage by fire or flood and any other coverage type as stipulated in any POLICY held in the name of NWTM. NWTM further agrees that in the event of loss or damage, as stipulated above, IF the policy provider for NWTM does not cover silver held on behalf of **John and Sheila Peterson**, that NWTM will replace any loss or damage at their own expense in a reasonable time frame of not more than 90 days.

Case 16-11767-CMA    Doc 1974    Filed 01/16/19    Ent. 01/16/19 10:05:49    Pg. 4 of 9

**John and Sheila Peterson**

By: *[signature]*

Name: **John Peterson**

By: *[signature]*

Name: **Sheila Peterson**

Title: _____

Date: February 9, 2009

Northwest Territorial Mint, LLC

By: *[signature]*

Name: Ross B. Hansen

Title: President

Date: February 9, 2009

Sheila Peterson BECU check no. 4938 (Jan 18, 2011) for $389.39 paid. Check cashed by NWTM on Jan 20, 2011.

## BULLION STORAGE AGREEMENT

This Bullion Storage Agreement (the "Agreement"), dated and made effective this **1st day of January, 2011**, is entered into by and between **Northwest Territorial Mint, LLC** ("NWTM"), a Washington limited liability company, located at 2505 S 320th St Ste 110, Federal Way, WA 98003, and **John Peterson** and **Sheila Peterson** ("You"), two individuals, located at 16315 128th Ave SE, Renton, WA 98058-5535.

WHEREAS, NWTM is a mint duly authorized to deal in bullion, and it maintains TL-rated vaults on its premises, one of which is located in Auburn, WA, suitable for safely and reliably storing bullion;

WHEREAS, You are the owner or person with lawful control of that certain bullion described herein who wishes to store Your bullion within NWTM's vaults on the terms and conditions provided herein;

NOW THEREFORE, IN CONSIDERATION of the following terms and conditions, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

**1. Description of Stored Bullion.** NWTM shall provide secure storage in NWTM's vaults for bullion belonging to or controlled by You consisting of:

- 29 QTY B10050 – Gold 1 oz. Bar (from **Order 100991**); and
- 25 QTY B10010 – Gold 1 oz. Canadian Maple Leaf .9999 (from **Order 100991**).

**2. Initial Storage Fee.** Upon the effective date of this Agreement, You shall remit to NWTM the initial Storage Fee, calculated in accordance with the Storage Rates herein, for the first year of storage. Thereafter, the Storage Fee is due annually—to be paid in advance on the first day of January (the "Billing Date") for the upcoming calendar year—and is calculated in accordance with the Storage Rates herein. Your Storage Fee will be recalculated annually based on the actual amount of bullion on storage on the Billing Date. On the first annual Billing Date, NWTM will prorate Your Storage Fee to reflect any remaining credit balance. If at any time You add bullion to your storage account, NWTM will revise Your Storage Fee, and you will be billed for the increase from the date the additional bullion is placed on storage. All Storage Fees herein are non-refundable, and reductions in bullion held on storage, other than annual recalculations on the Billing Date, do not reduce the Storage Fee. Your initial Storage Fee of **$389.39** is due with the return of this executed Agreement.

**3. Annual Storage Fee.** During the Term of this Agreement, Your annual Storage Fee of **$270.00** is due on the first day of each January.

**4. Storage Rates.** Storage Rates are guaranteed for one year. NWTM reserves the right after the first year to modify Storage Rates upon 60 days written notice to You. Storage Rates for all bullion held on storage shall be as follows:

    **A. Silver.** The annual Storage Rate for silver shall be three cents ($0.05) per ounce of silver—to be paid in U.S. Dollars. Minimum annual Storage Fee is $50.00 regardless of actual ounces of silver held on storage.

    **B. Gold, Platinum, and Palladium.** The annual Storage Rate for Gold, Platinum, and Palladium shall be (three) dollars ($5.00) per ounce of said bullion—to be paid in U.S. Dollars. Minimum annual Storage Fee is $50.00 regardless of actual ounces of said bullion held on storage.

**5. Changes to Stored Bullion / Addenda.** Throughout the Term of this Agreement, at each instance in which You place additional bullion on storage or remove existing bullion from storage through Liquidation or otherwise, NWTM will prepare an Addendum to this Agreement, which shall be incorporated into and become part of this Agreement upon the signature of both parties. The Addendum will set forth the resultant bullion subject to this Agreement and the resultant Storage Fee after any addition or subtraction of bullion by You. The Addendum will supersede and replace in whole the Description of Stored Bullion and the Annual Storage Fee contained in this Agreement or in any previous Addendum (Sections 1 and 3). The most recent Addendum will control over this Agreement and any previously executed Addenda. In all other respects, this Agreement will remain in full force and effect.

**6. Term / Termination.** This Agreement shall have an initial Term of one (1) year, and shall become effective on the date first set forth above. This Agreement shall renew automatically on an annual basis unless earlier terminated by either party upon thirty (30) days notice. Termination is accomplished by removing all bullion on storage with NWTM. Upon Termination, NWTM will ship Your bullion to the last known address on NWTM's records. Alternatively, You may Liquidate Your bullion and receive a cash payment payable by check.

