Mark D. Northrup
Miller Nash Graham & Dunn LLP
2801 Alaskan Way, Suite 300
Seattle, WA 98121-1128
Telephone: (206) 624-8300
Facsimile: (206) 340-9599
Email: mark.northrup@millernash.com
*Attorneys for The Official Unsecured Creditors' Committee*

Honorable Christopher M. Alston
Chapter 11
Location: Seattle, Room 7206
Hearing Date: February 1, 2019
Hearing Time: 11:00 a.m.
Response Date: January 25, 2019

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re<br><br>NORTHWEST TERRITORIAL MINT, LLC,<br>EIN: 30-0143641<br><br>Debtor. | Case No. 16-11767-CMA<br><br>REPLY OF COUNSEL TO THE OFFICIAL UNSECURED CREDITORS COMMITTEE TO RESPONSES TO PROFESSIONAL FEE APPLICATION(S) |

Mark D. Northrup and Miller Nash Graham & Dunn, LLP, counsel for the Official Unsecured Creditors Committee ("Committee Counsel"), replies as follows to the submissions filed in response to Committee Counsel's Final Application for Payment of Fees and Reimbursement of Expenses of Counsel for the Official Unsecured Creditors' Committee (Dkt. #1894; the "Miller Nash Fee Application") and supporting documents:

**General Responses**. Committee Counsel has reviewed the responses to the Miller Nash Fee Application filed by the following parties: Randall Lovelace (Dkt. #1976); Julie Williams (Dkt. #1977); James Lunt (Dkt. # 1978); Eric Watts (Dkt. #1983); Robert DiFatta (Dkt. #1984); David Sorensen (Dkt. #1985); Frank Roberto (Dkt. #1986); Joy Trushemski (Dkt. #1987); Jeff Manke (Dkt. #1988); Jeffresy McMeel (Dkt. #1989); Lee Thorsell (Dkt. #1990); Jodie Hirtler (Dkt. #1991); David Dougherty (Dkt. #1992); Larry Rowe (Dkt. #1993); John Eisenmann (Dkt.

REPLY OF COUNSEL TO THE OFFICIAL UNSECURED CREDITORS COMMITTEE TO RESPONSES TO FEE PROFESSIONAL APPLICATION(S) - 1
4815-5804-4806.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

Case 16-11767-CMA    Doc 2013    Filed 01/29/19    Ent. 01/29/19 16:16:22    Pg. 1 of 8

#1994); Scott Ainsworth (Dkt. #1995); Robert DiFatta (Dkt. #1996); Melvin Bell (Dkt. #1997); David Lord, Jr. (Dkt. #1998); Richard and Paula Pehl (Dkt. #1999; the "Pehl Response"); Bill Atalla (Dkt. #2000; the "Atalla Response"); Amanda Hull (Dkt. #2001); Robert Reid (Dkt. #2002); Willliam Hanson (Dkt. #2003; the "Hanson Response"); Jeffrey McMeel (Dkt. #2005); Peter Berger (Dkt. #2006); Douglas L. Davidson (Dkt. #2004); Glenn Grayman (Dkt. #2007); Grace Yow (Dkt. #2008); Igor Lachter (Dkt. #2009); Tim Tait (Dkt. #2010); and Matthew Staley (Dkt. #2011). Committee Counsel has also received by regular mail responses filed by the following parties that apparently have not been filed with the Court: Domenico Capoccia; Shannon Preston.

With the exception of the Pehl, Atalla, and Hanson Responses, all of the foregoing responses are unsworn; contain no analysis of the specific content of the Miller Nash Fee Application; and contain no legal arguments or points and authorities. The responses of David J. Lord and Shannon Preston specifically do not object to the Miller Nash Fee Application; and the Robert Reid response objects only to the Trustee's application. Although denominated a "Response to Applications for Compensation," the Atalla Response appears not to be an objection to the allowance of professional fees but instead broaches an issue of the Trustee's interaction with Mr. Wagner and Sierra Mint, with no mention of the Miller Nash Fee Application. The balance of the responses object generally to the allowance of all professional fees solely on the grounds that they are either excessive or should not be paid ahead of creditors because to do so would be "unfair" or "unjust."

