Michael J. Gearin, WSBA # 20982
David C. Neu, WSBA # 33143
Brian T. Peterson, WSBA # 42088
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
(206) 623-7580

Honorable Christopher M. Alston
Chapter 11
Hearing Location: Seattle, Rm. 7206
Hearing Date: Friday, February 1, 2019
Hearing Time: 11:00 a.m.
Response Date: January 25, 2019

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| In re:<br><br>NORTHWEST TERRITORIAL MINT, LLC,<br><br>               Debtor. | Case No. 16-11767-CMA<br><br>SUPPLEMENTAL REPLY DECLARATION OF MARK CALVERT IN SUPPORT OF FEE APPLICATIONS OF CHAPTER 11 TRUSTEE AND TRUSTEE'S PROFESSIONALS |

Mark Calvert declares as follows:

1.     I am the Chapter 11 Trustee of Northwest Territorial Mint, LLC ("NWTM" or "Debtor"). I am over eighteen (18) years of age and I am competent in all ways to testify. Unless otherwise stated herein, the following declaration is based on my personal knowledge. I submit this Declaration in Support of the Trustee's First Application for Compensation (Dkt. No. 1926) (the "Trustee Application"); the First Application for Compensation of Cascade Capital Group LLC as Accountants for the Chapter 11 Trustee (Dkt. No. 1924) (the "Cascade Application"); and K&L Gates LLP Application for Compensation (Dkt. No. 1928) (the "K&L Gates Application," and together with the Trustee's Application and the Cascade Application, the "Fee Applications").

2.     This Declaration addresses certain issues raised in responses filed since the initial hearing on the Fee Applications.

3.     There are approximately twenty-three generic objections and responses filed by creditors in connection with the Fee Applications. The creditors have expressed frustration that there will be no return to unsecured creditors. I share the creditors' frustration. The creditors and the Court

SUPPLEMENTAL REPLY DECLARATION OF MARK
CALVERT IN SUPPORT OF FEE APPLICATIONS OF
CHAPTER 11 TRUSTEE AND TRUSTEE'S
PROFESSIONALS- 1

502063106 v4

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

should know that I have made every effort to preserve and protect the business assets of the estate, reorganize the debtor's business, and generate a return to unsecured creditors. I operated the debtor's business for twenty-one months, paid all postpetition operating expenses, and resolved and paid all the secured and virtually all the administrative claims in the case. In addition, I liquidated the assets of the estate through a difficult and labor intensive process including multiple court approved sales of significant asset packages of the estate.

4. Many of the generic objections appear to have been filed due to the solicitation of creditors by Joshua Gibbons, a blogger who has made a habit of spreading false and defamatory rumors and unsupported speculation about this case online. Mr. Gibbons is not a creditor or party in interest of the estate, and has no pecuniary interest in the case. At the initial hearing on the Trustee Professionals' Applications, the Court found that Mr. Gibbons had no standing and ruled that it would not consider Mr. Gibbons submissions. Subsequently, Mr. Gibbons solicited creditors to file objections to the fee applications. At least one creditor has forwarded a message to me what appears to be a generic email that he received from Mr. Gibbons in which Gibbons alleges, based upon his sheer speculation, that there has been fraudulent diversion of assets from the bankruptcy estate and urges individuals to "**please take action**." In his solicitation, Mr. Gibbons defines action to include reporting bankruptcy fraud to the Department of Justice and writing to the Court. In his solicitation, Mr. Gibbons provides a script for the letter that he suggests that creditors write. The solicitation states "The simplest 'script' could go something like this:

•I am a creditor,

•It looks like Sierra Mint took over many NWTM assets,

•If so, Sierra Mint may well have caused NWTM to shut down, losing $10M or so of value,

•The professionals should not get paid until they have investigated this and taken appropriate action"

SUPPLEMENTAL REPLY DECLARATION OF MARK CALVERT IN SUPPORT OF FEE APPLICATIONS OF CHAPTER 11 TRUSTEE AND TRUSTEE'S PROFESSIONALS- 2

502063106 v4

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 2016    Filed 01/29/19    Ent. 01/29/19 20:16:55    Pg. 2 of 20

Mr. Gibbons solicitation to creditors appears to be in the realm of offering legal advice. Mr. Gibbons' untruthful speculations have made an already difficult case even more difficult for the creditors as creditors have emotionally responded to these false and spurious allegations.

5.      I have reviewed the declaration filed by Mr. Atalla in connection with the fee applications. I have fully paid Mr. Atalla's allowed claim administrative claim in this case.

