# EXHIBIT B

**MINUTES**
**NW TERRITORIAL COMMITTEE MEETING**

**May 9, 2016, 2:00 p.m.**

**Committee members attending:**

Bill Hanson (co-chair)
David James
Dick Pehl
Paula Pehl
Larry Chiappellone

**Committee members absent:**

Thomas Seip
Donald Wright
John Young

**Committee Counsel attending:**

Mark Northrup
Geoff Groshong

1. The Tracy law firm withdrawal motion and the court's approval of the motion were discussed.

2. The proposed form of Bylaws was discussed. Agreed changes to the draft will be made by Mark Northrup and incorporated in Amended Bylaws to be presented to the Committee for approval.

3. The Committee discussed whether regular meetings should be held. The Committee agreed that regular meetings will be held on Fridays at 2:00 p.m., by conference call, with the same call-in numbers. The first regular meeting will be held on Friday, May 13, 2016 at 2:00 p.m.

4. The Committee discussed several motions before the Court for which the response deadline is Friday, May 13, 2016.

4.1 Calvert has filed a motion to set a bar date for September 1, 2016. No response is necessary.

4.2 Calvert has filed a motion to employ his own firm as accountants. Paula and Dick Pehl were opposed, and wanted Calvert to hire an independent accounting firm. After discussion, the other Committee members voted in favor of Calvert's motion and the Committee will not file a response.

4.3     Calvert has filed a motion to allow for the monthly payment of the costs and a portion of the fees of the trustee and the professionals employed in this case. After discussion, the committee unanimously voted not to oppose the motion.

4.4     The Auburn landlord has filed a motion seeking an order granting it adequate protection and other relief. Mark reported that Calvert is dealing with this. The committee unanimously voted not to file a response to this motion. Paula stated that Calvert might be well advised to do an environmental assessment when he vacates the site, as protection against the type of problem NW Territorial had with Cohen (Cohen obtained a $3,000,000 judgment for environmental contamination).

4.5     Calvert has filed a motion for the sale of the Houston operation, to the landlord for a price of $600,000 plus assumption of $150,000 in liabilities. An earlier contingent offer from a competitor in Rhode Island for $1.5 million was withdrawn. It is possible, but not assured, that competitive bidding could occur based on the noting of the landlord offer, and this could increase the purchase price. Calvert has told Northrup that the Houston operation is eating cash, and must be sold as soon as possible. The Committee voted unanimously not to oppose the motion.

5.     The Committee discussed the Remington-copy silver statues, including the problem that they could be readily moved overseas. Calvert should check with the foundry in Sandy, Oregon for sales records and other information.

6.     Committee confidentiality was discussed. Mark explained that the written and verbal communications between the Committee and Miller Nash Graham & Dunn (its attorneys and staff) are protected by attorney-client privilege.

7.     Paula asked about whether the Committee should have officers. Mark stated that having co-chairs and a secretary to the Committee was sufficient.

The meeting was adjourned at 3:30 p.m.


_____

Mark Northrup, Secretary


70098921.1

## MINUTES
## NW TERRITORIAL MINT CREDITORS' COMMITTEE MEETING
### FRIDAY, MAY 13, 2016 at 2:00 P.M. SEATTLE TIME
### Call-in number: (206) 777-7557
### Participant Code: 0175360

1.    Attendance. Present were: Mark Northrup and Geoffrey Groshong as counsel for the Committee; William Hanson, co-chair of the Committee; Richard Pehl; Paula Pehl; Thomas Seip; and Larry Chiappellone. Absent were: David James, co-chair of the Committee; Donald Wright; and John G. Young for Young DeNormandie, PC.

2.    Approval of minutes. The Committee discussed the draft minutes for the meeting of May 9, 2016. Certain corrections were proposed. It was moved by Bill Hanson and seconded by Dick Pehl that the minutes of the May 9, 2016 meeting be approved. After discussion, the motion was unanimously approved.

