# MINUTES
# NW TERRITORIAL COMMITTEE MEETING

### April 6, 2017, 2:00 p.m.

**Committee members attending:**

Dick Pehl
Paula Pehl
Larry Chiappellone
David Petteys, as attorney/representative of Don Wright
David James
Thomas Seip

**Others Attending:**

Mark Calvert, Trustee
Mike Gearin
Paul Wagner
Bill Atalla

**Committee Counsel attending:**

Mark Northrup

During the call, the Trustee, Mr. Wagner, Mr. Atalla, and Mr. Gearin presented an update on all pending case issues, operations, and strategies and responded to questions and comments by Committee members. A copy of the topics discussed is attached hereto. Mr. Atalla reported on a number of personnel issues and on efforts to expand company sales and marketing efforts. The tone of the reports was generally positive. The Committee took no formal action or position on any issue discussed.

Paula and Dick Pehl left the call shortly after it began, at the request of the Trustee. The Trustee requested this action based on his position that the Pehls had not yet submitted to Trustee's counsel disclosures of their contacts with Ross Hansen, in the wake of the events that had occurred in March and that had concluded with the resignation from the Committee of Bill Hanson.

The meeting was adjourned at approximately 4:00 p.m.

---

Mark Northrup, Secretary
70098921.1

# NWTM
# Agenda for Committee Meeting
# As of April 6, 2016

**Outline of topics to be discussed:**

**1 Results of the hearing on discovery, continuance of the Medallic trial and exclusion of Medallic expert witness**
- **a** Discovery Provided
- **b** Review of discovery by Medallic
- **c** Bifurcation, insolvency and reasonable equivalent value
- **d** Expert report not adequate but will be included limited to report
- **e** Cost of deposition of expert will be covered by Medallic
- **f** Trial is scheduled for May 2 to 4 and continued to June 3 to 5th

**2 Settlement discussion with Ross / Medallic**
- **a** Strong desire to settle due to admin costs of trial
- **b** Proposed settlement terms are too expensive currently
- **c** Deal breaking terms, taxes and Medallic name

**3 Ross Deposition**
- **a** Number of issue with the start of deposition
- **b** Completed two days total of 8 hours
- **c** Will be completed deposition on April 14th
- **d** Interesting comments made by Ross

**4 Medallic Expert deposition shooting for April 14th**
- **a** Will determine amount of work actual completed
- **b** Lack sufficient time to do any significant procedures

**5 Mark Calvert, Trustee deposition is scheduled for April 19th**
- **a** Major findings:
  - Insolvent prior to 2007,
  - Reasonable equivalent value shortfall over $10 million
- **b** Use of float to fund operations has been confirmed
- **c** Realized and unrealized losses were as high as $40 million in 2007
- **d** Delays in delivers to make money in a decreasing market
- **e** Significant work completed on timing of insolvency
- **f** Only open item is inventory unable to tie down on year by year basis

**6 Status of Bressler and potential other case settlement issues;**

   **a**   Settlement gives him a claim in the estate of $3 million

   **b**   His decision was partially tax based, ordinary loss vs capital

**7 Operating Report from Bill**

   **a**   Status of sales growth and change in sales approach

   **b**   Status of major contract discussions

   **c**   Nevada TV Station

**8 Staffing changes past three months**

   **a**   VP of Marketing Terminated / New VP Marketing Retained

   **b**   VP of Sales Terminated

   **c**   Tool Room Manager Terminated

   **d**   CFO / Controller in process of retaining

**9 Operating Results for March**

   **a**   March Sale of $1.2 million, profitable

   **b**   April sales projected at $1.3 million and profitable

   **c**   May sales, still filling up… but believe $1.3 million and profitable

   **d**   June expecting sales of over $1.0 million

   **e**   July, first month where I have a concern about profitability

**10 Plan status**

   **a**   Just need Medallic Litigation Resolved

   **b**   Ready to move forward with Plan, could file by June

   **c**   Will depend on sales growth

   **d**   Will sell company if sales growth does not materialize

**11 Possible buyer of the company**

   **a**   Not interested if sales continue to improve

   **b**   Will have discussions and be prepared to sale do not grow as needed

   **c**   Purchase price of say $8 million

**12 FBI update**

   **a**   Pulled to another case for over a month

   **b**   Next meeting next week to share insolvency analysis

   **c**   Do not expect anything until the June time frame

**13 Question and Answers**

# MINUTES
## NW TERRITORIAL COMMITTEE MEETING
### May 10, 2017, 2:00 p.m.

**Committee members attending:**

Dick Pehl
Paula Pehl
Larry Chiappellone
David Petteys, as attorney/representative of Don Wright
David James
Thomas Seip

**Others Attending:**

Mark Calvert, Trustee
Mike Gearin
Paul Wagner
Bill Atalla
Jessica Gilmore

**Committee Counsel attending:**

Mark Northrup

    The call was initiated, then re-initiated after a delay to accommodate additional participants. The Pehls and Thomas Seip did not participate on the re-initiated call. During the call, the Trustee, Mr. Wagner, Mr. Atalla, and Mr. Gearin presented an update on all pending case issues, operations, and strategies and responded to questions and comments by Committee members. A copy of the topics discussed is attached hereto.

    Significant topics addressed by the Trustee were the potential sale of the business (in the absence of increased sales revenues) and the potential need to obtain debtor in possession financing. To that end the Trustee provided a proposed factoring arrangement with Prestige Capital Corporation under which Prestige would advance loan money to the Medallic/Mint based on a percentage of the amount of the Mint's outstanding customer sales (accounts receivable). This would provide immediate cash to the bankruptcy estate, without the need for the bankruptcy estate to await collection of its accounts receivable from its customers. As a requirement of this proposed loan transaction, Prestige would obtain the right to be repaid its loan advances ahead of everyone else (including the Trustee) in the bankruptcy.

    The Committee took no formal action or position on any issue discussed.

