Michael J. Gearin, WSBA # 20982
David C. Neu, WSBA # 33143
Brian T. Peterson, WSBA # 42088
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
(206) 623-7580

Honorable Christopher M. Alston
Chapter 11
Hearing Location: Seattle, Rm. 7206
Hearing Date: Wednesday, March 13, 2019
Hearing Time: 9:30 a.m.
Response Date: March 4, 2019

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| In re:<br><br>NORTHWEST TERRITORIAL MINT, LLC,<br><br>Debtor. | Case No. 16-11767-CMA<br><br>SECOND SUPPLEMENTAL REPLY DECLARATION OF MARK CALVERT IN SUPPORT OF FEE APPLICATIONS OF CHAPTER 11 TRUSTEE AND TRUSTEE'S PROFESSIONALS |

Mark Calvert declares as follows:

1. I am the Chapter 11 Trustee of Northwest Territorial Mint, LLC ("NWTM" or "Debtor"). I am over eighteen (18) years of age and I am competent in all ways to testify. Unless otherwise stated herein, the following declaration is based on my personal knowledge. I submit this Declaration in Support of the Trustee's First Application for Compensation (Dkt. No. 1926) (the "Trustee Application"); the First Application for Compensation of Cascade Capital Group LLC as Accountants for the Chapter 11 Trustee (Dkt. No. 1924) (the "Cascade Application"); and K&L Gates LLP Application for Compensation (Dkt. No. 1928) (the "K&L Gates Application," and together with the Trustee's Application and the Cascade Application, the "Fee Applications").

2. This declaration supplements my Supplemental Reply Declaration of Mark Calvert in Support of Fee Applications of Chapter 11 Trustee and Trustee's Professionals [Dkt. 2016].

3. The Court asked me to explain why I hired Bill Atalla ("Atalla") as the Chief Executive Officer of NWTM. At the time Bill Atalla was hired the goal for this case was to

SECOND SUPPLEMENTAL REPLY DECLARATION OF MARK CALVERT IN SUPPORT OF FEE APPLICATIONS OF CHAPTER 11 TRUSTEE AND TRUSTEE'S PROFESSIONALS- 1

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

502104461 v7

Case 16-11767-CMA    Doc 2037    Filed 03/04/19    Ent. 03/04/19 18:39:14    Pg. 1 of 15

reorganize the Debtor, and such a reorganization was dependent on a growth in sales. Accordingly, I deemed it necessary to retain a sales-oriented CEO. Atalla was referred to me by Connie Hoff's attorney, who represented to me that Attalla was an individual that could help grow sales significantly. Connie Hoff was the landlord of the Dayton, Nevada, facility and was the previous owner of Medallic Art Company. Thus, she had the knowledge and experience to know what the debtor needed in terms of a sales oriented CEO.

I had no prior relationship with Atalla or Connie Hoff's attorney before interviewing and hiring Atalla. I completed an interview of Atalla, and Atalla was confident about his skill set and represented his ability to significantly grow sales in a difficult environment. He touted his network and ability to bring in projects from larger financial institutions. In addition he provided proposed sales forecasts far in excess of what would be needed to make the plan of reorganization feasible. I recommended that the Unsecured Creditors' Committee (the "Committee") also interview him. The Committee and another turnaround professional known to the Court, who I understand interviewed to advise the Committee on financial matters, interviewed Atalla as well. That professional also recommended the hiring of Attalla. The Committee agreed with the retention of Atalla as a sales oriented CEO.

