William Hanson
PO Box 64655
University Place, WA
98464-0655

March 4, 2019

UNITED STATES BANKRUPTCY COURT
CASE: # 16-11767 CMA

FEDERAL BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
700 STEWART ST.
SEATTLE, WA 98101

THE HONORABLE CHRISTOPHER M. ALSTON

FILED
Western District of Washington
at Seattle

MAR -8 2019

MARK L. HATCHER, CLERK
OF THE BANKRUPTCY COURT

Your Honor:

I wish to present to the court a description of communication I had with Ross Hansen. Another creditor and myself met with him all together except for one time when I met alone with Ross Hansen. At the last meeting, I had long been off the committee.

The meetings were mostly an attempt to save the company with a viable reorganization plan. Ross Hansen knew more about the minting business than anybody we had available. Also, he remained in contact with several persons actively employed by the trustee controlled estate and in reality he was the source of information. The information obtained from Ross Hansen, from his inside contacts, included information which the trustee preferred not be known. Such information included: the trustee had sold the X-ray spectrometer while claiming to use it "every day". Also, Ross Hansen informed the other creditor and myself that the Trustee had opened up the vaults inviting local coin shop dealers to look for things they would purchase and asking them to pay him what is fair. I verified that this happened with the owner of one coin shop, the one which bought the spectrometer. That shop owner told me almost the same story about opening the vaults and inviting dealers in. He also told me that he made a lot of money that day. I took his version of the story to support what Ross Hansen had told me. That incident is something the trustee would prefer the committee not know. Dealing with Ross Hansen was only a limited source of facts. Much of what he said was not supportable, was fabrication, was historic fiction, but with some nuggets of fact. He is a story teller and highly manipulative so it takes time to get to the morsels of information. Ross Hansen got no specific information from me other than the disclosure that there was an agreement with Bressler. It was this accidental disclosure that prompted Ross to transfer his interest in Medallic to the estate eliminating the need for a trial on that issue. I was on the phone alone with Ross at the time and was trying to neutralize his challenge that he would force a chapter 7 conversion because of what Mr. Northrup had written in that same email and same short paragraph about business improving in Dayton. Ross Hansen's access to information from within the company included: contacts with current and former employees as well as the fact that he had retained internet access to the security cameras in Dayton. He told me about what he saw on the cameras. This security camera access was reported to Northrup and the access was then cut off. The point I am making here is that Ross Hansen was a source of information, much of it questionable and self serving but some of it was of value because he knew the NWTM holdings and accounts. It was more than we were getting from the professionals. All information I received from Ross Hansen that appeared to be of any importance was relayed to Northrup. There can be no accusation that I operated in secret

and unreasonably. Unfortunately, a lot of my reporting to council was done verbally on the phone. If I could relive the experience, I would only communicate in writing to council.

Ross Hansen knew that the estate, as operated by the trustee, was insolvent. He threatened several times to force a chapter 7 on us because the trustee was going to reduce the value to zero. There was no evidence that the creditors would ever see any return. The story has played out exactly as predicted. The question that hangs over the scene is "Why did the trustee play out the drama so long? He had to know that there was no recovery but extending the BK's life would only incur more professional fees. That question answers itself. At no time, during my service on the committee, was there any evidence that the trustee was operating the estate in a manner that would result in a viable company. The hiring of a CEO for Dayton was a charade. That hiring was to involve a scapegoat for the upcoming failure to reorganize. The inconsistencies in reports and plans presented by the trustee did not instill confidence in any positive outcome.

John Peterson, another creditor, and I did work on expanding a business plan initially started by Ross Hansen's attorney, Mr. Bucknell, which was delivered to Mr. Northrup who provided it to the creditor committee. Mr. Northrup's email, outlining that plan is included as EXHIBIT #1. Mr Peterson and I met with Ross Hansen in an effort to develop a real and viable reorganization plan. The plan was improved beyond what is presented as this exhibit. Mr Gearin, contacted Mr Peterson by phone, and persuaded him to discontinue work on that reorg plan. The reason Mr. Gearin provided was that he had a better plan. No plan ever appeared.

My meetings with Ross Hansen were in an effort to develop a reorganization plan which hopefully would restart the business. Attached as EXHIBIT #2, is an email which was the cover to an idea in progress. I was trying to get conversation started which would be supported by the committee hopefully to benefit the creditors. Ross Hansen himself proved to be the biggest obstacle because he would never agree to a "failure to perform" clause on his part and a total forfeiture of assets to the creditors. Ross Hansen knew more than anybody available to us about how to operate a mint.

The prospect of a chapter 7 being forced onto the estate was brought up several times while I was on the committee. We were always assured that forcing a chapter 7 was not possible and that the trustee was on the path to recovery. But, I questioned, and have never received an answer: Did Atalla ever make a new sale. Did he ever bring a new account that was not just a repeat order. I think the reason that question was never answered was because Mr. Atalla never created new accounts. We did hear from sources, that he was able to, and often did, order pizzas for the staff. He was nice to everybody, but he never really ran the business.

Early in the BK, some members of the UCC received letters from employees of NWTM. These parties offered to provide us with information on happenings within the estate after initiation of the BK. Emails are included as Exhibit #3 with the first mail, by date, being the initial communication after receipt of the letter and the associated email being the first informational communication with this source. I attach samples of these communications. Nothing that was provided to us inspired any confidence in the administration of the BK. The communication did support the theory that the estate was being milked to the benefit of parties other than legitimate creditors. One communication shows total disregard on the part of the trustee for the creditors and the court. We (the UCC) were told by the professionals that the trustee could do anything he wanted. Apparently the committee was merely a formality.

