# EXHIBIT A

# FW: Medallic Arts/Bressler

**From:** Mark Calvert <"/o=first organization/ou=exchange administrative group (fydibohf23spdlt)/cn=recipients/cn=a443e6d571cb4990baed6b22a025f7a2-tod m">
**To:** "Connie Hoff (mountainviews@sbcglobal.net)" <mountainviews@sbcglobal.net>
**Date:** Tue, 21 Jun 2016 08:57:09 -0700

**From:** Gearin, Mike [mailto:Mike.Gearin@klgates.com]
**Sent:** Monday, June 20, 2016 5:23 PM
**To:** Mark Calvert
**Subject:** RE: Medallic Arts/Bressler
Yes. I agree. You might even get to come to the meeting if you don't email Bressler again.

**From:** Mark Calvert [mailto:mark@cascadecapitalgroup.com]
**Sent:** Monday, June 20, 2016 5:16 PM
**To:** Gearin, Mike
**Subject:** RE: Medallic Arts/Bressler

Ok

Little more information...

The puzzle is complicated....

And we just need to know what he wants to do...

So... if we can get a meeting

We can share some of the Fraudulent transfers and ask for a settlement number...

Then we can cut a deal with him to help him and help our selfs...

So....

What this says to me is once we get Ross on the Fraudulent Transfer ...

The we can control our own lives....

Just need deal with Bressler first...

So... as soon as we can get a settlement with Bressler then we can fight with Ross...


Mark

**From:** Gearin, Mike [mailto:Mike.Gearin@klgates.com]
**Sent:** Monday, June 20, 2016 3:55 PM
**To:** Mark Calvert
**Subject:** Medallic Arts/Bressler
I spoke with Tom Lerner today. He didn't know anything about Hansen suggesting that Bressler would support a plan under which Bressler would take over Medallic and provide funding to operate a business. He didn't know anything about Medallic using Bressler's name in court and Medallic's efforts to obstruct the Tomball sale. He says that Bressler is only a passive investor who hopes to get some return on his investment, but doesn't want to put more resources into Medallic and certainly doesn't want to "come out of retirement" to operate Medallic. He doesn't think that Bressler has been talking to Ross lately about any of the Medallic actions.
I asked Lerner for a meeting with Bressler. Told him that I needed to talk to Bressler in lieu of discovery as I needed to know what Ross had told Bressler and what Bressler thought Medallic

owned. Lerner is checking with Bressler to see if he can arrange that meeting. Lerner says that Bressler doesn't have any documents relating to Medallic.

**From:** Tom Lerner [mailto:Tom.Lerner@stokeslaw.com]
**Sent:** Monday, May 23, 2016 11:47 AM
**To:** Gearin, Mike
**Subject:** RE: Medallic Arts

I'm around other than a 1 pm meeting.

**From:** Gearin, Mike [mailto:Mike.Gearin@klgates.com]
**Sent:** Monday, May 23, 2016 11:29 AM
**To:** Tom Lerner
**Subject:** RE: Medallic Arts

I will call you. Probably not going to happen today, so how about tomorrow?

**From:** Tom Lerner [mailto:Tom.Lerner@stokeslaw.com]
**Sent:** Monday, May 23, 2016 10:21 AM
**To:** Gearin, Mike
**Subject:** Medallic Arts

Mike,

Mark Calvert sent an email to Dick Bressler on Sunday, attached to another string of creditor emails. Thus, Mark managed to keep his commitment to communicating through counsel for 3 full weeks. Here is what Mark wrote:

This case continue to have surprise after surprise... and more and more pain for creditors...
Would you be willing to meet with your attorney and my attorney in the next week or so...
We need to find a solution for the creditors and we need to know what your position is going to be
Please feel free to call me or have your attorney call my attorney to line up a meeting.

If you have a proposal, let me know. My client prefers that this be handled through counsel and does not believe a meeting directly with Mr. Calvert is necessary in order to evaluate a proposal.

