**Below is the Order of the Court.**

_[signature]_

**Christopher M. Alston**
**U.S. Bankruptcy Judge**

**(Dated as of Entered on Docket date above)**

Christopher M. Alston
Bankruptcy Judge
United States Courthouse
700 Stewart Street, Suite 6301
Seattle, WA 98101
206-370-5330

## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re | Chapter 11 |
| Northwest Territorial Mint LLC, | Case No. 16-11767 |
| | ORDER ON MOTION TO ALTER OR AMEND FINDINGS OF FACT AND CONCLUSIONS OF LAW IN ORDER ON FEE APPLICATIONS |
| Debtor. | |

This matter comes before the Court on Trustee Counsel's Motion to Alter or Amend Findings of Fact and Conclusions of Law in Order on Fee Applications (the "Motion") (Dkt. No. 2141), requesting that the Court alter its Order on Fee Applications (Dkt. No. 2118). Trustee Counsel noted the motion for argument on November 22, 2019, but conceded at the hearing that the Motion was a motion for reconsideration. The Court determined the Motion was improperly noted for hearing under Local Rule of Bankruptcy Procedure 9013-1(h) and took the matter

under advisement.

In the Motion, Trustee Counsel asserts the Court erred by (1) disallowing fees for insufficiently identified timekeepers, (2) disallowing extraordinary and inadequately documented expenses, (3) disallowing fees related to the assumption of the Dayton Lease, and (4) further reducing Trustee Counsel's compensation because of three allegedly false narratives advanced by Trustee through Trustee Counsel. For the following reasons, the Motion is GRANTED in part and DENIED in part.

## I.    Analysis

Trustee Counsel brings its Motion under Federal Rules of Civil Procedure 59(e) and 52(b). Rule 59(e), applicable to bankruptcy under Federal Rule of Bankruptcy Procedure 9023, allows a party to file a motion to alter or amend a judgment. Similarly, Rule 52(b), applicable through Federal Rules of Bankruptcy Procedure 7052 and 9014, allows the court to amend its findings or make additional findings on a motion made by a party.

Rule 59(e) is an "extraordinary remedy, to be used sparingly," and "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Kona Enterprises, Inc., v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal citations omitted). The standard for granting a motion under Rule 52(b) is virtually identical. *See In re Reading Broad., Inc.,* 386 B.R. 562, 566–67 (Bankr. E.D. Pa. 2008). Similarly, under Local Civil Rule 7(h), applicable through Local Bankruptcy Rule 9013-1(h), motions for reconsideration are disfavored and are usually to be denied without a showing of manifest error, or of new facts or law that could not have previously been brought before the court with reasonable diligence.

ORDER ON MOTION TO ALTER OR AMEND FINDINGS OF FACT AND CONCLUSIONS OF LAW IN ORDER ON FEE
APPLICATIONS –  2

### a. Unidentified timekeepers

Trustee Counsel asserts the Court erred in not allowing compensation for certain "unidentified timekeepers." Trustee Counsel argues that it met the requirements of Local Bankruptcy Rule 2016-1(a)(6) by including the timekeepers' names and hourly rates at the end of each invoice provided to the Court at Dkt. No. 1929. Trustee Counsel points to one other case in which the information provided in the same format was deemed acceptable.

Local Bankruptcy Rule 2016-1(a)(6)(B) requires that a fee application include "the identity of the person who performed the service and the hourly rate of such individual." Trustee Counsel, however, merely provided the name and hourly rate of each individual billing in this case. Thus, the Court was left to guess whether the timekeeper was an associate, partner, paralegal, or something else, making it impossible to determine whether the compensation was "reasonable based on the customary compensation charged by comparably skilled practitioners." 11 U.S.C. § 330(a)(3)(F). Trustee Counsel knows the "identity" requirement of the Local Rule means more than giving a name for the Court to make the necessary findings and conclusions under the Bankruptcy Code, as the Court identified several other cases where Trustee Counsel supplied more information in fee applications filed in this district. *See* Order on Fee Applications, Dkt. No. 2118 at 64.