**7. Liquidation.** "Liquidation" shall mean converting a certain quantity of stored bullion into cash to be paid to You by check. You may liquidate stored bullion, in whole or in part, at any time by calling NWTM during normal business hours. NWTM shall pay You based on NWTM's prevailing buy price for that same product, and payment shall be made to You within thirty (30) days thereafter. If You Liquidate Your total quantity of stored bullion hereunder, this Agreement shall terminate upon NWTM's provision of final payment to You.

**8. Storage Security.** NWTM agrees to maintain quality security practices at its storage facilities to reduce the risk of physical loss to stored bullion. At a minimum, these security practices include: ON-SITE ARMED GUARD—an armed security person or personnel shall be on the premises at night. Typical NWTM employees shall provide security during normal business hours; SURVEILLANCE CAMERAS—a system of cameras trained on NWTM vaults and common entrance points to its buildings must be in use at all times and set to record events on a tape rotation basis unless some other similar technology is in place. NWTM shall store surveillance camera tapes, hard-drives or other recording media in a securely locked location. In the unlikely event of a security breach affecting Your stored bullion, NWTM shall provide copies of surveillance camera records to You upon written request.

**9. Inspection.** You, or Your legally designated representative, may inspect Your stored bullion at any time during NWTM's normal business hours upon reasonable notice of at least 2 business days. You or your designee must conform to all security procedures in place at NWTM's buildings and vaults. Prior to inspection, each inspecting person shall provide NWTM with current photographic identification showing at least name, current address, and a clear picture of his or her face. In the case of a legally designated representative, a copy of the legal instrument authorizing the party to act on Your behalf must be produced. NWTM may keep a record of any person inspecting bullion and his or her documents.

**10. Warranties.** You warrant to NWTM that You own or have proper legal authority to control and direct all bullion delivered to NWTM for storage. You also warrant that You have not altered, changed, modified or tampered with any bullion placed in storage or directed another in such an act.

**11. Insurance / Replacement Liability.** NWTM agrees to cover all metal ounce-for-ounce while in storage under any existing policy controlled by NWTM. NWTM is required to maintain sufficient coverage at all times to cover all stored bullion at full replacement value at any prevailing market rate. Prevailing market rate is defined to be the spot rate of said bullion at the time of replacement, not at the time of original purchase or delivery into storage. NWTM agrees to cover You for loss by theft (both internal and external), loss or damage by negligence, loss or damage by fire or flood and loss or damage under any other coverage type as stipulated in any policy held in the name of NWTM. NWTM further agrees that in the event of loss or damage, as stipulated above, if the policy provider for NWTM does not cover said bullion held on Your behalf, NWTM will replace any loss or damage at its own expense in a reasonable time frame of not more than ninety (90) days.

**12. Shipment of Bullion.** All bullion shipments to and from NWTM's vault shall be fully insured. Both parties must take adequate care to package all bullion shipments in such a way as to prevent damage to the contents. Any shipment arriving at NWTM that appears damaged or in any way tampered with will be rejected—NWTM will not accept such a package from the carrier. Upon notification from You to remove bullion from storage, NWTM will ship Your bullion to you as soon as possible within thirty (30) days from the date of notice. Once NWTM has placed the bullion to be shipped with a common carrier, You hereby irrevocably release NWTM from all claims of liability of every kind and nature whatsoever as now exist or which may hereafter arise.

**13. No Payment of Interest.** NWTM will not pay you interest for any bullion held on storage. At any time, you may place additional bullion with NWTM for storage or remove bullion from storage by Liquidating or taking delivery of the bullion. If you Liquidate bullion held on storage, NWTM will attempt to mail a check to you in payment in the ordinary course of

business. If for any reason you do not take delivery of the check, the funds will remain at NWTM, but NWTM will not pay You interest of any type or amount regardless of the duration the funds remain at NWTM. After each addition or removal of bullion, NWTM will prepare an Addendum and send it to You for your signature. You shall execute and return all copies of the Addendum in a timely manner. After execution by both parties, NWTM will return to You an executed copy of the Addendum.

**14. Location of Stored Bullion.** NWTM may, at its sole discretion, store, ship or relocate any portion of, or all its stored bullion to any of its vaults located in the United States, including storing portions of Your stored bullion at multiple locations. If business necessity dictates, NWTM may likewise store, ship or relocate any portion or all its stored bullion to other vaults not controlled by NWTM as long as such vaults are at least equivalent in quality and safety to those maintained by NWTM.

**15. Counterparts.** This Agreement may be signed in two (2) counterparts; each of which shall be deemed an original, and which together shall constitute one agreement.

**16. Facsimile and E-mail Transmission.** Facsimile transmission of any signed original document, and retransmission of any signed facsimile transmission, shall be the same as delivery of an original. At the request of either party, the parties will confirm facsimile transmitted signatures by signing an original document. E-mail transmission of any document or notice shall <u>not</u> be effective to modify, alter or amend this Agreement unless the parties to this Agreement otherwise agree in writing and both parties duly sign said written agreement.