Committee counsel well understands the frustration of all the creditors who have responded to the professional fee applications and Committee counsel has been acutely aware of the damage incurred by the creditor body as a whole throughout this case. In response, however, Committee Counsel must refer objecting creditors to the Bankruptcy Code itself, which establishes a system of priorities that mandate the order of payments from the assets of a bankruptcy estate to the holders of allowed claims. *See*, 11 U.S.C. §§503, 507. This statutory

REPLY OF COUNSEL TO THE OFFICIAL UNSECURED CREDITORS COMMITTEE TO RESPONSES TO FEE PROFESSIONAL APPLICATION(S) - 2
4815-5804-4806.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

Case 16-11767-CMA    Doc 2013    Filed 01/29/19    Ent. 01/29/19 16:16:22    Pg. 2 of 8

system of payment priorities is based on Congress' considerations of a number of fundamental public policies. The Bankruptcy Code authorizes court-approved professionals to be paid ahead of general creditors in order to encourage knowledgeable bankruptcy professionals to take bankruptcy cases—particularly large and complex reorganization cases. Without such a priority right to payment, knowledgeable professionals would in many cases be unwilling to incur the risk of not being compensated for work—sometimes very substantial—performed on such cases. As a consequence, the opportunities and incentives for businesses to attempt reorganization would be significantly diminished, to the detriment of business employees, creditors, and the general economy. For the drafters of the Bankruptcy Code and the bankruptcy courts that interpret its provisions, this public policy to encourage attempts at reorganization and to facilitate the orderly administration of bankruptcy cases by knowledgeable professionals was also deemed to be sufficiently paramount to mandate that bankruptcy professionals retain their right to payment of their allowed fees even if the reorganization failed and general creditors recovered little or nothing. Bankruptcy courts certainly have the power to disallow all or portions of professional fee applications but the courts cannot authorize distribution of estate funds in contravention of the Code's priority payment provisions. That is simply the statutory reality of this case.

**The Pehl Response**. The Pehl Response (Dkt. #1999) presents a litany of the Pehls' grievances and complaints about the administration of this bankruptcy case and the actions taken by case professionals, including Committee Counsel. Committee Counsel has addressed a number of these issues in his Supplemental Declaration (Dkt. #1979), filed with the Court on January 18, 2019, but adds the following commentary in further reply.

**The Letter**. On pp. 6-10 of their Response, the Pehls address the March 13, 2017 letter transmitted by William Hanson to Committee Counsel. Committee Counsel finds it difficult to discern the purpose of this narrative, which lurches from one topic and one date to another. At its base, the primary purpose of the narrative is apparently to describe the Pehls' interaction with

REPLY OF COUNSEL TO THE OFFICIAL UNSECURED CREDITORS
COMMITTEE TO RESPONSES TO FEE PROFESSIONAL
APPLICATION(S) - 3
4815-5804-4806.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

Case 16-11767-CMA    Doc 2013    Filed 01/29/19    Ent. 01/29/19 16:16:22    Pg. 3 of 8

1  Mr. Gearin following Mr. Gearin's March 21, 2017 request that all Committee members disclose
2  their communications with Ross Hansen.  Mr. Gearin issued this request after Mr. Hanson (on
3  March 20, 2017) appeared to renege on his prior announcement that he would resign from the
4  Committee.  In response to Mr. Gearin's request, all Committee members, with the apparent
5  exception of the Pehls, quickly responded to Mr. Gearin.  There ensued a back-and-forth
6  between Mr. Gearin and the Pehls regarding the Pehls response to Mr. Gearin's request—a back-
7  and-forth that was ostensibly hampered by missed phone calls, missed communications, and
8  incorrect telephone numbers.  The only role that Committee Counsel played in this melodrama
9  was as a good faith facilitator, trying to resolve the communications breakdown between the
10 Pehls and Mr. Gearin—a breakdown that was eventually resolved.
11         **The NDA**.  In their narrative the Pehls include a discussion of what they identify as the
12 "NDA." Dkt. #1999 at p. 14.  The NDA is not a "non-disclosure agreement" but is apparently
13 the Joint Litigation and Confidentiality Agreement referenced as Exhibit L to the Response and
14 executed by the Trustee, Committee counsel, Trustee's counsel, William Hanson, Paula Pehl,
15 and Richard Pehl previously in the case.  The fundamental purpose of the Joint Litigation
16 Agreement—a document routinely executed in multi-party litigation cases—was simply to
17 enable the Committee, its members, the Trustee, and the Trustee's counsel to protect as
18 privileged their communications regarding the Medallic litigation and other matters of case
19 strategy.  Yet the Pehls apparently believe that this agreement was somehow nefariously
20 concocted to "keep the Committee in check, to protect the lawyers, but not to protect the estate."
21 Dkt. #1999 at p. 18.  This allegation is baseless.  The purpose of the Joint Defense Agreement
22 was precisely to facilitate the formulation of case strategy and protect the estate's confidential
23 information from discovery by third parties.  No party to this case—and certainly not Committee
24 Counsel—has ever invoked the Joint Litigation Agreement as a basis for stifling Committee
25 members' disclosures or commentary.
26