6.      Mr. Atalla's allegation that I did not respond to his purchase offers is not true. I provided my responses to his inquiries in writing through my counsel. Attached hereto as <u>Exhibit A</u> and <u>Exhibit B</u> are my legal counsel's written responses to Mr. Atalla's offers to purchase property of the estate.

7.      Mr. Atalla has alleged that I entered into a consignment arrangement with Paul Wagner. There is no existing agreement between myself and Mr. Wagner to sell the "store inventory" of NWTM on a consignment basis. I explored the possibility of entering into an agreement with Mr. Wagner but he never finalized such agreement. On January 24, 2019, Mr. Wagner sent me the attached letter withdrawing his interest in selling such assets on a consignment basis, in part, because of false allegations being propounded by the Pehls, Atalla, and Joshua Gibbons. That letter is attached hereto as <u>Exhibit C</u>. I believe that the false allegations against Mr. Wagner, forcing him to withdraw his interest in cosigning the inventory, will result in a material degradation of the value of the store inventory that remains in the estate.

8.      I continue to investigate avenues for the liquidation of the remaining assets of the estate, including the store inventory. However, I have no interest in consigning assets with Mr. Atalla. The estate has already contracted for services with Mr. Atalla, and Mr. Atalla failed to perform under that agreement. Mr. Atalla has no current business, and no ability to perform on a contract to liquidate store inventory. I have other reasons that I do not believe it advisable to do business with Mr. Atalla on terms which would require the estate to depend upon his future performance. Mr. Atalla is free to make an all cash offer to purchase the store inventory.

SUPPLEMENTAL REPLY DECLARATION OF MARK CALVERT IN SUPPORT OF FEE APPLICATIONS OF CHAPTER 11 TRUSTEE AND TRUSTEE'S PROFESSIONALS- 3

502063106 v4

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

9. Mr. Atalla also speculates that Sierra Mint has been profiting from NTWM assets because the customer service number for the NWTM Amazon seller account is a Sierra Mint number. Based on this fact, Atalla concludes that revenues from the Amazon account are being diverted to Sierra Mint's accounts. This is patently false. Atalla asserts that the Amazon revenues are not recorded in the Trustee's operating reports. But the Amazon revenues *are* reflected on the operating reports. *See, e.g.*, MOR of October, 2018 UST-14 Statement of Cash Receipts Detail Exhibit 3.1 reflecting receipt of "Amazon Collections" on October 9, 2018 and October 22, 2019. Mr. Wagner has not received any of the revenues from Amazon sales. Revenues from the Amazon seller account are deposited directly into NWTM bank accounts. Mr. Wagner, who operates Sierra Mint, handled customer inquiries on that account while he was an employee of the Mint. He continued to do so, without compensation, when he left NWTM and began operating Sierra Mint and that is the reason that the Sierra Mint phone number is reflected on the Amazon account.

10. Ms. Pehl has filed a response to the Fee Applications. The Pehl response is a renewal of prior letters submitted to the Court, which I previously addressed in my supplemental submissions to this Court that were filed on January 18, 2019. The Pehls repeat the wild and unsupported conspiracy theory that I spun off a profitable China die operation from the estate and vested Mr. Wagner with control over that business in order to divert the profits from that business from the estate. These allegations are patently false. Pehl bases her conclusion on an exhibit she procured from materials that I presented to the Committee in confidence. That exhibit is entitled "Snap Shot of March Accomplishments and April Priorities", was prepared by Mr. Atalla and contains the following sentence: "Separated the stock business as a micro business, a customer of the Mint." This sentence refers to my efforts to evaluate the profitability of certain aspects of the debtor's business on an accounting basis. I never "spun off" the stock sales aspects of the business and never diverted any business lines of NWTM to Paul Wagner or Sierra Mint.