3.    Approval of Bylaws. The proposed bylaws were discussed. Paula had suggested certain amendments, which Mark Northrup discussed. Further corrections were discussed. It was moved by Bill Hanson and seconded by Dick Pehl that the bylaws, as amended and corrected, be approved. After discussion, the motion was unanimously approved.

4.    Report on First Meeting of Creditors on May 11, 2016. Mark Northrup, Geoff Groshong and Bill Hanson reported on the first meeting of creditors (the meeting held pursuant to 11 U.S.C. Section 341) on May 11, 2016, which commenced at 2:00 p.m. and concluded at 5:00 p.m. The time was occupied, roughly as follows: for approximately the first two hours, Ross Hansen was questioned by Martin Smith, the staff attorney for the United States Trustee, who presided at the meeting, and Mike Gearin, attorney for the Chapter 11 trustee, Mark Calvert.

Among the highlights:

(a)    Ross Hansen appeared (unexpectedly), and testified without counsel.

(b)    Ross Hansen was combative and without remorse, blaming others (Cohen, Calvert, Gearin) for the failure of the enterprise and for the lack of records. Blaming others for the lack of records was nonsensical, as Ross testified that he had not kept records or filed tax returns since 2011.

(c)    Ross said he would evict NW Territorial Mint from the Dayton facility. Ross testified that various assets, for instance the website, were worth millions of dollars.

(d)    Gearin is ordering a transcript of the hearing and Mark Northrup will make that available to the Committee when available.

The discussion brought up certain Committee concerns:

(e)    Post-petition, the staff of NW Territorial Mint has not been helpful.

(f)   The materials included in Mark Calvert's 5/3/16 webcast with the committee included a discussion of the value (of bullion) indicating a 30% sales cost. This high sales cost is a significant concern to the committee. Mark was asked to investigate and report back to the committee.

5.   Summary of pending court hearings. Mark discussed the proposed sale of the Tomball, Texas operation. Calvert has noticed the motion for approval of a sale to the landlord for $600,000 together with assumption of $150,000 in debt. The substantive pleadings had not been filed by the time of the meeting but will be provided to the Committee when available. The Committee will address this issue more specifically at its next meeting.

Mark discussed the Auburn landlord's emergency motion to require Calvert to perform NW Territorial Mint's obligations under the lease, and the anticipated response of Calvert to the motion. There is no need for the Committee to file a pleading as to the motion.

6.   Case information dissemination/potential creditor website issues. The Committee discussed its duties to provide information to unsecured creditors, and how best to fulfill this duty. One possibility is to use the existing website for Northwest Territorial Mint. Calvert has taken control of the website.

The Committee has a number of questions about the website:

(a)   who is maintaining the website and at what cost

(b)   could the Committee provide information on the website (for example, pleadings, the transcript of the 341 meeting, etc.) in a way that maintains the committee's independence from Calvert and from Northwest Territorial mint.

Mark was asked to look into these issues and report back to the Committee. The issue of providing information to the creditors is a high priority item for Judge Alston.

7.   New business. None.

8.   Schedule next Committee meeting. The next meeting is scheduled for Friday, May 20, 2016, at 2:00 p.m.

9.   Adjourn. The meeting adjourned at 3:30 p.m.

_____

Mark Northrup
Secretary for the Committee

Date: _____

**MINUTES**
**NW TERRITORIAL COMMITTEE MEETING**

**May 20, 2016, 2:00 p.m.**

**Committee members attending:**

Bill Hanson (Co-chair)
David James (Co-chair)
Dick Pehl
Paula Pehl
Larry Chiappellone
Tom Seip

**Committee members absent:**

Donald Wright
John Young

**Committee Counsel attending:**

Mark Northrup

     1.     The Committee approved the Minutes of the May 13, 2016 meeting.

     2.     Mark Northrup advised the Committee that a full transcript of the May 11 First Meeting of Creditors, including Ross Hansen's testimony, was now available on the existingbullionorders.com web site. Mr. Northrup also addressed the court hearings scheduled on the pending sale of the Debtor's Tomball, Texas operations; the Auburn landlord's motion for various forms of relief; the Trustee's Motions for designation of a deadline for filing Proofs of Claim, the retention of Cascade Capital as accountants for the Trustee, and the court's approval of an order on payment of professional fees.