    The meeting was adjourned at approximately 4:00 p.m.

_____

Mark Northrup, Secretary

# NWTM / Medallic
# Creditor Committee Meeting
# May 10, 2017 at 2:00 PM

## Present for the meeting from the company

| | |
|---|---|
| Paul Wagner | COO |
| Bill Atalla | CEO |
| Mike Gearin | Trustee Attorney |
| Jessica Gilmore | CCG Financial Advisor |
| Mark Calvert | Trustee |

## Items to be discussed

| | Who | Attachment |
|---|---|---|
| April Operating Results | Paul | |
| May projected Results | Paul | |
| Operational Status Report | Bill | April May Snap Shot Attached |
|    Marketing / Sales Effort | Bill | Current Sales Organization |
|    Production Issues | Bill | |
| Cash Flow | Mark | Spread Sheet Attached |
| Status of the Business | | |
|    DIP | Mark | Agreement and cost calculation |
|    Sale Option | Mark | Marketing Information |
| Liquidation of Excess Graco inventory | Mike | |
| Bressler claim status | Mike | |
| Lease Issues | Mike | |
|    Security / Friday | Mike | |
|    Demand for Roof Repairs | Mark | |
| Medallic Status | | |
|    Medallic merged in effective April 1, 2016 | Mike | |
|    Medallic Bar Date | Mike | |
|    Vexacious Litigation | Mike | |
|    Source of Funds / Liquidation of metals | Mike | Documents Received |
|    Possible recovery of Professional Fees | Mike | |
| Ross Status | | |
|    FBI / Additional Subpeonas | Mark | |
|    FBI / Follow up on Medallic source of professional fees | Mark | |



February 26, 2019

Mark Calvert, Trustee
Northwest Territorial Mint, LLC
841 Central Ave North
Kent, WA  98032

Dear Mr. Calvert:

Pursuant to our conversations with you, Prestige Capital Corporation ("Prestige") hereby proposes to enter into an agreement to purchase certain accounts receivable of Northwest Territorial Mint, LLC ("Client"). This letter is not meant to be, nor shall it be construed as, an attempt to define all the terms and conditions pertaining to the proposed accounts receivable purchase line, which terms and conditions would be contained in a Purchase and Sale Agreement ("Agreement") which would be executed by the parties hereto.

The following is a summary of the basic business points proposed for the accounts receivable purchase line:

Advance Rate:      80% of the eligible accounts receivable up to 120 days from invoice date.

Maximum Advance:   $1,000,000

Rates:             Our charges for factoring are calculated by discounting the face amount of the invoice.  These charges are calculated from the date Prestige advances funds on an invoice to the date Prestige receives payment on the invoice.  The fees would be as follows:

                   1.8% for the first 30 days plus an additional .65% for each 10 day period thereafter up to a maximum of 120 days. If not repaid within 120 days then fee increases by 1.5% for each additional 10 day period thereafter, until the advance and accrued fee is paid in full. This fee applies to factored accounts only.  No administration fees are charged. Notwithstanding the foregoing, at any time the Client reserves the right to repurchase any unpaid accounts receiveable.

Financial Statements   None
Required:

| | |
|---|---|
| Minimum Fees: | Client shall factor a minimum of $1,800,000 of invoices during the initial Term. Should client factor less than $1,800,000, then they shall pay a fee of 3% on any shortfall. |
| Financial Covenants: | None. |
| Financing Order: | Client must obtain a financing order under section 364(c) of the Bankruptcy Code, (in form and substance satisfactory to Prestige), authorizing the sale of its post-petition accounts receivable and granting Prestige a first security interest in all of Client's post-petition accounts receivable as well as all of Client's machinery and equipment. The financing order shall also provide Prestige a super priority administrative claim in connection with its factoring of Client's post-petition accounts receivable. |
| Collateral: | As set forth above, Prestige shall be afforded a first security interest in Client's post-petition accounts receivable and machinery and equipment of Client. |
| Guarantors: | Personal representations and warranties from Officers of Client. |
| Due Diligence Fee: | A $5,000 one-time, non-refundable, due diligence fee which covers the cost of our credit investigations, legal documentation and all other expenses will be charged and shall be due and payable upon execution of this letter. |
| Credit Protection: | No recourse to your company should account debtor become insolvent within 120 days from invoice date. |
| Audits: | Initial Filed exam (no more than 2 days) will be required. |
| Term: | 6 months. |
| Early Termination Fee: | In additional to any shortfall fees referenced above, Client shall pay $2,000 per month remaining in Term. This only applies if terminated by Client prior to end of the initial Term only. |
| Remittance: | Client to direct all of its customers to send payment directly to Client's bank account which will be swept to Prestige regularly and Client shall have no control of such funds without written consent of Prestige. |
| Reserve: | Reserves are sent to the client 4 business days after the accounts receivable have been collected. |
| Verification: | Standard Prestige verification of invoices. |

Notification:        N/A

Online Access:       Client will be provided online access to all pertinent accounts receivable data including A/R agings and collection reports.

This letter is for discussion purposes only and does not represent a commitment of any nature by Prestige to provide financing. It is provided to you solely for the purpose described herein, and may not be disclosed to or relied upon by any other party without Prestige's prior written consent. **This proposal shall expire one week from the date of issuance**.

If the basic terms and conditions described above are acceptable, please so indicate by signing below and returning the Due Diligence Fee of $5,000 to the attention of the undersigned. Client authorizes Prestige to file UCC financing statements, upon receipt of the executed proposal and Due Diligence Fee.