In recognition of the fact that sales growth could be difficult until NWTM emerged from bankruptcy, and that lack of sales growth would impact creditor recovery, Atalla's compensation structure was based primarily on the growth of sales. NWTM was profitable when Atalla was hired, but reorganization on terms that would provide a dividend to creditors required growth in sales. Again, Atalla expressed confidence in hitting sales targets and realizing his growth in sales based bonus. The fact of the matter is he did not earn any of his bonus compensation. After approximately six months, it became clear that Atalla was not able to grow sales as he represented to the Trustee and the Committee, the negative press and bankruptcy head wind proved to be more than he anticipated. More specifically Atalla was failing his assigned duties in the following ways: 1) he was

SECOND SUPPLEMENTAL REPLY DECLARATION OF MARK CALVERT IN SUPPORT OF FEE APPLICATIONS OF CHAPTER 11 TRUSTEE AND TRUSTEE'S PROFESSIONALS- 2

502104461 v7

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

not growing sales; 2) he didn't grow his sales team; and 3) he terminated the head sales person for the Medallic Arts Company products. The termination of a 18 year experienced sale person was particularly damaging because Atalla did not take into consideration that she did not have a non-compete agreement and could and did go work for a competitor, which caused a material reduction in sales as a result.

4. The Court asked me to identify all payments to Cascade Capital Group ("CCG"), and to identify any loans made by CCG to the estate, and to explain why CCG was reimbursed without court approval. As was described in my prior Supplemental Declaration in Support of Fee Applications of Chapter 11 Trustee and Trustee's Professionals for Continued Hearing on February 1, 2019 at Dkt. 1982, CCG processed reimbursements of certain expenses of the Trustee. These Trustee expenses, principally travel expenses for the ordinary business travel of the Trustee were paid through a credit card jointly in the name of Cascade and the Trustee personally. These expenses total $32,389.66 (including a $10,000 bond premium payment made by check) and are detailed at Exhibits B and D of Dkt. 1982. In my prior supplemental declaration at paragraph 19, I described disbursements made to Ms. Jody Cannady (now Quick) on account of fully accounted for petty cash used in the estate's business. **These were previously disclosed** in the Monthly Financial Report, these payments were disclosed on the UST14 as a payable to Cascade Capital Group and described generally as Trustee Reimbursements, Trustee Fees or Reimbursements. They were reflected as payments to Cascade Capital Group because I used a Cascade Capital Group credit card with my personal name on it to make the charges. A list of the payments showing how they were described in the Monthly Financial Reports is attached as Exhibit A.

In July, 2017 I paid Raymond Crook for travel and expert testimony regarding the Hoff's and roof issue in the amount of $1,385.60. In July the lowest cash balance for NWTM was $250K. This was not a cash flow issue for payment. It may have been a timing of payment issue. NWTM used Bill.com to pay all bills and for first time vendors process times were up to 10 days. I cannot say if

SECOND SUPPLEMENTAL REPLY DECLARATION OF
MARK CALVERT IN SUPPORT OF FEE APPLICATIONS
OF CHAPTER 11 TRUSTEE AND TRUSTEE'S
PROFESSIONALS- 3

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

502104461 v7

that was the reasoning for certain, but it was a possibility. The Trustee paid Raymond Crook (RPC Roofing) August 16th, 2017 and NWTM reimbursed CCG same day. So, it leads me to believe it was a timing of payment issue with the vendor.

In December, 2017 I set up the move for the Kent office and ordered storage pods for items to be moved. POD, the company which provided the pods, required a Credit Card deposit and quoted $1997.64. At that time NWTM did not have a debit card which had been cancelled due to potential fraud on the account and we did not have one re-issued due to the company closing down. NWTM reimbursed CCG the amount quoted by POD that was pending on the credit card. Again, this was not a cash issue, but was simply a result of the vendor requirement that payment be made by credit card.

On December 27, 2017, ABC Cleanup was engaged for the dumpster rental and required a credit card deposit. Again, NWTM did not have a debit card to do this. Once the dumpster was picked up, ABC Cleanup automatically charged the CCG credit card for the remaining balance, they would not accept a check for final payment. Once the final charge was made CCG refunded the difference between what NWTM paid CCG for the original deposit and the total amount of the dumpster rental. The final charge by ABC Cleanup was on January 9, 2018, and the CCG refunded NWTM same day for $611.24. Over this time period of two weeks the lowest cash balance for NWTM was $47,000. This was not a cash flow issue, it was the fact that the vendor would only accept credit card payment.