*William H*

William Hanson, Creditor, NWTM

**Subject:** RE: Meeting With Hansen/Medallic Lawyers
**From:** Northrup, Mark D. (Mark.Northrup@millernash.com)
**To:** david.leal.james@gmail.com; bill.beach101@gmail.com; dickpehl@yahoo.com; chiappellone@juno.com; seipfamily@cox.net; paulapehl@yahoo.com; david@stollpetteys.com;
**Cc:** Geoff.Groshong@millernash.com;
**Date:** Tuesday, January 24, 2017 11:05 AM

EXHIBIT #1

FYI—At their request, this morning I met with Ross Hansen's bankruptcy lawyer (Ross is not in personal bankruptcy) and Medallic's lawyer. They wanted to raise the possibility of creditor support for a Chapter 11 Plan that would, in brief, do the following:

1.) Ross Hansen would be authorized to come back in and run the Medallic business. He would not engage in bullion sales.
2.) Hansen would run Medallic subject to the strict terms of a confirmed Chapter 11 plan. The plan would provide for a board of directors containing creditor representatives to oversee Ross. The plan would provide for a long term (10-15 years) period of payments to creditors. The plan would also provide that if Ross were indicted or committed bad acts, he would not only be removed from running the company but would forfeit his claims to ownership of the Medallic assets to the bankruptcy estate.
3.) Hansen's lawyers are making this proposal to avoid the substantial costs of the May trial. They stated that they believe they will win in May but that even if they lose, they will appeal and the matter will not be resolved. Such a plan would eliminate the uncertainty and costs of the May trial and provide the certainty of a plan for creditors.
4.) Hansen's lawyers expressed a belief that continuing to fight will place the bankruptcy estate in a deeper state of debt to the bankruptcy professionals, with no certainty of the final outcome or ultimate return to creditors. A plan would at least provide some finality.

I did not respond to any of this. I only listened. My sense is that the thought of Ross coming back to the company in any capacity is abhorrent to most, although if he is never indicted I suppose theoretically he could still claim that he has some personal viability in the business. (Hansen's lawyers believe that he will not be indicted.) Please let me know your reaction to pursuing or responding to such a proposal. Thank you.

**Mark D. Northrup**
Partner

**Miller Nash Graham & Dunn LLP**
Pier 70 | 2801 Alaskan Way - Suite 300 | Seattle, Washington 98121
*Direct:* 206.777.7536 | *Office:* 206.624.8300 | *Fax:* 206.340.9599
E-Mail | Web | Social | Blogs

*Please consider the environment before printing this e-mail.*

---

**CONFIDENTIALITY NOTICE:** This e-mail message may contain confidential or privileged information. If you have received this message by mistake, please do not review, disclose, copy, or distribute the e-mail. Instead, please notify us immediately by replying to this message or telephoning us. Thank you.

---

Exhibit #2

From: Bill Hanson bill.beach101@gmail.com
Subject: PS
Date: Jul 14, 2016 at 6:07:41 PM
To: David James david.leal.james@gmail.com, Dick Pehl dickpehl@yahoo.com, paulapehl@yahoo.com, Larry Chiappellone chiappellone@juno.com, David Petteys dpetteys@malonelegal.com, dwrightdds@outlook.com, Tom And Ginny Seip seipfamily@cox.net, John Young jyoung@williamskastner.com

I would like to clear something up. I am not proposing Ross Hansen's business plan. I am only trying to get conversation started with the subject being a reorganization of the business. If the business is not reorganized we will get nothing. The professionals will consume the few found assets. I am not proposing any further investment into the MINT. I only want to explore a restart to see if it is possible or worthwhile. It might not work, It might work a little bit, Hopefully it returns some of our investment. I am not proposing any plan, only the effort to see if a plan can be developed. If no workable plan is developed, then liquidate.

The longer we wait, the fewer assets there are to work with.

Bill Hanson

Sent from my iPad


EXHIBIT #3

From: Firstup Last 1stuplast2leave@gmail.com
Subject: Re: Letter
Date: Nov 17, 2016 at 5:59:17 AM
To: Bill Hanson bill.beach101@gmail.com

You're welcome Bill. Some really good friends still work there along with a bunch of other good people and do not want retaliation against my friends and there would be if I came forward. My conscience would no longer allow me to be around those people who helped Ross. I along many of those who remain is certain that Ross has spies working there with Don being the main one. A while ago I sent a letter to the FBI office in Seattle. I overheard Don boasting on how the FBI agents that questioned him are idiots and that he was too smart for them to get anything on him. I' sure they are busy and do not care to include Ross' henchmen. I would come forward only when my friends no longer work there and will reach out to you for that number if I change my mind.

On Tue, Nov 15, 2016 at 7:37 PM, Bill Hanson <bill.beach101@gmail.com> wrote:
> I received your letter and wish to say thank you for writing it. Some of your comments were theories I have had for some time. Some were new. If this is an address you would communicate via, and if you are interested in presenting your info to a party more able to use it, please let me know. I will then give you the name of an fbi agent who would probably like to hear your thoughts. Thanks, Bill Hanson
>
> Sent from my iPad