Tom

**Thomas A. Lerner** (v-card | bio)
Shareholder
Stokes Lawrence, P.S. - *Realizing your vision.*
1420 Fifth Avenue, Suite 3000 | Seattle, WA 98101-2393
Tel.: (206) 892-2147 | Fax: (206) 464-1496 | Cell: (206) 390-0470
Email: tom.lerner@stokeslaw.com | Web: http://secure-web.cisco.com/19mYYQ71A-Uxm7qsYIodExRfSN0tmfRVsdjinYvMiQiCoZwG6XDn7-jjX_OjaTxrT_RK9dj4nPwnI9nWTCTbP0444iPeTrWeTX0qL5g5vnocpSLPeY8LbFmRrf-DTFiRD2Y_O1W1Zz4VYOm65s1363IOLivAldYe5dbEI-dyU3uS50tBF2mCl-LhbU-dd0vyHrltypqxuy4XwcEcl-fDicww3b2NOlRLyBE8RkzilccBKJzQWR8CfEhwHwylwCJlLshQflo2puYaE0Af5XrDHQg/http%3A%2F%2Fwww.stokeslaw.com

*This e-mail may contain confidential information which is legally privileged. The information is solely for the use of the addressee(s) named above. If you are not the intended recipient, any disclosure, copying, distribution or other use of the contents of this information is strictly prohibited. If you have received this e-mail in error, please notify us by return e-mail and delete this message. Thank you.*

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only. If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Mike.Gearin@klgates.com.

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only. If you are not an intended addressee, note that any

disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Mike.Gearin@klgates.com.

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only. If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Mike.Gearin@klgates.com.

3

4

From: Mark Calvert mark@cascadecapitalgroup.com
Subject: FW: 22732P31YMMedallic Complaint 8-15
Date: Aug 19, 2016, 7:29:21 PM
To: paulapehl@yahoo.com, Connie Hoff mountainviews@sbcglobal.net

Paula and Connie...
My INSIDE Team Members...


This is an internal document....
Both of you have had comments regarding prior matters...
And I have listened...
And while this is a draft I like where he is going...
Would appreciate any thought you might have.
Have a strategic planning meeting Monday at 1 to determine how best to address Medallic...

Right now on a separate matter...
We are thinking of filing a motion to accept the HOFF Lease with some changes...
Then push it to court for approval.....
This would be a CRITICAL motion....
But if we could win this we would have control of the case...


Mark

---

From: Gearin, Mike [mailto:Mike.Gearin@klgates.com]
Sent: Friday, August 19, 2016 4:20 PM
To: Mark Calvert
Subject: 22732P31YMMedallic Complaint 8-15

Mark: Here is the draft Medallic complaint. This is a work in progress. Still needs to be beefed up and needs some additional evidentiary support that we are going to discuss Monday.

Please don't forward this until we can finalize.

Have a good weekend.

# Re: Susan Sales Feb 2014 to 8-19-2016.xlsx

| | |
|---|---|
| **From:** | Connie Hoff <mountainviews@sbcglobal.net> |
| **To:** | Mark Calvert <mark@cascadecapitalgroup.com> |
| **Date:** | Mon, 22 Aug 2016 20:21:22 -0700 |

I really need to talk to you for a few minutes.

Sent from my iPad

On Aug 22, 2016, at 8:47 PM, Mark Calvert <mark@cascadecapitalgroup.com> wrote:

Connie,
I know and understand that...
Just for your information I have a sales person who left with it all and
I am suing him in BK court....
5 year jail sentence for stealing from a BK estate...
And the word is spreading fast in the company...
SO...
I trusted her given she came from you.
She is to give me a projection of what she thinks she can bring in the
way of sales
For the balance of this year and in 2017..
Then she will be 100% on a commission basis
She wanted her old customer base back...
Not possible given Susan is selling 4 million per year 100%
commission based...
So told her she would need to develop her own customer bases....
She needed to know who was still buying from the company so she
could estimate what she can bring in...
So that is what is going on..
Would love to hear her comments...
I did not hold back... shared my concerns and why I am excited...
So...what was her concerns and interest level?
Mark

**From:** Connie Hoff [mailto:mountainviews@sbcglobal.net]
**Sent:** Monday, August 22, 2016 5:22 PM
**To:** Mark Calvert
**Subject:** Re: Susan Sales Feb 2014 to 8-19-2016.xlsx
Mark,

This is highly valuable sales data that any competitor would love to get their hands on. Ross did not get any information like this from us until after he bought the assets of the company. If you hire her and she has signed a nondisclosure then would be a better time to send this to Kim. Kim contacted me after your call with her yesterday. We should discuss.