Trustee Counsel has now provided the title and blended rate for all the timekeepers. Given that Trustee Counsel bears the burden on the reasonableness of the fees, it should have offered this information with the initial application. Nonetheless, the Court will allow the requested $246,718 in fees for the unidentified timekeepers because the Court recognizes that denying compensation may have an economic impact on these individuals at their firm through no fault of their own. They were not the individuals who prepared the deficient fee application.

The Court still disallows the $269,937.01 in fees requested for electronic discovery. Local Bankruptcy Rule 2016-1(d) requires that "[w]here the cumulative applications for an applicant are projected to equal or exceed $15,000, the narrative summary required by subsection (a)(5) and itemized time entries required by subsection (a)(6) shall be divided into categories according to the nature of the tasks performed, with the total hours, fees, and expenses broken down for each category." Trustee Counsel has failed to allocate the fees and expenses related to electronic discovery to categories or particular matters. The Court has no way of knowing whether the electronic discovery fees and expenses relate to matters for which it disallowed fees.

The Supplemental Declaration of Rachel Tausend explains that the electronic discovery fees and expenses relate to four matters: the Medallic Litigation, the Trustee's fee deposit litigation with Diane Erdmann, the American Express Fraudulent Transfer Action, and the Dayton Lease litigation. Dkt. No. 2143 at 4. This declaration further states that Trustee Counsel estimates about $196,000 of the Electronic Discovery fees and costs were related to the Medallic litigation. *Id.* But there is no reason to estimate, and there is no excuse for failing to allocate each time entry to a particular category, like the timekeepers did for other entries. As for the other $74,000 in fees, Trustee Counsel offers no further allocation of the fees and expenses to the additional categories, leaving the Court to guess how much of the fees and expenses were spent on these categories. This failure leaves the Court unable to determine whether the time spent on electronic discovery was appropriate under section 330(a)(3)(D).

### b. Unallocated expenses

Section 330(a)(1)(B) allows the Court to award Trustee Counsel "reimbursement for actual, necessary expenses." Local Bankruptcy Rule 2016-1(a)(7) requires that a fee application include "a statement of expenses, by category, for which reimbursement is sought. For extraordinary expenses, state: (A) the date the expense was incurred; (B) a description of the

ORDER ON MOTION TO ALTER OR AMEND FINDINGS OF FACT AND CONCLUSIONS OF LAW IN ORDER ON FEE APPLICATIONS – 4

expense; (C) the amount of the expense requested; and (D) the necessity of the expense." As discussed above, Local Bankruptcy Rule 2016-1(d) further states that "[w]here the cumulative applications for an applicant are projected to equal or exceed $15,000, the narrative summary required by subsection (a)(5) and itemized time entries required by subsection (a)(6) shall be divided into categories according to the nature of the tasks performed, with the total hours, fees, and *expenses broken down for each category*." (emphasis added). Trustee Counsel asserts that the Court erred by disallowing reimbursement of expenses for "BAE Systems," "CD Roms," "Court Reporter Fees," "Electronic Discovery," and "Westlaw."

Trustee Counsel explains in the Supplemental Declaration of Michael Gearin (Dkt. No. 2142) that the BAE Systems expense of $13,293.05 was incurred through a mailing service that Trustee Counsel used to mail the required notices to parties in interest throughout the case. The Court agrees with Trustee Counsel that this expense was reasonable and necessary under section 330(a)(1)(B) and allows it in the full amount of $13,293.05.

In the Supplemental Declaration, Trustee Counsel also clarifies that the expenses of $3,275 for CD Roms were incurred "for a variety of purposes in the proceeding to transfer large quantities of documents to others as required in the case." Dkt No. 2142 at 7. Trustee Counsel further explains that the firm charged $25 per CD for this service. The Court recognizes that this case was complex and involved a significant number of documents that needed to be shared among parties in interest and agrees that the fee charged was reasonable. The Court therefore finds that the expense of $3,275 meets the requirements of section 330(a)(1)(B) and allows it in full.