**17. Notice.** Any notice provided herein shall be effective if addressed to the respective party at the address located at the front of this Agreement; or if addressed to the proper party at his or her respective e-mail address, which for NWTM is indicated on NWTM's website, and for You is shown in our internal records.

**18. Reservations of Right.** In addition to the other rights hereunder, NWTM reserves the following rights unto itself:

   **A. Right to Refuse Service to Anyone.** NWTM reserves the right to refuse service to anyone. *Customer?* [handwritten]

   **B. Right to Correct Clear Errors.** NWTM reserves the right to correct any clear error or computer-related problems. Specifically, NWTM reserves the right to correct errors made on statements of account sent to You on a quarterly basis, or more often as the case may be. NWTM will make a good faith effort to notify You of any correction.

**19. Controlling Law / Venue.** This Agreement shall be construed under the laws of the State of Washington. Venue for any Court or adjudicating entity determining the rights of any party hereto shall be the Superior or District Court for King County, Washington State; or the United States District Court for the Western District of Washington.

**20. Force Majeure.** Any prevention, delay or stoppage in our performance of any term hereto due to strikes, lockouts, labor disputes, acts of God, inability to obtain labor or materials or reasonable substitutes therefore, governmental restrictions, regulations or controls, the suspension by commodity exchanges in the trading of gold, silver, platinum or palladium futures contracts or the delivery of the commodities underlying such contracts, or the failure or delay of vendors, enemy or hostile governmental action, riot, civil commotion, fire or other casualty, and other causes beyond our control, shall excuse our performance, and extend the performance of our duties and responsibilities hereunder, for a period equal to any such prevention, delay or stoppage.

**21. Complete Agreement.** This Agreement constitutes the complete and final expression of the agreement between the parties relating to the storage of bullion within NWTM's vaults, and supersedes all prior or contemporaneous contracts, agreements, understandings and representations of the parties, either oral or written, related thereto.

**22. Costs / Attorney Fees.** If either party shall retain an attorney to enforce its rights hereunder, the prevailing party shall be entitled to recover all reasonable costs, expenses and attorney fees from the non-prevailing party.

**23. Disclaimer of Warranties:** EXCEPT FOR EXPRESS WARRANTIES CONTAINED HEREIN, NWTM DISCLAIMS ALL IMPLIED WARRANTIES OF EVERY KIND AND NATURE, INCLUDING SPECIFICALLY THE IMPLIED WARRANTY OF

MERCHANTIBILITY AND THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE AS TO ALL BULLION STORED WITHIN NWTM'S VAULTS.

**24. Assignment.** NWTM may assign or transfer any of its rights, duties and responsibilities hereunder, or any interest therein, without notice to You, to any entity controlled by NWTM. You may assign or transfer any of your rights, duties and responsibilities only upon prior written notice to NWTM, and upon written permission granted by NWTM, which permission is not to be unreasonably withheld.

**25. Written Modification / Waiver of Terms.** NWTM reserves the right to modify or amend the terms of this Agreement at any time without notice. You shall not modify or amend the terms of this Agreement except by prior written agreement with NWTM.

**26. Binding Effect.** Each and every provision of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and assigns, subject at all times to all provisions and restrictions elsewhere in this Agreement. Except as expressly provided herein, nothing in this Agreement is intended to confer on any person, other that the parties hereto and their respective heirs, personal representatives, successors and assigns, any rights or remedies under or by reason of this Agreement.

**27. Plural / Singular and Gender.** Unless some other meaning and intent are clearly apparent from the context herein, the plural shall include the singular, and the singular shall include the plural; and masculine, feminine and neuter words shall be used interchangeably.

**28. Captions.** The captions shown in this Agreement are for convenience or reference purposes only, and shall not, in any manner, be utilized to construe the scope or intent of any provision herein.

**29. Invalid Provisions.** If any provision of this Agreement, or the applicability of any such provision to a specific situation, shall be held invalid or unenforceable by a Court or adjudicating body of competent jurisdiction, such provision shall be modified to the minimum extent necessary to preserve the intent and spirit of this Agreement, and to make it or its application valid and enforceable; and the validity and enforceability of all other provisions of this Agreement and all other applications of any such provision shall not be affected thereby.

**30. Time of Essence.** Time is of the essence in this Agreement.

NOW THEREFORE, the parties hereto set their hand.

**Northwest Territorial Mint, LLC**

By: _____
Ross B. Hansen, President & CEO

**John Peterson**

By: _____*signature*_____
John Peterson

**Sheila Peterson**

By: _____*signature*_____
Sheila Peterson

NWTM BULLION STORAGE AGREEMENT                                    Page 4 of 4        Rev. 12/10
Case 16-11767-CMA    Doc 1974    Filed 01/16/19    Ent. 01/16/19 10:05:49    Pg. 9 of 9