REPLY OF COUNSEL TO THE OFFICIAL UNSECURED CREDITORS
COMMITTEE TO RESPONSES TO FEE PROFESSIONAL
APPLICATION(S) - 4
4815-5804-4806.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

Case 16-11767-CMA    Doc 2013    Filed 01/29/19    Ent. 01/29/19 16:16:22    Pg. 4 of 8

**The Audit Vote**.  Committee Counsel has addressed the Lorraine Barrick/forensic accounting issue in his Supplemental Declaration.  Dkt. #1979 at pp. 4-5.  Significantly, the Pehls' own description of their communications with David Petteys (Dkt. #1999 at p. 22), the acknowledged "point person" with Ms. Barrick, supports Committee Counsel's account.[1]  The Pehls' vague, unsupported, and conclusory conspiracy theory that "we believe action was taken to neutralize the Committee" (Dkt. #1999 at p. 22) is baseless.

**The Bressler Matter**.  The Pehls' characterization of the Bressler matter (Dkt. #1999 at pp. 22-27) is disturbing.  In their Response, the Pehls apparently insinuate that the Trustee or his counsel agreed to allow Mr. Bressler, through his attorney and without notice to the Committee, to file a $9 million RICO-based proof of claim even though the "bar date had passed," and that the Trustee or his counsel did so "in exchange for covering up incoherent administration and myopic legal strategy."  Although this allegation is directed at the Trustee and perhaps also his counsel, the Pehls add—without any evidence at all—that "Northrup had to have known about the claim."  Dkt. #1999 at p. 27.[2]  The Pehls' suppositions are based on an inaccurate knowledge of bankruptcy law and the facts of this case.  First, the Bressler proof of claim was not time-barred.  By Order entered on May 22, 2017 (Dkt. #1041), the Court extended to June 30, 2017 the deadline for filing Medallic-based claims.  The Bressler claim was filed on June 26, 2017.  Second—and contrary to the Pehls' equally baseless supposition, no one—certainly to Committee Counsel's knowledge—ever "approved" the Bressler claim in advance or agreed to allow the Bressler claim.  It is not at all unusual in bankruptcy cases for a creditor to file a litigation-based claim against a debtor, sometimes in creatively high amounts; and such claims are routinely met with objections by the debtor or trustee and, if necessary, are ultimately adjudicated by the courts.

---

[1]  As the Pehls note (apparently with some consternation), Mr. Petteys never pushed Ms. Barrick or compelled her to conduct a forensic audit.

[2]  In his Supplemental Declaration (Dkt. #1979 at p. 12), Committee counsel has testified that he in fact had no prior knowledge of the Bressler RICO claim.

REPLY OF COUNSEL TO THE OFFICIAL UNSECURED CREDITORS COMMITTEE TO RESPONSES TO FEE PROFESSIONAL APPLICATION(S) - 5
4815-5804-4806.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

Case 16-11767-CMA    Doc 2013    Filed 01/29/19    Ent. 01/29/19 16:16:22    Pg. 5 of 8

**The Hiring of Bill Atalla**. In their Response (Dkt. #1999 at pp. 27-33), the Pehls complain mightily about the Trustee's engagement of Bill Atalla as Mint CEO. The Pehl Response (p. 29) misleadingly describes the Committee's January 20, 2017 interview with Mr. Atalla[3] but correctly acknowledges that a respected Seattle turnaround professional who was concurrently being interviewed as Committee financial advisor and who participated in the Atalla interview advised the Committee that, in his opinion: a) Atalla was a find comparable to a "needle in a haystack"; and b) a delay in retaining him could well mean the "death" of the company. *See*, Exhibit S to the Pehl Response. However reluctantly, the Committee (including Ms. Pehl and Mr. Hanson) thereafter voted to approve the engagement of Mr. Atalla and the engagement was approved by the Court on February 3, 2017.

In retrospect, the retention of Mr. Atalla produced little benefit to the estate; but the Committee's response and the Trustee's business decision to engage Atalla cannot fairly be judged or criticized in hindsight.