SUPPLEMENTAL REPLY DECLARATION OF MARK CALVERT IN SUPPORT OF FEE APPLICATIONS OF CHAPTER 11 TRUSTEE AND TRUSTEE'S PROFESSIONALS- 4

502063106 v4

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

11.     The Pehls' submitted a letter to the Court in October, 2018 which contained false allegations regarding the diversion of the "China business." I addressed those allegations in the materials I filed with the Court in November, 2018, in response to the Court's letter dated November 6, 2018.  Given the allegations surrounding Sierra Mint, I commissioned an independent accounting firm, Clark Nuber, to conduct a specific procedures report regarding Sierra Mint sales to confirm that Sierra Mint was not using NWTM dies. I asked for and obtained Mr. Wagner's cooperation with Clark Nuber to conduct the specific procedures.  I paid for the specific procedures report with my own funds, and have not and will not seek reimbursement from the estate for the services of Clark Nuber. The purpose of the procedures was to assure myself that I had not missed something given all the allegations regarding China dies.  A copy of the report is attached hereto as Exhibit D. The report indicates that for each Sierra Mint purchase through its Chinese manufacturer, "die costs" were included in each invoice. The procedures also confirmed that Sierra Mint paid its Chinese die manufacturer, Yong Tuo Emblem Co., LTD for the creation of those dies. This report confirmed my belief that Sierra Mint was not making use of dies that had been created for NWTM contrary to the allegations made some.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

EXECUTED this 29th day of January 2019 at Seattle, Washington.


*/s/ Mark Calvert*
Mark Calvert

SUPPLEMENTAL REPLY DECLARATION OF MARK CALVERT IN SUPPORT OF FEE APPLICATIONS OF CHAPTER 11 TRUSTEE AND TRUSTEE'S PROFESSIONALS- 5

502063106 v4

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## <u>CERTIFICATE OF SERVICE</u>

The undersigned declares as follows:

That she is a paralegal in the law firm of K&L Gates LLP, and on January 29, 2019, she caused the foregoing document to be filed electronically through the CM/ECF system which caused Registered Participants to be served by electronic means, as fully reflected on the Notice of Electronic Filing.

I declare under penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct.

Executed on the 29th day of January, 2019 at Seattle, Washington.

*/s/ Denise A. Lentz*
Denise A. Lentz

SUPPLEMENTAL REPLY DECLARATION OF MARK
CALVERT IN SUPPORT OF FEE APPLICATIONS OF
CHAPTER 11 TRUSTEE AND TRUSTEE'S
PROFESSIONALS- 6

502063106 v4

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

# EXHIBIT A

**From:** Gearin, Mike
**Sent:** Wednesday, January 16, 2019 12:40 PM
**To:** Donald A Bailey
**Cc:** Neu, David; Calvert, Mark (EXTERNAL); Northrup, Mark D.
**Subject:** RE: NWTM [KLG-USW_Active01.FID52176]

Don:

I did talk to Mark about the offer. While the Trustee is willing to entertain offers to purchase residual assets of the estate at the appropriate time, it is premature to do so now, especially offers for nominal value.

As you know, one of the most significant remaining assets of the estate is the store inventory with a book value of $354K. The Trustee intends to file a motion before the end of the month to propose a method to liquidate this inventory. The Trustee will need to retain many of the assets that Bill has offered to purchase until he can conclude the liquidation of the inventory. I believe that Mark has already asked Bill if he is interested in acquiring the inventory and that Bill has declined to make an offer on the inventory, but if that changes, please let us know.

I would appreciate it if all communications regarding proposed transactions with the estate would be communicated through me.

Best

Mike


**Michael J.Gearin**

**K&L Gates LLP**

925 Fourth Avenue, Suite 2900
Seattle, WA 98104
(206) 370-6666 Direct
(206) 940-2500 Mobile
michael.gearin@klgates.com


**From:** Donald A Bailey [mailto:donald.bailey@shaferbailey.com]
**Sent:** Wednesday, January 16, 2019 11:37 AM
**To:** Gearin, Mike

**Cc:** Neu, David; Calvert, Mark (EXTERNAL); Northrup, Mark D.
**Subject:** Re: NWTM [KLG-USW_Active01.FID52176]

**External Sender:**

Mike:

Bill would like to have a substantive response by the end of the week.  let me know if that is not feasible.

Donald A Bailey
Attorney at Law

PLEASE NOTE NEW ADDRESS:
1601 Fifth Avenue, Suite 610
Seattle WA 98101
Phone: 206 682 4802
Mobile: 206 910 2384

**From:** Gearin, Mike
**Sent:** Tuesday, January 15, 2019 3:04 PM
**To:** donald.bailey@shaferbailey.com
**Cc:** Neu, David ; Calvert, Mark (EXTERNAL) ; Northrup, Mark D.
**Subject:** FW: NWTM [KLG-USW_Active01.FID52176]

Hi Don:  Please note my new email address (since maybe 2007)  michael.gearin@klgates.com.

We will discuss with Mark and get back to you.