     3.     The Committee and counsel then discussed the following matters:

     3.1     Retention of, and access to, Minutes of prior Committee meetings.

     3.2     The ability of the Committee to examine the invoices submitted by case professionals and to weigh the cost/benefit of such fees against the bankruptcy estate's projected cash flow.

     3.3     The global issue of Chapter 7 (liquidation) versus Chapter 11 (continuing operations culminating in a reorganization or sale of estate assets), including a request that the Committee obtain information from Mr. Bressler regarding his role in Medallic Art LLC and his position on administration of the bankruptcy case. Mark advised that he would contact Bressler's attorney on these issues.

3.4    The Committee asserted that it wanted answers to a number of specific case questions: a) an explanation from the Trustee of the Trustee's projected "30%" cost of liquidating estate bullion; b) an explanation of the status of the Debtor's Hawaii and Wisconsin operations; and c) an accounting for all silver that was provided by the Debtor for the casting of ostensibly 30 "Remington-type" statues. Mark agreed to transmit these questions to the Trustee.

3.5    The Committee expressed additional concerns about the following matters: a) the current lack of responsiveness of Mint employees when contacted by creditors; b) the procedures for presenting Committee positions to the court; and c) the inability thus far of the Trustee and creditors to determine what happened to $30-35 million in missing Mint assets.

4.    Mark Northrup discussed the technical bankruptcy issue of creditors asserting rights to priority payment out of the bankruptcy (up to $2,850 each), based on claims that monies sent to the Mint were "deposits" for the purchase of items intended for "personal, family or household" use. Mark also summarized the potential effect on the bankruptcy estate if the court approved thousands of such priority claims.

5.    The meeting was adjourned at approximately 4:50 p.m.

_____

Mark Northrup, Secretary


70098921.1

**MINUTES**
**NW TERRITORIAL COMMITTEE MEETING**

**June 6, 2016, 2:00 p.m.**

**Committee members attending:**

Bill Hanson (Co-chair)
Dick Pehl
Larry Chiappellone
John Young
David Petteys, as attorney/representative of Don Wright

**Committee members absent:**

David James
Thomas Seip

**Committee Counsel attending:**

Mark Northrup

      1.      The Committee approved the Minutes of the May 20, 2016 meeting.

      2.      The Committee initially addressed an intra-Committee personnel issue. Various Committee members expressed concern that the actions and comments of one Committee member towards other Committee members were inappropriate, non-constructive, and had created an adversarial environment that threatened to chill the willingness and ability of other Committee members to participate in Committee activities. Mark Northrup advised the Committee that he would advise the Committee member in question of these concerns and seek to resolve them.

      3.      The remainder of the meeting consisted of Mr. Northrup's report and update to Committee members regarding the status of the following case matters:

      3.1      The May 23 Objection of Ross Hansen/Medallic Arts LLC to the sale of the Mint's Tomball, Texas assets and operation.

      3.2      The May 25 proposal of Ross Hansen that he be permitted to re-take control of the Mint's business operations in order to be able to repay creditors.

      3.3      The events occurring in connection with the sale of the Tomball, Texas assets, including: the May 27 bidding and auction process; the ensuing court hearing to address the allegations of Medallic Arts LLC that some of the Tomball assets belonged to Medallic; the May 31 hearing on final court approval of the sale of the Tomball assets to Ira Green, Inc. for $1 million.

3.4    The events occurring at the June 3 status conference conducted by Judge Alston.

3.5    The status of future case events, including: the scheduled June 11 deposition of Michael Parrish, the individual who provided Medallic Arts with the $100,000 necessary to enable Medallic to be an authorized bidder for the Tomball assets; the Trustee's promised motion for court authority to return certain specific Mint assets to persons who could be identified as owners; the Trustee's anticipated Motion for sanctions against Ross Hansen for interfering with the Mint's post-bankruptcy employees, assets, and operations.