Sincerely,

*Stuart J. Rosenthal*

Stuart J. Rosenthal
EVP

**Acceptance:**

By:          _____

Print Name:  _____

Title:       _____

Date:        _____

# Prestige Capital Corporation
## NWTM / Medallic
## AR Factoring
## Initial Proposal

| Major Assumptions | | Cumulativ | Allocation | 1 June | 2 July | 3 August | 4 September | 5 October | 6 November | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Allowed Amount | $1,000,000 | | | $100,000 | $200,000 | $300,000 | $400,000 | $400,000 | $400,000 | $1,800,000 |
| Advance Rate | 80% | | | | | | | | | |
| 0 to 30 | 1.800% | 1.800% | 60% | $58,920 | $117,840 | $176,760 | $235,680 | $235,680 | $235,680 | $1,060,560 |
| 31 to 40 | 0.650% | 2.450% | 10% | $9,755 | $19,510 | $29,265 | $39,020 | $39,020 | $39,020 | $175,590 |
| 41 to 50 | 0.650% | 3.100% | 10% | $9,690 | $19,380 | $29,070 | $38,760 | $38,760 | $38,760 | $174,420 |
| 51 to 60 | 0.650% | 3.750% | 10% | $9,625 | $19,250 | $28,875 | $38,500 | $38,500 | $38,500 | $173,250 |
| 61 to 70 | 0.650% | 4.400% | 10% | $9,560 | $19,120 | $28,680 | $38,240 | $38,240 | $38,240 | $172,080 |
| **Total Collections** | | | 100% | | | | | | | |

| Total Cost of Borrowing | June | July | August | September | October | November | Total |
|---|---|---|---|---|---|---|---|
| 0 to 30 | $1,080 | $2,160 | $3,240 | $4,320 | $4,320 | $4,320 | $19,440 |
| 31 to 40 | $245 | $490 | $735 | $980 | $980 | $980 | $4,410 |
| 41 to 50 | $310 | $620 | $930 | $1,240 | $1,240 | $1,240 | $5,580 |
| 51 to 60 | $375 | $750 | $1,125 | $1,500 | $1,500 | $1,500 | $6,750 |
| 61 to 70 | $440 | $880 | $1,320 | $1,760 | $1,760 | $1,760 | $7,920 |
| **Total Cost of Factoring** | $2,450 | $4,900 | $7,350 | $9,800 | $9,800 | $9,800 | $44,100 |
| **Initial Fee** | | | | | | | $5,000 |
| **Unused Line** | | | | | | | $25,000 |
| **Estimated Total Cost** | | | | | | | $74,100 |

| Calculation of Annual Cost of Borrowing | June | July | August | September | October | November | Total |
|---|---|---|---|---|---|---|---|
| Total Borrowed | $100,000 | $200,000 | $300,000 | $400,000 | $400,000 | $400,000 | $1,800,000 |
| Cost Of Borrowing | $2,450 | $4,900 | $7,350 | $9,800 | $9,800 | $9,800 | $44,100 |
| Rate | 2.45% | 2.45% | 2.45% | 2.45% | 2.45% | 2.45% | |
| Months | 12 | 12 | 12 | 12 | 12 | 12 | |
| Annualized | 29.4% | 29.4% | 29.4% | 29.4% | 29.4% | 29.4% | 29.4% |
| Up Front Fee | | | | | | | 0.3% |
| Estimated Unused borrowing amount fee | | | | | | | 1.4% |
| **Total all in cost of borrowing** | | | | | | | 31.1% |

## MINUTES
## NW TERRITORIAL COMMITTEE MEETING
### June 15, 2017, 2:00 p.m.

**Committee members attending:**

Dick Pehl
Paula Pehl
David Petteys, as attorney/representative of Don Wright
Thomas Seip

**Others Attending:**

Mark Calvert, Trustee
Mike Gearin
Paul Wagner
Bill Atalla

**Committee Counsel attending:**

Mark Northrup

      During the call, the Trustee, Mr. Wagner, Mr. Atalla, and Mr. Gearin presented an update on all pending case issues, operations, and strategies and responded to questions and comments by Committee members. Mr. Gearin discussed the status of pending litigation matters, including the Dayton lease issues. Mr. Atalla discussed the status of Mint sales and marketing efforts. Mr. Wagner discussed inventory and operational performance issues. Mr. Calvert provided a year-over-year analysis of sales (copy attached) and discussed the long-term potential of the business and a possible sale of the company.

      The Committee took no formal action or position on any issue discussed.

      The meeting was adjourned at approximately 3:40 p.m.

_____

Mark Northrup, Secretary

## Custom Sales Year Over Year - 2016 vs 2017

(Invoiced $)        **Rolling 12 Month Sales $**        **$9,338,668**





| Month LY | Wk Of Year LY | Wk Of LY | Invoice $ LY | Cumm $ LY | Wk Of Year TY | Week Of TY | Invoice $ TY | Cumm $ TY | YoY $ +/- | YoY % +/- |
|----------|---------------|----------|--------------|-----------|---------------|------------|--------------|-----------|-----------|-----------|
| December | 52 | 12/27/2016 | 244,229 | 9,800,729 | | | 0 | | | |
| December | 51 | 12/19/2016 | 105,623 | 9,556,500 | | | 0 | | | |
| December | 50 | 12/12/2016 | 129,000 | 9,450,878 | | | 0 | | | |