On February 1st, 2018, I received a call from Dayton stating they received a notice from Lyon County Utilities that the electric service would be shut off if not paid immediately. I called Lyon County immediately and they would only take credit card over the phone and payment via check would be too late and power would be shut off. They would not extend the shut off date so I was forced to use the CCG credit card again due to the fact the NWTM did not have a debit card. This was not a cash flow issue, at the date of payment NWTM had a cash balance of $81,000. It was a

SECOND SUPPLEMENTAL REPLY DECLARATION OF MARK CALVERT IN SUPPORT OF FEE APPLICATIONS OF CHAPTER 11 TRUSTEE AND TRUSTEE'S PROFESSIONALS- 4

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

502104461 v7

Case 16-11767-CMA    Doc 2037    Filed 03/04/19    Ent. 03/04/19 18:39:14    Pg. 4 of 15

matter of urgency and no other option to pay. Due to the Kent move and the fact that the accounting staff for NWTM was down to one person, the invoice was missed and the accountant was unaware NWTM was late on payment to this extent.

On February 8th, 2018 NWTM had the locks changed at the Dayton facility immediately following an incident where three former employees had entered the building without permission in the evening. This was an immediate need for security and Alpine Lock came out immediately, but demanded credit card payment only. For this reason, I used the CCG credit card to facilitate the locks being changed to protect the assets of the estate. Due to security of NWTM this was urgent and could not wait for a check to be sent before the locks were changed. On the date Alpine Lock came out NWTM had a cash balance of $69,000, so this was not a cash flow issue, but a matter of urgency and payment restrictions. NWTM reimbursed the Trustee same day.

In July, 2018 Denise Crites came to the Dayton facility to video the walkthrough with the landlord to have it documented due to issues in the past. I was present in Dayton and Denise Crite's services needed to be paid same day. All checks are kept in Washington, so the only option of payment was the CCG credit card due to the fact that NWTM did not have a debit card. NWTM had a cash balance of $2.9 million at the time of payment, so this was not a cash flow issue, but a matter of payment restrictions. All June, 2018 to present expenses for travel to Dayton to finish closing the plant and resolving environmental and lease issues have not been reimbursed by NWTM as of yet.

I did not consider myself to be advancing credit to NWTM but rather facilitating payment as employees commonly do in the ordinary course of a company's business.

5. The Court asked me to explain a payment to Atkins Intellectual Property in November, 2017. At the time of my previous declaration, I had not become aware of this payment. Accordingly, following the last hearing, I investigated why it had been made. I learned that Atkins Intellectual Property is a vendor used in the past for consultation with Greg Fullington, NWTM's in-house counsel, regarding copyright issues on coins sold through the NWTM store. In total $1,725

SECOND SUPPLEMENTAL REPLY DECLARATION OF
MARK CALVERT IN SUPPORT OF FEE APPLICATIONS
OF CHAPTER 11 TRUSTEE AND TRUSTEE'S
PROFESSIONALS- 5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

502104461 v7

Case 16-11767-CMA    Doc 2037    Filed 03/04/19    Ent. 03/04/19 18:39:14    Pg. 5 of 15

was paid. $1,620 was paid in October, 2016. $70 was paid in December, 2016, and $35 was paid in November, 2016. Greg Fullington used the same firm in the past to address if NWTM was legally selling copyrighted coins. I learned that Greg Fullington consulted with Atkins Intellectual Property to determine if there were copyright issues related to the sale of Alcoholic Anonymous ("AA") Coins. I was not aware that these amounts had been paid through the normal reimbursement process for expenses of NWTM.

I am unaware of any other payments made to attorneys or accountants that have not been previously disclosed.