Sent from my iPad

On Aug 22, 2016, at 3:40 PM, Mark Calvert <mark@cascadecapitalgroup.com> wrote:

Connie
Looking for Kim's email....
Can you please pass this to her for me
We talked on Sunday.... For an hour..
Mark

**From:** Paul Wagner [mailto:Paul.Wagner@nwtmint.com]
**Sent:** Monday, August 22, 2016 11:28 AM
**To:** Mark Calvert
**Subject:** Susan Sales Feb 2014 to 8-19-2016.xlsx

# FW: Urgent vs emergency

**From:** Mark Calvert <"/o=first organization/ou=exchange administrative group (fydibohf23spdlt)/cn=recipients/cn=a443e6d571cb4990baed6b22a025f7a2-tod m">
**To:** Connie Hoff <mountainviews@sbcglobal.net>
**Date:** Sun, 11 Sep 2016 20:29:57 -0700

**From:** Mark Calvert
**Sent:** Saturday, September 10, 2016 9:05 PM
**To:** paulapehl@yahoo.com
**Cc:** Mark Northrup; mike.gearin@klgates.com; David C Neu; Bill Hansen; David James
**Subject:** Urgent vs emergency

You are correct you did not use the word emergency I took urgent to mean that it was an emergency..... and Urgent is the term you used

And then when I said it was a typo we had a discussion as to what's a typo....... yes it's a mistake

it's not a typo but it's a mistake but I put it in a typo category yes it's wrong butt you have attorneys that are dealing with two cases at one time with the same trustee

Yes they made a mistake it can be corrected on Monday and won't even be my first priority on Monday but it can be corrected on Monday next issue

Paula this does not even rise to an issue level for me.... not even a problem.... it's not like I have a delivery deadline that's going to be missed it's not like it's a crisis it's a simple mistake that can be corrected and not worth your time or my time on a Saturday night for the weekend for that matter.

And it's not even worth an email so feel free to draft an email but I will probably just delete it will not even read it....

we have much bigger issues to deal with... that are valid and serious issues.

For example Cohen for example EEOC for example putting the right people and production for example buying the right equipment for example locking up Diane's money as it's the creditors money.

I'm happy it was filed when it was filed... to make a deadline to ensure that it didn't slip another week so the judge has it before him before we start discussing whether we need to put up a bond to lock up her funds

There are more moving pieces than you're aware of

let's focus on the next issue this is not an issue

Mark

*Sent from my Verizon Wireless 4G LTE DROID*

# FW: Answer CC to Medallic Compl 9-13/Confidential Privileged Work Product

**From:**      Mark Calvert <"/o=first organization/ou=exchange administrative group (fydibohf23spdlt)/cn=recipients/cn=a443e6d571cb4990baed6b22a025f7a2-tod m">

**To:**      Connie Hoff <mountainviews@sbcglobal.net>, paulapehl@yahoo.com

**Date:**      Wed, 14 Sep 2016 09:13:32 -0700

**Attachments:**      22732P322AAnswer CC to Medallic Compl 9-13.docx (40.43 kB)

---

**From:** Gearin, Mike [mailto:Mike.Gearin@klgates.com]
**Sent:** Wednesday, September 14, 2016 8:49 AM
**To:** Northrup, Mark D. (Mark.Northrup@millernash.com)
**Cc:** Mark Calvert; Peterson, Brian T.
**Subject:** Answer CC to Medallic Compl 9-13/Confidential Privileged Work Product

Mark: Here is the updated answer with our counterclaims fleshed out. We had previously drafted this as a complaint against Medallic. We have not filed the Medallic complaint to this point because we have concerns regarding the need to more precisely identify the transfers that have occurred to and for the benefit of Medallic. The transfers cannot be precisely identified until the Trustee can complete his database of banking records. As you know we have not been able to acquire all the banking records in part because of the stonewalling we received from Hansen on his production. We are receiving bank records through our interface with DFI presently and hope to have a more complete database to work from. We may have to amend our answer if Medallic presses for a more definitive statement of the specific transfers that we are alleging are recoverable. Appreciate your thoughts on the answer. We do have to file this today.

Michael J.Gearin

K&L Gates LLP

925 Fourth Avenue, Suite 2900

Seattle, WA 98104

(206) 370-6666 Direct

(206) 940-2500 Mobile

Fax (206) 370-6067 Direct

michael.gearin@klgates.com

http://www.klgates.com

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only. If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Mike.Gearin@klgates.com.

# FW: EEOC

**From:** Mark Calvert <"/o=first organization/ou=exchange administrative group (fydibohf23spdlt)/cn=recipients/cn=a443e6d571cb4990baed6b22a025f7a2-tod m">
**To:** Connie Hoff <mountainviews@sbcglobal.net>, paulapehl@yahoo.com
**Date:** Wed, 14 Sep 2016 08:57:22 -0700
**Attachments:** Dep Notes.docx (21.58 kB)

**From:** Neu, David [mailto:david.neu@klgates.com]
**Sent:** Thursday, September 08, 2016 3:33 PM
**To:** Mark Calvert
**Cc:** Gearin, Mike
**Subject:** EEOC