Trustee Counsel next argues that it should be allowed reimbursement for $23,556.50 it incurred ordering hearing audio CDS and transcripts and deposition transcripts. Trustee

Counsel, however, does not explain why it failed to place each transcript expense with a category. Trustee Counsel belatedly attempts to offer additional information on the transcripts, though still fails to categorize the hearing CDs and transcripts. The Court can, however, determine from the date of the transcribed hearings that they relate largely to significant matters (such as the first meeting of creditors, the Tomball asset sale, Medallic litigation motions, and the fee deposit evidentiary hearing) that were necessary for the administration of the case and will be allowed.

As for the deposition transcripts, Trustee Counsel has now provided a breakdown by category of this expense. The Court has disallowed time devoted to the Dayton Lease assumption litigation. The transcripts of R. Hoff, C. Hoof, J. Goodfello, and M. Calvert paid on July 4, 2017 and September 4, 2017 that total $2,489.27 and categorized as "Assumption and Rejection of Leases and Contracts" arose in the Dayton Lease assumption litigation and will not be allowed. The Court also disallows the expense of $739.30 for the D. Erdmann transcript for the "American Express Fraudulent Transfer Action" as the Trustee should have ceased his efforts against her after October 12, 2017. *See* Order on Fee Application, Dkt No. 2118 at 71.

The Court previously disallowed $19,990 of the charges for transcripts. It will now disallow only $3,221.47 and allow a total of $20,335.03 for this expense.

Finally, Trustee Counsel requests that the Court reconsider its disallowance of $67,000 in electronic research it categorized as "Westlaw." Trustee Counsel argues that use of electronic research is customary and necessary for the case. Trustee Counsel further asserts that electronic research was used for a number of topics, specifically "preference recovery actions, application of venue statute to preference actions, withdrawal of bankruptcy reference, Stern issues, bifurcation motion, substantive consolidation theory, corporate alter ego, WARN act,

employment law relating to layoffs, environmental claims, preclusive effect of judgment, insurance, [and] 363 sale free and clear issues." Trustee Counsel does not divide the total expense amount into any of these categories.

The Court agrees with Trustee Counsel that such expenses are very often allowable under section 330(a)(1)(B) as reasonable and necessary. Local Rule 2016-1(d), however, requires that these expenses be categorized because the fee application exceeds the $15,000 threshold. Without this categorization, the Court cannot determine which portion of the electronic research expenses relate to fees that it disallowed, preventing it from determining which electronic research expenses were reasonable and necessary. While Trustee Counsel now provides a list of topics it researched, it still has not allocated the expenses by category. Therefore, the Court cannot allow any of the electronic research "Westlaw" expenses.

### c. False narratives

#### i. Dayton Lease

Trustee Counsel challenges both the Court's disallowance of fees related to the Dayton Lease litigation and the Court's further reduction of all fees because of several false narratives, including statements about the Dayton Lease, advanced by the Trustee through Trustee Counsel. As to the first point, Trustee Counsel argues that regardless of whether the lease was bad, it was necessary to the estate, and therefore the fees incurred pursuing the lease assumption should be allowed. Trustee Counsel specifically asserts it did not advance an argument that the Trustee had an alternative to the Dayton Lease or that the Trustee would have moved to another location but for the Hoff agreement. As to the second point, Trustee Counsel argues that it did not make a misrepresentation to the Court by arguing at the evidentiary hearing that the Dayton Lease was bad when it had previously told the Court that the lease was necessary for the estate.

**Below is the Order of the Court.**

Trustee Counsel ignores several relevant findings of fact regarding the Dayton Lease the Court made in its Memorandum Decision on the Trustee's Motion to Assume Dayton, Nevada Lease (Dkt No. 1185). Specifically, the Court found that Trustee Counsel declared that the lease was "bad" and that the Trustee testified he needed a global settlement total to conduct his "move-versus-stay" analysis. *Id.* at 13. The Court also found that the Trustee, through Trustee Counsel, presented evidence and witnesses to show the Trustee had a much cheaper lease alternative at the time. *Id.* at 13–14.