Ultimately, the Pehl Response is vague in its conclusion:

> We ask for justice. We believe that the professionals in this case acted first out of greed to meet their stipulated goal of $5 million in fees, as stated in writing in May 2016 in the projected professional cost of the bankruptcy, and acted so as to generate fees to reach their goal, even in the face of opposition by the Committee and criticism by the Court. That they also shot themselves in the foot by shielding the Trustee in reckless conduct, bad business practices, and possible misconduct so that the estate became administratively insolvent does not command sympathy [sic]. They are the victims of their own self-serving territoriality.

Pehl Response at p. 37.

To be clear, Committee Counsel views the statement that "the professionals in this case acted first out of greed to meet their stipulated goal of $5 million" as being not only absurd but

---

[3] Committee Counsel had advised the Committee that the Trustee and his counsel would not be present at the Atalla interview. The Trustee and his counsel were present at the introduction of Atalla but left the meeting shortly thereafter.

REPLY OF COUNSEL TO THE OFFICIAL UNSECURED CREDITORS COMMITTEE TO RESPONSES TO FEE PROFESSIONAL APPLICATION(S) - 6
4815-5804-4806.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

Case 16-11767-CMA    Doc 2013    Filed 01/29/19    Ent. 01/29/19 16:16:22    Pg. 6 of 8

as bordering on the libelous.  Projecting the fees and costs of a large, complex, litigation-driven Chapter 11 case within days after it is filed is patently impossible.  The Court did not even enter its final Order appointing Miller Nash as Committee Counsel until June 21, 2016 (Dkt. #424), yet the Pehls apparently believe that in May 2016—within just a few days of Committee Counsel's appearance in the case—the case professionals had already somehow conspired to fix an ultimate fee goal and had immediately set about to obtain payment of those fees regardless of how the case progressed.  This is complete nonsense.  Sadly, however, it is nonsense like this that—once published by whatever source—has had the negative, secondary impact of fueling the shadow blogosphere of misinformation and conspiracy theories that have beset this case.

**The Hanson Response**.  As in the case of the Pehl Response, it is not clear what specific relief Mr. Hanson is seeking.  Mr. Hanson asserts in the first line of his Response: "I do not concern myself with compensation to the professionals neither in amount or if in fact there is compensation."  What does this mean?  Is Mr. Hanson objecting to professional fee applications or not?  Regardless, Mr. Hanson goes on to reiterate his perspective on the March 13, 2017 "Trustee removal" letter and on the "forensic accountant" issue.  Committee counsel has addressed both of these issues in his Supplemental Declaration.

In the final analysis, Committee Counsel believes that the Court should consider Committee Counsel's work and interaction with all the members of the Committee, when evaluating the Miller Nash Fee Application.  The Committee in this case originally consisted of six members.  This number was reduced to five after Mr. Hanson's resignation in March 2017.  Excluding Member Pehl, it is noteworthy that of the four other Committee members *none* filed an objection to Committee Counsel's fees; and the Chair of the Committee has stated on the record that "I have no problem with your fees."  *See*, Dkt. #1943 at p. 7.  Throughout the case, these four Committee members were "in the room where it happened"; were always practical and objective; were respectful of the court and the bankruptcy process; and were unaffected by any compulsion to grind personal axes.

REPLY OF COUNSEL TO THE OFFICIAL UNSECURED CREDITORS COMMITTEE TO RESPONSES TO FEE PROFESSIONAL APPLICATION(S) - 7
4815-5804-4806.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

Case 16-11767-CMA    Doc 2013    Filed 01/29/19    Ent. 01/29/19 16:16:22    Pg. 7 of 8

| | |
|---|---|
| 1 | DATED this 29th day of January, 2019. |
| 2 | |
| 3 | MILLER NASH GRAHAM & DUNN LLP |
| 4 | |
| 5 | */s/ Mark D. Northrup* |
| 6 | Mark D. Northrup, WSB No. 16947<br>mark.northrup@millernash.com |
| 7 | *Attorneys for The Official Unsecured Creditors' Committee* |

REPLY OF COUNSEL TO THE OFFICIAL UNSECURED CREDITORS COMMITTEE TO RESPONSES TO FEE PROFESSIONAL APPLICATION(S) - 8
4815-5804-4806.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

Case 16-11767-CMA    Doc 2013    Filed 01/29/19    Ent. 01/29/19 16:16:22    Pg. 8 of 8