**Michael J.Gearin**
**K&L Gates LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
(206) 370-6666 Direct
(206) 940-2500 Mobile
michael.gearin@klgates.com

**From:** Neu, David
**Sent:** Tuesday, January 15, 2019 2:58 PM
**To:** Gearin, Mike
**Subject:** FW: NWTM

**From:** Donald A Bailey <donald.bailey@shaferbailey.com>
**Sent:** Tuesday, January 15, 2019 1:18 PM
**To:** Calvert, Mark (EXTERNAL) <mark@cascadecapitalgroup.com>
**Cc:** Neu, David <david.neu@klgates.com>; Gearin, Mike <michael.gearin@klgates.com>; Mark Northrup <mark.northrup@millernash.com>
**Subject:** NWTM

Dear Mark:

Happy New Year!

Please see attached purchase offer from Bill Atalla.

Best,

Donald A Bailey
Attorney at Law

PLEASE NOTE NEW ADDRESS:
1601 Fifth Avenue, Suite 610
Seattle WA 98101
Phone: 206 682 4802
Mobile: 206 910 2384

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at michael.gearin@klgates.com.

# EXHIBIT B

**From:** Gearin, Mike
**Sent:** Wednesday, January 23, 2019 4:56 PM
**To:** Donald A Bailey
**Subject:** RE: Mint [KLG-USW_Active01.FID52176]

Don:

     This is not at all helpful.  The Trustee is focused on finding the best available alternative to liquidate the remaining inventory and remaining assets of the estate.  Mr. Atalla is proposing a contract with the Trustee which would call for a long term relationship between the parties while the liquidation of inventory occurs.  But Mr. Atalla threatens the trustee with the filing of a declaration of some sort in connection with discussions of such an agreement.  This does not engender the kind of trust that would be necessary to arrive at an agreement involving a relationship going forward.  The Trustee has significant concerns regarding Mr. Atalla's ability to perform on any consignment agreement.  Among other things, Mr. Atalla does not have a business that could perform the consignment sales but proposes to start up such a business.  The offer that has been made is of de minimus value to the estate.

     Mr. Atalla has no standing to file anything in the bankruptcy case.  He is not a creditor or party in interest to the bankruptcy case.  There is no motion pending to sell assets that Mr. Atalla has expressed interest in acquiring.  If Mr. Atalla chooses to file a declaration with the Court under these circumstances, the Trustee will be forced to conclude that he is not negotiating in good faith regarding a purchase proposal, but has alternative motives for presentation of his proposal.  We will not waste our time playing these games.


**Michael J.Gearin**
**K&L Gates LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
(206) 370-6666 Direct
(206) 940-2500 Mobile
michael.gearin@klgates.com


**From:** Donald A Bailey [mailto:donald.bailey@shaferbailey.com]
**Sent:** Tuesday, January 22, 2019 4:49 PM
**To:** Gearin, Mike

**Subject:** Mint

**External Sender:**

Mike:  Bill Atalla has authorized me to put off filing the declaration until noon Thursday, but he wants a substantive discussion of his offer to occur between now and then.

Donald A Bailey
Attorney at Law

PLEASE NOTE NEW ADDRESS:
1601 Fifth Avenue, Suite 610
Seattle WA 98101
Phone: 206 682 4802
Mobile: 206 910 2384

# EXHIBIT C

January 24, 2019

To: Mark Calvert (email)
CC: Mike Gearin  (email)

Subj:  Wind-down services I provide

Mark,

I've attached a copy of what I think is in that inventory and happy to walk you through it where time permits.  As you know, we've not conducted a physical inventory for a long time.  I believe this schedule is directionally right but in no terms would I warrant it accurate.

Below are some of the challenges I think you should be aware of in liquidating this inventory:

a.  A significant portion of the inventory is for engraving;  an investment in equipment / labor to service this would need to be made OR deeply discount for customers to take their coins to a local engraver – local engraving charges MUCH higher than the value of the coin.

b.  Age of inventory.  There are some that believe the value of a coin doesn't diminish.  Unfortunately, many of the products' packaging has "yellowed" under florescent lights for years – maybe a decade.  There's a lot of inventory under other labels ("Challenge Coin Co") that's not sold for years.

c.  Out of Business: If customers can't get their needs serviced from its current supplier, they will shift to others – I'm sure after a year of inactivity they have.

d.  Licensed merchandise.  I'm sure all the licenses have expired.   Easily more than 25% (and I would argue closer to 50%) is licensed product.  The cost of re-establishing these licenses may outweigh the returns we get from the sell-off.  Sierra Mint has some of these licenses, but we may not be willing to leverage for the limited gains.