4.    The meeting was adjourned at approximately 3:50 p.m.

_____

Mark Northrup, Secretary

70098921.1

-2-

# MINUTES
# NW TERRITORIAL COMMITTEE MEETING

### June 30, 2016, 2:00 p.m.

**Committee members attending:**

Bill Hanson (Co-chair)
Dick Pehl
Paula Pehl
David James
Larry Chiappellone
David Petteys, as attorney/representative of Don Wright

**Committee members absent**:

Thomas Seip

**Committee Counsel attending:**

Mark Northrup

**Guest Attendees:**

Mark Calvert, Chapter 11 Trustee
Mike Gearin, Counsel for Chapter 11 Trustee

     1.     Mark Calvert and Mike Gearin provided the Committee with an extensive update and written information on multiple pending case issues, events, and potential reorganization strategies. Committee members responded with questions and comments.

     2.     After delivering their presentation, Mr. Calvert and Mr. Gearin were excused. Mr. James also left the call.

     3.     The Committee thereafter approved the Minutes of the June 6, 2016 meeting and proceeded to discuss a number of internal matters, including Committee inter-personnel issues, potential Committee membership changes, and the advisability of a meeting with Ross Hansen. The Committee discussed a follow-up meeting, tentatively to be scheduled for July 29, 2016 at 2:30, following a meeting with Mr. Hansen. Mr. Northrup advised that he would notify Committee members of the scheduling of a potential meeting with Mr. Hansen and a coordinated follow-up meeting with the Chapter 11 Trustee.

     4.     The meeting was adjourned at approximately 4:15 p.m.

_____

Mark Northrup, Secretary

**MINUTES**
**NW TERRITORIAL COMMITTEE MEETING**

**July 29, 2016, 9:00 a.m.**

**Committee members attending:**

Bill Hanson (Co-chair)
Dick Pehl
Paula Pehl
David James
Larry Chiappellone
David Petteys, as attorney/representative of Don Wright
Tom Seip

**Committee members absent**:

None

**Committee Counsel attending:**

Mark Northrup

**Guest Attendees:**

Mark Calvert, Chapter 11 Trustee
Mike Gearin, Counsel for Chapter 11 Trustee

     1.      Mark Calvert and Mike Gearin provided the Committee with an extensive update and written information on multiple pending case issues, events, and potential reorganization strategies. Committee members responded with questions and comments.

     2.      After delivering their presentation, Mr. Calvert and Mr. Gearin were excused.

     3.      The Committee thereafter approved the Minutes of the June 30, 2016 meeting and proceeded to discuss a number of additional case issues, Paula Pehl's scheduled visit to the Dayton, NV, facility, and the potential structure of a Plan of Reorganization.

     4.      The meeting was adjourned at approximately 10:45 a.m.

_____
Mark Northrup, Secretary
70098921.1

# MINUTES
# NW TERRITORIAL COMMITTEE MEETING

## August 30, 2016, 9:00 a.m.

**Committee members attending:**

Bill Hanson (Co-chair)
Dick Pehl
Paula Pehl
Larry Chiappellone

**Committee members absent:**

Donald Wright
David James
Thomas Seip

**Guest Attendees**

Mark Calvert, Trustee
Michael Gearin, Counsel for the Trustee

**Committee Counsel attending:**

Mark Northrup

  1.  Mark Calvert and Mike Gearin provided the Committee with an extensive update and written information on multiple pending case issues, events, and potential reorganization strategies. Committee members responded with questions and comments.

  2.  After delivering their presentation, Mr. Calvert and Mr. Gearin were excused.

  3.  The Committee thereafter proceeded to discuss a number of pending case issues, including: the Dayton, NV, lease assumption process and the potential consolidation of Washington and Wisconsin operations at Dayton; and the nature of the Committee's response to (a) the Trustee's proposed legal action against Diane Erdmann for recovery of Mint credit card payments made for Erdmann's personal benefit; and the Trustee's potential claims against unsecured creditors who received preferential transfers in the ninety-day period prior to the April 1 bankruptcy filing date.