| Month | # | Date | Value | Cumulative | | # | Date | Value | Cumulative | Diff | % |
|---|---|---|---|---|---|---|---|---|---|---|---|
| December | 49 | 12/5/2016 | 139,335 | 9,321,877 | 0 | | | | | | |
| December | 48 | 11/28/2016 | 337,943 | 9,182,542 | 0 | | | | | | |
| November | 47 | 11/21/2016 | 91,068 | 8,844,599 | 0 | | | | | | |
| November | 46 | 11/14/2016 | 230,789 | 8,753,531 | 0 | | | | | | |
| November | 45 | 11/7/2016 | 89,793 | 8,522,742 | 0 | | | | | | |
| November | 44 | 10/31/2016 | 163,263 | 8,432,949 | 0 | | | | | | |
| October | 43 | 10/24/2016 | 388,206 | 8,269,686 | 0 | | | | | | |
| October | 42 | 10/17/2016 | 152,888 | 7,881,481 | 0 | | | | | | |
| October | 41 | 10/10/2016 | 168,975 | 7,728,592 | 0 | | | | | | |
| October | 40 | 10/3/2016 | 131,784 | 7,559,617 | 0 | | | | | | |
| September | 39 | 9/26/2016 | 357,244 | 7,427,833 | 0 | | | | | | |
| September | 38 | 9/19/2016 | 254,065 | 7,070,590 | 0 | | | | | | |
| September | 37 | 9/12/2016 | 97,699 | 6,816,524 | 0 | | | | | | |
| September | 36 | 9/6/2016 | 403,422 | 6,718,825 | 0 | | | | | | |
| September | 35 | 8/29/2016 | 98,849 | 6,315,403 | 0 | | | | | | |
| August | 34 | 8/22/2016 | 189,857 | 6,216,554 | 0 | | | | | | |
| August | 33 | 8/15/2016 | 176,464 | 6,026,697 | 0 | | | | | | |
| August | 32 | 8/8/2016 | 155,883 | 5,850,233 | 0 | | | | | | |
| August | 31 | 8/1/2016 | 145,996 | 5,694,351 | 0 | | | | | | |
| July | 30 | 7/25/2016 | 192,844 | 5,548,355 | 0 | | | | | | |
| July | 29 | 7/18/2016 | 200,855 | 5,355,511 | 0 | | | | | | |
| July | 28 | 7/11/2016 | 93,814 | 5,154,657 | 0 | | | | | | |
| July | 27 | 7/5/2016 | 129,197 | 5,060,843 | 0 | | | | | | |
| June | 26 | 6/27/2016 | 199,846 | 4,931,646 | 0 | | | | | | |
| June | 25 | 6/20/2016 | 119,936 | 4,731,800 | 0 | | | | | | |
| June | 24 | 6/13/2016 | 149,809 | 4,611,864 | 0 | | | | | | |
| June | 23 | 6/6/2016 | 221,220 | 4,462,055 | | 23 | 6/5/2017 | 129,174 | 3,999,994 | -462,061 | -10.36 |
| June | 22 | 5/31/2016 | 195,710 | 4,240,835 | | 22 | 5/29/2017 | 131,631 | 3,870,820 | -370,015 | -8.73 |
| May | 21 | 5/23/2016 | 287,675 | 4,045,125 | | 21 | 5/22/2017 | 182,995 | 3,739,189 | -305,936 | -7.56 |
| May | 20 | 5/16/2016 | 290,810 | 3,757,451 | | 20 | 5/15/2017 | 194,935 | 3,556,194 | -201,256 | -5.36 |
| May | 19 | 5/9/2016 | 188,610 | 3,466,640 | | 19 | 5/8/2017 | 245,246 | 3,361,260 | -105,381 | -3.04 |
| May | 18 | 5/2/2016 | 176,380 | 3,278,031 | | 18 | 5/1/2017 | 92,028 | 3,116,014 | -162,017 | -4.94 |
| April | 17 | 4/25/2016 | 172,205 | 3,101,651 | | 17 | 4/24/2017 | 237,086 | 3,023,986 | -77,665 | -2.50 |
| April | 16 | 4/18/2016 | 193,972 | 2,929,446 | | 16 | 4/17/2017 | 236,947 | 2,786,900 | -142,546 | -4.87 |
| April | 15 | 4/11/2016 | 294,801 | 2,735,474 | | 15 | 4/10/2017 | 202,254 | 2,549,953 | -185,521 | -6.78 |
| April | 14 | 4/4/2016 | 161,301 | 2,440,673 | | 14 | 4/3/2017 | 148,402 | 2,347,699 | -92,974 | -3.81 |
| March | 13 | 3/28/2016 | 122,876 | 2,279,372 | | 13 | 3/27/2017 | 464,211 | 2,199,297 | -80,075 | -3.51 |
| March | 12 | 3/21/2016 | 200,951 | 2,156,497 | | 12 | 3/20/2017 | 207,686 | 1,735,086 | -421,410 | -19.54 |
| March | 11 | 3/14/2016 | 121,447 | 1,955,546 | | 11 | 3/13/2017 | 148,037 | 1,527,400 | -428,146 | -21.89 |
| March | 10 | 3/7/2016 | 173,409 | 1,834,099 | | 10 | 3/6/2017 | 87,285 | 1,379,363 | -454,736 | -24.79 |
| March | 9 | 2/29/2016 | 300,807 | 1,660,689 | | 9 | 2/27/2017 | 255,729 | 1,292,078 | -368,611 | -22.20 |
| February | 8 | 2/22/2016 | 82,179 | 1,359,882 | | 8 | 2/20/2017 | 177,914 | 1,036,349 | -323,533 | -23.79 |
| February | 7 | 2/15/2016 | 197,187 | 1,277,704 | | 7 | 2/13/2017 | 208,501 | 858,435 | -419,268 | -32.81 |
| February | 6 | 2/8/2016 | 230,045 | 1,080,517 | | 6 | 2/6/2017 | 80,322 | 649,935 | -430,582 | -39.85 |
| February | 5 | 2/1/2016 | 176,688 | 850,472 | | 5 | 1/30/2017 | 170,558 | 569,613 | -280,859 | -33.02 |
| January | 4 | 1/25/2016 | 167,980 | 673,785 | | 4 | 1/23/2017 | 110,865 | 399,055 | -274,730 | -40.77 |
| January | 3 | 1/18/2016 | 127,416 | 505,805 | | 3 | 1/15/2017 | 123,556 | 288,189 | -217,615 | -43.02 |
| January | 2 | 1/11/2016 | 284,825 | 378,389 | | 2 | 1/9/2017 | 109,020 | 164,633 | -213,756 | -55.49 |
| January | 1 | 1/4/2016 | 93,564 | 93,564 | | 1 | 1/1/2017 | 55,613 | 55,613 | -37,950 | -40.56 |