6. The Court asked that I explain a payment in the approximate amount of $500,000 made to Charles Masoner in the 90 days prior to the petition date and why it was not pursued as a preferential transfer. The payment, $500,935.60, was made on March 8th, 2016 based on a February 12, 2016 purchase order. Based on past practice, this is the date when Charles Masoner either came in the office or the date he called with the detail of what he wanted to sell to NWTM. Charles Masoner sold Gold Canadian Maple Leaf coins to NWTM. No check was issued until product was received and valued. With no address in the system for Charles, I believe that he came in to the Federal Way office with the product. In other words, this was a contemporaneous and ordinary course purchase of gold by NWTM.

7. The Court asked that I provide copies of grand jury subpoenas I received over the course of this proceeding. I received eight in total. The United States Attorney's office has requested that I submit these for in-camera review, and not file them publically. I will provide these subpoenas to the Court for in-camera review.

8. The Court asked what inventory was sold that was discussed with the Committee as reflected in May, 2016, Committee minutes. Attached hereto as Exhibit B is detail related to the inventory sales from the Federal Way vault and showroom. The sales of this inventory, primarily numismatics, was in the ordinary course of NWTM's business which is why they are not listed on

SECOND SUPPLEMENTAL REPLY DECLARATION OF
MARK CALVERT IN SUPPORT OF FEE APPLICATIONS
OF CHAPTER 11 TRUSTEE AND TRUSTEE'S
PROFESSIONALS- 6

502104461 v7

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 2037    Filed 03/04/19    Ent. 03/04/19 18:39:14    Pg. 6 of 15

the UST-17. NWTM continued the business of buying and selling numismatics during the bankruptcy case. The cash receipts are reflected in the Monthly Operating Reports. In 2016, I closed NWTM's operation in Federal Way, Washington, which left NWTM with an excess of inventory in Washington. NWTM continued to sell numismatics through its store in Auburn, Washington and Dayton, Nevada. Rather than shipping all of this inventory to Dayton to be sold through the store in that location, I elected to sell the inventory to coin dealers in Washington as I believe it was in the best interest of the estate to maximize the recovery accordingly.

9. The Court asked me to explain a reference to a spectrometer being sold which appears in the Committee's minutes from February, 2017. I was not aware of the sale which took place in August, 2016 until after it had been concluded. When I heard a spectrometer had been sold, I asked Paul Wagner who informed me that to the best of his recollection, the owner of the Renton Coin Shop, who was in the office, offered to purchase it, and did so for, to the best of my recollection, approximately $4,000. When I asked about it, I was informed by Paul Wagner that the spectrometer was approximately 10 years old and not in working condition. At the February, 2017, I informed the Committee that I had learned the spectrometer had been sold, I informed the Committee that given the estate's relationship with the Renton Coin Shop, which was a customer of NWTM, I believed I could get it back if we thought it could be sold for a higher price. I had no reason to believe it was worth more than $4,000 and I did not demand the return of the spectrometer.

10. The Court asked what is left to do in the case. As I informed the Court at the last hearing, the remaining tasks include liquidation of the remaining unsold "store" inventory, resolution of issues regarding the bullion and other property seized by the King County Sheriff (a motion should be pending by the time of the hearing on fee applications), settlement or pursuit of third party claims based on transfers made by Diane Erdmann, and payment of administrative claims.

SECOND SUPPLEMENTAL REPLY DECLARATION OF
MARK CALVERT IN SUPPORT OF FEE APPLICATIONS
OF CHAPTER 11 TRUSTEE AND TRUSTEE'S
PROFESSIONALS- 7

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

502104461 v7

Case 16-11767-CMA    Doc 2037    Filed 03/04/19    Ent. 03/04/19 18:39:14    Pg. 7 of 15

11. The Court requested all communications between myself and Richard Bressler from March 1, 2017 to the present. There are no such communications. While I tried to reach out to him and had a phone call, he requested that we work through his attorneys.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

EXECUTED this 4th day of March 2019 at Seattle, Washington.