Mark - I have not heard back from the EEOC on having a call. I did look at the issue we discussed this morning, and the employee number is based on the year in which the discrimination occurred. It appears that the Circuit Courts that have directly addressed the relevant language in 42 U.S.C. 1981(a) (i.e., setting the damages caps based on the number of "employees in each of 20 or more calendar weeks in the current or preceding calendar year") have interpreted this language to refer to the number of employees in the year(s) in which the discrimination occurred, not the year in which the damages award is determined. *See, e.g., Hernandez-Miranda v. Empresas Diaz Masso, Inc.*, 651 F.3d 167, 171-76 (1st Cir. 2011); *Depaoli v. Vacation Sales Assocs., LLC*, 489 F.3d 615, 622 (4th Cir.2007); *Vance v. Union Planters Corp.*, 209 F.3d 438, 446 (5th Cir.2000); *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354–55 (7th Cir.1995). Attached are the notes from the deposition of the former CFO which was taken today. I had an associate listen in.

**K&L GATES**

**David C. Neu**
Partner
K&L Gates LLP
925 Fourth Ave
Suite 2900
Seattle, WA 98104
Phone: 206-623-7580
Fax: 206-370-6289
david.neu@klgates.com
www.klgates.com

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only. If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at david.neu@klgates.com.

14

# FW: Need someone to give me some employment advice

**From:** Mark Calvert <"/o=first organization/ou=exchange administrative group (fydibohf23spdlt)/cn=recipients/cn=a443e6d571cb4990baed6b22a025f7a2-tod m">
**To:** Connie Hoff <mountainviews@sbcglobal.net>
**Date:** Wed, 14 Sep 2016 08:59:44 -0700

**From:** paulapehl@yahoo.com [mailto:paulapehl@yahoo.com]
**Sent:** Thursday, September 08, 2016 11:50 PM
**To:** Mark Calvert
**Cc:** Mark D. Northrup
**Subject:** Re: Need someone to give me some employment advice

I have read this material and find little to say.

Perhaps, though, two points should be made:

1. The perpetrator of the harassment appears to have been Ross Hansen exclusively. Nonetheless, the compliant is against the company. It seems the compliant should be against the perpetrator as a person. However, I assume, as things go, that this is the way they file ... or is there a chance to deflect the issue onto Ross? It seems unfair to have the load fall on the unsecured creditors who are victims in their own right.

2. The second point I wish to make somewhat voids the first statement, as we may in fact be faced with a bunch of male graduates from the Ross Hansen University. As we know, the Trustee raced down to Dayton to address complaints of sexual harassment (in the form of lewd innuendo) by one of the men. I thought he was going to be fired; instead, he got a one-week suspension.

A company under a EEOC complaint cannot afford such incidents. If it were known to the litigant parties, no doubt things would get worse because it gives the impression of pervasive HR problems and a permissive corporate culture. The light punishment would also not play out well.

Possibly the Trustee did not feel comfortable with an outright dismissal in light of the absence of a stated company policy that such punishment would ensue. However, the short suspension may send an inadequate message. Therefore, I suggest that you immediately send out a general letter to every employee advising the staff that there is a zero tolerance policy towards sexual harassment in any form or manifestation and any incident will be met with immediate termination with cause. Sexual harassment will have to be defined to include off-color remarks as some men seem to consider "barroom banter" an acceptable form of social levity. Once advised, employees know the consequences and there should be no hesitation in firing violators of stated company policy.

15

---

**From:** Mark Calvert <mark@cascadecapitalgroup.com>
**To:** "Northrup, Mark D." <Mark.Northrup@millernash.com>; "paulapehl@yahoo.com" <paulapehl@yahoo.com>
**Sent:** Thursday, September 8, 2016 11:04 AM
**Subject:** FW: Need someone to give me some employment advice

Mark

Would like to see if the committee has any comments on this settlement.

Yes it is very expensive and yes we are continuing to try and get it lower...

We are trying to argue that the cap is 100k not 200k....

But it is what it is.

Appreciate the committees thoughts.

Mark

---

**From:** Mark Calvert
**Sent:** Thursday, September 08, 2016 10:48 AM
**To:** 'Neu, David'
**Cc:** Gearin, Mike
**Subject:** RE: Need someone to give me some employment advice
**Importance:** High

David

Ok understand my exposure is in excess of $1.5 million....

So...split the difference... $625k (750k and 500k) all pre-petition and be done...

But can we also get a understanding that they will not issue a big press release on this settlement?

It is hard enough attracting employees to a BK company let alone a company that sexually harasses it employees

Understand it will be public as the BK judge will have to approve the settlement and it will be public in the BK filings...

When it comes time to draft the settlement motion...