Thus, this Court found Trustee Counsel offered argument and evidence at the evidentiary hearing that the lease was bad *and* that the Trustee could have moved. *Id.* at 13. In other words, contrary to their argument in the Motion, Trustee Counsel *did* advance an argument that the Trustee had an alternative and would have moved but for an alleged agreement with the Hoffs. Further, the Court pressed the Trustee on his "move-versus-stay" analysis at the evidentiary hearing, at which point his testimony changed, and he asserted he lacked the funds to move when he contacted the Hoffs about a settlement. *Id.* at 14. The Court found the Trustee's shifting position made his testimony not credible. *Id.* at 14–15. Neither the Trustee nor Trustee Counsel ever appealed this Memorandum decision. Therefore, the Court's previous findings preclude reconsideration of the underlying facts. The Court will not alter or amend its disallowance of fees related to the Dayton Lease litigation and stands by its conclusion Trustee Counsel advanced mutually exclusive narratives when it suited their needs, one of which must have been false.

### ii. Insolvency

Trustee Counsel also challenges the Court's finding it advanced a false narrative regarding the insolvency of the estate. However, Trustee Counsel provides only a categorical denial that it intended to mislead the Court on this point and gives no further explanation for the

contradictory statements regarding insolvency the Court discusses in its Order. These statements, some in prepared remarks by Trustee Counsel, are contradictory on their face, and Trustee Counsel's conclusory arguments now do not change the plain meaning of the words in the prior statements to this Court. The Court therefore declines to reconsider its disallowance of fees for the false narratives regarding insolvency.

### iii. Break-Up Fee for Tomball Sale

Finally, Trustee Counsel denies it perpetuated a false narrative with its conduct regarding the break-up fee. It argues instead that its brief opposing the Tucker/Cook claim for a breakup fee was proper and that the Court misreads the context of the Trustee's email to Tucker/Cook that preceded the opposition. The Court disagrees.

Trustee Counsel asserts the Trustee never encouraged Tucker/Cook to file a false claim and characterizes the Trustee's email as an attempt to compromise. The tortured descriptions of the emails as a "suggestions as a means to compromise a claim" and the odd conclusion that the "compromise on the break-up fee was not consummated," *see* Motion at 7, confirm the email was *not* a settlement offer. If the email was an offer to settle, the Trustee and Trustee Counsel would say just that – but they are unable to represent the email conveyed a settlement offer because such a representation would be false. And the so-called compromise was not "consummated" because no offer of compromise was made. Instead, the email was a suggestion for a way to convince the Court to award Tucker/Cook a break-up fee despite the Court's stated reluctance.

Trustee Counsel ignores the fact that Tucker/Cook complied with the Trustee's instructions in his email and filed the claim as he directed. The "compromise" failed only when the Trustee, through Trustee Counsel, filed his strident objection attacking Tucker/Cook. The

ORDER ON MOTION TO ALTER OR AMEND FINDINGS OF FACT AND CONCLUSIONS OF LAW IN ORDER ON FEE APPLICATIONS – 9

Court notes it only learned of the email in question when Tucker/Cook, obviously surprised by the severity of the Trustee's attack, filed the email with the Court to explain their own conduct. The Court further notes that Trustee Counsel raised all these arguments previously and they offer nothing new.

In sum, Trustee Counsel's explanations in the Motion do not resolve the Court's concerns about the conduct of the Trustee and Trustee Counsel, and it declines to reconsider the 50 percent reduction of the amounts awarded.