e.  Constriction of channels of distribution.  The vast majority of this inventory was sold to a) Exchanges – stores on bases for NEXCOM, AAFES, Marines, Coast Guard  and b) Wholesalers.  The Exchanges want a consistent supply-chain that our inventory can't solve  - this channel has dried up and is being fulfilled by our past competitors.  The wholesale distributors have already picked the "good" product clean.  We're left with the crap that we've not sold for years.  I'm not sure we can reengage these entities.  Selling one/two units to individuals compose less than 10% of past sales.

f.  Lack of packaging.  A significant portion of the inventory lacks basic packaging – barcodes, peg-hook packaging, "romance" content, etc.  Much of the inventory is in loose boxes and packed only in poly-bags.

g.  Overproduction.  Much of inventory is overproduction of product that has failed to sell.  Included in this are a) AA recovery coins, b) Golf coins, c) Wedding coins, etc – most of which have limited or no outlet.

h.  Seasonality.  I had hoped we would start liquidating this inventory back in Aug/Sept of last year.  We missed the holidays and we know without a doubt that our best opportunity to liquidate this

is from Veteran's day through Christmas. We will have high carrying costs until seasonality is favorable again.

i. Valuation. We placed the valuation of the inventory based on average cost of production. However, if no one is willing to purchase it that valuation drops – possibly to scrap value.

A few notes about Atalla's offer to liquidate inventory:

- I don't blame you for not wanting to do business with him again – he's already proven he can't sell anything. That was his key role in 2017 and he failed miserably, taking down a company with more than 100 years of heritage.
- Why haven't you prosecuted him given his "midnight raid" and the fraud from the Andersen scam?
- He committed in a UCC meeting to reimbursing the $50k he took from the company to relocate 20 miles. He never executed on this commitment. He's proven he can't follow up on his commitments (or he doesn't have the funds to back up his commitment). Why would you trust him to liquidate inventory?
- He knows nothing of the product, the customer base, or how to connect them.
- I doubt Bill has the funds required for the up-front costs that will be required to liquidate the inventory. It will likely be in excess of $50,000 – an amount he seems unable to find (see above).

I have advised you that I doubt NWTM has rights to assets in China. I'm not aware of an agreement with any overseas suppliers for rights to any asset. I'm not aware of any IP filing other than the NWTM trademark filed in the US (somewhere around 2012). I believe there's no product that has an IP filing other than my filing for "Say it In Silver". I've been accused of using dies owned by NWTM in China, dies the estate has falsely laid claim to. Nonetheless, I've opened my books and bank account to audit by you (and at your expense) . This audit has proven that I've paid for assets to produce my product; that for every product delivered to me from China, I have paid for the dies used to strike the product – in every instance without fail. I have gone through extraordinary effort to ensure there is no compromising position between the consultation I've provided NWTM and the effort to get Sierra Mint underway in late Spring of 2018 regardless of the false accusations. To be clear, I don't believe Sierra Mint profited in 2018 – tax returns TBD.

Mark, I've been abused in this environment. I can't think of a single individual that has contributed to the effort that avoided being tarnished by false accusations and lies. The persistent lies and defamatory comments from the miscreants are amazing – Gibbons, Pehls, Hoffs, Atalla. There has been absolutely no accountability of their false statements to the court and it appears there never will be. The Hoffs have had little reservation in expressing their animus for a list of employees, myself on that list. They clearly shared their bias with members on the UCC, the Pehls most persuaded. The adage "if I can't get mine, I'll make sure you don't get yours" is certainly at play here. I provided you a detailed reply to the previous Pehl letter to the court highlighting their low-IQ arguments, misrepresentations, false

allegations, and outright lies – practically every paragraph littered with them. The same baseless claims are parroted in the Gibbons postings. We know Hoffs and Atalla are supplying defamatory and misleading claims in the background. I believe most if not all are puppets of Ross / Diane – if not actually being compensated from them. Amazingly, few posts by Gibbons actually lay blame for what happened where it legitimately lies – Ross, Diane, and Atalla.