  4.  The meeting was adjourned at approximately 11:15 a.m. A quorum of the Committee was not present at the meeting.

_____

Mark Northrup, Secretary

# MINUTES
# NW TERRITORIAL COMMITTEE MEETING

## September 21, 2016, 9:30 a.m.

**Committee members attending:**

Bill Hanson (Co-chair)
Dick Pehl
Paula Pehl
Larry Chiappellone
David Petteys, as attorney/representative of Don Wright

**Committee members absent:**

Thomas Seip
David James

**Committee Counsel attending:**

Mark Northrup

     1.     The Committee discussed multiple pending case issues, including: the status and background of the October 10, 2016 mediation with Medallic Arts; the Dayton, NV, lease assumption; the Trustee's proposed settlement of the EEOC litigation against the Mint; the status of production personnel, management, and workforce issues at the Washington and Dayton facilities; the status of a Plan of Reorganization and the role of the Committee in formulation and support of the Plan; the status and cost of the Trustee's pending litigation matters and the Committee's concern that the Trustee should instead focus primarily on business reorganization issues.

     2.     The meeting was adjourned at approximately 12:30 p.m.

---

Mark Northrup, Secretary
70098921.1

**October 6, 2016, 10:00 a.m.**

**Committee members attending:**

Bill Hanson (Co-chair)
David James (Co-chair)
Dick Pehl
Paula Pehl
Larry Chiappellone
David Petteys, as attorney/representative of Don Wright

**Committee members absent:**

Thomas Seip

**Committee Counsel attending:**

Mark Northrup

**Guest Attendees:**

Mark Calvert, Chapter 11 Trustee
Mike Gearin, Counsel for Chapter 11 Trustee

     1.     Mark Calvert and Mike Gearin provided the Committee with an extensive update and written information on multiple pending case issues, events, and potential reorganization strategies. Committee members responded with questions and comments, including questions about the Mint's cash flow performance numbers and the amount of time the Trustee and his financial advisors were spending on work requested or provided to the FBI.

     2.     After delivering their presentation, Mr. Calvert and Mr. Gearin were excused.

     3.     The Committee thereafter discussed a number of pending matters, including: issues to be addressed at the October 10, 2016 mediation (to be conducted by the Hon. Frederick Corbit) of the Medallic ownership issues; the Committee's retention of a financial advisor to review materials provided by the Trustee as part of a Plan of Reorganization; the status of a potential interim payment request by the Trustee for partial payment of case professional fees.

     4.     The meeting was adjourned at approximately 12:15 p.m.

---

Mark Northrup, Secretary
70098921.1

# MINUTES
# NW TERRITORIAL COMMITTEE MEETING

## November 28, 2016, 1:00 p.m.

**Committee members attending:**

Bill Hanson
Dick Pehl
Paula Pehl
Larry Chiappellone (by telephone)
David Petteys, as attorney/representative of Don Wright
David James (by telephone)

**Committee members absent:**

Tom Seip

**Committee Counsel attending:**

Mark Northrup

1.) Committee counsel called the meeting for the specific purpose of enabling the Committee to interview potential candidates for engagement as Committee financial advisor. Prior to the meeting, Committee counsel arranged for the Committee to interview three candidates: a.) Al Davis of Revitalization Partners; b.) Miles Stover of Turnaround, Inc.; and c.) Kern Gillette of Gillette Northwest, LLC. The Committee interviews proceeded in three consecutive hourly intervals, starting at 1:00 p.m.

2.) At the conclusion of the interviews, the Committee members present voted to extend an offer of engagement to Al Davis and Revitalization Partners. The Committee further requested that Mr. Davis attend a follow-up presentation by the Chapter 11 Trustee, scheduled for the next day (November 29, 2016).

3.) The meeting concluded at approximately 4:45 p.m.