**MINUTES**
**NW TERRITORIAL COMMITTEE MEETING**
**August 1, 2017, 9:00 a.m.**

**Committee members attending:**

David Petteys, as attorney/representative of Don Wright
Larry Ciappellone
David James (initially confirmed attendance but missed the call)

**Others Attending:**

Mark Calvert, Trustee
Mike Gearin
Paul Wagner
Bill Atalla

**Committee Counsel attending:**

Mark Northrup

  During the call, the Trustee, Mr. Wagner, Mr. Atalla, and Mr. Gearin presented an update on all pending case issues, operations, and strategies and responded to questions and comments by Committee members. Agenda attached. Mr. Gearin discussed the status of pending litigation matters, including the Dayton lease issues. Mr. Atalla discussed the status of Mint sales and marketing efforts. Mr. Wagner discussed inventory and operational performance issues. Mr. Calvert discussed current cash flow and reported that he had received a purchase offer from Medalcraft (copy attached). He reported that he is also pursuing a potential sale of the business to the Dillon Gage company.

  The Committee took no formal action or position on any issue discussed.

  The meeting was adjourned at approximately 10:30 a.m.

_____

Mark Northrup, Secretary

# NWTM / Medallic
# Creditor Committee Meeting
# August 1, 2017 at 9:00 AM

## Present for the meeting from the company

| | |
|---|---|
| **Paul Wagner** | COO |
| **Bill Atalla** | CEO |
| **Mike Gearin** | Trustee Attorney |
| **Jessica Gilmore** | CCG Financial Advisor |
| **Mark Calvert** | Trustee |

## Items to be discussed

| | Who | Attachment |
|---|---|---|
| **1 June operating results** | Paul | Summary |
| **2 July projected operating results** | Paul | None |
| **3 Operational Status Report** | | |
| Staffing changes in sales | Bill | None |
| Additional RIF in June / July | | |
| Recent inspections by NDEP and OSHA and Food | | |
| **4 Status of Sales and Marketing** | | |
| New relationship with Johnston group | | |
| Status of possible relationship with | | |
| **5 Cash Flow** | Mark | Cash Flow |
| Very, very very tight cash flow, looking at options | | |
| DIP funding / working well | | |
| Major Sources / ARM Collections / Sale of equipment | | |
| Bill and Mark decisions | | |
| **6 Status of the Business** | | |
| Sale Option / status of marketing company | Mark | |
| One offer from Metal Craft | Mark | Offer |
| Possible offer from Dillon Gage / Metals Division | Bill | |
| **7 Status of Hoff / Dayton Lease Litigation** | Mike | None |
| Trial is over | | |
| Took a long time to complete / starts and stops | | |
| Major issue for repairs was "structural" Roof and parking lots | | |

Major issue was lien position in the equipment
Ruling expected in next 30 days
Exploring a Fraudulent Transfer Claim / Litigation of $2 million

**8 Dian / Ross**                                                        Mike        None
    Have liquidated over $770k of gold and silver
    Have requested and court has approved additional 2004 examinations
    Not sure how testimony in trial and depos can match up with $770k of sales
    Depo was schedule and has slid due to Diane need for criminal attorney

**9 Medallic Status**                                                    Mike        None
    Has gone quite
    Just need to prove some gold or silver was from NWTM inventory
    Possible recovery of some portion of Professional Fees

**10 Ross and Diane from a criminal prospective**                        Mark        None
    FBI / Additional Subpoenas
    FBI / Follow up on Medallic source of professional fees
    FBI / adding to indictment

**11 Question and Answer**                                               All         None

The Medalcraft Mint, Inc.
2660 W. Mason Street
Green Bay, WI 54303

July 26, 2017

Mr. Mark Calvert
Cascade Capital Group, LLC
1501 4th Ave. #2840
Seattle, WA 98101

Dear Mark:

This letter sets forth a proposal for the purchase of substantially all of the assets and assumption of certain liabilities of Northwest Territorial Mint, LLC (the "Seller"). The purchase will be made by The Medalcraft Mint, Inc., or an entity formed by me for this acquisition (the "Buyer"). While I understand that this proposal does not reflect all of the terms of a definitive purchase agreement, I believe it sets forth all information necessary to permit us to proceed to a final agreement and closing.

1.   Purchase of the Assets of the Seller. Buyer will purchase from the Seller at the closing of the purchase and sale contemplated herein (the "Closing"), substantially all of the assets owned or employed by Seller in connection with the operation of its Northwest Territorial Mint and Medallic Arts businesses, including, without limitation:

(i) all good and salable inventory on hand as of the Closing, wherever located; (ii) all accounts receivable of the Seller as the same shall exist on the date of Closing; (iii) all prepaid expenses of the Seller as the same shall exist on the date of Closing; (iv) all the fixed assets, machinery, vehicles, equipment, furniture, fixtures and leasehold improvements of the Seller; (v) all customer lists, trademarks, trade names, and other intangible assets and the goodwill of Seller relating to its business, including all of Seller's right, title and interest in and to the names "Northwest Territorial Mint," "Medallic Art" and their derivations; and (vi) all supplies, trim tools, dies, patterns and miscellaneous assets owned or employed by Seller in the conduct of its business. All of the assets to be purchased by Buyer as described in this paragraph shall hereinafter be referred to as the "Subject Assets". The Subject Assets shall be transferred to Buyer free and clear of all liens, claims and encumbrances. In addition to the foregoing assets, subject to Buyer's right to review and approve such agreements, Buyer shall assume all of Seller's right, title and interest in, to and under those beneficial contracts, licenses, equipment leases, customer contracts and other agreements of Seller which have been entered into in the ordinary course of business, which exist as of the Closing and which Buyer expressly elects to assume (the Assumed Contracts").