*/s/ Mark Calvert*
Mark Calvert

SECOND SUPPLEMENTAL REPLY DECLARATION OF MARK CALVERT IN SUPPORT OF FEE APPLICATIONS OF CHAPTER 11 TRUSTEE AND TRUSTEE'S PROFESSIONALS- 8

502104461 v7

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-11767-CMA    Doc 2037    Filed 03/04/19    Ent. 03/04/19 18:39:14    Pg. 8 of 15

# CERTIFICATE OF SERVICE

The undersigned declares as follows:

That she is a paralegal in the law firm of K&L Gates LLP, and on March 4, 2019, she caused the foregoing document to be filed electronically through the CM/ECF system which caused Registered Participants to be served by electronic means, as fully reflected on the Notice of Electronic Filing.

I declare under penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct.

Executed on the 4th day of March, 2019 at Seattle, Washington.

*/s/ Denise A. Lentz*
Denise A. Lentz

SECOND SUPPLEMENTAL REPLY DECLARATION OF MARK CALVERT IN SUPPORT OF FEE APPLICATIONS OF CHAPTER 11 TRUSTEE AND TRUSTEE'S PROFESSIONALS- 9

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

502104461 v7

Case 16-11767-CMA    Doc 2037    Filed 03/04/19    Ent. 03/04/19 18:39:14    Pg. 9 of 15

# EXHIBIT A

# Northwest Territorial Mint
# Bankruptcy Case 16-11767CMA
# Trustee Reimbursements reported on MOR's

| Date | Amount | Payee Discription | Description in MOR's |
|---|---|---|---|
| 12/30/2016 | $8,907.56 | Transfer | Transfer |
| 3/2/2017 | $954.40 | CascadeCapital Group | Reimburse Trustee trip to Dayton |
| 4/28/2017 | $12,821.27 | CascadeCapital Group | Trustee Fees |
| 7/1/2017 | $1,983.35 | CascadeCapital Group | Trustee Reimb for Travel |
| 8/16/2017 | $1,385.60 | CascadeCapital Group | AP Vendor Paid |
| 9/18/2017 | $1,867.55 | CascadeCapital Group | Reimb Travel to Dayton |
| 12/20/2017 | $1,997.64 | CascadeCapital Group | Reimb - Kent POD |
| 1/26/2018 | $3,411.09 | CascadeCapital Group | Corp Expense Reimb |
| 2/1/2018 | $705.57 | CascadeCapital Group | Utilities |
| 2/8/2018 | $155.06 | CascadeCapital Group | Repair & Maint |

# EXHIBIT B

# Northwest Territorial Mint
# Bankruptcy Case 16-11767CMA
# Summary by Customer and Month
# Federal Way Vault and Showroom Items Sold in 2016