I would like to see everything you drafted below in the settlement motion.

I want the judge to understand what we are dealing with...

And paint the picture of his actions...

We might also agree that if Ross in any way obtains control of any of the assets of the estate that the company will have reporting and compliance audits ... the best way to do this is probably agree to them (audits / compliance surveys) for the company and have them deferred until management of the company is determined. (only applies if Ross has any involvement)

Mark

**From:** Neu, David [mailto:david.neu@klgates.com]
**Sent:** Wednesday, September 07, 2016 9:46 AM
**To:** Mark Calvert
**Cc:** Gearin, Mike
**Subject:** FW: Need someone to give me some employment advice

Mark - Per our discussion yesterday, we need to get back to the EEOC on its offer and see if we can get the case resolved. I had one of our employment experts look at the complaint, and give some brief advice on the potential downside. As you will see below, the long and the short of it is that only one complainant, P. Hoffman, is claiming back wages, and that amount is less than $2,000. The estate's primary exposure is for compensatory and punitive damages, and the amount that can be awarded is capped at $200,000 per claimant. As Dan points out below, there were three claimants named in the complaint. The analysis below does not reflect that the complaint also seeks relief for "any other aggrieved female employees that may be identified during the litigation." At the present time, there are five identified individuals. Per the EEOC they are:

(1) Charging Party Patricia Hoffman, (a) $200,000 in compensatory damages for the pain and suffering caused by the unrelenting sexual harassment and harassment based on sex that she endured from August 2013 to June 11, 2014, including unwelcome lewd comments about the bodies of female employees and customers, being exposed to Ross Hansen's un-neutered dog whose genitals were dragged across her desk leaving some kind of discharge, and (b) $1,776 in back pay caused by her constructive discharge from NWTM in June 2014;

(2) Lauren Bailie, $200,000 in compensatory damages for the pain and suffering caused by the sexual harassment and harassment based on sex that she endured from March 2014 to October 2014, which included Ross Hansen asking her if she "slept with other races" and if she intended on getting pregnant;

(3) Judy Elder, $200,000 in compensatory damages for the pain and suffering caused by the sexual harassment and harassment based on sex that she endured which included Hansen using vulgar language and physical intimidation towards her, e.g., yelling that she was stupid and useless inches from her face, and witnessing Hansen rubbing his dogs on a conference room table during a meeting which caused some discharge from the dog's penis;

(4) Stephanie Seretis, $200,000 in compensatory damages for the pain and suffering caused by the sexual harassment and harassment based on sex that she endured including Hansen asking for "naughty " pictures of her, him talking about seeing her naked, and him terrorizing her and other female employees around her;

(5) Angela Boddy, $200,000 in compensatory damages for the pain and suffering caused by the sexual harassment and harassment based on sex that she endured including hearing Hansen refer to females as "b#tch," "c#nt," "f#cking bitch" and "fucking c#nt," being told by him to unbutton her blouse to increase sales, and hearing his raunchy sex stories.

The EEOC has indicated that may add additional claimants. After sitting through Erin Robinson's deposition, I suspect she might be a candidate. She confirmed that Ross was a serial harasser, and that on a very frequent basis, he asked her about her sex life, commented on her breasts, commented on her weight, touched her, and told stories about his sexual prowess. She was extremely upset having to recount the details in the deposition. From a practical perspective, we have little ability to defend the case. We can reach out to Ben Stone's firm (who is counsel of record) and retain them to defend the case, but it does not seem to be wise to spend administrative dollars defending what appear to be very strong claims. If we don't defend, the EEOC will likely get the maximum claim, which would be $1,000,000, with the potential of more if additional aggrieved employees are identified. In addition, it will likely get injunctive relief in the form of a compliance plan that would be more onerous than we negotiated - including independent examinations and monitoring, all of which will create an administrative expense for the estate. Even if we do defend, the result may very well be the same. The offers, as they stand, are $750,000 from the EEOC, and your last offer of $500,000. We need to find a way to bridge the gap, as we are now spending administrative dollars defending depositions.



**David C. Neu**
Partner
K&L Gates LLP
925 Fourth Ave

Suite 2900
Seattle, WA 98104
Phone: 206-623-7580
Fax: 206-370-6289
david.neu@klgates.com
www.klgates.com

**From:** Hurley, Daniel P.
**Sent:** Tuesday, September 06, 2016 2:00 PM
**To:** Neu, David
**Subject:** RE: Need someone to give me some employment advice

## Overview of *EEOC vs. Northwest Territorial Mint, LLC*

If the automatic stay in the matter of *EEOC vs. Northwest Territorial Mint* were to be lifted, and if the EEOC were able to establish liability of the Northwest Territorial Mint with regard to at least the three former employees of the company who are identified in the Complaint (attached), the potential damages award could be extensive. However, it is very difficult to predict the range of potential damages, particularly given that such a determination would presumably be in the hands of a jury. Nevertheless, based only on a review of the attached Complaint, we offer the following information to the bankruptcy trustee for the Northwest Territorial Mint in an effort to assist the trustee in the assessment of this legal action.