### d. Trustee Counsel Advice on Expense Reimbursement

In the Declaration of Michael J. Gearin supporting the Motion, Trustee Counsel discloses they advised the Trustee that he could reimburse himself for expenses he incurred in the ordinary course of the Mint's business, such as plane tickets to Dayton, Nevada. Dkt No. 2142 at 10–12. Trustee Counsel argues a trustee may enter into transactions in the ordinary course of business without notice and a hearing under 11 U.S.C. section 363(c)(1) and describes the tests courts employ to determine if a transaction fits within the ordinary course category. This "ordinary course" analysis, however, is irrelevant and ignores the clear statutory requirements of a notice and a hearing and an order by the Court before the Trustee could receive any reimbursement of expenses. 11 U.S.C. § 330(a)(1)(B).

The Bankruptcy Code does not except reimbursement for expenses the Trustee allegedly incurred in the ordinary course. Trustee Counsel's advice to the Trustee that he may violate the Bankruptcy Code and pay himself without notice to the Court or any parties constitutes further grounds for the 50 percent reduction of otherwise allowable fees and costs.

## II. Trustee's Joinder

In addition to the Motion filed by Trustee Counsel, Mark Calvert filed a joinder in the

ORDER ON MOTION TO ALTER OR AMEND FINDINGS OF FACT AND CONCLUSIONS OF LAW IN ORDER ON FEE
APPLICATIONS – 10

Motion. Dkt. No. 2145. The joinder simply states "[f]or the reasons set forth in the Motion and the Declaration of Michael J. Gearin In Support of Trustee's Counsel's Motion to Alter and Amend Findings of Fact and Conclusions of Law in Order on Fee Applications (Docket No. 2142), Mark T. Calvert joins in, adopts, and incorporates the arguments and authorities set forth in the Motion." *Id*. at 1. Mr. Calvert makes no request that the Court reconsider, alter, or amend its award of fees to him in this joinder, nor does he assign error to any of the specific disallowances of the Trustee's fees made by the Court. Trustee Counsel's Motion likewise makes no request that the Court reconsider any specific disallowance of the Trustee's fees or expenses. Instead, the Motion focuses completely on Trustee Counsel's own award. The Court therefore construes this joinder as a filing in support of Trustee Counsel's motion and not a request that the Court revisit its fee award to the Trustee. If the Trustee wanted this Court to reconsider its award of fees to him, he needed to file a motion stating which parts of the Court's Order he believed were in error.

## III. Conclusion and Order

The Court reconsiders its order in part to allow additional fees for certain previously unidentified timekeepers and some additional expenses. Trustee Counsel, however, has not met its burden for reconsideration under Rules 59(e) or 52(b) as to the remaining disallowed fees and expenses. The Court likewise declines to reconsider its findings and conclusions related to the Dayton Lease litigation, the Debtor's insolvency, and the break-up fee with Tucker/Cook. The Motion does not demonstrate that the Court committed manifest error or that there are any new facts that would alter the Court's decision. Because the Trustee does not move for reconsideration or for an amendment or alteration of the Court's Order as to his award, the Court does not reconsider, alter, or amend its Order as to the Trustee's fee application. Now therefore,

ORDER ON MOTION TO ALTER OR AMEND FINDINGS OF FACT AND CONCLUSIONS OF LAW IN ORDER ON FEE APPLICATIONS – 11

**Below is the Order of the Court.**

it is hereby

ORDERED that Trustee Counsel is awarded additional fees in the amount of $246,718.

IT IS FURTHER ORDERED that Trustee Counsel is awarded additional expenses in the amounts of $13,293.05 for "BAE Systems," $3,275 for "CD Roms," and $16,768.53 for "Transcripts."

IT IS FURTHER ORDERED that these additional amounts shall be reduced by 50 percent consistent with this Court's Order on Fee Applications, for a total additional allowed amount of $140,027.29.

IT IS FURTHER ORDERED that all Trustee Counsel's additional requests for relief are DENIED.

IT IS FURTHER ORDERED that the Trustee is authorized and directed to disburse the additional allowed amount to Trustee Counsel upon entry of this Order.

///END OF ORDER///