Mark, **for the aforementioned I think it's best to withdraw my offer to help you liquidate the inventory**. I hate to leave you hanging and we both know there's no one else that can do this, but I believe the bogus Gibbons postings, the false allegations from the Pehls, etc are hurting my business – and ability to find work. This is exactly what their aim is. When you Google Mark Calvert, Cascade Capital, Wagner, etc, we're turning up in Gibbon's postings. When the phone doesn't ring, you don't know if it's a result of the defamation he posted. Sierra Mint has customers asking about the bankruptcy and what they read on-line regarding the false narrative that Sierra is intertwined with a bankrupt business. Because the Pehls have status with the court shouldn't mean that they can make such false statements and lies without recourse, but it seems they can. It's unbelievable that the court is used as a forum to express the views of liars and thieves at the expense of those like me with the ability to provide maximum value to the estate – with little or nothing expected to show for it. The direct association I have with this case has been increasingly painful and there doesn't seem any relief in sight.

I told you that I would help you liquidate the "store" stock retail inventory. I am uniquely qualified to do so: a) I know the product; b) I know the customer; c) I have retail experiences second-to-none (read my resume); d) I understand the channels of distribution; and e) I have the contacts from working this business since 2012. There is not a person on this planet more qualified to maximize the return on this inventory but me. I apologize for not sticking with this commitment. The best advice I can provide now is to deeply discount your expectation for liquidating this inventory. The inventory is roughly 20,000 lbs and a scrap rate of $0.34/lb. Hopefully it doesn't come to that.

Although we've worked together under very difficult circumstances with the bankruptcy of NWTM, I appreciate your leadership, integrity, and experience in the attempt to turn the company around and the related close-down process. I've learned much from you and you've reinforced my belief that integrity is everything; that being honest and transparent is among a person's highest qualities. Your interpersonal skills are some of the best I've ever seen – and I've worked in some of the best cultures in corporate America. Although we've worked with unbelievable headwinds, I've benefited and have enjoyed working with you.

No good deed goes unpunished. I'm out. Good luck.

Best regards,

Paul Wagner

# EXHIBIT D



**Clark Nuber** PS

Independent Accountant's Report on Applying Agreed-Upon Procedures

Mr. Mark Calvert
Managing Director
Cascade Capital Group
Seattle, Washington

We have performed the procedures enumerated below, which were agreed to by Mr. Mark Calvert, on the validation of die purchases made by Sierra Mint between January 1, 2018 and November 12, 2018 ("the Purchases"). Mark Calvert and Sierra Mint's management are responsible for the accuracy and reliability of purchasing information provided by Sierra Mint's management over the period. The sufficiency of these procedures is solely the responsibility of the parties specified in this report. Consequently, we make no representation regarding the sufficiency of the procedures enumerated below either for the purpose for which this report has been requested or for any other purpose.

| | |
|---|---|
| Procedure 1: | Obtain from Sierra Mint management a listing of dies purchased by Sierra Mint since inception and reconcile that to data found in Sierra Mint's accounting records. |
| Results: | Clark Nuber produced reports directly from Sierra Mint's accounting system and agreed amounts to the purchasing activity reports provided separately by Sierra Mint management. |
| Procedure 2: | Review source documents (e.g. invoices, purchase orders, or equivalent documents) and agree purchase price, supplier, and date to Sierra Mint's accounting records. |
| Results: | Clark Nuber noted that the supplier and date agreed to source documents in each case. We were also able to reconcile the purchase price noted on the source documents to Sierra Mint's accounting records. We noted that "Die Costs" were included in each invoice from Yong Tuo Emblem Co., LTD. Common among the reconciling items were keystroke errors and entering a quoted price that was not updated when the invoice was received. |
| Procedure 3: | To confirm payment, agree purchase price noted in source documents received in procedure 2 to bank records and Sierra Mint's accounting records. |
| Results: | Clark Nuber was able to observe payment of invoices from Yong Tuo Emblem Co., LTD through access to Sierra Mint's online banking portal. We noted that the payment made agreed to the related invoice as well as Sierra Mint's accounting records. |

This agreed-upon procedures engagement was conducted in accordance with attestation standards established by the American Institute of Certified Public Accountants. We were not engaged to and did not conduct an examination or review, the objective of which would be the expression of an opinion or conclusion, respectively, on the Purchases. Accordingly, we do not express such an opinion or conclusion. Had we performed additional procedures, other matters might have come to our attention that would have been reported to you.



T: 425-454-4919
T: 800-504-8747
F: 425-454-4620

10900 NE 4th St
Suite 1400
Bellevue WA
98004

clarknuber.com



This report is intended solely for the information and use of Mr. Mark Calvert and is not intended to be and should not be used by any other parties.

Clark Nuber P.S.

Certified Public Accountants
November 30, 2018