_____
Mark Northrup, Secretary
70098921.1

**November 29, 2016, 1:00 p.m.**

**Committee members attending:**

Bill Hanson
Dick Pehl
Paula Pehl
Larry Chiappellone (by telephone)
David Petteys, as attorney/representative of Don Wright (by telephone)

**Committee members absent**:

David James
Tom Seip

**Committee Counsel attending:**

Mark Northrup

**Other Attendees:**

Al Davis of Revitalization Partners, as designated Financial Advisor to the Committee
Agent Williamson, FBI

1.) The Committee attended a presentation by Mark Calvert, Chapter 11 Trustee. The meeting took place at the Seattle law offices of K & L Gates, counsel for the Trustee. The primary subject of the presentation was an update on the status of the bankruptcy case and the Trustee's proposed draft Plan of Reorganization. Copies of the draft Plan and the Debtor's October U.S. Trustee operating report were provided to the Committee and to Mr. Davis prior to the meeting. At the outset of the presentation, Trustee's counsel submitted for review, and requested that Committee members and counsel sign, a document denominated Joint Litigation and Confidentiality Agreement, the purpose of which was to ensure that confidential information regarding the case not become available to unauthorized persons. Trustee's counsel and Committee counsel advised that such a document was both typical and necessary to protect Trustee-Committee communications from possible subsequent discovery by third parties. Committee members present (William Hanson, Dick Pehl, Paula Pehl) signed the Agreement at the subsequent December 1 court hearing, having inadvertently left the November 29 meeting without signing the Agreement, as Trustee's counsel had requested.

2.) The Trustee presented the draft Plan of Reorganization and described the projected financial performance of the reorganized Debtor on which the feasibility of the Plan would be

based. Committee members and Mr. Davis questioned the Trustee on multiple aspects of the Plan and its underlying assumptions, provisions, and effect.

3.) During a break in the meeting, Paula Pehl and Committee counsel conversed with Agent Williamson regarding various aspects of the pending FBI investigation into the conduct of Ross Hansen and Diane Erdmann.

4.) Following the Plan presentation, the Trustee discussed his intention to seek a partial interim payment of professional fees in the amount of $400,000. Recipients of the partial payment would be the Trustee, Trustee's counsel, Trustee's Financial Advisors (Cascade), and Committee counsel. The payment of professional fees was proposed pursuant to the court's previously entered Order Establishing Procedures for Interim Payment of Fees and Costs to Professionals. Committee members expressed substantial concern about the proposed payment and interrogated the Trustee about the potentially adverse effect such a payment would have on the cash position and reserves of the Debtor. The Trustee asserted that the payment would not adversely affect the ongoing conduct of the Debtor's business operations. Based on this representation, the Committee members present withdrew their objection to release of the Trustee's proposed interim payment.

5.) The meeting concluded at approximately 5:15 p.m.

_____

Mark Northrup, Secretary
70098921.1

**MINUTES**
**NW TERRITORIAL COMMITTEE MEETING**

**January 19, 2017, 10:30 a.m.**
**January 20, 2017, 8 a.m.**

**Committee members attending on January 19, 2017 and January 20, 2017 (all by telephone, except for David Petteys):**

Bill Hanson
Dick Pehl
Paula Pehl
Larry Chiappellone
David Petteys, as attorney/representative of Don Wright

**Committee members absent:**

David James
Tom Seip

**Additional Attendee for Committee:**

Miles Stover, as potential Financial Advisor to the Committee

**Committee Counsel attending:**

Mark Northrup

**January 19, 2017**

1.) On January 19, 2017, Committee members and Mr. Stover met at the offices of K & L Gates in Seattle. At the meeting, the Chapter 11 Trustee (Mark Calvert) and his counsel, Mike Gearin, presented information to the Committee in support of the Trustee's proposed engagement of William Atalla as CEO of the NW Mint.

2.) The Committee and Mr. Stover participated in the presentation and questioned the Trustee regarding the rationale, necessity of, and proposed terms for engaging Mr. Atalla. The meeting concluded at approximately 1 p.m. and was effectively continued to January 20, 2017 at 8:00 a.m., at which time Mr. Atalla was scheduled to appear for an in-person interview with the Committee.