2.      Except for the liabilities and obligations which accrue after the Closing under the Assumed Contracts, the Buyer shall assume no other liabilities of the Seller and the Seller shall be responsible for the full discharge of all of its other liabilities. The Seller shall also be responsible for the payment of any sales and transfer taxes incurred in connection with the sale of the Subject Assets.

3.      Purchase Price. Assuming inventory levels at Closing of not less than $500,000 and accounts receivable levels at Closing of not less than $800,000, the aggregate purchase price for the Subject Assets shall be $2,000,000. The purchase price will be subject to normal closing adjustments and prorations, including, without limitation, vacation pay, rent and personal property taxes. The purchase price shall be allocated in a manner determined by the parties in accordance with applicable Internal Revenue Service regulations.

4.      Payment of the Purchase Price. The purchase price for the Subject Assets described in Section 3, above, shall be payable in cash at Closing.

5.      Conditions. The offer described herein is contingent upon the occurrence of each of the following events:

a.      Buyer and its accountants, attorneys and other representatives shall have completed appropriate and satisfactory due diligence review of the books, records, assets and liabilities of Seller.

b.      Seller shall have operated its business in the ordinary course and there shall not have occurred between the date hereof and the date of Closing any material adverse change in the assets, liabilities, conditions, results of operations or prospects of the Seller's business.

c.      The Buyer shall have obtained reports satisfactory to the Buyer and its advisors and lenders from an environmental engineer indicating that there are no material adverse environmental conditions affecting any assets owned or leased by the Seller and that the Seller has no material liabilities for environmental matters.

d.      The Buyer shall have entered into an acceptable lease arrangement with Seller's landlord to operate the business out of its current facility for the 120-day period after Closing while Buyer relocates the business to its Wisconsin facility.

e.      Seller shall not have sold, transferred, leased to others or otherwise disposed of or agreed to sell, transfer or lease any of the Subject Assets (other than sales of inventory in the ordinary course of business).

       f.      The Seller shall have obtained those consents necessary to assign to Buyer the Assumed Contracts.

       g.      The Seller shall have complied with all applicable plant-closing law requirements triggered by this transaction.

6.      <u>Inspection of the Seller's Assets.</u> Subsequent to the execution of this letter and prior to the Closing, Buyer and its accountants, attorneys, appraisers and auditors will have complete access to Seller's officers, employees, agents and representatives, and to all of the books, records, financial statements and other documents and materials relating to the business of Seller.

7.      <u>Definitive Agreements.</u> The proposal made herein will, upon acceptance, be incorporated into a definitive purchase agreement and related agreements in a form satisfactory to all parties. There shall be set forth in such definitive agreements undertakings, representations, warranties, covenants and conditions of the type normally associated with the purchase and sale of the assets of a business corporation. I propose that definitive documents be prepared by Buyer's counsel for submission and subsequent approval by Seller's counsel.

8.      <u>Schedule.</u> The foregoing is not intended to be exhaustive, but merely an outline of the basic terms of my proposal. This letter is not intended to create a binding obligation on the part of any party to consummate the transactions contemplated hereby, but is merely for purposes of setting forth our mutual intentions and providing a basis for the preparation of definitive agreements. Your execution of this letter will, however, constitute Seller's binding agreement that it will, subsequent to the date hereof (i) cease all present negotiations with other parties with respect to the sale of the Seller (whether by asset sale, stock sale, merger or otherwise); (ii) not solicit or initiate any proposal with, negotiate, discuss or otherwise communicate with or furnish or cause to be furnished any information to, or otherwise cooperate with or enter into any agreement or contract with, any person, corporation, firm or entity other than Buyer with respect to any proposal for the disposition of all or a substantial portion of the assets, stock or interest of the Seller, and (iii) proceed to negotiate in good faith toward the end of executing a mutually acceptable asset purchase agreement and related documentation. The foregoing commitment shall expire upon the earlier to occur of (i) ninety (90) days subsequent to your execution of this letter, or (ii) receipt of a written notice from Buyer stating its intention to terminate negotiations with respect to the transactions contemplated herein. We anticipate that a definitive asset purchase agreement could be executed within thirty (30) days after acceptance of this proposal and that a closing would occur shortly thereafter.

9.      <u>Expenses</u>. The Buyer and Seller shall pay their own expenses and professional fees incurred in connection with the negotiation and consummation of the transaction contemplated herein.

The foregoing is not intended to be exhaustive, but merely an outline of the basic terms of my proposal. With the exception of Seller's commitments in Section 8, above, this letter is not intended to create a binding obligation on the part of any party, but is only for the purpose of setting forth my intentions and providing the basis for the preparation and execution of definitive documents. Until the execution and delivery of definitive documents, either party may abandon negotiations by written notice to the other party without liability in any respect whatsoever.

If this proposal meets with your approval, please indicate your acceptance by executing this letter where indicated below and returning one fully executed copy to me via email at: jmoran@medalcraft.com. The offer contained in this letter, unless extended, shall expire on August _18_, 2017, at 5:00 p.m. unless an executed copy hereof has been returned to my attention prior to such date and time. Upon your return of an executed copy of this letter, I will instruct my attorneys to proceed with the drafting of the definitive agreements.

Very truly yours,

THE MEDALCRAFT MINT, INC.

By:_____

Gerald Moran, President

AGREED TO AND ACCEPTED THIS _____ DAY OF _____, 2017.