| Order # | Customer Name | Date Shipped | Month and Year | Total Amount |
|---|---|---|---|---|
| 138740 | SHOWROOM | 4/11/16 | Apr-16 | $2,985.10 |
| 139140 | James Gochmansky | 4/14/16 | Apr-16 | $353.40 |
| 136338 | JIH-CHU CHEN | 4/15/16 | Apr-16 | $549.90 |
| 136385 | charles wright | 4/26/16 | Apr-16 | $45.00 |
| 138018 | Joseph Gradwohl | 4/26/16 | Apr-16 | $278.06 |
| 138020 | Larry Bugbee | 4/26/16 | Apr-16 | $2,591.36 |
| 138027 | mitchell crowe | 4/26/16 | Apr-16 | $137.55 |
| 138040 | Rahmel Chisholm | 4/26/16 | Apr-16 | $445.60 |
| 138048 | Gregory Boulier | 4/26/16 | Apr-16 | $1,343.24 |
| 138062 | Randy Hoople | 4/26/16 | Apr-16 | $214.53 |
| 138320 | Mylanie Alvarado | 4/26/16 | Apr-16 | $50.23 |
| 138374 | brendan barry | 4/26/16 | Apr-16 | $139.92 |
| 138752 | DARRELL ANDERSON | 4/26/16 | Apr-16 | $5.40 |
| 138754 | jeff dye | 4/26/16 | Apr-16 | $43.76 |
| 138763 | William Hilst | 4/26/16 | Apr-16 | $3,409.60 |
| 138966 | Britt Brown | 4/26/16 | Apr-16 | $104.90 |
| 139854 | DAVID BROWNFIELD | 4/26/16 | Apr-16 | $228.28 |
| 140124 | Paul Bagley | 4/26/16 | Apr-16 | $175.08 |
| 138022 | JOHN FERRISO | 4/27/16 | Apr-16 | $1,631.35 |
| 138031 | leo lua | 4/27/16 | Apr-16 | $31.62 |
| 138033 | John J Hatala | 4/27/16 | Apr-16 | $158.50 |
| 138035 | Jerry Hammond | 4/27/16 | Apr-16 | $1,404.13 |
| 138036 | carlos alvarez | 4/27/16 | Apr-16 | $47.34 |
| 138037 | daniel culp | 4/27/16 | Apr-16 | $4,827.00 |
| 138039 | karl murashima | 4/27/16 | Apr-16 | $111.24 |
| 138049 | David Radabaugh | 4/27/16 | Apr-16 | $23.64 |
| 138052 | Lois Thadei | 4/27/16 | Apr-16 | $95.40 |
| 138053 | Brenda Forbes | 4/27/16 | Apr-16 | $63.60 |
| 138058 | Victor Dallari | 4/27/16 | Apr-16 | $9,676.62 |
| 138059 | Craig Gilley | 4/27/16 | Apr-16 | $974.40 |
| 138069 | Greg Majewski | 4/27/16 | Apr-16 | $158.20 |
| 138071 | Anthony Aldino | 4/27/16 | Apr-16 | $193.80 |
| 138195 | GERALD MACINTYRE | 4/27/16 | Apr-16 | $179.30 |
| 138313 | Allen Martin | 4/27/16 | Apr-16 | $1,137.65 |
| 138317 | Carter Priess | 4/27/16 | Apr-16 | $178.90 |