It is our understanding that, in recent negotiations, the EEOC's last demand was for $875,000 to settle this matter in full. We do not know whether this offer was extended before, or after, the EEOC became aware of the notice of the filing for bankruptcy.

Assuming this case is based upon only the Title VII claims of three individual employees as identified in the EEOC's Complaint and no additional employees have been identified as allegedly injured parties and no additional claims have been asserted, the EEOC's settlement offer indicates that the agency is quite confident in its case based on the evidence obtained to date. (Obviously, the potential damages in this case increase substantially if additional claims are brought on behalf of any "other aggrieved female employees," as generally referenced in the Complaint.) Consideration of the following categories of potential damages and litigation costs may be instructive to the bankruptcy trustee in assessing the potential settlement value of this litigation.

**Monetary Damages:** Title VII allows a successful party to recover monetary damages resulting from discrimination/harassment, including the recovery of back pay before a judgment (with interest) and front pay for loss of employment (for a duration/amount as determined based on a variety of factors). Recoverable damages can also include past pecuniary losses resulting from the discrimination (e.g., costs of medical/psychiatric treatment due to harassment).

As applied: Here, of the three individuals named in the Complaint, only one (P. Hoffman) appears to be claiming a loss of employment and related monetary damages. While this individual's prior employment compensation and benefits are not apparent from the Complaint, if she were to prevail on her claim of constructive discharge, she could potentially recover as much as her back pay and benefits costs from June 2014 to the time of a judgement (approx. 2.5 years), plus an uncertain amount of front pay, depending upon how long she remained/remains unemployed and whether she took appropriate steps to mitigate her damages. The extent of any out-of-pocket expenses of the three named individuals (or any other individuals) that allegedly resulted from discrimination is not apparent from the Complaint.

**Punitive Damages:** Punitive damages are available to punish a violating employer and to deter future discriminatory conduct only if the complaining party demonstrates that the employer engaged in discrimination "with malice or reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. 1981a(b)(1).

As applied: Taking the allegations in the Complaint at face value, those allegations would appear to provide a colorable basis for the EEOC to argue for the imposition of punitive damages. (See below for further discussion of damages caps.)

**Compensatory Damages:** Title VII allows for an award of compensatory damages resulting from discrimination, including "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. 1981a(b)(3).

As applied: The Complaint alleges that the three named individuals have suffered emotional harm, but does set forth any measure of the alleged damages.

**Caps on Compensatory and Punitive Damages:** Applicable law places a limitation on the sum of punitive damages and compensatory damages that can be imposed in Title VII actions. The limitation on the

amount of damages is based on the size (number of employees) of the employer. The limitations are as follows, with the applicable limitation applied separately to each individual employee (rather than all employees in the aggregate):

CAP *(based employer size in current or preceding calendar year)*
15 to 100 employees: $50,000
101 to 200 employees: $100,000
201 to 500 employees: $200,000
501 employees or more: $300,000

As applied: Assuming Northwest Territorial Mint employed between 201 and 500 employees during the applicable time period (as indicated by some reports regarding the bankruptcy proceeding), the maximum amount of combined punitive and compensatory damages in this case would appear to be $600,000 ($200,000 per individual employee), unless claims are asserted on behalf of additional individuals. Based on the allegations in the Complaint, it seems possible that a jury could award punitive and compensable damages reaching the maximum in this case, depending on the testimony and evidence provided by the EEOC and whether any defense is offered at trial.

**Plaintiff's Attorneys Fees:** A party who prevails in his or her claim pursuant to Title VII is generally entitled to an award of the reasonable attorney fees expended by the party in bringing the action.

As applied: Regardless of whether Northwest Territorial Mint were to actively defend this action through trial, the EEOC would presumably present its evidence to a jury for determinations on liability and damages. Even a very basic and unopposed trial would likely still involve significant additional expenditures of attorney fees by the EEOC. While it is not possible to speculate as to the EEOC's overall costs in bringing this action and seeing it through trial/judgment, the minimal amount is not likely to be less than $100,000, and the actual amount could be significantly higher (perhaps multiples of that amount).