**January 20, 2017**

1.) On January 20, 2017, Committee members and Mr. Stover met at the offices of Miller Nash Graham & Dunn in Seattle. Present at the meeting in addition to Committee

personnel were William Atalla, Mark Calvert, and Mike Gearin. Mr. Calvert and Mr. Gearin left the meeting after introducing Mr. Atalla. After their departure, Committee members and counsel conducted an interview of Mr. Atalla. Mr. Stover, as potential Committee Financial Advisor, also participated in the interview. The interview concluded at approximately 10:15 a.m.

2.) The Committee re-convened by telephone at 1:00 p.m. following the morning interview. Although Committee members Hanson, Pehl, and Petteys expressed varying degrees (some substantial) of concern about the proposed engagement of Mr. Atalla, the Committee concluded that the engagement was justified as part of the Trustee's strategy to stabilize and grow the Mint operations. The Committee's conclusion was supported by Mr. Stover's opinion, transmitted by email, following the interview:

> My opinion is that he [Atalla] is "the needle in the hay stack" and if the Committee continues to focus on the wrong items, they might find out the hard way if his and my opinion is correct. Bill is exactly what is needed at this time in the company's history I believe. If someone were to ask me, as they asked Bill, what would be the effect of waiting three months to hire him, my opinion is the same as his—"death."

3.) Committee counsel advised the Trustee of the Committee's decision regarding the proposed engagement of Mr. Atalla, subject to the Committee's participation in reviewing the final terms of the Atalla engagement, which terms were scheduled for presentation to the court for approval on February 3, 2017.

---

Mark Northrup, Secretary
70098921.1

# MINUTES
# NW TERRITORIAL COMMITTEE MEETING

## February 10, 2017, 1:30 p.m.

**Committee members attending:**

Bill Hanson (Co-chair)
Dick Pehl
Paula Pehl
Larry Chiappellone
David Petteys, as attorney/representative of Don Wright
Thomas Seip

**Committee members absent:**

David James

**Committee Counsel attending:**

Mark Northrup

    1.     After discussion, the Committee voted unanimously to engage Lorraine Barrick as financial advisor to the Committee. David Petteys will confirm Ms. Barrick's agreement to accept the engagement and, upon her agreement, Committee counsel will prepare the necessary legal appointment documents for court and U.S. Trustee approval.

    2.     The Committee discussed a letter dated February 1, 2017 transmitted to Committee counsel by Thomas Bucknell, counsel for Medallic Art Company LLC. Attached to the Bucknell letter was a document that ostensibly contained a proposal for a Chapter 11 plan of reorganization, pursuant to which Ross Hansen would retain management authority over Medallic and agree to provide payments to Northwest Territorial Mint creditors over a ten-year period. After discussion of the proposal and related issues, the Committee concluded that Committee counsel should advise Mr. Bucknell that the Committee was unable to evaluate the Hansen proposal because the Committee was completely lacking in knowledge of Mr. Richard Bressler's role in, and expectations under, the proposal. Mr. Bressler, the 50% owner of Medallic, was not copied on the Bucknell letter and the Committee had no evidence or basis to assume that Mr. Bressler had ever seen, much less supported, the Hansen proposal.

    3.     After additional limited discussion and questions about the status of the Trustee's Disclosure Statement and Plan, the meeting was adjourned at approximately 3:30 p.m.

_____
Mark Northrup, Secretary
70098921.1

**Committee members attending (all by telephone):**

Bill Hanson
Dick Pehl
Paula Pehl
Larry Chiappellone
David Petteys, as attorney/representative of Don Wright
Thomas Seip