NORTHWEST TERRITORIAL MINT, LLC

By:_____

Mark Calvert, Trustee

17545501.1

**MINUTES**
**NW TERRITORIAL COMMITTEE MEETING**
**November 16, 2017, 2:30 p.m.**

**Committee members attending:**

David Petteys, as attorney/representative of Don Wright
Larry Ciappellone
Paula Pehl
Dick Pehl

**Others Attending:**

Mark Calvert, Trustee
Mike Gearin

**Committee Counsel attending:**

Mark Northrup

During the call, the Trustee and Mr. Gearin presented an update on all pending case issues, operations, and strategies and responded to questions and comments by Committee members. Mr. Calvert reported that the company experienced a $24,000 operating profit for October and anticipated a break-even performance for November. Mr. Calvert also reported that he had received a $10 million purchase offer for the business from Gary Anderson/Eureka House of Metals (copy attached). Mr. Calvert further confirmed that current cash flow was not sufficient to sustain Mint operations and that he anticipated the necessity of reducing staff and terminating operations by year end, absent sooner receipt of a purchase deposit that would provide additional bridge operating capital pending the closing of a sale of the business. In this context, the Trustee presented a list of "Close Down Action Items" (copy attached). There followed a discussion, by Committee members, of the Trustee's presentation.

The Committee took no formal action or position on any issue discussed.

The meeting was adjourned at approximately 3:45 p.m.

_____
Mark Northrup, Secretary

In the matter before the court

Honorable Christopher M. Alston - Chapter 11

# UNITED STATES BANKRUPTCY COURT WESTERN DISTRICT OF WASHINGTON AT SEATTLE

In re:

### NORTHWEST TERRITORIAL MINT, LLC   Case No. 16-11767-CMA

The following Stalking-Horse Bid is hereby submitted in Pro Per by:

**Buyer**
Gary Anderson, Investment Trustee for
RNO Financial/Eureka House of Metals (Trust)
At Alliance Trust Co., 100 West Liberty Ste. 100 Reno, NV 89501
Denis Damiens, Administrative Trustee
Bank Account @: Fidelity Investments

**Gary Anderson Mailing Address & Contact Information**
**P.O. Box 5156**
**Incline Village, NV 89450**
**503.901.5566**
**888.503.8063 fax**

This cash offer is to include the Northwest Territorial Mint name and Hallmarks, Logo's and the on going business known as Medallic Art Company aka Medallic Art & Mint located at 80 E. Airpark Vista Blvd., Dayton, NV 89403 with all assets of both companies.

It is the intention of the buyer, to keep the whole operation at its current location in Dayton, NV and the employees to carry on the business as a mint for custom medallions and custom minting. It is also the intent of the buyer to purchase the real estate in Dayton, NV outside of this bid, which will further the profitability of the operation. It is also the intention of the buyer RNO Financial/Eureka House of Metals Trust to have a headquarters facility in northern Nevada consisting of some retail space for a bullion & coin gift gallery, executive offices, museum area and industrial warehouse space within the Foreign Trade Zone for four different types of vault storage.

Page 1

The buyer makes this bid with the understanding that the entities and all the equipment and assets are free and clear of all judgements, liens, and lawsuits, including multiple regulatory agencies, the Equal Opportunity Commission (employee discrimination and harassment) and state regulatory agencies (environmental contamination), as well as any issues from former owner in the landlord case of maliciously defamed judgement, and to be free and clear of the more than three thousand creditors claims of over $83 Million. It is further understood that the company will not be open on weekends. Work week will be Monday through Friday, and will be closed starting two hours before sundown on Friday's.

The buyer with the above understanding hereby offers to purchase the above business out of Chapter 11 on or before Jan. 2, 2018 for the cash sum of $10MM.

With the courts agreement to this bid being the awarded bid, RNO Financial/Eureka House of Metals Trust will provide proof of funds on or before Nov. 29, 2017.


DATED this 27th day of October, 2017.
/s/

Gary Anderson, Investment Trustee
RNO Financial/Eureka House of Metals Trust


//////////
//////////

# NWTM
# Close Down Action Items
## As of November 14, 2017

| # | Action Items | Primary | Approval | Estimated Cost | Start Week | End Week |
|---|---|---|---|---|---|---|
| 1 | Determine which employees to retain to help with liquidat | PW | | | 1 | 1 |
| 2 | Determine which employees to retain to help with the rem | PW | | | 1 | 1 |
| 3 | Calculate the payroll owed based upon date of termination | AT | | | 1 | 2 |
| 4 | Dispose of hazardous material | MM | | | 1 | 2 |
| 5 | Issue final report related to disposal of environmental mat | MM | | | 1 | 3 |
| 6 | Hire an Auctioneer | MC | | | 1 | 3 |
| 7 | Breakdown Wisconsin office | DT | | | 1 | 3 |
| 8 | File motion to hire auctioneer | MG | | | 2 | 2 |
| 9 | File motion to dispose of all paperwork | MG | | | 2 | 2 |
| 10 | Lockdown all inventory | JG | | | 2 | 2 |
| 11 | Change vault combinations | JG | | | 2 | 2 |
| 12 | Count/inventory all raw materials | JG | | | 2 | 3 |
| 13 | Notify employees of termination date | PW | | | 2 | 2 |
| 14 | Make a list of vendors and determine appropriate time to n | AT | | | 2 | 2 |
| 15 | Make a list of unprocessed orders and determine who noti | PW | | | 2 | 2 |
| 16 | Complete all jobs near completion | EC | | | 2 | 5 |
| 17 | Continue to fulfull custom import orders | AW | | | 2 | 5 |
| 18 | Determine when it's appropriate to notify the court | MG | | | 2 | 3 |
| 19 | Close DIP financing contract | MC | | | 2 | 2 |
| 20 | Terminate all non-skeleton employees | PW | | | 2 | 2 |
| 21 | File motion to change to liquidating Chapter 11 | MG | | | 2 | 2 |
| 22 | File motion to liquidate assets and inventory | MG | | | 2 | 2 |
| 23 | File Bar Date for Administrative Claims | MG | | | 2 | 5 |
| 24 | Terminate leases | MC | | | 2 | 6 |
| 25 | Liquidate stock merchandise | PW/AW | | | 2 | 6 |
| 26 | Breakdown Kent office | PW | | | 2 | 4 |
| 27 | Breakdown Dayton office | JG | | | 2 | 6 |