| | | | | |
|---|---|---|---|---|
| 138372 | Milan Lackovic | 4/27/16 | Apr-16 | $27.93 |
| 138373 | Jeffrey Richards | 4/27/16 | Apr-16 | $96.06 |
| 138746 | John Johnson | 4/27/16 | Apr-16 | $167.30 |
| 138757 | jason martin | 4/27/16 | Apr-16 | $19.27 |
| 138762 | Mark Davis | 4/27/16 | Apr-16 | $96.16 |
| 138764 | shawn danley | 4/27/16 | Apr-16 | $56.40 |
| 138768 | Clint Beck | 4/27/16 | Apr-16 | $56.28 |
| 138954 | Jeremiah Dillon | 4/27/16 | Apr-16 | $234.22 |
| 139005 | tyler izzard | 4/27/16 | Apr-16 | $65.51 |
| 140125 | bart panesa | 4/27/16 | Apr-16 | $4,573.60 |
| 140345 | Debbie Christianson | 4/27/16 | Apr-16 | $30.34 |
| 141279 | SHOWROOM | 5/6/16 | May-16 | $220.83 |
| 142277 | Employee Mint | 5/17/16 | May-16 | $70.00 |
| 142422 | SALES SAMPLES | 5/18/16 | May-16 | $20.00 |
| 142509 | FFRC Inc | 5/21/16 | May-16 | $303,459.65 |
| 143760 | SHOWROOM | 6/1/16 | Jun-16 | $910.33 |
| 145308 | alan howell | 6/22/16 | Jun-16 | $37.96 |
| 136300 | Mark Voigt | 6/29/16 | Jun-16 | $44.00 |
| 142416 | Employee Mint | 6/29/16 | Jun-16 | $195.76 |
| 138775 | WALK IN CUSTOMER | 7/5/16 | Jul-16 | $1,828.00 |
| 144556 | EMPLOYEE | 7/5/16 | Jul-16 | $728.00 |
| 145724 | UPSTATE COIN & GOLD | 7/5/16 | Jul-16 | $141,493.92 |
| 146017 | Paul Thompson | 7/5/16 | Jul-16 | $6,715.15 |
| 145552 | Patriot Guard Riders of Washington State | 7/6/16 | Jul-16 | $1,722.50 |
| 146999 | SHOWROOM | 7/8/16 | Jul-16 | $25.33 |
| 147288 | SEATTLE COIN SHOP | 7/12/16 | Jul-16 | $79,738.97 |
| 146426 | HALLMARK REFINING CORP | 7/15/16 | Jul-16 | $199,961.51 |
| 147914 | EMPLOYEE PURCHASES | 7/20/16 | Jul-16 | $8.00 |
| 148724 | UPSTATE COIN & GOLD | 8/1/16 | Aug-16 | $71,594.25 |
| 141279 | SHOWROOM | 8/3/16 | Aug-16 | $239.85 |
| 147507 | EMPLOYEE | 8/4/16 | Aug-16 | $7,684.93 |
| 148970 | Employee Mint | 8/4/16 | Aug-16 | $135.35 |
| 149032 | SEATTLE COIN SHOP | 8/5/16 | Aug-16 | $29,766.49 |
| 149106 | WALK IN CUSTOMER | 8/5/16 | Aug-16 | $121.80 |
| 149332 | DENNIS BOXX | 8/9/16 | Aug-16 | $6,427.74 |
| 149777 | RENTON COIN SHOP, INC | 8/15/16 | Aug-16 | $104,506.08 |
| 148830 | Paul Thompson | 8/16/16 | Aug-16 | $8,408.52 |
| 149034 | HALLMARK REFINING CORP | 8/16/16 | Aug-16 | $91,087.81 |
| 150199 | EMPLOYEE PURCHASES | 8/24/16 | Aug-16 | $402.20 |
| 150758 | Zoe Caywood | 9/15/16 | Sep-16 | $30.00 |
| 150567 | HALLMARK REFINING CORP | 10/4/16 | Oct-16 | $11,314.03 |
| 154274 | Employee Mint | 10/7/16 | Oct-16 | $105.42 |
| 155641 | A-MARK PRECIOUS METALS, INC | 10/21/16 | Oct-16 | $96,675.00 |
| 133638 | SHOWROOM | 10/25/16 | Oct-16 | $20.00 |
| 79031 | Employee Mint | 11/1/16 | Nov-16 | $15.00 |
| 91115 | WALK IN CUSTOMER | 11/1/16 | Nov-16 | $128.84 |
| 66122 | Richard Lovelace | 11/2/16 | Nov-16 | $168.38 |

| | | | | |
|---|---|---|---|---|
| 106368 | SHOWROOM | 11/2/16 | Nov-16 | $527.90 |
| 111923 | US Submarine Veterans Bremerton Base | 11/2/16 | Nov-16 | $115.01 |
| 125461 | Steven Johnson | 11/2/16 | Nov-16 | $20.00 |
| 134519 | Robert La Valle | 11/2/16 | Nov-16 | $483.08 |
| 159273 | JOHN J KONSBRUCK | 12/1/16 | Dec-16 | $45.62 |
| 162491 | A-MARK PRECIOUS METALS, INC | 12/13/16 | Dec-16 | $55,950.00 |
| 161996 | ARMED FORCES DEPOT | 12/14/16 | Dec-16 | $1,677.50 |
| 160311 | ACQUA COINS | 12/15/16 | Dec-16 | $1,125.00 |
| 161965 | EMPLOYEE PURCHASES | 12/20/16 | Dec-16 | $49.70 |
| 162734 | Alpine Products | 12/29/16 | Dec-16 | $277.20 |
| **Total** | | | | **$1,265,699.28** |