Defense Costs/as applied: Presumably, if the automatic stay were to be lifted and this litigation were to proceed through trial, substantial defense costs would be incurred. Even a very leanly run and minimal defense through trial would likely involve attorney fees of at least $50,000 and likely much more. A quality defense from the present through trial would likely cost well in excess of $100,000. Obviously, if no defense is offered at trial, the EEOC's allegations and alleged damages would go unchallenged, presumably leading to a greater potential award of damages than would be the case with even a minimal defense.



**Daniel P. Hurley**
K&L Gates LLP
925 Fourth Ave., Ste. 2900
Seattle, WA 98104-1158
Phone: 206-370-8172
Fax: 206-623-7022
daniel.hurley@klgates.com
www.klgates.com

**From:** Neu, David
**Sent:** Wednesday, August 31, 2016 9:40 AM
**To:** Hurley, Daniel P.; Filipini, Mark
**Subject:** Need someone to give me some employment advice

I need someone to take a look at an EEOC enforcement action and give me some thoughts on the likely penalties that would be assessed assuming our client loses (which it will). Who is the right person?



**David C. Neu**

Partner
K&L Gates LLP
925 Fourth Ave
Suite 2900
Seattle, WA 98104
Phone: 206-623-7580
Fax: 206-370-6289
david.neu@klgates.com
www.klgates.com

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only. If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at david.neu@klgates.com.

20

# FW: Requests

**From:**    Mark Calvert <"/o=first organization/ou=exchange administrative group
           (fydibohf23spdlt)/cn=recipients/cn=a443e6d571cb4990baed6b22a025f7a2-tod m">
**To:**      Connie Hoff <mountainviews@sbcglobal.net>, paulapehl@yahoo.com
**Date:**    Wed, 14 Sep 2016 07:55:52 -0700

Just so you know
We have a few other thing on our plate…
Thank you again for the help
Mark

**From:** Williamson, Benjamin M. (SE) (FBI) [mailto:Benjamin.Williamson2@ic.fbi.gov]
**Sent:** Tuesday, September 13, 2016 4:10 PM
**To:** Mark Calvert
**Cc:** Bozzelli, Michael (SE) (FBI)
**Subject:** Requests

Mark,

Looking forward to touching base on Thursday. We're hoping to get additional information from you, which I will follow up with a subpoena.

Here's the list:

1) Records of current inventory of customer owned bullion, records of missing bullion, and records of any customer owned bullion that has been returned.
2) AMEX statements and analysis of business related/personal expenses
3) Copies of all depositions taken from Hansen and Erdmann to date.
4) Records (database you had created) of customer bullion sales and dates vs. shipping dates of product
5) Copy of sub-lease of MAC to NWTM
6) Copies of all cash logs (to include what Annette maintained after Erdmann stopped doing it), along with invoices that accompany the legitimate transactions
7) Copies of any W-2s/1099s for owner's draw distributions to Hansen
8) Any records regarding purchase/sale of precious metal by/from Erdmann
9) Copies of gold log kept in vault in Federal Way
10) Copy of any and all records for insurance policy Hansen kept that related to protection for customer stored bullion (Jeweler's Block?).

Hopefully, some of this you'll be able to provide on Thursday. Feel free to call with any questions.

Thanks,

**Ben Williamson**
**Special Agent, FBI**
**Seattle Division**
253-377-8401

21

# Draft Model

**From:**     Mark Calvert <"/o=first organization/ou=exchange administrative group (fydibohf23spdlt)/cn=recipients/cn=a443e6d571cb4990baed6b22a025f7a2-tod m">
**To:**       Connie Hoff <mountainviews@sbcglobal.net>
**Date:**     Sat, 08 Oct 2016 17:23:12 -0700
**Attachments:** Unnamed Attachment (142 bytes); NWTM Restructuring Plan 10.08.2016.xlsx (455.88 kB)

<<...>>

Connie

Thank you again for your help
Appreciate your eyes and assistance and making sure we get this right

You can print out the summary pages...
But do not print out the whole model it will be over 300 pages...

The model is driven by assumptions in a number of places...
Blue number are assumptions that can be changed...

For example on the IS Tab... on Line 24 Column B there is a discount of 15%
The management team came up with numbers that appeared more positive than I thought would be appropriate...
Thus I put in a 15% discount assumption....
I can show them a model with no discount and the committee a model with a 20% discount...
But it allows for me to manage expectations by playing with the discount factor...

The "Headcount" tab should be an area of great interest to you...
You will have a good fill for this tab... but this will be adjusted based upon sales...
We have labor in future years calculated as a percentage of sales... but the base year drives the future years...

We have also assumed a bonus plan for employees 20% of NOI...
Why... they are the ones that make it happen, therefore I have added this in but again it is an assumption...