**Committee members absent:**

David James

**Committee Counsel attending:**

Mark Northrup

1.) Committee counsel called the meeting in order to address a number of case issues and rumors that had arisen among, and were ostensibly being circulated or promoted by, Ross Hansen and other elements of the creditor body, apparently including at least one Committee member with whom Ross Hansen was in regular contact. These issues/rumors included the following: a.) What happened to $1 million in gold that came to the Mint from Switzerland shortly before or after Mark Calvert was appointed Trustee? Ross Hansen claims to have pictures and serial numbers. Did Calvert sell or dispose of it? b.) After he was appointed, Calvert allegedly "fire saled" coins and other items at Auburn at substantially discounted prices to coin dealers and others. Did this happen? c.) What happened to a Mint spectrometer that was apparently sold and that may have been sold for substantially less than its value? d.) Apparently according to Ross, the FBI told Medallic's lawyers that the FBI was not indicting Ross or Diane but that it was investigating Calvert's conduct as Trustee. Is this true? e.) According to Ross, the bankruptcy estate was completely insolvent and at the March 1, 2017 status conference with Judge Alston to discuss dates for the Medallic trial, the court was going to convert (or consider converting) the case to a Chapter 7.

2.) Prior to the Committee meeting, Committee counsel requested that the Trustee and his counsel respond to the rumors. Committee counsel reported these responses to the Committee as follows: a.) According to shipping records, gold from Switzerland came to the Mint in October 2015. The gold was under Ross Hansen's control from October 2015 through April 11, 2016 when the Trustee was appointed. Based on the Trustee's analysis, there should have been around $800,000 of gold in the vault when the Trustee took over; however, there was no gold present when the Trustee conducted a detailed physical inventory following his April 11 appointment.

On March 28, 2016 (Easter Sunday), the Mint's security tapes confirm that Ross and Diane removed items from the Mint. The Trustee believes that the remaining gold was removed by Ross and Diane at that time. b.) There was no "fire sale" of coins or other inventory after the Trustee was appointed. The Mint sold coins and metal inventory to coin dealers in the ordinary course of the Mint's business. The Trustee did sell some inventory in May, 2016, but those sales were based on the Trustee's research into the value of the coins and inventory, based on the industry standard "gray sheet" valuations. c.) The Trustee did discover that the spectrometer and other items were sold for $4,900 without the Trustee's knowledge during the cleanup of the Federal Way office in August 2016. Based on the Trustee's investigation, the Trustee did not believe that the spectrometer (given its prior use and age) was worth more than what was received for it. The Trustee also made it clear that if anyone could identify a buyer that would pay materially more for it, the spectrometer could be recovered and brought back into the bankruptcy estate. Pointing out that the Trustee had stated that the spectrometer was still in use by the Mint in November 2016, Committee member Dick Pehl reiterated his previously expressed view that the Trustee was/is simply untrustworthy. d.) Allegations that the FBI was no longer investigating Ross and Diane but that it was investigating the Trustee are absurd. At the meeting, Committee counsel advised the Committee that on the previous day (February 27, 2017), Committee counsel had received an unsolicited telephone call from FBI agent Williamson, who confirmed that there were only two individuals under pending FBI investigation: Ross Hansen and Diane Erdmann. e.) According to the Trustee, it was/is untrue that the bankruptcy estate was/is administratively insolvent. According to the Trustee, the Mint's balance sheet assets exceeded administrative claims and the Trustee placed the current sales value of the Mint operations at $5 to $7 million. Committee counsel further explained that at the March 1, 2017 status conference the court would address only one issue: the scheduling of the Medallic trial. Committee counsel emphasized that it was procedurally impossible for the judge to consider dismissal or conversion of the bankruptcy case to a Chapter 7 at the status conference; and that any such effort would require the preparation and scheduling of a significant, formal motion weeks in advance.

3.) Committee counsel concluded the foregoing discussion by commenting that Ross Hansen's spreading of such false statements was apparently part of a strategy to persuade creditors to turn against the Trustee's efforts to reorganize the company and instead to support Ross in his effort to return to control of the Mint operations.

4.) Following discussion of the foregoing case rumors/issues, Committee counsel advised the Committee that the court had officially appointed Lorraine Barrick as Committee Financial Advisor. There followed a discussion about Ms. Barrick's authority and ability to review estate financial records and reports.

5.) The meeting concluded at approximately 4:00 p.m.

_____

Mark Northrup, Secretary
70098921.1