| | Action Items | Primary | Approval | Estimated Cost | Start Week | End Week | Status | 1 17-Nov-17 | 2 24-Nov-17 | 3 1-Dec-17 | 4 8-Dec-17 | 5 15-Dec-17 | 6 22-Dec-17 | 7 29-Dec-17 | 8 5-Jan-18 | 9 12-Jan-18 | 10 19-Jan-18 | 11 26-Jan-18 | 12 2-Feb-18 | 13 9-Feb-18 | 14 16-Feb-18 | 15 23-Feb-18 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 28 | Cancel Employer ID | AT | | | 2 | 2 | | | | | | | | | | | | | | | | |
| 29 | Calculate vacation payout | AT | | | 2 | 2 | | | | | | | | | | | | | | | | |
| 30 | Close out personnel files and terminate access keys | ML | | | 2 | 2 | | | | | | | | | | | | | | | | |
| 31 | Write letters of recommendation for employees | ML | | | 2 | 3 | | | | | | | | | | | | | | | | |
| 32 | Change auto-phone script | PW | | | 3 | 3 | | | | | | | | | | | | | | | | |
| 33 | Collect on previously shipped custom orders | AT | | | 3 | 6 | | | | | | | | | | | | | | | | |
| 34 | Collect from on-going import orders | AT | | | 3 | 6 | | | | | | | | | | | | | | | | |
| 35 | Collect from domestic near-completed orders | AT | | | 3 | 6 | | | | | | | | | | | | | | | | |
| 36 | Collect all outstanding deposits | AT | | | 3 | 6 | | | | | | | | | | | | | | | | |
| 37 | Notify creditors | MC | | | 3 | 4 | | | | | | | | | | | | | | | | |
| 38 | Notify customers | AT | | | 3 | 4 | | | | | | | | | | | | | | | | |
| 39 | Re-Route mail to Cascade Capital Group, LLC | AT | | | 3 | 6 | | | | | | | | | | | | | | | | |
| 40 | Liquidation of scrap | PW/AW | | | 3 | 6 | | | | | | | | | | | | | | | | |
| 41 | Sell Dayton and Wisconsin Production Equipment | JG | | | 3 | 9 | | | | | | | | | | | | | | | | |
| 42 | Sell Dayton Non-Production Equiptment | PW | | | 3 | 9 | | | | | | | | | | | | | | | | |
| 43 | Sell Digital assets (customer, sites, artwork, domains, tran | PW | | | 3 | 9 | | | | | | | | | | | | | | | | |
| 44 | Sell/liquidate raw materials | JG | | | 3 | 9 | | | | | | | | | | | | | | | | |
| 45 | Sell archives | PW | | | 3 | 9 | | | | | | | | | | | | | | | | |
| 46 | Sell/liquidate dies | PW | | | 3 | 9 | | | | | | | | | | | | | | | | |
| 47 | Cancel city, state and county permits and licenses | AT | | | 3 | 5 | | | | | | | | | | | | | | | | |
| 48 | Calculate all administrative claims | MC | | | 4 | 6 | | | | | | | | | | | | | | | | |
| 49 | Cancel data / web / hosting / phone | EC | | | 4 | 6 | | | | | | | | | | | | | | | | |
| 50 | Cancel recurring credit card billings | AT | | | 4 | 8 | | | | | | | | | | | | | | | | |
| 51 | Ship equipment from Wisconsin to Dayton | DT | | | 5 | 6 | | | | | | | | | | | | | | | | |
| 52 | Cancel Insurance policies | AT | | | 6 | 8 | | | | | | | | | | | | | | | | |

## Northwest Territorial Mint LLC
## Retained Employee's Upon Liquidation

| # | Employee | Department | Week 1-2 | Week 3-4 | Week 5-6 | Week 7-8 | Week 9-10 | Total |
|---|----------|-----------|----------|----------|----------|----------|-----------|-------|
| 1 | Paul Wagner | Manager | $6,538 | $6,538 | $6,538 | $6,538 | $6,538 | **$32,690** |
| 2 | Annette Trunkett | Accounting | $1,600 | $1,600 | $1,600 | $1,600 | $1,600 | **$8,000** |
| 3 | Ali Webb | Shipping | $1,560 | $1,560 | $1,560 | $1,560 | | **$6,240** |
| 4 | Jeff Goodfellow | Maint / Equipment | $4,692 | $4,692 | $4,692 | $4,692 | $4,692 | **$23,460** |
| 5 | Mitch Semler | Inventory | $1,095 | $1,095 | $1,095 | $1,095 | | **$4,380** |
| 6 | Dennis Timm | Die Shop | $2,865 | $2,865 | | | | **$5,730** |
| 7 | Reed Thayer | Web | $2,019 | $2,019 | | | | **$4,038** |
| 8 | Edgar Chacon | IT | $3,231 | $3,231 | $3,231 | | | **$9,693** |
| 9 | Jesse Baldassare | Woodshop | $1,712 | | | | | **$1,712** |
| 10 | Randy Jones | Toolroom | $2,258 | $2,258 | $2,258 | $2,258 | $2,258 | **$11,290** |
| 11 | Jeremy Sharp | Finishing | $1,094 | | | | | **$1,094** |
| 12 | KJ Fleet | Customer Service | $1,200 | $1,200 | | | | **$2,400** |
| 13 | Debbie Davis | Customer Service | $1,400 | $1,400 | | | | **$2,800** |
| 14 | Donna Robinson | Enameling | $1,391 | | | | | **$1,391** |
| 15 | Gary Bennett | Knife | $1,080 | | | | | **$1,080** |
| 16 | Matt Lee | Human Resources | $1,560 | | | | | **$1,560** |
| | Reserve for Unknown | All | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | **$50,000** |
| | Retention Bonus | All | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | **$50,000** |
| | | **Total Payroll** | **$55,295** | **$48,458** | **$40,974** | **$37,743** | **$35,088** | **$217,558** |