The "SALES" Tab, is all the ratios that drive Sales, cost of sales and commissions...
As you will see this tab drives the whole model....
This will be interesting for you to play with...

But what I really need is a reasonableness test...
Look at the number from a high level.... 100,000 fee or even 50,000 feet...
Is the sale growth reasonable over 5 years with the retention of 5 new sales people...
Is the Gross Profit Margin of say 45% reasonable over the next 5 years...
From a big picture point of view is the whole model reasonable... or in a reasonable range...

The model return around 45% to creditors...
Do not want to over promise thus I am using a 20% discount from management with a number of cushions in the model...
Thin labor can come down but will also need to go up based upon sales increase...

Still have a few things to add in...
CIP index on all expenses
CAPX budget needs to be proved out better.. using 400k per year... is that enough?
Need to invest in CAPX to limit the need to increase labor.... But maybe that number should be 500k...

Appreciate your thought....
After you review then we can do a GO TO MEETING and review and make changes together...

Thanks again...
And again this is not for anybody but you....

Thanks
Mark

Mark
Calvert
Managing Director

24



Cell (206) 909 3636
Mark@Cascadecapitalgroup.com

Cascade Capital Group
1420 5th Avenue Suite 3382
Seattle WA 98101

# FW: Northwest Territorial Mint LLC/Medallic Art Company LLC

| | |
|---|---|
| **From:** | Mark Calvert <"/o=first organization/ou=exchange administrative group (fydibohf23spdlt)/cn=recipients/cn=a443e6d571cb4990baed6b22a025f7a2-tod m"> |
| **To:** | Connie Hoff <mountainviews@sbcglobal.net> |
| **Date:** | Mon, 10 Oct 2016 09:06:31 -0700 |
| **Attachments:** | Exhibit I.PDF (551.45 kB); Exhibit J.PDF (674.86 kB); 2016 10 6 Mediation Letter.pdf (461.66 kB) |

**From:** Mark Calvert
**Sent:** Saturday, October 08, 2016 1:39 PM
**To:** Connie Hoff
**Subject:** FW: Northwest Territorial Mint LLC/Medallic Art Company LLC

Connie

This is a fair amount of information…

You might want to start with the last document on Mediation

Would appreciate your thoughts.

Mark

**From:** Evans, Denise A. [mailto:Denise.Evans@klgates.com]
**Sent:** Thursday, October 06, 2016 12:05 PM
**To:** Fred_Corbit@waeb.uscourts.gov; Dee_Sindlinger@waeb.uscourts.gov
**Cc:** Gearin, Mike; Peterson, Brian T.; Mark Calvert; xx-Northrup, Mark (GD)
**Subject:** Northwest Territorial Mint LLC/Medallic Art Company LLC

Good morning,

Attached please find the mediation statement along with exhibits for Northwest Territorial Mint LLC/Mark Calvert regarding the mediation scheduled on October 10, 2016 at 9:00 a.m.

Thank you,

**K&L GATES**

Denise Evans
Senior Paralegal
K&L Gates LLP
925 4th Ave. Suite 2900
Seattle, WA 98104-1158
Phone: 1-206-370-5761
E-mail: denise.evans@klgates.com
Website: www.klgates.com

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only. If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Denise.Evans@klgates.com.

27

# FW: Connie Hoff Document Production

**From:** Mark Calvert <"/o=first organization/ou=exchange administrative group (fydibohf23spdlt)/cn=recipients/cn=a443e6d571cb4990baed6b22a025f7a2-tod m">
**To:** Connie Hoff <mountainviews@sbcglobal.net>
**Date:** Fri, 18 Nov 2016 07:19:07 -0800
**Attachments:** A.Orth 000 (ADV-HOFF0000001 - 779).pdf (20.34 MB)

Connie

Let's catch up...
This could be a real problem...
We will not likely win on Summary Judgment now
This look like it will go to a trial...

Do you have time today to catch up

Mark

---

**From:** Gearin, Mike [mailto:Mike.Gearin@klgates.com]
**Sent:** Thursday, November 17, 2016 7:03 PM
**To:** Mark Calvert
**Subject:** Connie Hoff Document Production

Mark: I have been going through the document production that Connie Hoff produced to Medallic.

She produced all the correspondence between you and her and between Paula Pehl and her whether it related to the lease or not. There are many copies of emails with my attorney client communications to you which were forwarded directly to her.

There are also many examples of statements by Paula which are critical of you and K&L.

This is potentially very harmful.

Very frustrating.

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only. If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Mike.Gearin@klgates.com.

25